UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN NATIONAL INSURANCE COMPANY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for Washington Mutual Bank, Henderson, Nevada, *et al.*, <br><br> Defendants. | Case No. 1:09-cv-01743 (RMC) |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANTS JPMORGAN CHASE & CO.
## AND JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS

Bruce W. Hickey (D.C. Bar No. 479036)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 956-7500
Facsimile:  (202) 293-6330

Bruce E. Clark (USDC Bar No. D00144)
Robert A. Sacks (admitted *pro hac vice*)
Stacey R. Friedman (admitted *pro hac vice*)
M. David Possick (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for Defendants JPMorgan Chase & Co.
and JPMorgan Chase Bank, N.A.*

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND ......................................................................................4

    A.    The WMB Receivership and WMI Bankruptcy ....................................4

    B.    Plaintiffs' Claims in this Lawsuit .........................................................6

    C.    Procedural History and Pending Motions ..............................................8

ARGUMENT ..............................................................................................................9

I.    PLAINTIFFS' COMPLAINT ON BEHALF OF THE ANICO WMI
    BONDHOLDERS AND ANICO WMI STOCKHOLDERS MUST BE
    DISMISSED FOR LACK OF STANDING. .....................................................9

    A.    The ANICO WMI Bondholders Lack Standing. ................................10

    B.    The ANICO WMI Stockholders Lack Standing..................................13

II.    ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE THEY HAVE
    NOT EXHAUSTED THEIR ADMINISTRATIVE REMEDIES
    UNDER FIRREA. ...........................................................................................16

    A.    Plaintiffs' Failure to Exhaust Their Administrative Remedies
        Requires Dismissal of Plaintiffs' Claims. ...........................................16

    B.    Plaintiffs' Attempts to Plead Around FIRREA Are Ineffective. ..........21

III.    EACH OF PLAINTIFFS' CLAIMS FAILS AS A MATTER OF LAW. .......24

    A.    Plaintiffs' Breach of Confidentiality Agreement Claim Fails as
        a Matter of Law....................................................................................26

    B.    Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law. ..........30

    C.    Plaintiffs' Tortious Interference Claim Fails as a Matter of Law........33

CONCLUSION.........................................................................................................38

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*Abu Dhabi Commer. Bank* v. *Morgan Stanley & Co.*,
  No. 08-7508, 2009 U.S. Dist. LEXIS 79607 (S.D.N.Y. Sept. 2, 2009)...........28–29

*Adagio Inv. Holding Ltd.* v. *FDIC*,
  338 F. Supp. 2d 71 (D.D.C. 2004) ........................................................................21

*Air Atlanta Aero Eng'g Ltd.* v. *SP Aircraft Owner I, LLC*,
  637 F. Supp. 2d 185 (S.D.N.Y. 2009).............................................................27–29

*Aktieselskabet Af 21. Nov. 2001* v. *Fame Jeans, Inc.*,
  525 F.3d 8 (D.C. Cir. 2008) ................................................................................25

* *Am. First Fed., Inc.* v. *Lake Forest Park, Inc.*,
  198 F.3d 1259 (11th Cir. 1999) ....................................................................18, 24

*In re Andrews*,
  No. 94-2160,
  2007 Bankr. LEXIS 762 (Bankr. S.D. Tex. Feb. 21, 2007)...................................12

* *Ashcroft* v. *Iqbal*,
  129 S. Ct. 1937 (2009).....................................................................25–26, 35–36

*Auction Co. of Am.* v. *FDIC*,
  141 F.3d 1198 (D.C. Cir. 1998) ..........................................................................18

*In re Bailey*,
  306 B.R. 391 (Bankr. D.D.C. 2004) ....................................................................12

*Bailey* v. *United States*,
  53 Fed. Cl. 251 (2002) ......................................................................................21

* *Bell Atl. Corp.* v. *Twombly*,
  550 U.S. 544 (2007)........................................................................25–26, 35–36

*Cal. Pub. Employees' Ret. Sys.* v. *Shearman & Sterling*,
  741 N.E.2d 101 (N.Y. 2000)...............................................................................27

*Carramerica Realty Corp.* v. *NVIDIA Corp.*,
  302 F. App'x 514 (9th Cir. Nov. 25, 2008) ..........................................................10

*Casstevens* v. *Smith*,
   269 S.W.3d 222 (Tex. App. 2008) ........................................................32

*Chan* v. *Chang*,
   132 Wash. App. 1046,
   2006 Wash. App. LEXIS 819 (Wash. Ct. App. 2006) ...........................15

*Cole* v. *Metro. Life Ins. Co.*,
   708 N.Y.S.2d 789 (N.Y. App. Div. 2000) ............................................29

*Consol. Edison, Inc.* v. *Ne. Utils.*,
   426 F.3d 524 (2d Cir. 2005).................................................................27

*Cowin* v. *Bresler*,
   741 F.2d 410 (D.C. Cir. 1984) ............................................................13

*Dealers Elec. Supply Co.* v. *Scroggins Constr. Co.*,
   292 S.W.3d 650 (Tex. 2009).................................................................33

*Dew* v. *Crown Derrick Erectors, Inc.*,
   208 S.W.3d 448 (Tex. 2006).................................................................37

*diSibio* v. *Mission Nat'l Bank*,
   127 F. App'x 950 (9th Cir. Apr. 11, 2005) ..........................................24

*Doe* v. *Boys Clubs of Greater Dallas, Inc.*,
   907 S.W.2d 472 (Tex. 1995).................................................................35

*Economy Forms Corp.* v. *Williams Bros. Constr.*,
   754 S.W.2d 451 (Tex. App. 1988) ........................................................32

*In re Educators Group Health Trust*,
   25 F.3d 1281 (5th Cir. 1994) ...............................................................11

*FDIC* v. *Irwin*,
   916 F.2d. 1051 (5th Cir. 1990) ............................................................38

*FDIC* v. *Scott*,
   125 F.3d 254 (5th Cir. 1997) ...............................................................20

*In re Fed. Nat'l Mortgage Assoc. Sec., Derivative, and ERISA Litig.*,
   629 F. Supp. 2d 1 (D.D.C. 2009)........................................................15

\* *Freeman* v. *FDIC*,
   56 F.3d 1394 (D.C. Cir. 1995).................................................17, 19, 20

*Haberman* v. *Wash. Pub. Power Supply Sys.*,
  744 P.2d 1032 (Wash. 1987)......................................................................12, 13, 21

*Hall* v. *Sebelius*,
  No. 08-1715, 2009 U.S. Dist. LEXIS 89601 (D.D.C. Sept. 29, 2009) .................25

*Harris* v. *Sentry Title Co.*,
  715 F.2d 941 (5th Cir. 1983) ................................................................................32

*Heldenfels Bros.* v. *Corpus Christi*,
  832 S.W.2d 39 (Tex. 1992).............................................................................32, 33

*Heno* v. *FDIC*,
  20 F.3d 1204 (1st Cir. 1994)................................................................................20

*Hill* v. *Heritage Res., Inc.*,
  964 S.W.2d 89 (Tex. App. 1997) .........................................................................34

*Hinton* v. *Corr. Corp. of Am.*,
  624 F. Supp. 2d 45 (D.D.C. 2009) .......................................................................28

*Holloway* v. *Skinner*,
  898 S.W.2d 793 (Tex. 1995).................................................................................34

*Holmes Fin. Assocs.* v. *RTC*,
  33 F.3d 561 (6th Cir. 1994) .................................................................................20

*Hudson United Bank* v. *Chase Manhattan Bank of Conn., N.A.*,
  43 F.3d 843 (3d Cir. 1994)...................................................................................17

*IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc.* v. *Mason*,
  143 S.W.3d 794 (Tex. 2004).................................................................................37

*In re Kevco*,
  309 B.R. 458 (Bankr. N.D. Tex. 2004),................................................................12

*Labovitz* v. *Wash. Times Corp.*,
  900 F. Supp. 500 (D.D.C. 1995) ..........................................................................13

*LaSalle Nat'l Bank* v. *Ernst & Young*,
  285 A.D.2d 101 (N.Y. App. Div. 2001) ...............................................................29

*In re Latin Inv. Corp.*,
  168 B.R. 1 (Bankr. D.D.C. 1993) .........................................................................12

*Lee & Lee Int'l, Inc.* v. *Lee*,
  261 F. Supp. 2d 665 (N.D. Tex. 2003) .................................................................34

*Madeira* v. *Affordable Hous. Found., Inc.*,
  469 F.3d 219 (2d Cir. 2006)................................................................27

*Manganaro Corp.* v. *Jefferson at Penn Quarter, L.P.*,
  No. 04-2133, 2005 U.S. Dist. LEXIS 35714 (D.D.C. Aug. 8, 2005) ...................28

*Marshall* v. *Fed. Bureau of Prisons*,
  518 F. Supp. 2d 190 (D.D.C. 2007).....................................................28

*McCarthy* v. *FDIC*,
  348 F.3d 1075 (9th Cir. 2003) ...........................................................20

* *McLeod* v. *Estes*,
  No. 19152-4-III, 2001 Wash. App. LEXIS 977
  (Wash. Ct. App. May 10, 2001)...................................................13–15

*In re Mele*,
  127 B.R. 82 (D.D.C. 1991) ...............................................................12

*Morales* v. *Trans World Airlines, Inc.*,
  504 U.S. 374 (1992).......................................................................23

*Office & Prof'l Employees Int'l Union, Local 2* v. *FDIC*,
  962 F.2d 63 (D.C. Cir. 1992) ............................................................19

* *Pareto* v. *FDIC*,
  139 F.3d 696 (9th Cir. 1998) ............................................................15

*Piccoli A/S* v. *Calvin Klein Jeanswear Co.*,
  19 F. Supp. 2d 157 (S.D.N.Y. 1998)...................................................29

*Plan Comm.* v. *PricewaterhouseCoopers, LLP*,
  No. 02-01487,
  2007 U.S. Dist. LEXIS 29240 (D.D.C. Apr. 20, 2007) ....................9, 10

