UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN NATIONAL<br>INSURANCE COMPANY, *et. al.*<br><br>Plaintiffs,<br><br>vs.<br><br>JPMORGAN CHASE & CO.<br>and JP MORGAN CHASE BANK,<br>NATIONAL ASSOCIATION,<br><br>Defendants,<br><br>and<br><br>FDIC, AS RECEIVER FOR<br>WASHINGTON MUTUAL BANK,<br>HENDERSON, NEVADA<br><br>Intervenor. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br><br><br><br><br>C.A. No. 1:09-CV-01743-RMC<br><br><br><br><br><u>ORAL ARGUMENT REQUESTED</u> |

<u>PLAINTIFFS' RESPONSE AND OPPOSITION
TO JP MORGAN CHASE & CO. AND
JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii

PRELIMINARY STATEMENT .........................................................................1

PROCEDURAL HISTORY................................................................................4

PLAINTIFFS' MOTION SHOULD BE DETERMINED FIRST.........................5

ASSERTED FACTS v. FICTION: THE WELL PLEADED COMPALINT RULE
PREVENTS JPMC FROM RECASTING PLAINTIFFS' PETITION TO FIT IT'S
OWN THEORIES................................................................................................7

ARGUMENT AND POINTS OF AUTHORITY .................................................9

    A.    LEGAL STANDARDS ................................................................9

    B.    JPMC'S LACK OF STANDING
           ARGUMENTS FAIL................................................................10

           1.    Lack of Standing Requires Remand ...................................12

           2.    Plaintiffs' Petition Adequately Alleges Standing ...............14

           3.    JPMC Concedes Standing for Some Plaintiffs
               and Therefore Cannot Challenge
               Standing of Remaining Plaintiffs.....................................18

    C.    PLAINTIFFS' CLAIMS ARE NOT SUBEJCT TO FIRREA .....................19

    D.    JPMC'S RULE 12(b)(6) ARGUMENTS FAIL ............................................24

           1.    Tortious Interference with Contractual
               Relationship (Count 1).....................................................25

               a.    There May Exist More Than One Proximate Cause.............26
               b.    Causation is a Fact Issue.......................................................31
               c.    JPMC Mischaracterizes the Standard for
                     Examining Causation on a Motion to Dismiss .....................32

           2.    Breach of Contract (Count 2)............................................33

           3.    Unjust Enrichment (Count 3)............................................35

IF PLAINTIFFS' PETITION IS FOUND WANTING,
LEAVE TO AMEND IS APPROPRIATE ........................................................................37

PRAYER           ........................................................................................................38

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Agrocomplect, AD v. Republic of Iraq,* 524 F. Supp. 2d 16 (D.D.C. 2007) .................................5

*Akinseye v. District of Columbia,* 399 F.3d 970 (D.C. Cir. 2003)................................9

*Ambase Corp. v. United States*, 61 Fed. Cl. 794 (2004) ...........................................20

*American First Federal, Inc. v. Lake Forrest Park, Inc.,*
198 F.3d 1259 (1999)............................................................................21, 22

*ASARCO Inc. v. Kadish,* 490 U.S. 605 (1989).........................................................13

*Aquaplex, Inc. v. Rancho La Valencia, Inc.,*
2009 Tex. LEXIS 871 (October 30, 2009) ...............................................29

*Aktieselskabet v. Fame Jeans, Inc.,* 525 F.3d 8 (D.C. Cir. 2009)................................32

*Auction Co. v. FDIC*, 141 F.3d 1198 (D.C. Cir. 1998)........................................19, 20

*Bank One v. Elms,* 764 F.Supp. 85 (N.D. Tex. 1991)................................................21

*Bashara v. Baptist Memorial Hosp. Sys.,* 685 S.W.2d 307 (Tex. 1985) ....................36

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................25, 32

*Bender v. Jordan,* 439 F. Supp. 2d 139 (D.D.C. 2006) ............................................11

*Burlington Northern and Santa Fe Ry. Co. v. Interdom Partners, Ltd.,*
177 Fed Appx. 964 (5th Cir. 2004)..........................................................27

*Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972)............................15

*Chon Tri v. J.T.T.,* 162 S.W.3d 552 (Tex. 2004) ......................................................8

*City of Harper Woods Employees Retirement Sys. v. Oliver,*
577 F. Supp. 2d 124 (D.D.C. 2008) .......................................................9, 10

*City of Port Isabel, Texas v. Pinnell,* 161 F.3d 233
(Tex. App. – Corpus Christi 2005, no pet.) ..............................................13

*Dew v. Crown Derrick Constructors, Inc.,* 208 S.W. 2d 448 (Tex. 2005) ................28

*diSibio v. Mission Nat'l Bank*, 127 F. App'x 950 (9th Cir. Apr. 11, 2005)................21

*diSibio v. Mission Nat'l Bank,* 2005 U.S. App.
LEXIS 19514 (9th Cir. Sept. 7, 2005) ...................................................................21

*Eagle Enterprises, Inc.,* 265 B.R. 671 (E.D. Penn. 2001) ...........................................17

*Educators Group Health Trust,* 25 F.3d 1281 (5th Cir. 1994) ...................................15

*Fay v. Peries,* 484 F. Supp. 2d 6 (D.D.C. 2007)..........................................................5

*First Assembly of God, Inc. v. Texas Utilities Elec. Co.,*
52 S.W.3d 482 (Tex. App. – Dallas 2001 (no writ)..................................................31

*FDIC v. Irwin,* 916 F.2d 1051 (5th Cir. 1990)......................................................29, 30

*FDIC v. McFarland,* 243 F.3d 876 (5th Cir. 2001) ....................................................21

*Freeman v. FDIC,* 56 F.3d 1394 (D.C. Cir. 1995) ...............................................19, 20

*General Bldg. Contractors Ass'n, Inc. v. Pennsylvania,*
458 U.S. 375 (1982).......................................................................................11, 18, 19

*Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91 (1979) ...............................12

*Haase v. Sessions,* 835 F.2d 902 (D.C. Cir. 1987) .......................................................9

*Hall v. Sebelius,* 2009 U.S. Dist. Lexis 89601 (D.D.C. Sept. 29, 2009) ....................10

*Heldenfels Bros., Inc. v. City of Corpus Christi,* 832 S.W.2d 39 (Tex. 1992) .....17, 36

*Henrichs v. Valley View Dev.,* 474 F.3d 609 (9th Cir.),
cert. denied, 552 U.S. 1037 (2007) .........................................................................20

*Herman v. Salomon Smith Barney, Inc.,* 266 F. Supp. 2d 1208 (S.D. Cal. 2003) ......12

*Hickey v. NCNB Texas Nat. Bank,* 763 F. Supp. 896 (N.D. Tex. 1991)....................21

*Hirsch v. Arthur Anderson,* 72 F.3d 1085 (2d Cir. 1995) ...........................................15

*Holloway v. Skinner,* 898 S.W.2d 793 (Tex. 1995) ...............................................17, 25

*Hoxeng v. Topeka Broadcomm,* 911 F. Supp. 1323 (D. Kan. 1996) ...........................21

*Hudson United Bank v. Chase Manhattan*
*Bank of Connecticut, N.A.,* 43 F.3d 843 (3d Cir. 1994)..........................................21

*Int'l Custom Prods. v. United States,* 467 F.3d 1324 (Fed. Cir. 2006); .......................6

*Int'l Primate Protection League v. Adm'rs of the
Tulane Educ. Fund,* 500 U.S. 72 (1991) ..........................................................6, 12, 13

*Kansas v. United States,*
797 F. Supp. 1042 (D.D.C. 1992) ..............................................................................18

*Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375 (1994) .............................9

*Landgraf v. USI Film Products,* 511 U.S. 244 (1994)................................................35

*Lane v. Halliburton Corp.,* 529 F.3d 548 (5th Cir. 2008)....................................26, 28

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ................................................15

*Macharia v. United States,* 334 F.3d 61 (D.C. Cir. 2003) .........................................10

*Massey v. Armco Steel Co.,* 652 S.W.2d 932 (Tex. 1983)..........................................37

*McAffee, Inc. v. Wilmer, Cutler, Pickering, Hale & Dorr, LLP,*
2008 U.S. Dist. Lexis 62287 (E.D. Tex. Aug. 14, 2008)...........................................14

*McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178 (1936) ...........................9

*Me. Ass'n of Interdependent Neighborhoods v. Comm'r, Me. Dep't of
Human Servs.,* 876 F.2d 1051 (1st Cir. 1989) .....................................................12, 14

*National R.R. Passenger Corp. v. Consolidated Rail Corp.,*
698 F. Supp. 951 (D.D.C. 1988) ................................................................................24

*National Wildlife Federation v. United States,* 626 F. 2d 917 (D.C. Cir. 1980) .......12

*National Union Fire Ins. Co. of Pittsburgh v. City Savings,*
28 F.3d 376 (3d Cir. 1994)..........................................................................................20

*Petroleum Corp.,* 417 F.2d 929 (8th Cir. 1969)........................................................15

*Pope v. Garrett,* 211 S.W.2d 559 (Tex. 1948)...........................................................36

*Purselley v. Lockheed Martin Corp.,*
322 F.App'x 399 (5th Cir. Apr. 22, 2009) ..................................................................36

*Rare Coin Galleries of America, Inc.,* 862 F.2d 896 (1st Cir. 1988)........................15

*Rasul v. Bush,* 215 F. Supp. 2d 55 (D.D.C. 2002) .......................................................9

*Restor-A-Dent Dental Laboratories, Inc. v.*
*Certified Alloy Products, Inc.*, 725 F.2d 871 (2d Cir. 1984) .................................................24

*Roark & Hardee LP v. City of Austin*, 522 F.3d 533 (5th Cir. 2008) ..............................18

*Rosa v. RTC*, 938 F.2d 383 (3d Cir. 1991) .......................................................................20

*Roseboro v. Billington*, 606 F. Supp. 2d 104 (D.D.C. 2009) ...........................................31

*Ross v. Marshall*, 426 F.3d 745 (5th Cir. 2005) ...............................................................31

*Salmon Spawning & Recovery Alliance v. U.S. Customs &*
*Border Protection*, 550 F.3d 1121 (Fed. Cir. 2008) ...........................................................6