*Plan Comm.* v. *PricewaterhouseCoopers, LLP*,
  335 B.R. 234 (D.D.C. 2005) .........................................................9, 10

*PT. Bank Mizuho Indon.* v. *PT. Indah Kiat Pulp & Paper Corp.*,
  808 N.Y.S.2d 72 (N.Y. App. Div. 2006) ............................................27

*Purselley* v. *Lockheed Martin Corp.*,
  322 F. App'x 399 (5th Cir. Apr. 22, 2009)....................................31, 33

*Rosa* v. *RTC*,
  938 F.2d 383 (3d Cir. 1991)..............................................................17

*Sabey* v. *Howard Johnson & Co.*,
   5 P.3d 730 (Wash. Ct. App. 2000) ...................................................................13, 15

*Sanders* v. *District of Columbia*,
   601 F. Supp. 2d 97(D.D.C. 2009) .......................................................................26

*Sazerac Co.* v. *Falk*,
   861 F. Supp. 253 (S.D.N.Y. 1994).......................................................................29

*In re Schimmelpenninck*,
   183 F.3d 347 (5th Cir. 1999) ........................................................................10, 12

*Schwartzman* v. *McGavick*,
   No. C06-1080P,
   2007 U.S. Dist. LEXIS 28962 (W.D. Wash. Apr. 19, 2007)................................15

*In re Se. Banking Corp.*,
   827 F. Supp. 742 (S.D. Fla. 1993) ......................................................................16

*In re Se. Banking Corp.*,
   93 F.3d 750 (11th Cir. 1996) .......................................................................37–38

*Slattery* v. *United States*,
   583 F.3d 800 (Fed. Cir. 2009).............................................................................20

*St. Paul Fire & Marine Ins. Co.* v. *PepsiCo, Inc.*,
   884 F.2d 688 (2d Cir. 1989).................................................................................11

*Stamm* v. *Paul*,
   121 F.3d 635 (11th Cir. 1997) .............................................................................18

*Subaru Distribs. Corp.* v. *Subaru of Am., Inc.*,
   425 F.3d 119 (2d Cir. 2005).................................................................................28

*Taylor* v. *District of Columbia*,
   606 F. Supp. 2d 93 (D.D.C. 2009) ......................................................................25

*Texas Carpenters Health Benefit Fund* v. *Philip Morris, Inc.*,
   21 F. Supp. 2d 664 (E.D. Tex. 1998)...................................................................33

*Torrence* v. *District of Columbia*,
   No. 09-443, 2009 U.S. Dist. LEXIS 107305 (D.D.C. Nov. 17, 2009) .................25

*Truly* v. *Austin*,
   744 S.W.2d 934 (Tex. 1988)................................................................................32

*Turner* v. *District of Columbia*,
    No. 04-0048, 2006 U.S. Dist. LEXIS 12578 (D.D.C. Mar. 7, 2006) ...................26

\* *Vill. of Oakwood* v. *State Bank & Trust Co.*,
    519 F. Supp. 2d 730 (N.D. Ohio 2007)..........................................................19, 24

\* *Vill. of Oakwood* v. *State Bank & Trust Co.*,
    539 F.3d 373 (6th Cir. 2008) ...............................................................................23

*Wachovia Corp.* v. *Citigroup, Inc.*,
    634 F. Supp. 2d 445 (S.D.N.Y.  2009)..................................................................31

*In re Wash. Bancorp.*,
    No. 95-1340, 1996 U.S. Dist. LEXIS 3876 (D.D.C. Mar. 19, 1996) ...................21

## STATUTES, RULES AND OTHER AUTHORITIES

11 U.S.C. § 541 ...................................................................................................10–11

\* 12 U.S.C. § 1821(d) .......................................................................... *passim*

\* 12 U.S.C. § 1823(c) .......................................................................................29–31

\* Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343,
    122 Stat. 3765 (2008)...............................................................................27, 29–31

Fed. R. Civ. P. 8 ................................................................................................25, 36

Fed. R. Civ. P. 12(b)(6)...........................................................................................25

Fed. R. Civ. P. 12(c) ...............................................................................................26

\* Financial Institutions Reform, Recovery, and Enforcement Act of 1989,
    Pub. L. No. 101-73, 103 Stat. 183 (1989)..................................................... *passim*

Restatement (Second) of Contracts § 302...................................................................28

Defendants JPMorgan Chase & Co. ("JPMC & Co.") and JPMorgan Chase Bank, N.A. ("JPMC") (collectively, the "JPMC Defendants") respectfully submit this Memorandum of Points and Authorities in support of their Motion to Dismiss Plaintiffs' Original Petition ("Complaint") for lack of standing, for failure to exhaust administrative remedies and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b).

## PRELIMINARY STATEMENT

Plaintiffs' Complaint alleges a covert scheme orchestrated by the Federal Deposit Insurance Corporation ("FDIC"), the Office of Thrift Supervision (the "OTS"), JPMC and others to deprive them of the value of their debt and equity investments in Washington Mutual.  This scheme allegedly included a conspiracy to effect the seizure of Washington Mutual Bank ("WMB") by federal regulators, a sham bidding process for WMB's assets and the sale of these assets by the FDIC to JPMC at a "fire sale" price pursuant to a collusive Purchase and Assumption Agreement (the "P&A Agreement").  (*See* Compl. (attached as Ex. A.1 to Docket No. 1) ¶¶ 20–22, 47–48, 62–64.)  Plaintiffs assert that, as a result of this conspiracy, Washington Mutual, Inc. ("WMI"), a bank holding company and WMB's parent, was forced to declare bankruptcy.

Plaintiffs are nine American National Insurance Company ("ANICO") companies that allegedly invested in debt of WMI and WMB ("ANICO WMI Bondholders" and "ANICO WMB Bondholders," respectively) and the stock of WMI ("ANICO WMI Stockholders").  (Compl. ¶¶ 1–9, 72–87.)  Like all other Washington Mutual debt and equity holders, the Plaintiffs were caught in the wake of WMB's

failure—the largest bank failure in United States history.  Despite being no different from other debt and equity holders, and only by ignoring the effect of the most significant financial crisis since the Great Depression that led to the closure of more than 120 other banks, Plaintiffs assert that they are entitled to special compensation from JPMC for the investments they lost when Washington Mutual failed and was placed into receivership by the federal government.

Plaintiffs have no such right.  Even if Plaintiffs' far-fetched allegations had merit (they do not), they would not place Plaintiffs in a class apart from other Washington Mutual debt and equity holders and somehow allow them to pursue the claims they seek to assert here.  Setting aside the absence of any factual basis for Plaintiffs' fanciful allegations, their claims fail as a matter of law for three independent reasons:

*First*, the claims asserted by the ANICO WMI Bondholder and Stockholder Plaintiffs fail for lack of standing.  Specifically, the ANICO WMI Bondholders have no standing because their generalized claims for the indirect harm that they allegedly suffered are no different from claims that could be brought by any of WMI's creditors or equity holders.  Such generalized claims, to the extent that they may be brought at all (which they should not), may be brought only by WMI's bankruptcy estate.  Similarly, the ANICO WMI Stockholder claims are classically derivative and could be asserted, if at all, only by WMI.

*Second*, all Plaintiffs' claims are barred because Plaintiffs have failed to exhaust their administrative remedies under the Financial Institutions Reform,

Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA").  FIRREA's exclusive claims process applies to "*any claim relating* to any act or omission" of the FDIC as receiver for a failed bank, including Plaintiffs' claims here, which are founded on alleged misconduct in connection with the FDIC's sale of WMB's assets to JPMC pursuant to the terms of the allegedly collusive P&A Agreement.  12 U.S.C. § 1821(d)(13)(D)(ii) (emphasis added).  FIRREA also necessarily applies to the claims of the ANICO WMB Bondholders, who are general "creditors" of the failed bank and are already being fully compensated by the FDIC as receiver for WMB.  Likewise, FIRREA applies to the claims of the ANICO WMI Stockholders and Bondholders, who are effectively derivative claimants purporting to act on behalf of WMI.  If permitted to pursue WMI's claims (and absent compliance with standards for maintaining a derivative action they may not), the ANICO WMI Stockholders and Bondholders must pursue those claims within the statutory regime developed by Congress for resolving failed banks.  And Plaintiffs' efforts to evade FIRREA's exclusive claims process by asserting claims against JPMC are without merit.  Three different Courts of Appeals have rejected Plaintiffs' position that FIRREA does not apply to claims against third-party purchasers of assets, such as JPMC, as did the Southern District of Texas when it transferred this case here.

*Third*, even if they had standing to maintain them, each of Plaintiffs' three Texas state law causes of action fails as a matter of law:

(A)  Plaintiffs claim that the JPMC Defendants breached a confidentiality agreement between JPMC & Co. and WMI.  But the Plaintiffs are not

third-party beneficiaries of the confidentiality agreement and therefore cannot bring a

claim for breach of that agreement.  Moreover, federal legislation passed in 2008 to

facilitate the resolution of failed banks also prohibits this claim.  That legislation

states that confidentiality agreements, such as the one at issue here, cannot be not

used by plaintiffs as a vehicle to "impose any liability" on entities that purchase the

assets of a failed bank from the FDIC.

       (B) Plaintiffs' unjust enrichment claim fails as a matter of law because

Plaintiffs do not allege that they provided any goods or services to the JPMC

Defendants.

       (C) Plaintiffs' tortious interference claim must be dismissed because

Plaintiffs cannot establish proximate cause.  The bank failure that is a predicate to all

of their claims was instituted by the federal government (not JPMC) and as a result of

a global financial crisis.

## FACTUAL BACKGROUND

### A.    The WMB Receivership and WMI Bankruptcy

       Before it became the largest bank failure in U.S. history, WMB was

the largest savings and loan association in the United States, with over 2,200

branches, 43,000 employees, and $188.3 billion in deposits.  (Compl. ¶ 33.)