*\*Seven Seas Petroleum, Inc.*, 522 F.3d 575 (5th Cir. 2008) ....................................15, 16

*Slattery v. United States*, 583 F.3d 800 (Fed. Cir. 2009) .................................................20

*Smith v. Wisc. Dep't of Agric., Trade & Consumer Protection*,
23 F.3d 1134 (7th Cir. 1994) ............................................................................................13

*Southeast Banking Corp.*, 93 F.3d 750 (11th Cir. 1996) .............................................29, 30

*Southern R. Co. v. National R. Passenger Corp.*,
1989 U.S. Dist. LEXIS 8857 (D.D.C., Aug. 17, 1989) .....................................................24

*Southwest Key Program v. Gil-Perez*, 81 S.W.3d 269 (Tex. 2002) ................................27

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ...........................................10

*Stevens v. Iphonic, Inc.*,
2009 U.S. Dist. Lexis 94571 (D.D.C. Oct. 9, 2009) .........................................................32

*Stine v. Stewart*, 80 S.W.3d 586 (Tex. 2002)...................................................................17

*Stone's Pharmacy v. Pharmacy Accounting Mgmt., Inc.*,
875 F.2d 665 (8th Cir. 1989) ............................................................................................18

*Team Bank v. Barfield*, 145 F.R.D. 69 (N.D. Tex. 1992) .................................................21

*Tellabs, Inc v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .................................32

*Texas & Pacific Ry. Co. v. Stewart*, 228 U.S. 357 (1913) ..............................................27

*Texas Ass'n of Business v. Texas Air Control Bd.*,
852 S.W.2d 440 (Tex. 1993) ............................................................................................13

*Thompson v. County of Franklin,* 15 F.3d 245 (2d Cir. 1994) .................................................. 12

*United Food & Commercial Workers Union, Local 919 v.*
*Centermark Props Meriden Square, Inc.,* 30 F.3d 298 (2d Cir. 1994) ......................................... 6

*Village of Oakwood v. State Bank and Trust Co.,*
519 F.Supp.2d 730 (N.D. Ohio 2007) ......................................................................................... 22

*Village of Oakwood v. State Bank & Tr. Co.,* 539 F.3d 373 (6th Cir. 2008) ........................ 21, 22

*Warth v. Seldin,* 422 U.S. 490 (1975) ......................................................................................... 12

*Washington Bancorporation v. FDIC (In re Washington Bancorporation),*
1996 U.S. Dist. Lexis 3876 (D.D.C. Mar. 19, 1996) ................................................................. 24

*Watt v. Energy Action Educational Foundation,*
454 U.S. 151 (1981) .................................................................................................................... 18

*Wis. Dep't of Corrections. v. Schacht,* 524 U.S. 381 (1998) ...................................................... 6

## STATUTES                                                                                      PAGE(S)

11 U.S.C. § 541  (1988) .............................................................................................................. 15

11 U.S.C. § 542  (1988) .............................................................................................................. 15

12 U.S.C. §§1821(d) .............................................................................................................. 19, 20

12 U.S.C. § 1821(d)(6) ................................................................................................................ 19

12 U.S.C. § 1821(d)(13)(D) .................................................................................................... 19-22

28 U.S.C. §§ 1346(b), 2671-2680
    ("Federal Tort Claims Act") ................................................................................................... 30

28 U.S.C. § 1441(a) ...................................................................................................................... 6

28 U.S.C. § 1447(c) ....................................................................................................... 6, 11, 13 14

28 U.S.C. § 2680(a) ..................................................................................................................... 30

128 U.S. 244, 265-69 (1994) ....................................................................................................... 35

Emergency Economic Stabilization Act of 2008 ("EESA").
Pub. L. No. 110-343, 122 Stat. 3765 (2008)..................................................................8, 9, 33-35

Financial Institutions Reform Recovery
and Enforcement Act of 1989
("FIRREA") .......................................................................................................... *in passim*

Private Securities Litigation Reform Act ("PSLRA") ................................................32

## RULES                                                                    PAGE(S)

FED R. CIV. P. 9(b)....................................................................................................32

FED. R. CIV. P. 12(b)(1)..........................................................................................9, 10

FED. R. CIV. P. 12(b)(6)...........................................................3, 9-11, 24, 35-37

FED. R. CIV. P. 15(a)..................................................................................................4

TEX. R. CIV. P. 63 ....................................................................................................37

## SECONDARY SOURCES                                                       PAGE(S)

Restatement (SECOND) TORTS § 449 ........................................................................28

*Texas Pattern Jury Charges (the "PJC"),*
 *General Negligence and Intention Personal Torts, 3.1,*
STATE Bar of Texas (Austin 2008) ........................................................................26

Plaintiffs American National Insurance Company, et. al. ("Plaintiffs") submit this Response and Opposition to Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.'s Motion to Dismiss [Dkt. # 89] ("JPMC's Motion").

## PRELIMINARY STATEMENT

The motion to dismiss of the Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A., (collectively "JPMC") offers three theories: (1) a purported lack of standing, (2) application of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") to this lawsuit, and (3) a purported failure to state a claim upon which relief may be granted.   None of the theories or the scattershot arguments made to buttress them has merit.

Plaintiffs note as a preliminary matter that Plaintiffs' Motion to Dismiss FDIC as a Party and for Remand or, in the Alternative, Dismissal Without Prejudice for Lack of Subject Matter Jurisdiction [Dkt. # 88] ("Plaintiffs' Motion"), filed pursuant to the Court's briefing schedule, addresses matters of the Court's subject matter jurisdiction, and should be decided before any of the offensive motions filed by JPMC or the FDIC. In addition, Plaintiffs respond to JPMC's continued effort to misconstrue their Petition in violation of the well-pleaded complaint rule.   Contrary to JPMC's misstatements, the Plaintiffs' do not allege a JPMC-FDIC conspiracy, nor do Plaintiffs seek any recovery from the FDIC-receivership or WMB assets. The remaining issues—standing, FIRREA, and sufficiency of the claims made in the Petition—are addressed in the same order as JPMC's Motion.

JPMC's lack-of-standing arguments all suffer a common defect:   remand, not dismissal, would be the proper remedy even if JPMC's substantive arguments arguably

had merit. Remand is the proper remedy in the absence of standing in federal court where the plaintiffs brought their action in state court and asserted only state law claims. On remand, a Texas court can determine whether the claims are sufficient under Texas' standing requirements, in accordance with Texas' choice of law rules.

At the pleading stage, generalized allegations of standing are sufficient. JPMC argues that the Plaintiffs do not "own" the claims asserted in the Petition—claims of tortious interference with contract, breach of contract and unjust enrichment. JPMC suggests that Washington Mutual, Inc. ("WMI"), not the Plaintiffs, was injured by JPMC's alleged misconduct and that only WMI may seek a remedy for its harm.

However, JPMC misunderstands the injuries suffered by the Plaintiffs. Plaintiffs suffered injury through the extinguishment of their rights to cash flows guaranteed in their bond contracts and incident to stock ownership. No other party can claim the unique injury suffered by the destruction of each of the Plaintiffs' particular bond contracts and/or stock property rights. In addition, JPMC's executed its illegal plan with the goal of "stripping away" the Plaintiffs' rights under such bond contracts and incidents of stock ownership. The injury of each Plaintiff is direct. Moreover, because Plaintiffs are insurance companies, their investments are regulated under state law; their injury is thus different from other types of potential claimants.

JPMC chooses to ignore the basic bankruptcy tenet that a bankruptcy trustee has no right to sue third parties on behalf of an estate's creditors. WMI cannot bring claims based on the purposeful destruction of bond contract rights or incidents of stock ownership. In many ways, the Plaintiffs' loss was WMI's gain. Only each Plaintiff owns

2

each of the claims asserted; each of the Plaintiffs therefore has standing to assert such claims.

In any event, JPMC has conceded that some of the Plaintiffs have standing to assert their claims. The presence of one plaintiff with standing is sufficient to satisfy the standing requirement for all plaintiffs who present the same issues in the lawsuit. Therefore, JPMC's standing arguments are meritless.

Regarding the application of FIRREA to Plaintiffs' claims, JPMC presents essentially the same argument central to the FDIC's Motion – that Plaintiffs claims are barred pursuant to FIRREA. *Compare JPMC's Motion* at 16-23 *with FDIC's Motion* at 7-13. The argument implicates both standing and pre-emption. The FIRREA jurisdictional bar issue is comprehensively addressed in Plaintiff's Response to the FDIC, which is incorporated by reference.

In addition to arguments similar to those proposed by the FDIC, JPMC provides a novel FIRREA theory in an effort to make the FDIC a proper party. This theory depends upon the Petition alleging the existence of a conspiracy between JPMC and the FDIC. A review of the Petition establishes that Plaintiffs do not assert a conspiracy claim, and do not allege facts that would be sufficient to raise a conspiracy claim even if they had. JPMC's gambit – asking the Court to ignore Plaintiffs' actual allegations and pretend Plaintiffs have alleged a conspiracy – should be rejected.

JPMC's request for dismissal under Federal Rule of Civil Procedure 12(b)(6), is to some extent a re-hash of the indirect harm and FIRREA arguments, and fails for several reasons. First, the Rule 12(b)(6) issues would never be reached because JPMC's standing argument requires remand. Second, the dismissal request relies on a

mischaracterization of Plaintiffs' Petition.  Third, JPMC's arguments do not, as a matter

of law, demonstrate entitlement to dismissal of Plaintiffs' claims.  Finally, even if

JPMC's Motion points out defects in the pleading of one or more claims, amendment

should be allowed because the Petition was crafted to meet Texas pleading standards and

to be subjected to Texas procedural rules.