Throughout 2008, the OTS developed mounting concerns over the safety and

soundness of WMB's banking operations.  By March 2008, Washington Mutual was

in need of capital and engaged in negotiations with many entities, including JPMC, in

an attempt to meet that need.  (*Id*. ¶ 42.)  In connection with these discussions, JPMC

and WMI entered into a confidentiality agreement.  (*Id*. ¶ 95.)[1]  As a result of these

discussions, JPMC offered to purchase all of Washington Mutual.  (*Id*. ¶ 42.)  Had

WMI accepted that offer, all WMI stockholders and creditors of WMI and WMB

(including Plaintiffs) would have been protected from the repercussions of WMB's

failure, the FDIC receivership and WMI's bankruptcy that are the foundation of

Plaintiffs' claims.  But WMI's Board of Directors refused that offer and instead

accepted a capital contribution of approximately $7 billion from a private investor

group.  (*Id*. ¶ 42.)

Notwithstanding that capital contribution, on September 25, 2008, the

OTS declared WMB in an "unsafe and unsound condition," ordered WMB closed,

and appointed the FDIC as receiver of WMB.  (*Id*. ¶ 64.)  The FDIC, after taking

possession of WMB and commencing its receivership process, sold substantially all

WMB assets, and transferred certain WMB liabilities, to JPMC under the authority

vested in the FDIC by FIRREA pursuant to the P&A Agreement.  (*Id*. ¶ 67.)

On September 26, 2008, the day after the OTS seized WMB, WMI

filed a voluntary petition for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for

the District of Delaware.  (*Id*. ¶ 70.)  On December 30, 2008, in accordance with the

exclusive claims process and exhaustion requirements of FIRREA, WMI also filed an

administrative claim with the FDIC, asserting claims to many of the assets acquired

by JPMC.  (*See* Complaint, *Washington Mutual, Inc.* v. *FDIC*, No. 09-00533 (D.D.C.

---

[1]     Plaintiffs plead the existence of the confidentiality agreement on information and belief.  The confidentiality agreement is attached as Exhibit A to the Declaration of Bruce W. Hickey, filed under seal.

Apr. 20, 2009) (attached as Ex. A to Docket No. 5) (the "WMI Action Complaint")
¶ 10.)  After the FDIC denied these claims, on March 20, 2009 in accordance with the
venue requirements of FIRREA, WMI sued the FDIC in the U.S. District Court for
the District of Columbia.

> **B.      Plaintiffs' Claims in this Lawsuit**

Plaintiffs' WMI and WMB investments are now purportedly worthless
in light of the collapse of WMB and the OTS's decision to close that institution.
Plaintiffs' investment losses were triggered because "WMI as it now exists lacks
income-producing assets to meet its contractually mandated obligations to the
Plaintiffs who own WMI bonds," the "WMI stock is worthless" and the "WMB
Bonds (also held by Plaintiffs) are subject to liquidation as part of the FDIC
receivership [and] . . . are worthless."  (Compl. ¶¶ 70–71.)  Plaintiffs acknowledge
that WMB's failure did not cause them any harm independent of the harm suffered by
every other WMI and WMB bondholder or WMI stockholder.  Plaintiffs are suing
because they lost most of their investment when WMB was seized by the federal
government.  (*See id.* ¶¶ 70–71, 92, 99, 102.)  In other words, if WMB had not failed
and required the FDIC's receivership to ensure the safety of the funds of WMB's
depositors, Plaintiffs' investments would still be intact and Plaintiffs would have no
harm to complain of in any forum.

Plaintiffs also plead (and concede) the supposed cause of these events.
Plaintiffs admit that the entire banking industry faced what they euphemistically label
"a difficult business environment" commencing "in 2006 and continuing through
2008," which resulted from "a deteriorating housing market, an increase in mortgage

delinquencies and foreclosures, illiquidity and loss of value of asset-backed and

mortgage-backed securities, and a general downturn in the global credit markets."

(*Id*. ¶ 41.)  Notwithstanding this grudging acknowledgment of the largest financial

meltdown in decades, Plaintiffs have brought their claims against JPMC in an attempt

to find a defendant with perceived "deep pockets."  According to Plaintiffs, the

failure of Washington Mutual resulted not only from this global financial crisis, not

only from the OTS's decision to close the bank, and not only from the FDIC

receivership, but also from an alleged conspiracy between the JPMC Defendants and

the FDIC, OTS and other federal government agencies to sell WMB's assets to JPMC

at a "fire sale" price pursuant to the P&A Agreement.  (*Id*. ¶¶ 20–22, 47–48, 62–64.)

Plaintiffs further allege that JPMC was assisted by the supposed involvement of a

handful of Washington Mutual's 43,000 employees who allegedly fed unspecified

confidential information concerning Washington Mutual to JPMC and who also

allegedly previously worked at JPMC.  (*Id*. ¶¶ 37–40.)

   According to Plaintiffs' conspiracy theory, after WMI rejected

JPMC's offer to purchase Washington Mutual in April 2008, "JPMC began to exert

pressure on the OTC [sic], FDIC and other regulators to intensify oversight and

reporting requirements of Washington Mutual, with the end goal of closing

Washington Mutual in a seamless transfer of the valuable, cherry-picked, assets,

while leaving the liabilities, to JPMC."  (*Id*. ¶ 43.)  Thereafter, "[d]uring late July and

early September of 2008, the FDIC exerted pressure upon the OTS to seize WMB."

(*Id*. ¶ 48.)  Then, "on or about September 4, 2008 . . . JPMC and the FDIC agreed to a

plan whereby federal regulators would seize WMB and certain valuable assets would be passed to JPMC, and certain liabilities excluded."  (Compl. ¶ 47.)  Although on September 23, 2008, the "FDIC purportedly sought bids from select bidders, including JPMC, for the sale of WMB," Plaintiffs go on to allege that "an agreement had already been reached at this time between the FDIC and JPMC for the seizure of WMB and the sale of WMB to JPMC."  (*Id.* ¶ 62.)  According to Plaintiffs, the FDIC orchestrated an allegedly sham bidding process in which:  "the requirements for a 'conforming bid' had been reached after extensive negotiations between the FDIC and JPMC."  (*Id.* ¶¶ 62–64.)  The alleged conspiracy was consummated and Plaintiffs' supposed claims arose when, "[o]n September 25, 2008, after weeks of pressure by [JPMC] upon [the FDIC] and other federal regulators, the FDIC and the [OTS] agreed to [JPMC's] terms.  On that day, the OTS seized [WMB], passed the bank to the FDIC as receiver, and the FDIC sold the crown jewels of Washington Mutual to JPMC at a fire sale price."  (*Id.* ¶ 21.)

As a consequence of this purported conspiracy between JPMC and the federal government, Plaintiffs raise three causes of action against the JPMC Defendants:  (1) tortious interference with Plaintiffs' bond contracts (*id.* ¶¶ 88–93); (2) breach of a confidentiality agreement between JPMC and WMI (*id.* ¶¶ 94–99); and (3) unjust enrichment based on the P&A Agreement (*id.* ¶¶ 100–03).

### C.    Procedural History and Pending Motions

Plaintiffs filed their Complaint in Galveston County, Texas on February 16, 2009.  On March 25, 2009, the FDIC filed a Plea in Intervention, and both the JPMC Defendants and the FDIC filed Notices of Removal to the U.S.

District Court for the Southern District of Texas.  (Docket No. 1, Ex. A.7; Docket

No. 2; Docket No. 3.)  On September 3, 2009, the Honorable Judge Kenneth M. Hoyt

denied Plaintiffs' Motion for Remand.  (Docket No. 46.)  On September 9, 2009, the

Southern District of Texas granted the FDIC's Motion to Transfer the action to this

Court, concluding that FIRREA applied to the Plaintiffs' claims because "the

plaintiffs' suit is related to the actions taken by the FDIC-Receiver when it sold

substantially all of the assets of WMB to JPMC Bank on September 25, 2008."

(Mem. and Order Transferring Case (Docket No. 48) at 4.)[2]

## ARGUMENT

**I.     PLAINTIFFS' COMPLAINT ON BEHALF OF THE ANICO WMI
BONDHOLDERS AND ANICO WMI STOCKHOLDERS MUST BE
DISMISSED FOR LACK OF STANDING.**

It is the burden of the plaintiff to establish standing.  *Plan Comm.* v.

*PricewaterhouseCoopers, LLP*, No. 02-01487, 2007 U.S. Dist. LEXIS 29240, at *22

(D.D.C. Apr. 20, 2007).  "[P]utative plaintiff[s] lacking standing are not entitled to

have their claims litigated in federal court."  *Plan Comm.* v.

*PricewaterhouseCoopers, LLP*, 335 B.R. 234, 241 (D.D.C. 2005) (quotation omitted).

The claims asserted by the ANICO WMI Stockholder and ANICO WMI Bondholder

Plaintiffs fail for lack of standing because they seek to recover for the generalized

harm suffered by WMI when WMB failed and was placed into an FDIC receivership.

---

[2]     JPMC & Co. does not contest that this Court, in the District of Columbia, has
personal jurisdiction over it.  However, JPMC & Co. files this motion subject to its
Special Appearance in Texas, where it is not subject to personal jurisdiction for the
reasons set forth in its pending motion to dismiss.  (Docket No. 19.)

**A.     The ANICO WMI Bondholders Lack Standing.**

The ANICO WMI Bondholders do not have standing in this action because, as they explicitly and repeatedly concede, it is only because WMI was allegedly directly harmed that they indirectly claim to have suffered harm as well.  As ordinary creditors of a debtor in Chapter 11 bankruptcy (WMI), the ANICO WMI Bondholders cannot pursue such claims.