## PROCEDURAL HISTORY

This action's procedural history is detailed in the various pending motions.  In

short:  Plaintiffs filed a Petition in Texas state court (the "Petition") [Dkt. #1, Ex. A]

against JPMC alleging solely Texas state law claims.  The FDIC intervened pursuant to

Texas' unrestrictive procedural rules and immediately removed the matter to federal

court in the Southern District of Texas before the state court could determine whether the

intervention had merit.  After denying Plaintiffs' remand motion, the Texas federal court

transferred the case to the U.S. District Court for the District of Columbia.  This Court

held a status conference and granted all parties leave to file motions, setting a briefing

schedule for the motions, responses and replies.[1]

Presently before the Court are Plaintiffs' motion to dismiss the FDIC and for

remand or, in the alternative after dismissing the FDIC, to dismiss Plaintiffs' lawsuit

against JPMC without prejudice ("Plaintiffs' Motion") [Dkt. # 88] and motions by the

FDIC (the "FDIC's Motion") [Dkt. # 87] and JPMC ("JPMC's Motion") [Dkt. # 89]

---

[1] To avoid disruption of the briefing schedule, Plaintiffs will not file an amended pleading, as of right within 21 days of JPMC's Motion to Dismiss, as allowed under Federal Rule of Civil Procedure 15(a)(1)(B).  Instead, Plaintiffs will seek leave of court to amend their pleading as appropriate.  *See* FED. R. CIV. P. 15(a)(2).

seeking dismissal.[2]  Plaintiffs herein respond only to JPMC's Motion; response to the FDIC's motion is made by separate submission ("Plaintiffs' Response to the FDIC").[3]

Because a favorable decision on Plaintiffs' Motion results in remand of this action, Plaintiffs' Motion is appropriately considered prior to consideration of the FDIC and JPMC Motions.  An order of remand would render JPMC's Motion moot, but allow JPMC to challenge Plaintiffs' pleading in state court.  In any event, JPMC's Motion should be denied because JPMC fails to provide the Court with any legitimate basis for dismissing Plaintiffs' Petition.

## PLAINTIFFS' MOTION SHOULD BE DETERMINED FIRST

Federal jurisdiction was invoked in this matter as a result of the FDIC's intervention.  Plaintiffs submit that this Court must first consider Plaintiffs' Motion, which challenges the FDIC's intervention and federal subject matter jurisdiction in particular, prior to considering any non-jurisdictional arguments in the FDIC and JPMC Motions.  Subject matter jurisdiction is a threshold issue appropriately determined before other matters are considered.  *See Agrocomplect, AD v. Republic of Iraq,* 524 F. Supp. 2d 16, 21 (D.D.C. 2007) (subject matter jurisdiction is a "threshold" issue); *Fay v. Peries,* 484 F. Supp. 2d 6, 9 (D.D.C. 2007) ("...federal courts have a special obligation to determine whether they have subject matter jurisdiction, even when the parties have not raised any jurisdictional questions themselves."); *see also Plaintiffs' Motion* at 3-5 (discussing the FDIC's attempt to manipulate jurisdiction).

---

[2] Page citations to a Motion refer to the pagination in the memorandum in support of that Motion.

[3] Where JPMC advances theories for dismissal identical to those proposed by the FDIC, Plaintiffs avoid repetition by referring to, and citing, Plaintiffs' Response to the FDIC.  Many of these issues are also part-and-parcel of Plaintiffs' Motion.  Plaintiffs accordingly incorporate by reference Plaintiffs' Motion and Plaintiffs' Response to the FDIC's Motion.

Although the Federal Rules of Civil Procedure contain no mandated order for consideration of motions, appeals courts have remanded cases, with instructions to examine subject matter jurisdiction, where the district court made a decision on other grounds without first considering subject matter jurisdiction. *See Salmon Spawning & Recovery Alliance v. U.S. Customs & Border Protection,* 550 F.3d 1121, 1134 (Fed. Cir. 2008) ("While an appellate court has 'inherent jurisdiction to determine whether a lower tribunal had jurisdiction,' it also has discretion to remand issues, even jurisdictional ones, to the trial court when that court has not had the opportunity to consider the issue in the first instance.") (citing *Int'l Custom Prods. v. United States,* 467 F.3d 1324, 1326 (Fed. Cir. 2006); *United Food & Commercial Workers Union, Local 919 v. Centermark Props Meriden Square, Inc.,* 30 F.3d 298, 307 (2d Cir. 1994).

A finding by the Court that the FDIC's intervention cannot be sustained requires remand. Title 28 U.S.C. § 1441(a) allows a defendant to remove a civil action from a state court to federal court, if the district court would have had original jurisdiction over the civil action. However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." 28 U.S.C. § 1447(c) (emphasis added). When a removal is defective for lack of subject matter jurisdiction, the district court must remand the action regardless of whether the parties have moved the court to do so. *Wis. Dep't of Corrections. v. Schacht,* 524 U.S. 381, 392 (1998). The literal words of 28 U.S.C. § 1447(c) do not provide courts with discretion to dismiss, rather than remand, upon finding a lack of subject matter jurisdiction. *Int'l Primate Protection League v. Adm'rs of the Tulane Educ. Fund,* 500 U.S. 72, 89 (1991). The fact that the Petition was filed in another state is of no moment; this Court has

authority to remand Plaintiffs' lawsuit to state court in Galveston County, Texas. *See Plaintiffs' Motion* at 5 (citations referenced therein).

## ASSERTED FACTS v. FICTION: THE WELL-PLEADED COMPLAINT RULE PREVENTS JPMC FROM RECASTING PLAINTIFFS' PETITION TO FIT ITS OWN THEORIES

A core issue in all three pending Motions is application of the well-pleaded complaint rule. Plaintiffs allege only Texas state law claims, explain that a Texas forum is proper pursuant to the well-pleaded complaint rule, and cite authority in support.[4] JPMC (and the FDIC) wholly ignore the well-pleaded complaint rule in arguing that federal law applies.

The Petition relates how JPMC infiltrated the highest ranks of Washington Mutual Bank ("WMB") as part of an implement-at-any-cost effort to acquire a substantial presence on the west coast of the United States. *See Petition* at 35-36. Plaintiffs describe JPMC's wrongful conduct in pursuit of its plan. *See id.* at ¶¶ 31-63. Seeking relief only from JPMC based solely on JPMC's wrongful conduct, Plaintiffs bring claims against JPMC for tortious interference of contract, breach of contract and unjust enrichment. *Id.* at ¶¶ 88-103.

JPMC attempts to misdirect the Court's attention by mischaracterizing facts alleged in Plaintiffs' Petition; further, JPMC asserts facts not found in Plaintiffs' Petition or the record. For example, to bolster its argument that the FDIC is a proper party, JPMC contends Plaintiffs' allegations in the Petition demonstrate a conspiracy between the FDIC and JPMC. *See JPMC Motion* at 1 (conspiracy), 2 (collusion), 7-8 (discussing "Plaintiffs' conspiracy theory"), 18 ("scheme"). Plaintiffs, however, neither allege facts

---

[4] *See Plaintiffs' Motion* at 5-8 (providing a synopsis of Plaintiffs' allegations and citing authority concerning the well-pleaded complaint rule) .

sufficient to support a conspiracy claim nor allege such a cause of action for conspiracy to defraud. Among the elements of a conspiracy to defraud claim under Texas law are "a meeting of the minds on the subject or course of action" and the commission of "unlawful act(s)." *See Chon Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2004). Plaintiffs do not allege any facts concerning a meeting of the minds or an agreement on a common goal between JPMC and the FDIC to do an illegal act, and JPMC points to no allegation in the Petition purportedly alleging this element. JPMC also does not, and cannot, point to any allegation in the Petition that specifies any illegal act in furtherance of a purported FDIC-JPMC conspiracy. In short, JPMC has no basis for the multiple references to a "conspiracy" in its Motion – other than, perhaps, the hope that repetition of the conspiracy theory often enough will convince the Court that Plaintiffs actually allege a conspiracy to defraud claim in the Petition.

JPMC's Motion also contains another, oft-repeated JPMC theme: that the "financial crisis" was the cause of Plaintiffs' loses, with suggestions that JPMC's wrongful conduct is somehow excused because of the banking turmoil in late 2008. JPMC condemns Plaintiffs for making claims "only by ignoring the effect of the most significant financial crisis since the Great Depression."[5]

JPMC fails to cite any fallout from the financial crisis that is relevant to Plaintiffs' action, save for references to the Emergency Economic Stabilization Act of 2008 ("EESA"). Pub. L. No. 110-343, 122 Stat. 3765 (2008). Notwithstanding JPMC's characterizations, the EESA – passed and effective after the conduct complained-of by Plaintiffs – does not shield JPMC for any and all wrongful acts committed, either prior to

---

[5] JPMC Motion at 2. JPMC apparently wants to portray itself as a hero and savior during the financial crisis. JPMC does not mention that the financial crisis was caused in large part by JPMC and other Wall Street investment banks – the creators of toxic mortgage-backed securities.

or after the date that the act became effective. The purported application of the EESA concerns, at most, JPMC's Rule 12(b)(6) argument on a single cause of action – breach of contract. Even this represents an attempt to improperly apply the EESA *ex post facto* to excuse JPMC's wrongful conduct, in a manner that would deprive Plaintiffs of vested rights. JPMC's statement that there was a "financial crisis" is thus irrelevant to application of the law to Plaintiffs' claims.

## ARGUMENT AND POINTS OF AUTHORITY

### A. LEGAL STANDARDS

"[A] motion to dismiss for lack of standing is treated as a challenge to the subject matter jurisdiction of the court, and is properly analyzed under Rule 12(b)(1)." *City of Harper Woods Employees Retirement Sys. v. Oliver,* 577 F. Supp. 2d 124, 128 (D.D.C. 2008) (citing *Haase v. Sessions,* 835 F.2d 902, 906 (D.C. Cir. 1987)). Federal courts are of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Id.* (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)). Because subject matter jurisdiction is an Article III as well as statutory requirement, "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Id.* (quoting *Akinseye v. District of Columbia,* 399 F.3d 970, 971 (D.C. Cir. 2003)). The party asserting federal subject matter jurisdiction has the burden of establishing that the court has subject matter jurisdiction. *See id.; Rasul v. Bush,* 215 F. Supp. 2d 55, 61 (D.D.C. 2002) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 182-83 (1936)).[6]

---

[6] JPMC approaches the standing issue as if Plaintiffs were seeking to invoke the subject matter jurisdiction; Plaintiffs, however, seek standing in a Texas state court. JPMC also cites the prescribed Rule 12(b)(6) standard. *JPMCs' Motion* at 24-25. Then JPMC improperly attempts to stretch this standard in a manner that increase Plaintiffs burden. *See id.* at 35. *See* Plaintiffs' Response to the FDIC, at note 9.