Generally, claims arising from alleged harm to a bankrupt entity constitute property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a), and the right to pursue or settle any such claims similarly are estate property.  *See*, *e.g.*, *Plan Comm.* v. *PricewaterhouseCoopers, LLP*, 335 B.R. 234, 242 n.3 (D.D.C. 2005); *Plan Comm.* v. *PricewaterhouseCoopers, LLP*, 2007 U.S. Dist. LEXIS 29240, at *20 (D.D.C. Apr. 20, 2007).  More specifically, where a creditor asserts that it was "harmed by the alleged diminution of [debtor's] estate, depleting the assets available for the bankruptcy estate constitutes an injury to the bankrupt corporation itself, not an individual creditor of that corporation," and therefore it is the debtor that "has exclusive standing to sue with respect to all claims asserted by [c]reditors based on an underlying injury . . . ."  *Carramerica Realty Corp.* v. *NVIDIA Corp.*, 302 F. App'x 514, 516–17 (9th Cir. Nov. 25, 2008); *see also In re Schimmelpenninck*, 183 F.3d 347, 359–61 (5th Cir. 1999).  "[I]f a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor," the debtor is the proper person to assert the claim.  *St. Paul Fire & Marine Ins. Co.* v. *PepsiCo, Inc.*, 884 F.2d 688, 700–02 (2d Cir. 1989); *see also In re Educators Group Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994) (holding that the

debtor has exclusive standing to sue to recover for wrongs allegedly directed against it).

Here, all of the ANICO WMI Bondholders' claims are founded on allegations of generalized harm to WMI, not on any specific injuries by JPMC or the FDIC to any particular ANICO WMI Bondholder.  The ANICO WMI Bondholders claim that they—*like all of WMI's other creditors*—allegedly suffered indirect harm because WMI can no longer repay its debts:

- The claim for breach of the confidentiality agreement alleges generalized harm because of WMI's inability to pay off its creditors. "Defendants' [alleged] breach caused the Plaintiffs injury by *preventing WMI* from obtaining a purchaser for itself or improving its financial health enough so that it could weather the market turmoil.  *As a result*, the value of Plaintiffs' common stock was rendered worthless, and the contractual rights underlying the Bonds are of no value." (Compl. ¶ 99 (emphasis added).)

- The unjust enrichment claim alleges that JPMC's acquisition of *WMI's* "crown jewels" from the FDIC generally prevented WMI from fulfilling its obligations to its stockholders and debt holders, including the WMI Bondholders.  (Compl. ¶ 21.)

- The tortious interference claim alleges that the JPMC Defendants' conduct "strip[ped] away the source of revenue from which WMI and WMB were to meet their obligations under the bond contracts." (Compl. ¶ 92.)  JPMC's alleged tortious conduct therefore generally prevented WMI from "meet[ing] obligations under the bond contracts" owed to the ANICO WMI Bondholders.  (*Id.*)

Because the ANICO WMI Bondholders' claims rely on alleged, generalized harm to WMI, if these (meritless) claims are to be brought at all, they must be asserted by WMI's bankruptcy estate.[3]  *In re Schimmelpenninck*, 183 F.3d at

---

[3]     Because the ANICO WMI Bondholders do not have standing under Section 541 of Title 11 to avoid dismissal, WMI "must be substituted as the real party-in-

347 (holding that claims based on "a generalized injury to the debtor's estate, which ultimately affects all creditors" belong to the estate); *In re Kevco*, 309 B.R. 458, 465 (Bankr. N.D. Tex. 2004) (finding that tortious interference claims brought by bondholders based on usurpation of corporate assets, recast as fraud claims, were property of the estate); *see also In re Latin Inv. Corp.*, 168 B.R. 1, 5–6 (Bankr. D.D.C. 1993). It is for this reason that courts have found that a claim against a third party based on "injuries resulting from alleged transfers of the Debtor's property to third parties," belongs to the debtor. *In re Andrews*, No. 94-2160, 2007 Bankr. LEXIS 762, at *11 (Bankr. S.D. Tex. Feb. 21, 2007). The ANICO WMI Bondholders have no standing because "[w]hile [Plaintiffs have] styled their action to personalize the harm caused by these transfers," the "initial injury in this case was a direct injury to the Debtor . . . [the ANICO WMI Bondholders were] only injured in this case as an indirect result of the Debtor being" allegedly harmed.[4] *Id.*

---

interest . . . ." *In re Bailey*, 306 B.R. 391, 393 (Bankr. D.D.C. 2004); *see also In re Mele*, 127 B.R. 82, 87 (D.D.C. 1991) ("allowing a reasonable time for substitution of a bankruptcy trustee"). If this claim is going to proceed in any court, WMI should be added as a party so that these claims—which fall within the confines of FIRREA— may be properly adjudicated by this Court, the only Court with unquestioned jurisdiction to hear FIRREA claims.

[4]  The ANICO WMI Bondholders' derivative claims fail for the additional reason that they have no equitable right to bring derivative claims and have not adequately pleaded a contractual right to assert such claims. *Haberman* v. *Wash. Pub. Power Supply Sys.*, 744 P.2d 1032, 1060 (Wash. 1987) (en banc).

**B.     The ANICO WMI Stockholders Lack Standing.**

The ANICO WMI Stockholders are four related entities who claim to have held 10,300 shares of WMI stock when the bank failed.  (*See* Compl. ¶¶ 72–75.) The ANICO WMI Stockholders allege claims for breach of the WMI confidentiality agreement (Count Two) and unjust enrichment (Count Three) because WMI (and WMI's stockholders) were not fairly compensated for the assets JPMC acquired from the FDIC.  Under Washington law,[5] "[o]rdinarily, a shareholder cannot sue for wrongs done to a corporation, because the corporation is a separate entity:  the shareholder's interest is viewed as too removed to meet the standing requirements." *Sabey* v. *Howard Johnson & Co.*, 5 P.3d 730, 735 (Wash. Ct. App. 2000) (citation omitted); *see also Haberman*, 744 P.2d at 1060.  In other words, "even if the stockholder has suffered indirect harm, such as a diminution in the value of his or her corporate shares due to a wrong done to the corporation by a third party, the stockholder still does not have an individual right of action."  *McLeod* v. *Estes*, No. 19152-4-III, 2001 Wash. App. LEXIS 977, at *7 (Wash. Ct. App. May 10, 2001) (citation omitted); *see also Labovitz*, 900 F. Supp. at 505 ("If the gravamen of the

---

[5]     Under District of Columbia choice-of-law rules, the question of whether the WMI shareholders are permitted to bring this lawsuit is governed by the law of WMI's state of incorporation.  *See Cowin* v. *Bresler*, 741 F.2d 410, 414 & n.4 (D.C. Cir. 1984) (applying law of state of incorporation to question of whether claims were direct or derivative, and finding claims derivative such that individual shareholders could not maintain those claims); *see also Labovitz* v. *Wash. Times Corp.*, 900 F. Supp. 500, 503–05 (D.D.C. 1995).  WMI was organized under the laws of the State of Washington.  (*See*, *e.g.*,WMI Action Complaint ¶ 3.)  Therefore, Washington law governs whether the WMI shareholders' claims are direct or derivative and whether they have standing to maintain their claims in this action.

complaint is injury to the corporation or if the shareholder's damages are the indirect result of an injury to the corporation, the shareholder may not sue individually.") (citations omitted).

Here, the ANICO WMI Stockholders seek to recover for alleged damage to WMI—as opposed to harm specifically suffered by the particular ANICO WMI Stockholders who brought this action.  Indeed, rather than claim any direct injury, the ANICO WMI Stockholders instead claim damage because the JPMC Defendants "strip[ped] away valuable assets *of Washington Mutual* without properly compensating the company or its stakeholders, *including* the Plaintiffs."  (Compl. ¶ 30 (emphasis added).)

- In the breach of confidentiality agreement claim, Plaintiffs seek to recover for JPMC's alleged violation of the terms of a March 2008 confidentiality agreement between JPMC and WMI and because of their purported "valid and enforceable interest *in protecting WMI . . . from the harm*."  (Compl. ¶ 96 (emphasis added).)  As a result of the breach directed at WMI, allegedly "Plaintiffs' common stock was rendered worthless." (Compl. ¶ 99.)

- Plaintiffs' unjust enrichment claim asserts that JPMC's acquisition of WMB's assets from the FDIC was for "a price less than its fair market value" and therefore Plaintiffs *as stockholders* of WMI "received overwhelmingly less than the value of what Defendants extracted" because WMI received "less value."  (Compl. ¶¶ 101–02.)

The ANICO WMI Stockholders are thus impermissibly seeking to recover for derivative claims that belong to WMI.  Plaintiffs that held WMI stock only suffered indirect harm as a result of the "diminution in the value of his or her corporate shares due to a[n alleged] wrong done to [WMI] by [JPMC]," *McLeod*, 2001 Wash. App. LEXIS 977, at *7.  Accordingly, under Washington law, the ANICO WMI Stockholders' claims are entirely derivative from the rights of WMI.

-14-

*See*, *e.g.*, *McLeod*, 2001 Wash. App. LEXIS 977, at *7–8.[6]  As a result, the Court

should dismiss the ANICO WMI Stockholders' claims for lack of standing.

And, even if the Court considered letting the derivative claims survive,

the ANICO WMI Stockholders (or WMI) are barred from pursuing such claims.  The

FDIC as "receiver, and by operation of law, succeed to all rights, titles, powers, and

privileges of the insured depository institution, and of any *stockholder*" of WMB.

12 U.S.C. § 1821(d)(2)(A)(i).  "Plainly, the section vests all rights and powers of a

stockholder of the bank to bring a derivative action in the FDIC.  . . .  In other words,

Congress has transferred everything it could to the FDIC, and that includes a

stockholder's [WMI's] right, power, or privilege to demand corporate action or to sue

directors or others when action is not forthcoming."  *Pareto* v. *FDIC*, 139 F.3d 696,

700 (9th Cir. 1998) (holding that a stockholder had no standing to bring derivative

claims against the former directors of the failed bank for violation of the duties of

care and loyalty under Section 1821(d)(2)(A)); *see also In re Fed. Nat'l Mortgage*

*Assoc. Sec., Derivative, and ERISA Litig.*, 629 F. Supp. 2d 1, 3–4 (D.D.C. 2009)

(relying on the Ninth Circuit's interpretation of Section 1821(d)(2)(A) in *Pareto* to

permit the Federal Housing Finance Agency to be substituted as plaintiff over the

objections of the shareholder derivative plaintiffs).  In particular, in accordance with

---

[6]   None of the limited exceptions to the general rule that shareholders cannot
maintain an action applies here, in part because the Complaint fails to allege the
existence of a demand or provide sufficient particularized allegations to establish that
a demand would have been futile.  *See*, *e.g.*, *Sabey*, 5 P.3d at 735; *Chan* v. *Chang*,
132 Wash. App. 1046, 2006 Wash. App. LEXIS 819, at *7 (Wash. Ct. App. 2006);
*McLeod*, 2001 Wash. App. LEXIS 977, at *8–9; *Schwartzman* v. *McGavick*, No. 06-
1080, 2007 U.S. Dist. LEXIS 28962, at *11 (W.D. Wash. Apr. 19, 2007).