To resolve a Rule 12(b)(6) motion to dismiss, the court must determine from the face of the complaint whether the plaintiff has properly stated a claim. *See Hall v. Sebelius,* 2009 U.S. Dist. Lexis 89601 at *6 (D.D.C. Sept. 29, 2009). The facts alleged by the plaintiff must be enough to raise a right to relief above the speculation level. *Id.* (citations omitted). For both Rule 12(b)(1) and Rule 12(b)(6) motions, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true. *Id.* (citing *Macharia v. United States,* 334 F.3d 61, 64 (D.C. Cir. 2003)). All reasonable inferences are drawn in the plaintiff's favor. *Id.* (citing *Macharia v. United States,* 334 F.3d at 64).

## B. JPMC's LACK OF STANDING ARGUMENTS FAIL

JPMC's entire standing argument is premised on the incorrect assumption that the Plaintiffs seek federal court standing. To the contrary, the Plaintiffs seek state court standing. It is JPMC that seeks federal court jurisdiction in order to assert various (meritless) defenses. JPMC bears the initial burden of proving federal court standing, since it is the party that seeks to use federal court power. "[I]t is well understood that 'the party invoking federal jurisdiction bears the burden of establishing' its standing." *City of Harper Woods Emples. Ret. Sys. v. Olver,* 2009 U.S. App. LEXIS 28487, *12 (D.C. Cir. Dec. 29, 2009) (quoting *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 104 (1998)). The FDIC's (and therefore JPMC's) federal court standing is put at issue in Plaintiffs' Motion, which challenges the FDIC's standing in this case and the Court's subject matter jurisdiction. JPMC cannot shift this burden to the Plaintiffs by attacking Plaintiffs' federal court standing, when the Plaintiffs do not seek federal court jurisdiction.

If the Court reaches the standing issue, standing is jurisdictional and is thus a "preliminary matter" that is to be determined prior to consideration of dismissal under Rule 12(b)(6). *See Bender v. Jordan,* 439 F. Supp. 2d 139, 159 (D.D.C. 2006). In its Motion, JPMC fails to even consider, must less acknowledge, that the controlling statute specifies remand, rather than dismissal, if Plaintiffs lack standing in federal court. 28 U.S.C. § 1447(c). A Texas court is capable of determining standing under Texas law and determining whether Plaintiffs raise cognizable claims. As such, the result of JPMC's standing argument is remand, not dismissal.

Even if not remanded, for the purposes of this motion, Plaintiffs' Petition adequately pleads standing. JPMC, moreover, fails to demonstrate that dismissal based upon lack of standing is appropriate.

Moreover, JPMC concedes standing for some of the Plaintiffs who, according to JPMC's categorization of Plaintiffs, would be described as "ANICO WMB Bondholders" (which include American National Insurance Company, American National Property and Casualty Company, Farm Family Life Insurance Company, Farm Family Casualty Insurance Company, and National Western Life Insurance Company).[7] Although the Plaintiffs contend that this Court lacks subject matter jurisdiction to adjudicate their state law claims, even if the Court did have such jurisdiction, the fact that JPMC admits that some Plaintiffs have standing renders JPMC's challenge to the standing of the remaining plaintiffs moot.[8] *See, e.g., General Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 402 n.22 (1982) ("Petitioners have not challenged the standing of the other

---

[7] See JPMC's Motion, pp. 9-16; Petition, ¶¶80-87.

[8] Discussed more fully below.

plaintiffs and, therefore, even if Pennsylvania lacks standing, the District Court possessed

Art. III jurisdiction to entertain those common issues presented by all plaintiffs").

### 1. <u>Lack of Standing Requires Remand</u>

The Supreme Court has explained that the standing "inquiry involves both

constitutional limitations on federal-court jurisdiction and prudential limitations on its

exercise." *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 (1979) (quoting

*Warth v. Seldin*, 422 U.S. 490, 498 (1975). Thus, the "concept of standing – even its

prudential dimension – is a limitation on federal court jurisdiction." *Thompson v. County*

*of Franklin,* 15 F.3d 245, 248 (2d Cir. 1994) (citations omitted); *see also Gladstone,*

*Realtors, v. City of Bellwood,* 441 U.S. 91, 99 (1979); *Warth v. Seldin*, 422 U.S. 490, 498

(1975); *National Wildlife Federation v. United States,* 626 F. 2d 917, 924 n. 13 (D.C. Cir.

1980).

Although some courts will dismiss a removed action if remand would be futile,

federal courts should not deem a remand futile if doing so would require the federal court

to speculate on an issue of state law. *See e.g. Int'l Primate Protection League,* 500 U.S.

at 89 (remanding, rather than dismissing, because the court refused to speculate as to

whether a party would be indispensable in state courts); *Me. Ass'n of Interdependent*

*Neighborhoods v. Comm'r, Me. Dep't of Human Servs.,* 876 F.2d 1051, 1055 (1st Cir.

1989) (remanding, rather than dismissing, because the "fact that we believe a certain

legal result *unlikely,* as a matter of state law, is not sufficient grounds for reading an

exception into the absolute statutory words 'shall be remanded'") (emphasis in original)

*Cf. Herman v. Salomon Smith Barney, Inc.,* 266 F. Supp. 2d 1208, 1213 (S.D. Cal. 2003)

(noting that dismissal is the proper remedy where federal courts have exclusive

jurisdiction over the subject matter).  Here, JPMC asks this Court to speculate on Texas

choice of law jurisprudence, standing requirements under Texas law and Texas

substantive law.[9]

Article III justiciability doctrines are distinctly federal in nature and have no

bearing on state court justiciability doctrines.  *See ASARCO Inc. v. Kadish,* 490 U.S. 605,

617 (1989).  As the Supreme Court explained in *ASARCO*:  "[T]he constraints of Article

III do not apply to state courts, and accordingly the state courts are not bound by the

limitations of a case or controversy or other federal rules of justiciability."  *Id.*  When a

district court lacks jurisdiction over a removed case, "the case must be remanded to state

court, where the requirements of Article III plainly will not apply."  *Int'l Primate

Protection League,* 500 U.S. at 78 n.4.  The Seventh Circuit explained:

> While some consider it odd that a state court might have the authority to
> hear a federal constitutional claim in a setting where a federal court would
> not, it is clear that Article III's "case or controversy" limitations apply
> only to the federal courts.  Perhaps, were the claim remanded to Wisconsin
> state court, it would there be dismissed on state ripeness or standing
> grounds.  But again, § 1447(c) says that a case removed to federal court
> "shall be remanded" to the state court if it is discovered that the federal
> court lacks subject matter jurisdiction.  Wisconsin's doctrines of standing
> and ripeness are the business of the Wisconsin courts, and it is not for us
> to venture how the case would there be resolved.

*Smith v. Wisc. Dep't of Agric., Trade & Consumer Protection,* 23 F.3d 1134, 1142 (7th

Cir. 1994) (citations omitted) (reversing the district court's decision to dismiss a removed

case, instead of remanding the case, after the court determined it lacked jurisdiction);

---

[9] Under Texas law, standing is also a component of subject matter jurisdiction.  *City of Port Isabel, Texas v. Pinnell,* 161 F.3d 233, 238 (Tex. App. – Corpus Christi 2005, no pet.).  The formulation of the Texas standing test, however, differs from federal standing jurisprudence.  "The general test for standing in Texas requires that there (a) shall be a real controversy between the parties which (b) will be actually determined by the judicial declaration sought."  *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993) (citation omitted).  Additionally, a review of only the pleadings to determine subject matter jurisdiction is sufficient in the trial court because a litigant has a right to amend to attempt to cure pleading defects if jurisdictional facts are not alleged.  *Id.*

*accord Me. Ass'n of Interdependent Neighborhoods*, 876 F.2d at 1055-1056 (holding that the district court had no discretion to dismiss, rather than remand, when the plaintiff lacked Article III standing). Similarly, Texas' doctrines of standing and ripeness are the business of Texas courts, and it is not for this Court to venture how the case would there be resolved.

If, as JPMC asserts, the Plaintiffs lack standing, then this Court lacks subject matter jurisdiction. The "weight of authority clearly establishes that § 1447(c) operates mechanically, and a removed case 'shall be remanded' if the Court determines it lacks subject matter jurisdiction." *McAffee, Inc. v. Wilmer, Cutler, Pickering, Hale & Dorr, LLP*, 2008 U.S. Dist. Lexis 62287 at **13-14 (E.D. Tex. Aug. 14, 2008) (after comprehensive review of authority, the court held: "Despite the Court's reservations about the merits of McAfee's claims, the Court cannot dismiss rather than remand the case."). Here, if the Court finds that the Plaintiffs lack standing, then the Court should likewise remand Plaintiffs' lawsuit.

## 2. **Plaintiffs' Petition Adequately Alleges Standing**

In the event this action is not remanded, Plaintiffs' Petition is adequate to survive JPMC's challenge to standing for all Plaintiffs. The Supreme Court explained the burden for showing standing at various stages of the proceeding:

> At the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice, for on a motion to dismiss we presume the general allegations embrace those specific facts that are necessary to support the claim. In a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken as true. And at the final stage, those facts (if uncontroverted) must be supported adequately by evidence adduced at trial.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) (internal citations omitted).

JPMC fails to acknowledge that under the Bankruptcy Code, a trustee stands in the shoes of the bankrupt corporation and may only assert claims held by the bankrupt corporation itself. See 11 U.S.C. §§ 541, 542 (1988). It is well established that a trustee has no standing to bring tort claims that belong exclusively to creditors of the bankruptcy estate. *See Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 433-34 (1972) (holding that a trustee lacked standing to sue a third party for damages incurred by debenture holders of the corporate debtor); *In re Seven Seas Petroleum, Inc.,* 522 F.3d 575, 584 (5th Cir. 2008) (citing *Caplin* for the proposition that "the trustee has no right to bring claims that belong solely to the estate's creditors"); *In re Educators Group Health Trust,* 25 F.3d 1281, 1284 (5th Cir. 1994) ("If . . . a cause of action belongs solely to the estate's creditors, then the trustee has no standing to bring the cause of action."); *In re Petroleum Corp.,* 417 F.2d 929, 934 (8th Cir. 1969) ("Generally, the trustee of a bankrupt has no power to press the general claims of the bankrupt's creditors against third parties."); *In re Rare Coin Galleries of America, Inc.,* 862 F.2d 896, 900 (1st Cir. 1988) ("The trustee . . . has no power to assert any claim on behalf of the creditors when the cause of action belongs solely to them."). Whether a particular state cause of action belongs to the estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case. *Hirsch v. Arthur Anderson,* 72 F.3d 1085, 1093 (2d Cir. 1995) ("whether the rights belong to the debtor or the individual creditors is a question of state law").