FIRREA, the ANICO WMI Stockholders (and WMI) have no standing to pursue derivative claims arising from harm to WMB because "there is no meaningful distinction between injury suffered by the holding company and the derivative claims of mismanagement, especially where [the holding company's] solvency and success were 'crucially dependent' on the Bank, as alleged in the Complaint." *In re Se. Banking Corp.*, 827 F. Supp. 742, 745–46 (S.D. Fla. 1993) (dismissing derivative claims asserted by the bankruptcy trustee of a bank holding company against officers and directors of the wholly-owned subsidiary bank that was seized by the FDIC), *rev'd on other grounds*, 69 F.3d 1539 (1995).

## II.   ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE THEY HAVE NOT EXHAUSTED THEIR ADMINISTRATIVE REMEDIES UNDER FIRREA.

### A.   Plaintiffs' Failure to Exhaust Their Administrative Remedies Requires Dismissal of Plaintiffs' Claims.

Under FIRREA, Congress mandated that (1) any "action seeking a determination of rights with respect to[] the assets of any depository institution for which the Corporation has been appointed receiver" and (2) any "claim relating to any act or omission of [a failed bank]" or "the [FDIC] as receiver," 12 U.S.C. § 1821(d)(13)(D)(i)–(ii), be submitted through the administrative claims process described in 12 U.S.C. § 1821(d).  In accordance with FIRREA's claims process, all claims concerning the WMB receivership or relating to the acts or omissions of the FDIC as receiver of WMB must first be filed with the FDIC, which could allow or disallow the claims.  *See* 12 U.S.C. §§ 1821(d)(3)–(11).  This includes claims by creditors of WMB (the ANICO WMB Bondholders), the holding company for the

-16-

failed bank (WMI), as well as claims by "any shareholder or creditor" of WMI (the

ANICO WMI Shareholders and WMI Bondholders).  *See* 12 U.S.C. § 1821(d)(11).

In the event of a disallowance, the claimant may opt to have that

decision administratively reviewed by the FDIC, or it may assert those disallowed

claims—and only those disallowed claims—in either the U.S. District Court for the

District of Columbia or the district in which the failed bank's principal place of

business is located.  *See* 12 U.S.C. § 1821(d)(6)(A).  However, if a potential claimant

fails to follow these procedures within prescribed time periods, the "claim shall be

deemed to be disallowed (other than any portion of such claim which was allowed by

the receiver) as of the end of such period, such disallowance shall be final, and the

claimant shall have no further rights or remedies with respect to such claim."

12 U.S.C. § 1821(d)(6)(B)(ii).

Pursuant to this statutory regime, "Section 1821(d)(13)(D) . . . acts as a

jurisdictional bar to claims or actions by parties who have not exhausted their

§ 1821(d) administrative remedies."[7]  *Freeman* v. *FDIC*, 56 F.3d 1394, 1400 (D.C.

Cir. 1995) ("This mandatory exhaustion requirement . . . has been vigilantly enforced

---

[7]     The majority of circuits that have considered this issue have "decid[ed] that the administrative claims procedures and the jurisdictional bar have concurrent scope" and, as a result, held that subsection (d)(6) requires that the same broad categories of claims that are encompassed by subsection (d)(13)(D) must be submitted in the receivership claims process in order to preserve the right to file a lawsuit relating to such claims.  *Hudson United Bank* v. *Chase Manhattan Bank of Conn., N.A.*, 43 F.3d 843, 848–50 (3d Cir. 1994).   Although the D.C. Circuit has not yet taken a position on whether the scope of the exhaustion requirement under (d)(6)(A) is completely coextensive with the jurisdictional bar under 1821(d)(13)(D), *see Auction Co. of Am.* v. *FDIC*, 141 F.3d 1198, 1201 (D.C. Cir. 1998), there is no doubt the exhaustion requirement applies in this case.

by sister circuits.") (citing decisions from the Second, Third, Fourth, Fifth, Eighth, and Ninth Circuits); *Stamm* v. *Paul*, 121 F.3d 635, 642 (11th Cir. 1997); *Rosa* v. *RTC*, 938 F.2d 383, 391–92 (3d Cir. 1991).  This is not a contested point.  Plaintiffs have conceded in support of their motion to remand this action to Texas state court that all claims that relate to "any act or omission of the FDIC" are subject to FIRREA's exhaustion requirement:  "As described in *American First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 (11th Cir. 1999), 'claims' that are subject to the exhaustion of remedies requirement under FIRREA are the following: . . . '(4) a claim relating to any act or omission of [a failed bank] or the [FDIC] as receiver.'"  (Pls.' Mot. for Remand (Docket No. 10) at 12 (second alteration in original).)  Here, Plaintiffs' failure to exhaust their administrative remedies as required by FIRREA requires dismissal of the Complaint for three reasons.

   *First*, Plaintiffs' claims relate to alleged acts of the FDIC as receiver for WMB.  Specifically, Plaintiffs allege that various arms of the United States government and JPMC concocted "a plan whereby federal regulators would seize WMB and certain valuable assets would be passed to JPMC" by the FDIC as the newly appointed receiver.  (Compl. ¶ 47.)  That scheme was allegedly consummated when "the OTS seized [WMB], passed the bank to the FDIC as receiver, and the FDIC [receiver] sold the crown jewels of Washington Mutual to JPMC at a fire sale price."  (Compl. ¶ 21; *see also* Compl. ¶¶ 70–71.)  Because a lynchpin of Plaintiffs' claims is the allegation that the FDIC receiver improperly sold WMB's assets pursuant to the P&A Agreement for too low a price, Plaintiffs' claims are premised

on the acts or omissions of the FDIC as receiver for WMB, are within the second

prong of FIRREA's jurisdictional bar, and must be dismissed for Plaintiffs' failure to

exhaust the requisite administrative processes.  12 U.S.C. § 1821(d)(13)(D)(ii);

*Freeman*, 56 F.3d at 1400; *Office & Prof'l Employees Int'l Union, Local 2* v. *FDIC*,

962 F.2d 63, 66 n.7 (D.C. Cir. 1992) (Ginsburg, J.); *see also* Pls.' Mot. for Remand

(Docket No. 10) at 11 ("If a claimant does not exhaust the administrative claims

procedure, then 12 U.S.C. § 1821(d)(13)(D) will preclude further judicial review.").

  The court in *Village of Oakwood* v. *State Bank & Trust Co.* reached

the same conclusion when faced with similar circumstances.  In that case, uninsured

depositors sued only the bank that acquired assets from the FDIC for, *inter alia*,

"aiding and abetting the FDIC's alleged breach of fiduciary duty to the uninsured

depositors . . . ."  519 F. Supp. 2d 730, 732–33, 738 (N.D. Ohio 2007), *aff'd*, 539 F.3d

373, 386 (6th Cir. 2008).  The *Village of Oakwood* plaintiffs asserted that because

they were not suing the FDIC, FIRREA did not apply to this "aiding and abetting"

claim.  *Id.* at 738.  The court saw through this artful drafting, explaining that "[w]hen

the receiver took the actions that underlie the uninsured depositors claims—claims

that are clearly relate[d] to an 'act or omission of . . . the Corporation as receiver,'"

they were covered by FIRREA.  *Id.*  Because plaintiffs had not exhausted the

administrative process set forth in FIRREA, "the claimants have no further rights

(and thus no right to a hearing in this court) with regard to the claims." [8]  *Id.*

---

[8]  Eight of the ten Courts of Appeals to consider the issue, including the D.C.
Circuit, have held that claims against the FDIC as receiver are subject to FIRREA's

*Second*, as discussed above, the claims of ANICO WMB Bondholders are generalized claims of "creditors" of the failed bank claiming they were damaged because the FDIC sold WMB's assets at a "fire sale" price.  (*See* Compl. ¶¶ 21, 101.) These claims hinge on the allegation that JPMC did not "properly compensat[e] the company or its stakeholders" when it acquired the WMB assets from the FDIC. (Compl. ¶¶ 21, 30, 101.)  Plaintiffs are thus seeking a ruling from this Court that JPMC should have paid more for WMB's assets, *i.e.*, they are seeking "a determination of rights with respect to [] the assets" of WMB that is subject to the FIRREA claims process.  *See* 12 U.S.C. § 1821(d)(13)(D)(i).  Indeed, Plaintiffs acknowledge that the payment on their bonds is governed by the FDIC receivership process, but nonetheless chose to sue JPMC because "[i]n most cases, payment from the receiver would be less than a lawsuit directly against the original wrongdoer." (Pls.' Reply to JPMC's Mem. in Opp'n to Pls.' Am. Mot. for Certification Under 28 U.S.C. § 1292(b) (Docket No. 78) at 11; *see also* Compl. ¶ 71.)  This is an impermissible attempt to circumvent the statutory scheme for claims arising from a failed bank.  The ANICO WMB Bondholders will be fully compensated for their claims by the FDIC through the issuance of receivership certificates.  (FDIC's Mem.

Cont'd

exhaustion requirement before they can be brought in any court because the exhaustion requirement of subsection (d)(6) is read to cover all claims relating to the FDIC's conduct as receiver.  *See*, *e.g.*, *Freeman*, 56 F.3d at 1400; *Heno* v. *FDIC*, 20 F.3d 1204, 1208–10 (1st Cir. 1994); *FDIC* v. *Scott*, 125 F.3d 254, 259 (5th Cir. 1997); *Holmes Fin. Assocs.* v. *RTC*, 33 F.3d 561, 563 n.1 (6th Cir. 1994); *McCarthy* v. *FDIC*, 348 F.3d 1075, 1080–81 (9th Cir. 2003); *cf. Slattery* v. *United States*, 583 F.3d 800, 828–29 (Fed. Cir. 2009) (adopting the minority view).

in Opp'n to Pls.' Am. Mot. for Certification (Docket No. 79) at 11 n.4 and Ex. 1.)  As this Court has held, "it is well established that payment through delivery of a receivership certificate, even one that never has any cash value, is all that is required to fully compensate creditors."  *Adagio Inv. Holding Ltd.* v. *FDIC*, 338 F. Supp. 2d 71, 74 n.4 (D.D.C. 2004).