For example, in *In re Seven Seas,* unsecured bondholders of a debtor sued a secured creditor of the debtor, asserting claims for conspiracy to defraud and aiding and

abetting fraud. The trustee had also brought tort claims against the secured creditor, alleging that the creditor "had breached duties that it owed to [the debtor] and interfered with management's fiduciary duties." *Id.* 522 F.3d at 579. The court noted that "the existence of common parties and shared facts between the bankruptcy and bondholders' suit does not necessarily mean that the claims asserted by the bondholders are property of the estate." *Id.* at 585. In addition, "it is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct." *Id.* The court explained further:

> [T]he bondholders' claims and the estate's claims are not mutually exclusive: there is nothing illogical or contradictory about saying that [the secured creditor] might have inflicted direct injuries on both the bondholders and [the debtor] during the course of dealings that form the backdrop of both sets of claims.

*Id.* at 587. The court found that the secured creditors' alleged misconduct was done with knowledge of harm that would be caused to the plaintiffs, and with the intention to cause that harm, and, therefore, "there was a direct injury to the bondholders that was independent of any injury to [the debtor]." *Id.* at 586. The fact that the bondholders' claims "could be brought by a number of creditors" did not mean that the "claim belongs to the estate or is otherwise only assertable by the trustee[.]" *Id.* at 588. The court therefore held that the claims asserted by the bondholders were not the property of the bankruptcy estate, and ordered that the bondholders' claims be remanded to state court.

In the instant case, the Plaintiffs allege JPMC's purposeful misconduct that was directed towards and intended to harm the Plaintiffs. The Petition details the years-long plan devised by JPMC, a plan specifically designed to tortiously interfere and strip away the Plaintiffs' rights. Texas law creates the Plaintiffs' causes of actions. *See e.g.*

16

*Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995) (discussing the distinct nature of claimant's interest in a claim of tortious interference with contract as compared with contract obligor and interfering party); *Stine v. Stewart*, 80 S.W.3d 586 (Tex. 2002) (intended third party creditor beneficiary has standing to enforce contract); *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (fraud, duress, or the taking of an undue advantage as predicate for unjust enrichment claim).

The injury caused to the Plaintiffs—stripping away of their contract and property rights—is direct and not shared by WMI. Although WMI may have been harmed by JPMC's actions, WMI could not claim the same injury as the Plaintiffs. With regard to Plaintiffs' tortious interference with contract claim, the claim involves interference with a bond contract specific to each Plaintiff; no other creditor is a party to the bond contract. The other claims similarly allege purposeful conduct directed at harming the Plaintiffs and thus giving rise to the Plaintiffs' particular causes of action. No other party, including WMI, has standing to assert the claim asserted by each Plaintiff. *See In re Eagle Enterprises, Inc.*, 265 B.R. 671, 680 (E.D. Penn. 2001) (a creditor's tortious interference claim is not property of bankruptcy debtor even though the claim was based on "alleged acts of corporate domination and abuse" that formed the basis of a debtor's action against same wrongdoer). In fact, in many ways, WMI benefited from the stripping away of the rights of the Plaintiffs; now WMI is relieved of obligations towards the Plaintiffs.

In addition, Plaintiffs allege that JPMC purposefully directed its actions towards them, in order to strip them of their rights, and this purpose and intention forms an integral part of every one of Plaintiffs' causes of action against JPMC, as well as their

17

claims for punitive damages. *See Stone's Pharmacy v. Pharmacy Accounting Mgmt., Inc.*, 875 F.2d 665, 668 (8th Cir. 1989) (automatic stay did not apply to a creditor's tortious interference claim against a third party who purchased most of a bankruptcy debtor's assets and then allegedly caused the debtor to breach its contract with the creditor).  The Plaintiffs therefore own the claims asserted in the instant lawsuit and have standing.

### 3. <u>JPMC Concedes Standing for Some Plaintiffs and Therefore Cannot Challenge the Standing of the Remaining Plaintiffs</u>

Because JPMC fails to challenge the standing of some of the Plaintiffs ("ANICO WMB Bondholders"), JPMC may not challenge the standing of the remaining three plaintiffs.[10]   The presence of one plaintiff with standing is sufficient to satisfy the standing requirement for all plaintiffs who present the same issues in the lawsuit. *See General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. at 402 n.22 (noting that even if one plaintiff lacks standing, the court has jurisdiction to entertain the common issues presented by all plaintiffs); *Watt v. Energy Action Educational Foundation*, 454 U.S. 151, 160 (1981) (holding that because one plaintiff has standing, the court would not consider any issues about the standing of the other plaintiffs);  *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 n.11 (5th Cir. 2008) (noting that because one plaintiff had standing, "the question whether the other Plaintiffs have standing is . . . of no consequence"); *Kansas v. United States*, 797 F. Supp. 1042, 1046 (D.D.C. 1992) ("If either of these plaintiffs has standing to bring this case, even if all ten of the other plaintiffs lack standing, this Court still has jurisdiction to 'entertain those common issues

---

[10] American National General Insurance Company, Pacific Property and Casualty Company, and American National Lloyds Insurance Company.

presented by all plaintiffs.'") (quoting *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. at 402 n.22).

Here, all of the Plaintiffs assert the same legal claims and factual predicates. JPMC's concession to the standing of some of the Plaintiffs eliminates any objection to the standing of the remaining Plaintiffs. JPMC standing argument therefore fails.

## C. PLAINTIFFS' CLAIMS ARE NOT SUBJECT TO FIRREA

The FIRREA issue is a central topic in Plaintiffs' Motion, the FDIC's Motion[11] and Plaintiffs' Response to the FDIC's Motion. The bulk of JPMC's argument concerning FIRREA is the same as FDIC's Motion.[12] In responding to the FDIC, Plaintiffs have explained the limitations of the FIRREA claims administration process and the jurisdictional bar, and why FIRREA does not apply to Plaintiffs' claims.[13]

In sum, FIRREA applies to "claims and actions against, and actions seeking a determination of rights with respect to, the assets of failed financial institutions for which the FDIC serves as receiver[.]" *Freeman v. FDIC*, 56 F.3d 1394, 1399-1400 (D.C. Cir. 1995). The FIRREA jurisdictional bar, 12 U.S.C. § 1821(d)(13)(D), is no broader than the claims administration process created by § 1821(d)(3)-(6). *See id.*, 56 F.3d 1399-1402; *Auction Co. v. FDIC*, 141 F.3d 1198, 1200 (D.C. Cir. 1998) (12 U.S.C. § 1821(d)(6)(A) and (d)(13)(D) apply to the same "claims"). In addition, the jurisdictional bar is limited in scope by the Due Process Clause. *See id.*, 56 F.3d at 1403 ("in some circumstances, the jurisdictional bar of § 1821(d) might also implicate due process

---

[11] *FDIC's Motion* at 7-15.

[12] *Compare JPMC's Motion* at 16-24 and *FDIC's Motion* at 7-15.

[13] To avoid unduly duplicative submissions, Plaintiffs incorporate by reference Plaintiffs' Response to the FDIC's Motion which is filed contemporaneously with this response to JPMC's Motion to Dismiss.

concerns by denying an aggrieved party *any* avenue of relief, administrative or judicial.") (emphasis in original); *Auction Co.*, 141 F.3d at 1201 (constitutional problem exists if jurisdictional bar is interpreted to be broader than claims process); *National Union Fire Ins. Co. of Pittsburgh v. City Savings*, 28 F.3d 376, 390 (3d Cir. 1994) (when a party seeks damages, "a complete bar of jurisdiction [imposed by 12 U.S.C. § 1821(d)(13)(D)], in both administrative proceedings and courts of law, would as applied to that party constitute a deprivation of property without due process of law").

   *Freeman* and *Auction Co.* make clear that FIRREA does not provide the FDIC jurisdiction over all claims "related to" the acts of the a failed bank or the FDIC as receiver for such bank.[14] The statute's "related to" language is a term of art, and must be read in context, as the D.C. Circuit has clarified. This proposition is also well established in other circuits. *See Slattery v. United States,* 583 F.3d 800, 828-29 (Fed. Cir. 2009) (challenge to FDIC's retention of proceeds of liquidation not within the scope of § 1821(d)(13)(D); *Ambase Corp. v. United States*, 61 Fed. Cl. 794, (2004) (shareholder derivative suit against the FDIC based on the FDIC's mismanagement of receivership assets was not subject to FIRREA).

   Claims against third parties based on their own misconduct are not subject to FIRREA. *See Henrichs v. Valley View Dev.*, 474 F.3d 609, 614 (9th Cir.), *cert. denied*, 552 U.S. 1037 (2007) (FIRREA's "requirement to exhaust administrative remedies applies only in an action against the FDIC as receiver . . . the statute does not reach assignees of assets once owned by the FDIC."); *Rosa v. RTC*, 938 F.2d 383, 394 (3d Cir.

---

[14] Compare the erroneous description of FIRREA asserted by JPMC in JPMC's Motion at p. 16 ("In accordance with FIRREA's claims process, all claims concerning the WMB receivership *or relating to the acts or omissions of the FDIC* as receiver of WMB must first be filed with the FDIC, which could allow or disallow the claims. See 12 U.S.C. §§1821(d)(3)-(11).") (emphasis added).