   *Third*, as also discussed above, the claims of the ANICO WMI Stockholders and Bondholders are effectively derivative claims that should not proceed at all.  *See*, *e.g.*, *Haberman* v. *Wash. Pub. Power Supply Sys.*, 744 P.2d 1032, 1060 (Wash. 1987) (en banc) (discussing "derivative actions when a stockholder or creditor of a parent or holding company sues to enforce a cause of action in favor of a subsidiary company").  In any event, to the extent these claims proceed (which they should not), they must be brought by WMI through the FIRREA claims process and the failure to exhaust that process would extinguish any right to pursue such claims.  *See*, *e.g.*, *In re Wash. Bancorp.*, No. 95-1340, 1996 U.S. Dist. Lexis. 3876, at *16–17, 26–28 (D.D.C. Mar. 19, 1996) (holding company must exhaust administrative remedies under FIRREA); *Bailey* v. *United States*, 53 Fed. Cl. 251, 257 (2002) ("[S]hareholders of a failed thrift under the longstanding statutory priority scheme [of § 1821(d)(11)] are always the last of all claimants to be paid.").

  **B.**  **Plaintiffs' Attempts to Plead Around FIRREA Are Ineffective.**

   Although Plaintiffs acknowledge FIRREA's exhaustion requirement and the resulting bar on claims if FIRREA's procedures are not fully complied with, Plaintiffs assert that they can circumvent FIRREA because they (1) "do not seek assets of the receivership" and (2) are bringing claims against only JPMC.  (Pls.' Mot.

for Remand (Docket No. 10) at 11.)  Plaintiffs' argument applies limitations to

FIRREA that do not exist in the statute and that have been repeatedly rejected by the

U.S. Courts of Appeals.

> To begin, there is no reconciling Plaintiffs' attempt to limit FIRREA to

claims seeking "assets of the receivership" with the plain language of the statute.

FIRREA applies in relevant part to "any claim relating to any act or omission" of the

FDIC as receiver for a failed bank *or* "any claim or action for payment from . . . the

assets of any depository institution for which the Corporation has been appointed

receiver."  12 U.S.C. § 1821(d)(13)(D)(i)–(ii).  Clearly, Plaintiffs cannot escape

FIRREA merely by disavowing any claim on the "assets of the receivership," when

Congress expressly dictated that FIRREA applies to other types of claims.

> Moreover, it is a fiction for Plaintiffs to pretend that their claims do

not seek the "assets of the receivership."  Plaintiffs' claims implicate the FDIC's

obligations under the P&A Agreement to indemnify JPMC from the assets of the

receivership.[9]  Accordingly, if "seeking assets of the receivership" were the test under

---

[9]   The P&A Agreement requires the FDIC to indemnify JPMC for "claims based
on the rights of any creditor as such of the Failed Bank"  (P&A Agreement
§ 12.1(a)(2) (attached as Ex. A to Docket No. 15)), claims based on the acts of WMB
employees (P&A Agreement § 12.1(a)(4)) and "claims asserted by, or derivatively by
any shareholder on behalf of, the Failed Bank's parent company based on the process
of bidding, negotiation, execution and consummation of the transactions
contemplated by this Agreement . . . ."  (P&A Agreement § 12.1(a)(9)).  To the extent
that JPMC would be held liable for matters that fall within the scope of these
indemnity provisions, the FDIC would be obligated to indemnify JPMC from assets
of the receivership.  (*See* P&A Agreement § 12.7.)

FIRREA (it is not), Plaintiffs' claims are seeking the "assets of the receivership" and would therefore be covered by the statute.

In addition, Plaintiffs cannot escape FIRREA by suing only JPMC. Congress also did not limit FIRREA to claims brought against the FDIC as receiver, but rather expanded the statute to capture even claims that "relat[e] to" the acts of the FDIC as receiver, including necessarily claims brought against third parties such as JPMC.  12 U.S.C. § 1821(d)(13)(D)(ii).  The phrase "relating to" has a deliberately broad and sweeping meaning when used by Congress in a statute, not the limited connotation Plaintiffs posit.  *Morales* v. *Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) ("The ordinary meaning of ['relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer, . . . and the words thus express a broad pre-emptive purpose.'").  It is therefore unsurprising that three different Courts of Appeals and the United States District Court for the Southern District of Texas have held that FIRREA applies even when a plaintiff attempts to avoid FIRREA by asserting claims only against the third-party purchaser of the failed bank's assets.  *See Vill. of Oakwood* v. *State Bank & Trust Co.*, 539 F.3d 373, 386 (6th Cir. 2008) (claims against purchaser of failed bank assets from the FDIC were barred by 12 U.S.C. § 1821(d)(13)(D)(ii) as "directly related to acts or omissions of the FDIC as the receiver of [the failed bank]"); *diSibio* v. *Mission Nat'l Bank*, 127 F. App'x 950, 951 (9th Cir. Apr. 11, 2005); *Am. First Fed.*, v. *Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 n.3 (11th Cir. 1999).

Here, as discussed above, Plaintiffs' claims in this action clearly "relat[e] to" the acts of the FDIC as receiver.  Thus, the Southern District of Texas readily concluded that FIRREA applies to Plaintiffs' claims even though Plaintiffs chose to name only the JPMC Defendants and not the FDIC:

> The plaintiffs contend that FIRREA is inapplicable to their claims because their lawsuit is not against the FDIC and thereby subject to § 1821(d)(6)(A) [*i.e.*, the provision of FIRREA establishing administrative review]. . . .  The Court is of the opinion that the plaintiffs[] have either misread the statute or, in an effort to craft a suit that avoids the reach of the statute, ignored the 'well pleaded complaint rule.'  In truth, the plaintiffs' suit is related to the actions taken by the FDIC-Receiver when it sold substantially all of the assets of WMB to JPMC Bank on September 25, 2008.

(Mem. and Order Transferring Case (Docket No. 48) at 4) (citations omitted).)

"[I]t is clear why [the ANICO Plaintiffs] have picked [JPMC] as the sole target of their allegations; having failed to make claims against the FDIC via the required administrative process, [the ANICO Plaintiffs] recognize they will be barred from making such claims at this late date.  Unfortunately for them, they are also barred from bringing the same claims against [JPMC]."  *Vill. of Oakwood*, 519 F. Supp. 2d at 734–35.

## III.    EACH OF PLAINTIFFS' CLAIMS FAILS AS A MATTER OF LAW.

"Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted." *Taylor* v. *District of Columbia*, 606 F. Supp. 2d 93, 95 (D.D.C. 2009) (citing Fed. R. Civ. P. 12(b)(6)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is 'plausible

on its face.'" *Torrence* v. *District of Columbia*, No. 09-443, 2009 U.S. Dist. LEXIS

107305, at *7 (D.D.C. Nov. 17, 2009) (Collyer, J.) (quoting *Bell Atl. Corp.* v.

*Twombly*, 550 U.S. 544, 570 (2007)).  "The facts alleged 'must be enough to raise a

right to relief above the speculative level,' and a court need not accept as true

inferences unsupported by facts set out in the complaint or legal conclusions cast as

factual allegations." *Hall* v. *Sebelius*, No. 08-1715, 2009 U.S. Dist. LEXIS 89601, at

*7 (D.D.C. Sept. 29, 2009) (Collyer, J.) (quoting *Aktieselskabet Af 21. Nov. 2001* v.

*Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008)); *see also Ashcroft* v. *Iqbal*,

129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556–57) ("Rule 8 . . .

does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions.").  The "plausibility standard" articulated by the Supreme Court in

*Twombly* "asks for more than a sheer possibility that a defendant has acted

unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it stops short of the line between possibility and plausibility of

'entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556–

57).  Plaintiffs' claims cannot meet this standard.[10]

---

[10]    The FDIC has also moved pursuant to Rule 12(c) and, to the extent the Court
deems it proper, JPMC also moves pursuant to Rule 12(c).  "The standard of review
for a motion pursuant to Rule 12(c) is essentially the same as that for motions to
dismiss pursuant to Rule 12(b)(6)." *Turner* v. *District of Columbia*, No. 04-0048,
2006 U.S. Dist. LEXIS 12578, at *8-9 (D.D.C. Mar. 7, 2006) (Collyer, J.); *see also
Sanders* v. *District of Columbia*, 601 F. Supp. 2d 97, 99-100 (D.D.C. 2009).
Accordingly, the Court can dismiss the Complaint on either basis.

**A.      Plaintiffs' Breach of Confidentiality Agreement Claim Fails as a Matter of Law.**

Plaintiffs pleaded the existence of the confidentiality agreement on information and belief and now seek to assert a claim arising from that contract without having reviewed the actual March 11, 2008 Confidentiality Agreement between JPMC & Co. and WMI (the "Confidentiality Agreement") or having any understanding of its terms.  (*See* Compl. ¶ 95.)  Plaintiffs assert that they "have standing to sue for breach of the confidentiality agreement" because they "are intended beneficiaries of the confidentiality agreement"  (Compl. ¶ 96) and that JPMC can be sued for breaching the agreement.  Plaintiffs are wrong, and their breach of confidentiality agreement claim must be dismissed for two independent reasons:  (1) Plaintiffs are not third-party beneficiaries who can enforce the confidentiality agreement; and (2) Plaintiffs' claim is expressly prohibited by the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, 122 Stat. 3765 (2008) ("EESA").