1991) (lawsuit against purchaser of assets from FDIC-receiver not subject to FIRREA's jurisdictional bar); *Hudson United Bank v. Chase Manhattan Bank of Connecticut, N.A.*, 43 F.3d 843, 847 (3d Cir. 1994) (Section 1821(d)(13)(D) applies only to claims against the depository institution in receivership or the receivership); *FDIC v. McFarland*, 243 F.3d 876, 887 (5th Cir. 2001) ("It would be absurd . . . to interpret section 1821(d)(13)(D) as assignable to the current holder. . . . When the FDIC relinquishes ownership, the procedures governing its role as a receiver no longer apply"); *Bank One v. Elms*, 764 F. Supp. 85 (N.D. Tex. 1991) (FIRREA does not apply to suit against acquirer of assets from FDIC-receiver); *Hickey v. NCNB Texas Nat. Bank*, 763 F. Supp. 896 (N.D. Tex. 1991) (same); and *Team Bank v. Barfield*, 145 F.R.D. 69, 72 (N.D. Tex. 1992) (same); *Hoxeng v. Topeka Broadcomm*, 911 F. Supp. 1323 (D. Kan. 1996) (claim brought against agent of FDIC for tortiously interfering with a contract to purchase receivership property not subject to FIRREA's jurisdictional bar).

JPMC cites to *Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373 (6th Cir. 2008) and *American First Federal, Inc. v. Lake Forrest Park, Inc.*, 198 F.3d 1259 (1999), but these cases do not demonstrate that the FIRREA bar applies to Plaintiff's litigation.[15] These cases are factually distinguishable and were decided without the benefit of binding District of Columbia authority. In *Village of Oakwood*, "uninsured depositors" brought

---

[15] JPMC cites one other case as part of its assertion that "three different Courts of Appeals" have held that FIRREA applies to "claims . . . against the third-party purchaser of the failed bank's assets." JPMC's Motion, p. 23. That case, *diSibio v. Mission Nat'l Bank*, 127 F. App'x 950, 951 (9th Cir. Apr. 11, 2005), involved a pro se litigant's complaint that an assuming bank reduced interest rates on her account. The case was designated "unpublished," although JPMC failed to indicate this fact. In addition, JPMC failed to cite to a subsequent (unpublished) revision of the opinion, in which the court replaces a relevant passage with this text: "The district court properly dismissed the diSibios' claims against MNB [a purchaser from the RTC] that were *based on City Federal actions* [the failed institution]; those claims are defaulted because they had to be raised before the RTC before the deSibios could proceed to federal court." *diSibio v. Mission Nat'l Bank*, 2005 U.S. App. LEXIS 19514 *2 (9th Cir. Sept. 7, 2005) (emphasis added). Unlike *diSibio* or the other cases cited by JPMC, the claims of the Plaintiffs are not based on the actions of the failed bank in receivership or the FDIC. As such, any precedential value that the cases may have is not germane to this case.

claims against a purchaser of assets from the FDIC receiver in district court. The depositors claimed that the purchaser was liable because of its: "1) status as a successor to [the failed bank in receivership]; 2) role in aiding and abetting the FDIC 's alleged breach of fiduciary duty to the uninsured depositors; 3) position as a constructive trustee; and 4) breach of contract with the uninsured depositors." *Village of Oakwood v. State Bank and Trust Co.*, 519 F.Supp.2d 730, 732-733 (N.D. Ohio 2007). No claim of wrongdoing was made against the purchaser, except for its role in helping the FDIC defraud the depositors and in breaching a contract, the liabilities for which it did not assume. The court concluded that "all of their claims against [the acquiring bank] are directly related to acts or omissions of the FDIC as the receiver of [the failed bank]," and that 12 U.S.C. § 1821(13)(D)(ii) therefore barred their claims. *Village of Oakwood*, 539 F.3d at 386.

In *American First Federal*, a bank purchased a note from an RTC-receivership. The bank sought to foreclose on the note. The note holder counterclaimed, based on misconduct of the failed bank that the note holder claimed offset its liability on the note. The case turned on a legal assumption that the purchaser, "having purchased the note from the RTC, stands in the shoes of the RTC and acquires its protected status under FIRREA." 198 F.3d 1259, at n.3. The court held that a claim against the failed bank must be brought against the RTC, not the purchaser of the note, and that the jurisdictional bar of FIRREA applied.

Here, unlike *Village of Oakwood* or *American First Federal*, the claims against JPMC rest firmly on detailed allegations of JPMC's wrongdoing that directly harmed the Plaintiffs, and which occurred before any receivership came into existence. JPMC's effort to interject a supposed "conspiracy claim" into the Petition fails because the

22

Petition contains no such allegation. *See JPMC Motion* at 18-19. Unfortunately for JPMC, repeatedly using terms such as "conspiracy" and "collusion" when describing the relationship between JPMC and the FDIC does not mean Plaintiffs allege a conspiracy. *See JPMC Motion* at 1, 3, 7-8 and 18. Thus, even if the cases could serve as persuasive authority to justify the extension of FIRREA to claims against third parties in extreme circumstances, which is doubtful given the existing authority in the District of Columbia, the facts of these cases do not support JPMC in this case.

JPMC offers a curious mixture of additional FIRREA arguments, relying upon standing clauses of the jurisdictional bar, and potential (but uncertain) application of FIRREA to a case filed by a party unrelated to this lawsuit.[16] These arguments fail, in any case, because the Plaintiffs' lawsuit does not assert claims that are subject to FIRREA. Whether Plaintiffs filed a proof of claim with the FDIC regarding their bond obligations is irrelevant to this lawsuit, which seeks damages caused by JPMC's misconduct.

JPMC's attempt to argue that Plaintiffs seek "assets of the receivership" in their lawsuit is to no avail. The Petition seeks only damages from JPMC. JPMC's speculative claim of a right of indemnification from the FDIC cannot be construed as a claim seeking assets of the receivership. Any hypothetical claim for indemnification by JPMC fails because of express language in the P&A Agreement,[17] the strong public policy against

---

[16] *Washington Mutual, Inc. et al v. Federal Deposit Insurance Corporation in its capacity as receiver for Washington Mutual Bank*, Case No. 1:09-CV-00533, (U.S. Dist. Ct. D.D.C., March 20, 2009) ; *see* JPMC's Motion, p. 21.

[17] P&A agreement, Article XII, section 12.1(a)(7), p. 25, attached to Doc. 17 as Exhibit 1.

indemnification for intentional misconduct,[18] and the speculative nature of JPMC's claim for indemnification.[19]

To the extent that JPMC argues that Plaintiff's are making a claim for "payment from . . . assets of [WMB]," the arguments fails.  For purposes of FIRREA, the term "asset of a failed depository institution" means "anything formerly owned by a defunct bank, that the FDIC as receiver can liquidate for the purposes of reimbursing the failed bank's creditors."  *Washington Bancorporation v. FDIC (In re Washington Bancorporation)*, 1996 U.S. Dist. Lexis 3876, *13 (D.D.C. Mar. 19, 1996).  Plaintiffs seek only general funds from JPMC, not any identifiable assets of WMB obtained by JPMC.  To hold that JPMC's general funds are now protected by FIRREA would expand FIRREA to cover every litigant seeking damages against JPMC, which would be absurd.

## D. JPMC'S RULE 12(b)(6) ARGUMENTS FAIL

Until the question of subject matter jurisdiction is determined, JPMC's Rule 12(b)(6) request for dismissal is premature.  Upon a finding that the Court is without subject matter jurisdiction, JPMC's Motion to Dismiss – including the request under Rule 12(b)(6) – should be denied as moot.  If JPMC's Rule 12(b)(6) arguments are reached, the dismissal request should be denied because JPMC fails to demonstrate that the Petition inadequately alleges any of Plaintiffs' causes of action.

---

[18] *See e.g. Southern R. Co. v. National R. Passenger Corp.*, 1989 U.S. Dist. LEXIS 8857, *15-16 (D.D.C., Aug. 17, 1989) (contract provisions which appear to indemnify against willful, wanton, reckless, or intentional misconduct are contrary to public policy) quoting *National R.R. Passenger Corp. v. Consolidated Rail Corp.*, 698 F. Supp. 951, 971 (D.D.C. 1988).

[19] *See e.g. Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871, 875 (2d Cir. 1984) (insurer's potential liability for damages against its insured in a products liability case was a contingent liability that failed to amount to an "interest relating to the property or transaction which is the subject of the action" so as to warrant intervention).

### 1. **Tortious Interference with Contractual Relationship (Count 1)**

Plaintiffs bring claims against JPMC for tortious interference with existing contracts. *Petition* at ¶¶ 88-93. The elements of a tortious interference with a contractual relationship claim are (1) the existence of a contract subject to interference; (2) the occurrence of an act of interference that was willful and intentional; (3) that the act was a proximate cause of the plaintiffs damage, and (4) actual damage or loss occurred. *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995).

JPMC focuses on the third element and contends, as the sole basis for seeking dismissal, that "Plaintiffs have failed to allege any act of interference by JPMC that could plausibly have been the proximate cause of their alleged injury." *JPMC Motion* at 33-34. JPMC's causation argument falls flat for several reasons.

First, JPMC fails to acknowledge there can be more than one proximate cause; JPMC's wrongful conduct, described in the Petition, need not be the sole cause of Plaintiffs' injuries in order for Plaintiffs to prevail on the tortious interference claims. Second, determining proximate cause is normally a question of fact; here, the different theories of causation proposed by JPMC and Plaintiffs raise fact issues not proper for resolution on a motion to dismiss. Third, JPMC proposes to apply a standard of review much harsher than the standard articulated in *Twombly* (or, for that matter, required upon summary judgment) by demanding that Plaintiffs' explanation be *the most probable* theory, rather than *a plausible* theory, of causation; under the proper standard, JPMC's challenge to the tortious interference claim plainly fails. Additionally, JPMC's causation theories – that the "global financial crisis," the Office of Thrift Supervision ("OTS") or the FDIC was the sole cause for Plaintiffs' injury – are merely conclusory factual

statements by JPMC that cannot not be sustained under either controlling Texas law or under the *Twombly* standard.

### a. There May Exist More than One Proximate Cause

JPMC's argument implies that there can be but one proximate cause of Plaintiffs' damages. According to JPMC, the "global financial crisis" (and resulting Office of Thrift Supervision's closing of Washington Mutual) was the sole proximate cause of Plaintiffs' injuries and as a result JPMC cannot be held liable. However, the Texas Pattern Jury Charges (the "PJC") provide:

> "Proximate cause" means that cause which, in a natural and continuous sequence, unbroken by any new and independent cause, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more the one proximate cause of an event.