(1)      Plaintiffs are not third-party beneficiaries who can enforce the Confidentiality Agreement.  Plaintiffs are neither parties to the Confidentiality Agreement nor its intended beneficiaries.  Under New York law, which governs the Confidentiality Agreement, a "'party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.'"  *Air Atlanta*

-26-

*Aero Eng'g Ltd.* v. *SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 190 (S.D.N.Y. 2009) (quoting *Madeira* v. *Affordable Hous. Found., Inc.*, 469 F.3d 219, 251–52 (2d Cir. 2006)).  "To create a third party right to enforce a contract, 'the language of the contract' must '*clearly* evidence an intent to permit enforcement by the third party.'" *Air Atlanta*, 637 F. Supp. 2d at 191 (quoting *Consol. Edison, Inc.* v. *Ne. Utils.*, 426 F.3d 524, 528 (2d Cir. 2005) (emphasis in original and internal quotation omitted); *see also Cal. Pub. Employees' Ret. Sys.* v. *Shearman & Sterling*, 741 N.E.2d 101, 104–05 (N.Y. 2000) ("A party asserting rights as a third-party beneficiary must establish . . . that the contract was intended for his benefit."); *PT. Bank Mizuho Indon.* v. *PT. Indah Kiat Pulp & Paper Corp.*, 808 N.Y.S.2d 72, 73 (N.Y. App. Div. 2006) ("requir[ing] a clear intention to confer the benefit of the promised performance") (citing Restatement (Second) of Contracts § 302).[11]  Accordingly, "'[d]ismissal of a third-party-beneficiary claim is appropriate . . . where the complaint relies on language in the contract or other circumstances that will not support the inference that the parties intended to confer a benefit on the claimant.'"  *Abu Dhabi Commer. Bank* v. *Morgan Stanley & Co.*, No. 08-7508, 2009 U.S. Dist. LEXIS 79607, at *30 (S.D.N.Y. Sept. 2, 2009) (quoting *Subaru Distribs. Corp.* v. *Subaru of Am., Inc.*, 425 F.3d 119, 124–25 (2d Cir. 2005)).

---

[11]      "On a motion to dismiss, the Court may properly consider a contract referred to in a complaint and central to a plaintiff's claim, even though the plaintiff failed to attach a copy of the contract." *Manganaro Corp.* v. *Jefferson at Penn Quarter, L.P.*, No. 04-2133, 2005 U.S. Dist. LEXIS 35714, at *3 n.3 (D.D.C. Aug. 8, 2005) (citations omitted); *see also Marshall* v. *Fed. Bureau of Prisons*, 518 F. Supp. 2d 190, 195 n.6 (D.D.C. 2007); *Hinton* v. *Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009).

Far from "*clearly* evidenc[ing] an intent to permit enforcement by the third party" *see Air Atlanta*, 637 F. Supp. 2d at 191, Section 15 of the Confidentiality Agreement refutes any notion that the Plaintiffs were the intended beneficiaries of the Confidentiality Agreement:

> This agreement is for the benefit of the Company [WMI] and the Company's Representatives and their respective successors and assigns and will be governed by and construed in accordance with the laws of the State of New York.

(Hickey Decl. Ex. A § 15.)[12]

Accordingly, because the Confidentiality Agreement does not include any "clear contractual language evincing the intent" of the contracting parties that the Plaintiffs were the intended beneficiaries of the Confidentiality Agreement, Plaintiffs' claims must be dismissed. *LaSalle Nat'l Bank* v. *Ernst & Young*, 285 A.D.2d 101,108–09 (N.Y. App. Div. 2001); *see also Air Atlanta*, 637 F. Supp. 2d at 190–95; *Abu Dhabi*, 2009 U.S. Dist. LEXIS 79607, at *63–68; *Piccoli A/S* v. *Calvin Klein Jeanswear Co*., 19 F. Supp. 2d 157, 163–64 (S.D.N.Y. 1998); *Sazerac Co.* v. *Falk*, 861 F. Supp. 253, 258-59 (S.D.N.Y. 1994); *Cole* v. *Metro. Life Ins. Co.*, 708 N.Y.S.2d 789, 790 (N.Y. App. Div. 2000).

(2)     EESA bars Plaintiffs breach of confidentiality agreement claim.  The breach of contract claim also fails as barred by the recently enacted EESA to the extent JPMC allegedly disclosed information in connection with its offer to acquire

---

[12]     The Confidentiality Agreement defines "Company" as "Washington Mutual, Inc." and "all subsidiaries."  The "Company's Representatives" is defined as "directors, officers, employees, representatives, advisors and/or agents of the Company."  (Hickey Decl. Ex. A at 1.)

WMB's assets from the FDIC.  In the midst of the financial crisis, Congress

understood that plaintiffs might attempt to use confidentiality agreements, such as the

one at issue here, to hinder or delay the U.S. government's efforts to resolve failing

banks by making post-resolution attacks on purchasers of assets from the FDIC.  *See*

12 U.S.C. § 1823(c)(11) (enforcing confidentiality agreements is "contrary to public

policy").  To ensure such breach of contract claims did not proceed, Congress deemed

confidentiality agreements unenforceable, and specifically relieved entities acquiring

from the FDIC (such as JPMC) from any liability arising from an alleged breach of

such agreements in connection with the FDIC's efforts to resolve failed banks.

Section 126(c) of EESA, entitled "Unenforceability of Certain Agreements,"

provides:

> No provision contained in any existing or future standstill,
> confidentiality, or other agreement that, directly or
> indirectly—
>
> (A) affects, restricts, or limits the ability of any person to
> offer to acquire or acquire,
> (B) prohibits any person from offering to acquire or
> acquiring, or
> (C) prohibits any person from using any previously
> disclosed information in connection with any such offer to
> acquire or acquisition of, all or part of any insured
> depository institution, including any liabilities, assets, or
> interest therein, in connection with any transaction in which
> the Corporation exercises its authority under section 11 or
> 13, shall be enforceable against or impose any liability on
> such person, as such enforcement or liability shall be
> contrary to public policy.

12 U.S.C. § 1823(c)(11).

The confidentiality agreement that Plaintiffs are attempting to enforce

is exactly the type EESA made unenforceable:  an "existing . . . standstill [and]

confidentiality . . . agreement."  *See id.*  Plaintiffs allege that the confidentiality

agreement required JPMC "to keep confidential and not disclose any and all

confidential information gathered by JPMC as part of its due diligence in examining

Washington Mutual's financial circumstances."  (Compl. ¶ 59.)  Plaintiffs' breach of

contract claim therefore hinges, in significant part, on the allegation that JPMC used

this information "in order to make a detailed and profitable prearranged bid to the

FDIC for the purchase of those assets."  (Compl. ¶ 54.)  Said differently, Plaintiffs

allege that JPMC's assessment of its bid and negotiation, and submission of its bid to

the FDIC to acquire WMB's assets in a transaction where the FDIC exercised

authority under Sections 11 and 13 of the Federal Deposit Insurance Act, allegedly

breached the Confidentiality Agreement.  Plaintiffs have thus pleaded their way into

EESA and out of Court because Congress has determined that "in connection with

any transaction in which the [FDIC] exercises its authority under Section 1821," this

Court cannot "impose any liability on [JPMC], as a matter of public policy."  12

U.S.C. § 1823(c)(11); *see also Wachovia Corp.* v. *Citigroup, Inc.*, 634 F. Supp. 2d

445, 457 (S.D.N.Y. 2009) (holding that under EESA the "enforcement of agreements

such as standstill, confidentiality, and exclusivity agreements . . . and the imposition

of liability [including the "imposition of contract damages"] on those parties would

be 'contrary to public policy'").

      **B.**      **Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law.**

      In order to state an unjust enrichment claim under Texas law, Plaintiffs

must prove:  (1) that the plaintiff furnished valuable goods or services; (2) to the

defendant; (3) which were accepted by the defendant; (4) under circumstances that

reasonably notify the defendant that the plaintiff expected to be paid by the defendant.
*Purselley* v. *Lockheed Martin Corp.*, 322 F. App'x 399, 403 (5th Cir. Apr. 22, 2009).
Even construed most liberally, Plaintiffs' allegations of unjust enrichment fail to
satisfy these elements and should be dismissed for three independent reasons:

       *First*, Plaintiffs' allegations of unjust enrichment amount to nothing
more than a claim that the JPMC Defendants did not pay enough *to the FDIC* for
WMB's assets because, as Plaintiffs assert, the JPMC Defendants "obtained the
valuable assets of WMB at a price less than its fair market value."  (Compl. ¶ 101; *see
also id*. ¶¶ 102–03.)  As Texas courts have repeatedly recognized, however, even if
true, securing a favorable bargain—even a windfall—does not amount to unjust
enrichment.  *See Harris* v. *Sentry Title Co.*, 715 F.2d 941, 949 (5th Cir. 1983),
*modified on other grounds*, 727 F.2d 1368 (1984) ("The mere fact that one party has
made a profit . . . is an insufficient ground to order restitution on the theory of unjust
enrichment."); *Heldenfels Bros.* v. *Corpus Christi*, 832 S.W.2d 39, 42 (Tex. 1992)
(noting that unjust enrichment claim is not appropriate "merely because it might
appear expedient or generally fair that some recompense be afforded . . . or because
the benefits to the [defendant] amount to a windfall.") (quotation omitted);
*Casstevens* v. *Smith*, 269 S.W.3d 222, 229–30 (Tex. App. 2008) (rejecting unjust
enrichment claim where defendant purchased property at substantial discount to
market value in foreclosure sale from third party)  Although Plaintiffs allege that the
JPMC Defendants received a too good deal when JPMC purchased substantially all of

WMB's assets and certain liabilities from the FDIC, such assertions do not give rise to a claim for unjust enrichment.