> "New and independent cause" means the act or omission of a separate and independent agency, not reasonably foreseeable, that destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question and thereby becomes the immediate cause of such occurrence.

*PJC, General Negligence and Intention Personal Torts, 3.1,* State Bar of Texas (Austin 2008). Although couched in terms of negligence, this causation standard may also be applied to intentional torts. *Lane v. Halliburton Corp.,* 529 F.3d 548, 567 n.8 (5th Cir. 2008) (applying Texas law).

JPMC asks the court to accept its conclusion that the financial crisis was an "intervening cause" such to relieve JPMC of liability. JPMC, however, fails to provide any analysis for determining proper legal treatment of intervening causes. *See JPMC's*

*Motion* at 34-37.   Texas law makes clear that intervening circumstances or other proximate causes do not in themselves relieve JPMC of liability.

Under Texas law, proximate cause has two parts: foreseeability and cause in fact. *Burlington Northern and Santa Fe Ry. Co. v. Interdom Partners, Ltd.,* 177 Fed Appx. 964, 967 (5th Cir. 2004)[20] (citing *Southwest Key Program v. Gil-Perez,* 81 S.W.3d 269, 274 (Tex. 2002)). Plaintiffs allege both prongs. *See Petition* at ¶¶ 36-85. Plaintiffs also specify damages caused by JPMC's conduct. *See id.* at ¶¶ 70-71, 88-99. JPMC does not expressly claim that Plaintiffs fail to meet either prong of the test. Rather, JPMC argues that Plaintiffs' theory of causation is implausible because of financial crisis – in essence claiming that the "global financial crisis" was the sole cause in fact.

It is well established that an intervening circumstance will not relieve the defendant of liability if the defendant's earlier action played a substantial part in causing (or was another proximate cause of) the harm. *See, e.g., Texas & Pacific Ry. Co. v. Stewart,* 228 U.S. 357, 362-63 (1913); *Lane,* 529 F.3d at 565. Contrary to JPMC's generalized excuse that all harm was caused by global financial conditions, Plaintiffs explain that JPMC's concerted effort to obtain a west coast presence began around 2004 and, at the time of Washington Mutual's failure, JPMC had been engaged in a "years-long" effort to acquire Washington Mutual. *Petition* at ¶¶ 23-24.

> "[B]eginning in 2006 . . . lending institutions faced a difficult business environment due to a deteriorating housing market, an increase in mortgage delinquencies and foreclosures, illiquidity and loss of value of asset-backed and mortgage-backed securities, and a general downturn in the global credit markets. \

*Id.* at ¶ 41. The financial storm was not only foreseeable, but also JPMC took numerous actions to take advantage of it. Indeed, the very fact that JPMC was ready and able to

---

[20] Unpublished; not to be cited as precedent.

consummate a purchase of WMB assets *within hours* of the FDIC's appointment as WMB receiver, in a transaction in which JPMC committed $1.9 billion, with JPMC then declaring, not long thereafter, that it was booking an extraordinary gain of $1.3 billion from the sale, belies any notion that these circumstances and activities were not "foreseeable" to JPMC. At a minimum, foreseeability is an issue the jury should decide.

When "the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." *Lane,* 529 F.3d at 566 (citing Texas law and RESTATEMENT (SECOND) TORTS § 449).

> Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing the harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.

*Dew v. Crown Derrick Constructors, Inc.,* 208 S.W. 2d 448, 453 n.6 (Tex. 2005) (quoting RESTATEMENT (SECOND) TORTS § 442 B). Interestingly, JPMC cites the *Dew* decision when discussing intervening persons or events. *Dew,* however, shows that neither the "global financial crisis" nor the Office of Thrift Supervision's decision can relieve JPMC of liability.

JPMC's argument appears to be that the "global financial crisis" made WMB's failure inevitable. That is plainly untrue; numerous other banks, including many with fewer natural strengths than WMB (but which were also not pillaged by JPMC) weathered this same storm. It is absurd for JPMC to assert that it is somehow obvious that the "global financial crisis" was the exclusive cause of WMB's failure. That is

properly a question for the jury to decide. In any event, JPMC's conclusion cannot possibly be presumed for the purpose of a motion to dismiss prior to any discovery.

In addition, Texas law permits causation to be shown by proof of evil motive or intent to cause harm to the Plaintiffs. In *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 2009 Tex. LEXIS 871, *15 (October 30, 2009), the Texas Supreme Court reviewed a challenge to the sufficiency of the evidence supporting a jury verdict of fraud. The court held that evidence of evil motive or intent alone was sufficient to support a finding of causation. *Id.* at *16-17 (fact that defendant "was consulting with bankruptcy counsel and that it did not intend to fund the $ 100,000 as it agreed in the MSA, along with the evidence of the bad faith bankruptcy filing, is legally sufficient evidence to support these damages.").

JPMC cites one case with regard to its proximate causation argument. *JPMC Motion* at 37 (citing *In re Southeast Banking Corp.,* 93 F.3d 750 (11th Cir. 1996)). JPMC's case, however, is factually and legally inapposite. In *In re Southeast Banking Corp.*, the plaintiff alleged that the defendant leaked confidential financial information to regulators in violation of a confidentiality agreement, which led to the seizure of the bank. The FDIC was brought in as a party by way of a third-party complaint. The court dismissed the case, concluding that "only the Comptroller's final decision damaged the Holding Company, and no prior act could have so caused the damage alleged to have occurred by First Union without the ultimate declaration of insolvency." *Id.* at 751 (brackets removed). *In re Southeast Banking Corp.* relied on one case, *FDIC v. Irwin*, 916 F.2d 1051, 1053 (5th Cir. 1990), to support its causation finding.

*Irwin* involved a third party complaint brought against the United States under the Federal Tort Claims Act ("FTCA"),[21] alleging that the Office of the Comptroller of the Currency ("OCC") unlawfully closed a bank for which the plaintiff served as director. The court, relying on the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), dismissed the case against the OCC. In addition, the court dismissed allegations brought against the OCC's subordinates regarding their examination of the seized bank. In this regard, the court noted that the subordinates' actions were incident to the OCC's discretionary function, and thus, [o]nly the Comptroller's final decision damaged Irwin's financial interests, and no prior act or acts could have so caused the damage that Irwin cites in his complaint without the ultimate declaration of insolvency." *Id.* at 1055.

The *In re Southeast Banking Corp.* court, in citing only to *Irwin*, adopted *Irwin's* FTCA-based analysis, which necessarily revolved around the FTCA discretionary function exception of 28 U.S.C. § 2680(a). In the instant case, however, proximate cause is not to be determined by looking to FTCA standards, but must instead follow Texas law.

In contrast to *In re Southeast Banking Corp.*, JPMC here directed a plan to strip away the rights of stakeholders of WMB and WMI, including the Plaintiffs. In this plan, JPMC accessed Washington Mutual's confidential financial information over a period of time from sources within the company, from "due diligence" conducted under false pretenses, and from other breaches of trust and fair dealing. JPMC leaked information and misinformation to the public, to potential suitors, to potential investors, to regulators and others, in violation of contract and tort duties owed to the Plaintiffs. JPMC negotiated in bad faith with Washington Mutual while at the same time preventing

---

[21] 28 U.S.C. §§ 1346(b), 2671-2680.

potential suitors from negotiating with the company.   In addition, JPMC leaked information to the media in order to create a bank run, which was the primary reason given by the OTS for its decision to seize WMB.

Plaintiffs have sufficiently alleged JPMC's wrongful motive and intent to harm the Plaintiffs and other stakeholders of WMB and WMI, and further have sufficiently alleged a direct causal link between JPMC's intended plan and the foreseeable results that caused the harm alleged.  Plaintiffs adequately allege proximate cause.

### b.  <u>Causation is a Fact Issue</u>

"Proximate cause is typically a question of fact." *First Assembly of God, Inc. v. Texas Utilities Elec. Co.,* 52 S.W.3d 482, 493 (Tex. App. – Dallas 2001 (no writ); *Ross v. Marshall,* 426 F.3d 745, 764 (5th Cir. 2005).  Lack of proximate may be established as a matter of law only where the circumstance are such that reasonable minds cannot arrive at different conclusions. *First Assembly of God, Inc.*, 52 S.W.3d at 493.

JPMC claims global financial turmoil was the sole proximate cause of Plaintiffs' damages. *See JPMC's Motion* at 34.  Plaintiffs acknowledge the financial turmoil, but explain that JPMC wrongfully took advantage of the frozen financial markets for financial gain and to further its strategic plan. *See Petition* at ¶¶ 30-69.  Where, as here, reasonable minds may differ concerning the question of JPMC's role in causing damages to Plaintiffs, dismissal is improper. *Cf. Roseboro v. Billington,* 606 F. Supp. 2d 104, 111 (D.D.C. 2009) (where sufficient facts were pleaded for competing inference and neither party made a definitive motion, the court "cannot grant summary judgment on [the] issue.").

### c.  **JPMC Mischaracterizes the Standard for Examining Causation on a Motion to Dismiss**

Without expressly asking the Court to alter the Rule 12 standard of review, JPMC nevertheless invites the Court to consider and weigh competing inferences – that is, the inference that the global financial crisis was the sole cause of Washington Mutual's failure versus the inference that JPMC's conduct played a substantial role in Washington Mutual's downfall.  *See Id.* at 35 (asking the Court to acknowledge "more likely explanations" or "obvious alternative" to Plaintiffs' causation theory).  The Court may consider or acknowledge other causes of Plaintiffs' harm.  However, to avoid dismissal Plaintiffs need only demonstrate that their theory is "plausible." *See Twombly,* 550 U.S. 544 (2007).  To the extent JPMC suggests that the Court should apply a standard akin to either Federal Rule of Civil Procedure 9(b) or the Private Securities Litigation Reform Act ("PSLRA"), this Court should reject the suggestion. *Stevens v. Iphonic, Inc.,* 2009 U.S. Dist. Lexis 94571 at *13-14 (D.D.C. Oct. 9, 2009) (discussing the heightened pleading standard under the PSLRA and stating the heightened standard applies only to the PSLRA) (citing *Tellabs, Inc v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 319-20 (2007)).