*Second*, Plaintiffs fail to allege that they furnished valuable goods or services to JPMC, which is an essential element under Texas law and without which no unjust enrichment claim can exist.  *See Truly* v. *Austin*, 744 S.W.2d 934, 937 (Tex. 1988) (rejecting unjust enrichment claim because plaintiff "was not rendering services *for* the defendants" but rather the venture itself) (emphasis in original); *see also Economy Forms Corp.* v. *Williams Bros. Constr.*, 754 S.W.2d 451, 458–59 (Tex. App. 1988), *overruled on other grounds by Dealers Elec. Supply Co.* v. *Scroggins Constr. Co.*, 292 S.W.3d 650, 656 (Tex. 2009); *Texas Carpenters Health Benefit Fund* v. *Philip Morris, Inc.*, 21 F. Supp. 2d 664, 678–79 (E.D. Tex. 1998).  Instead, Plaintiffs allege that:  "Defendants unjustly failed to pay the Plaintiffs for the benefits they received, and the Plaintiffs received overwhelmingly less than the value of what Defendants extracted from the Plaintiffs."  (Compl. ¶ 102.)  Importantly, the benefit to which Plaintiffs refer is that "JPMC received a benefit from its transaction *with the FDIC* whereby it obtained the valuable assets *of WMB* at a price less than its fair market value."  (Compl. ¶ 101.)  Nowhere in the Complaint do Plaintiffs identify any goods or services that the ANICO WMI Bondholders, ANICO WMB Bondholders or ANICO WMI Shareholders provided to the JPMC Defendants as part of this (or any other) transaction, and therefore their unjust enrichment claim fails as a matter of law.

*Third*, Plaintiffs fail to allege that the Plaintiffs "reasonably notif[ied] [JPMC] that the plaintiff . . . expected to be paid by [JPMC]," another element of an

unjust enrichment claim and one that makes it clear why Plaintiffs' unjust enrichment claim is nonsensical.  *Purselley*, 322 F. App'x at 403.  Unjust enrichment only arises where the plaintiff provides goods or services to the defendant under circumstances reasonably notifying the defendant that it would be expected to compensate the plaintiff for those goods or services.  *See*, *e.g*., *Heldenfels Bros.*, 802 S.W.2d at 41–42.  Here, Plaintiffs have not alleged, and of course cannot allege, that they notified the JPMC Defendants that the JPMC Defendants would be required to compensate Plaintiffs for Plaintiffs' investment in WMI and WMB.  Nor could they because JPMC's acquisition of WMB's assets from the FDIC did not include the "acqui[sition of] obligations to unsecured debt holders such as the Plaintiffs' . . . , or any litigation liability to WMI or WMB."  (Compl. ¶ 67.)  Put simply, the absence of allegations that the JPMC Defendants acquired any liability owed to Plaintiffs defeats any unjust enrichment theory.

### C.    Plaintiffs' Tortious Interference Claim Fails as a Matter of Law.

Under Texas law, in order to "prevail on their claim of tortious interference with a contract, Plaintiffs must prove (1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) the act was a proximate cause of the plaintiff's damage, and (4) actual damage or loss occurred."  *Lee & Lee Int'l, Inc.* v. *Lee*, 261 F. Supp. 2d 665, 678–79 (N.D. Tex. 2003) (citing *Holloway* v. *Skinner*, 898 S.W.2d 793, 795 (Tex. 1995)).

The tortious interference claim brought by the WMI and WMB Bondholders fails as a matter of law because Plaintiffs have failed to allege any act of

interference by JPMC that could plausibly have been the proximate cause of their alleged injuries.  Texas law applies "the classic proximate cause test with the component elements of cause in fact and foreseeability."  *Hill* v. *Heritage Res., Inc.*, 964 S.W.2d 89, 126 (Tex. App. 1997) (citation omitted).  As the Texas Supreme Court recognized:

> Cause in fact is not shown if the defendant's [conduct] did no more than furnish a condition which made the injury possible.  The [allegations] must go further, and show that such [conduct] was the proximate, and not the remote, cause of resulting injuries . . . [and] justify the conclusion that such injury was the natural and probable result thereof.

*Doe* v. *Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) (internal citations and quotation marks omitted).  *Id*.  And, consistent with *Twombly* and *Iqbal*, the elements of proximate cause "cannot be established by mere conjecture, guess, or speculation."  *Id*.

Although Plaintiffs (falsely) accuse the JPMC Defendants of many misdeeds, they were not plausibly the cause in fact of the failure of Washington Mutual.  Indeed, Plaintiffs' Complaint pleads facts that make clear the "obvious alternative explanation" for their financial misfortune.  *Iqbal*, 129 S. Ct. at 1951–52 (quoting *Twombly*, 550 U.S. at 567).  Although buried among conclusory allegations of corporate espionage and government conspiracies, Plaintiffs reluctantly acknowledge that the collapse of WMB and WMI may have had something to do with the recent global financial crisis, which even Plaintiffs allege affected the entire "banking industry":

- Plaintiffs concede that "beginning in 2006 and continuing through 2008, lending institutions faced a difficult business environment due to

a deteriorating housing market, an increase in mortgage delinquencies and foreclosures, illiquidity and loss of value of asset-backed and mortgage-backed securities, and a general downturn in the global credit markets." (Compl. ¶ 41.)

- Plaintiffs concede the existence of a perceived "liquidity crisis in the banking industry," that "the financial markets [were in] turmoil," and that in the week immediately preceding the seizure of WMB, its "customers withdrew $16.7 billion in deposits . . . ." (Compl. ¶¶ 20, 59–60.)

Rule 8's pleading standards do not require the Court to accept whatever conclusions a claimant invites the Court to reach. To the contrary, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. In particular, courts must acknowledge "more likely explanations" and "obvious alternative[s]" to the characterization of events proposed by plaintiffs. *Id*. at 1951 ("Taken as true, these allegations are consistent with petitioners' [alleged improper purpose]. But given more likely explanations, they do not plausibly establish this purpose."); *Twombly*, 550 U.S. at 567–69 (finding "obvious alternative explanation" to conspiracy theory). Even if Plaintiffs' conclusory allegations about JPMC's conduct were true (and they are not), the collapse of WMB and WMI—which Plaintiffs concede occurred against the backdrop of the current financial crisis during which over 120 depository institutions have been closed (to date) by federal regulators[13]—is clearly "more likely

---

[13]     *See* Federal Deposit Insurance Corporation, Failed Bank List, http://www.fdic.gov/bank/individual/failed/banklist.html (last visited December 7, 2009).

explained by, lawful, unchoreographed free-market behavior." *Iqbal*, 129 S. Ct. at 1950.  Thus, Plaintiffs fail to plausibly establish proximate cause, and their tortious interference claim must be dismissed.

In any event, Plaintiffs' tortious interference claim also fails the proximate causation test because Plaintiffs' theory of harm emanates from the decision of the OTS to seize WMB and place WMB into the FDIC's receivership, as well as the fact that it was the FDIC that subsequently decided to accept JPMC's bid for the WMB assets purchased under the P&A Agreement.  Under basic tort law principles, such actions by these separate independent actors constitute "intervening cause[s]" that supersede any potential tort liability of JPMC based on the seizure and sale of WMB.  *See, e.g.*, *Dew* v. *Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 450 (Tex. 2006) ("A new and independent cause is one that intervenes between the original wrong and the final injury such that the injury is attributed to the new cause rather than the first and more remote cause.  An intervening cause thus supersedes the defendant's negligence by destroying the causal connection between that negligence and the plaintiff's injury thereby relieving that defendant of liability.") (citations omitted); *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc.* v. *Mason*, 143 S.W.3d 794, 799 (Tex. 2004) ("Where [an] initial act of negligence was not the active and efficient cause of plaintiffs' injuries, but merely created the condition by which the second act of negligence could occur, the resulting harm is too attenuated from the defendants' conduct to constitute the cause in fact of plaintiffs' injuries.") (citation omitted).  As a result, even if all of Plaintiffs' allegations were in fact true, the subsequent decisions

by the OTS and FDIC prevent Plaintiffs from establishing that JPMC was the proximate cause for their investment losses.

        Indeed, when faced with nearly identical allegations, the Eleventh Circuit soundly rejected similar claims for lack of proximate cause in affirming the district court's decision to grant a motion to dismiss. *See In re Se. Banking Corp.*, 93 F.3d 750, 752 (11th Cir. 1996). The *Southeast* case involved a failed bank (Southeast Bank), its holding company, and a third-party purchaser (First Union). Prior to Southeast Bank's failure, the Southeast entities and First Union entered into a confidentiality agreement in connection with exploring a possible non-FDIC transaction. Nothing came of the negotiations. Southeast Bank failed and "First Union purchased a majority of Southeast Bank's assets at the F.D.I.C. sponsored auction." *Id.* at 751. "The Holding Company [subsequently] alleged that First Union leaked financial information concerning Southeast Bank to bank regulators resulting in the closure of the bank." *Id.* "[U]nable to sue federal regulators for their discretionary act of closing the bank, the Holding Company instead claims that the closure was precipitated by First Union's disclosures of confidential information to the federal regulators." *Id.* The Eleventh Circuit found that the federal government's decision to close the bank "is not an act for which First Union can be held liable" because it was the federal government's non-actionable *"final decision"* to close the bank that caused the alleged damage, and "no prior act or acts" of First Union "could have so caused the damage . . . ." *Id.* 751–52 (*quoting FDIC* v. *Irwin*, 916 F.2d 1051, 1055 (5th Cir. 1990)). Likewise, here, the ANICO Plaintiffs are "attempting to do

what [they] otherwise could not do," by claiming "that the [WMB] closure [by the OTS] was precipitated by [JPMC's] disclosures of confidential information to the federal regulators. . . . The [OTS's] decision is not an act for which [JPMC] can be held liable." *Id.*

## CONCLUSION

For the foregoing reasons, the JPMC Defendants respectfully request that this Court grant the JPMC Defendants' Motion to Dismiss for lack of standing, for failure to comply with FIRREA's claims process and for failure to state a claim.

Dated:   December 7, 2009
         New York, New York

Respectfully submitted,

/s/ Bruce E. Clark

Bruce W. Hickey (D.C. Bar No. 479036)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 956-7500
Facsimile:  (202) 293-6330

Bruce E. Clark (USDC Bar No. D00144)
Robert A. Sacks (admitted *pro hac vice*)
Stacey R. Friedman (admitted *pro hac vice*)
M. David Possick (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for Defendants JPMorgan Chase & Co.
and JPMorgan Chase Bank, N.A.*