Where, as here, there are competing inferences pertaining to causation, dismissal is improper.  "A Court deciding a motion to dismiss must not make any judgments about the probability of the plaintiff's success, for a complaint 'may proceed even if it appears that a recovery is very remote and unlikely'". *Aktieselskabet v. Fame Jeans, Inc.,* 525 F.3d 8, 17 (D.C. Cir. 2009) (quoting *Twombly,* 127 S.Ct. at 1965).  Further, "a complaint 'may not be dismissed on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations'". *Id.* (quoting *Twombly* at 1969 n.8).

## 2. **Breach of Confidentiality Agreement (Count 2)**

Plaintiffs allege that JPMC breached a confidentiality agreement that had been promised in an agreement or agreements between JPMC and Washington Mutual Bank and that was intended to benefit the Plaintiffs. *Petition* at ¶¶ 94-99.  In moving to dismiss Plaintiffs' breach of contract claim, JPMC does not attempt to negate elements of a breach of contract claim.  Instead, JPMC argues that (1) the terms of its confidentiality agreement do not allow Plaintiffs to assert third-party beneficiary claims and (2) the claims are barred under the Emergency Economic Stabilization Act of 2008 ("EESA").

To support its contention that Plaintiffs cannot be third party beneficiaries, JPMC tenders, under seal, a copy of a confidentiality agreement executed by JPMC and Washington Mutual.  This tender is the first time Plaintiffs have seen this document.  JPMC's eleventh-hour production of this document, rather than proving JPMC's entitlement to dismissal, instead shows Plaintiffs' need for discovery.

JPMC's under-seal tender shows that JPMC has non-public documents that may support Plaintiffs' claims.  Importantly, there may be additional documentation relevant to determining the viability of Plaintiffs' claims.[22]  JPMC selected a single document from its non-public files for the specific purpose of defeating Plaintiffs' breach of contract claims. Prior to any determination of the merits of Plaintiffs' breach of contract claim, Plaintiffs should be allowed discovery to determine if there are other confidentiality agreements or amendments to the agreement tendered.  JPMC cannot

---

[22] Plaintiffs note that JPMC's document is dated March 11, 2008, a full six months before WMI began actively marketing itself for sale in September of 2008, which JPMC prevented due to its misconduct. JPMC's attorney's affidavit regarding this document makes no representation of the context of the document or whether outside documents (including notably the terms of "a possible negotiated transaction (a 'Transaction')" that were incorporated into the document) exist.  See JPMC's document, p. 1, paragraph 1.  As such, the document raises more questions than it answers.

fairly insist on a dismissal based on a single, self-selected "needle" of evidence while it simultaneously withholds a "haystack" of other, related, documents.  Moreover, JPMC's argument for asserting that Plaintiffs are not third party beneficiaries is flawed because JPMC fails to provide any basis to conclude that the terms of the confidentiality agreement that existed at times relevant to the Plaintiffs' Petition did not create enforceable contract rights for the Plaintiffs.  JPMC's attorney's declaration regarding a March 2008 agreement is wholly inconclusive in this regard.  In addition, JPMC fails to provide a choice of law analysis before simply applying New York law.  *See JPMC's Motion*, p. 28.

JPMC also contends that the EESA bars recovery by Plaintiffs under the confidentiality agreement tendered by JPMC, and presumably also bars claims based on any other JPMC-FDIC confidentiality agreement that may exist.  The EESA, however, became effective after all of the conduct by JPMC described and complained of in the Petition.  *See* Pub. L. No. 110-343, 122 Stat. 3765.  JPMC ignores the plain language of the statute in order to claim that the EESA bars Plaintiffs' claims.  Further, JPMC asks for *ex post facto* application of the law.

JPMC quotes a portion of the EESA titled "Enforceability of Certain Agreements" which begins, "No provision contained in any existing or future standstill, confidentiality, or other agreement ..." *JPMC Motion* at 29 (citing sec. 12(c) of the EESA).  JPMC thus relies on a provision of the EESA concerned specifically with *provisions* of various agreements, not with entire agreements as JPMC's argument implies.  JPMC's claim that the EESA provides blanket immunity to claims based upon any confidentiality agreement is without foundation. The section of the EESA cited and

quoted by JPMC indicates that the EESA is not broad enough in scope to include the confidentiality agreement between WMI/WMB and JPMC at times relevant to this lawsuit. JPMC, with the burden on a motion to dismiss, fails to cite which *provisions* of the confidentiality agreement purportedly implicated in this lawsuit are purportedly barred by the EESA.

The provision of the EESA cited by JPMC also must be narrowly construed to avoid constitutional concerns. To the extent the EESA is unclear concerning its application, constitutional concerns should trump the public policy objectives of the EESA cited by JPMC. *See JPMC Motion* at 29. In *Landgraf v. USI Film Products,* 511 U.S. 244 (1994), the Supreme Court explained that substantive laws, unlike procedural rules, should be construed to avoid conflict with the Constitution's *Ex Post Facto* Clause. 128 U.S. at 265-69 (1994). JPMC, of course, seeks to apply the EESA in such a way that all of Plaintiffs' rights to bring claims, under any FDIC-JPMC confidentiality agreements, are extinguished. However, the provision of the EESA cited by JPMC can be construed and applied to avoid constitutional implications. JPMC contends the EESA bars Plaintiffs' breach of contract claims because the EESA specifically reference "any existing or future" agreements. However, the *conduct* prohibited under the EESA should be conduct occurring after the EESA's effective date. In sum, JPMC simply fails to meet its Rule 12(b)(6) burden for dismissal of Plaintiffs' breach of contract claims.

### 3.  Unjust Enrichment (Count 3)

Plaintiffs allege that JPMC was unjustly enriched, at Plaintiffs' expense, as a result of JPMC's wrongful conduct. *Petition* at ¶¶ 100-103. JPMC attacks and claims to nullify each element of Plaintiffs' unjust enrichment claim. However, whether on

purpose, by inadvertence, or as a result of misunderstanding Texas law, JPMC's analysis is based upon elements for an entirely different cause of action. According to JPMC:

> In order to state an unjust enrichment claim under Texas law, Plaintiffs must prove: (1) that the plaintiff furnished valuable goods or services; (2) to the defendant; (3) which were accepted by the defendant; (4) under circumstances that reasonably notified the defendant that the plaintiff expected to be paid by the defendant.

*JPMC Motion* at 30-31 (citing *Purselley v. Lockheed Martin Corp.,* 322 F.App'x 399, 403 (5th Cir. Apr. 22, 2009). As the *Purselley* decision makes clear, these are the elements for recovery under a theory of *quantum meruit. Purselley,* 322 F.App'x at 403.

In the very decision that JPMC cites, the Fifth Circuit explains that *quantum meruit* is but a species of unjust enrichment. *See id.; see also Bashara v. Baptist Memorial Hosp. Sys.,* 685 S.W.2d 307, 310 (Tex. 1985) (quantum meruit *is founded* on unjust enrichment) (emphasis added). Unjust enrichment is a broader equitable remedy and is not limited to a theory of *quantum meruit.* In *Purselley,* the Fifth Circuit explained, "Unjust enrichment is an implied-contract theory stating one should make restitution when it would be unjust to retain the benefits received." *Id.* (citation omitted). For the purposes of pleading, unjust enrichment allows recovery "when one person has obtained benefit by another by fraud, duress, or the taking of an undue advantage." See *id.* (citing *Heldenfels Bros. v. Corpus Christie,* 832 S.W.2d 39, 41 (Tex. 1992)). This formulation of unjust enrichment is well established under Texas law. *See, e.g., Pope v. Garrett,* 211 S.W.2d 559, 560, 562 (Tex. 1948).

In sum, JPMC fails to address Plaintiffs' unjust enrichment claim at all, much less explain why it should be dismissed. The Rule 12(b)(6) request for dismissal of this cause of action cannot be granted.

## IF PLAINTIFFS' PETITION IS FOUND WANTING, LEAVE TO AMEND IS APPROPRIATE

In reviewing requests for dismissal, this Court should bear in mind that the Petition was devised to comply with Texas pleading standards and in anticipation of being subject to Texas procedural rules. The Texas rules do not have a counterpart to Federal Rule of Civil Procedure 12(b)(6). The Texas Supreme Court has explained:

> Although FED. R. CIV. P 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted, the Texas Rules of Civil Procedure do not contain any analogous provision. Under the Texas Rules of Civil Procedure, the proper way for a defendant to urge that a plaintiff has failed to plead a cause of action is by special exception.

*Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex. 1983). In response to a special exception, the plaintiff may amend its pleading. *See* TEX. R. CIV. P. 63 ("Parties may amend their pleadings, respond to pleadings on file of other parties . . . and file such other pleas as they may desire by filing with the clerk at such time as not to operate as a surprise to the opposing party[.]")

Accordingly, if the case is not remanded and the Court finds shortcomings in Plaintiffs' standing allegations, amendment should be allowed. Likewise, if the case is not remanded and the Court finds wanting the pleading of any cause of action, Plaintiffs seek leave to re-plead.

## PRAYER

Plaintiffs ask the Court to deny JPMC's Motion to Dismiss in its entirely.  In the alternative, Plaintiffs ask the Court for leave to amend the Petition.  Plaintiffs further pray for any other relief to which they may be entitled, at law and in equity.

Respectfully submitted,

By:   /s/ Gregory S. Smith
Gregory S. Smith (D.C. Bar #472802)
Law Offices of Gregory S. Smith
913 East Capitol Street, S.E.
Washington, D.C.  20003
Telephone:  (202) 460-3381
Facsimile:  (877) 809-9113

Andrew J. Mytelka
Texas State Bar No. 14767700
Joseph R.  Russo, Jr.
Texas State Bar No. 24002879
Steve Windsor
Texas State Bar No. 21760650
James M. Roquemore
Texas State Bar No. 24058082
GREER, HERZ & ADAMS. LLP
One Moody Plaza, 18th Floor
Galveston, Texas  77550
Telephone:  (409) 797-3200
Facsimile:  (409) 766-6424

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that on January 7, 2010, a copy of this document was filed with the Court's Electronic Case Filing (ECF) filing system, which will provide electronic notification of its filing to all counsel of record who have appeared in this action.

  /s/ Gregory S. Smith
Gregory S. Smith