## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN NATIONAL INSURANCE COMPANY, *et al*,<br><br>        Plaintiffs,<br><br>    v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Washington Mutual Bank, Henderson, Nevada, *et al.*,<br><br>        Defendants. | Case No. 1:09-cv-01743 (RMC)<br><br><br><br>ORAL ARGUMENT REQUESTED |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THE PETITION BY FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER

David Clarke, Jr. (D.C. Bar. No. 396002)
david.clarke@dlapiper.com
Deana L. Cairo (D.C. Bar No. 469628)
deana.cairo@dlapiper.com
DLA Piper LLP (US)
500 8th Street, N.W.
Washington, D.C.  20004
Tel.:  (202) 799-4000
Fax:  (202) 799-5000

- and -

John J. Clarke, Jr. (admitted *pro hac vice*)
john.clarke@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Tel.:  (212) 335-4500
Fax:  (212) 335-4501

Attorneys for the
 Federal Deposit Insurance Corporation,
 as Receiver for Washington Mutual Bank

## Table of Contents

Page

Table of Authorities ................................................................................................................. ii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .............................................................................................................................. 2

I.     THE FEDERAL DEPOSIT INSURANCE ACT PRECLUDES THE CLAIMS
       AS THEY ARE ALLEGED IN PLAINTIFFS' PETITION............................................. 2

       A.     The "Claims" or "Actions" at Issue in the Petition Fall Within the Scope
              of FIRREA's Jurisdictional Bar ............................................................................ 2

       B.     Plaintiffs Failed to Exhaust Their Administrative Remedies ............................. 10

       C.     Receipt of Receivership Certificates Represents Payment in Full for
              Plaintiffs' WMB Bonds ...................................................................................... 14

       D.     Application of the Jurisdictional Bar In Accordance With Its Literal Terms
              Will Not Deprive Plaintiffs of Due Process........................................................ 14

II.    PLAINTIFFS' FAILURE TO ALLEGE ACTIONABLE CAUSATION ALSO
       REQUIRES DISMISSAL................................................................................................ 16

CONCLUSION.......................................................................................................................... 17

# Table of Authorities

Page

## Cases

*Aliaf v. F.D.I.C.,*
   879 F. Supp. 515 (E.D. Pa. 1995) ........................................................................................10

*Am. First Fed., Inc. v. Lake Forest Park, Inc.,*
   198 F.3d 1259 (11th Cir. 1999) ............................................................................................4

*Ambase Corp. v. United States,*
   61 Fed. Cl. 794 (2004) ..........................................................................................................7

*Auction Co. of America v. F.D.I.C.,*
   141 F.3d 1198 (D.C. Cir. 1998) ............................................................................................9

*\*Brandt v. First Union Corp. (In re Southeast Banking Corp.),*
   93 F.3d 750 (11th Cir. 1996) .........................................................................................16, 17

*\*Brown Leasing Co.* v. *F.D.I.C.,*
   833 F. Supp. 672 (N.D. Ill. 1993), *aff'd,* 42 F.3d 1112 (7th Cir. 1994) .................................10

*Brown v. Gen. Services Admin.*
   425 U.S. 820 (1976) ...............................................................................................................6

*Bueford v. R.T.C.,*
   991 F.2d 481 (8th Cir. 1993) ................................................................................................12

*Coleman* v. *F.D.I.C.,*
   826 F. Supp. 31 (D. Mass. 1993) ..........................................................................................10

*Franchise Tax Bd. v. Construction Laborers Vacation Trust,*
   463 U.S. 1 (1983)....................................................................................................................6

*\*Freeman v. F.D.I.C.,*
   56 F.3d 1394 (D.C. Cir. 1995) ................................................................................... *passim*

*Henrichs v. Valley Development,*
   474 F.3d 609 (9th Cir. 2007) ..................................................................................................8

*Homeland Stores, Inc. v. Resolution Tr. Corp.,*
   17 F.3d 1269 (10th Cir. 1994) ................................................................................................8

*Hoxeng v. Topeka Broadcomm, Inc.,*
   911 F. Supp. 1323 (D. Kan 1996) ......................................................................................9, 10

*Hudson United Bank v. Chase Manhattan,*
    43 F.3d 843 (3d Cir. 1994)............................................................................3

*In re Purcell,*
    141 B.R. 480, 484 (Bankr. D.Vt. 1992)......................................................13

*Lanigan v. R.T.C.,*
    No. 91 C 7216, 1993 WL 189884 (N.D. Ill. June 2, 1993) .....................10

*Marcus v. AT&T Corp.,*
    138 F.3d 46 (2d Cir. 1998)...........................................................................6

*McCarthy v. F.D.I.C.,*
    348 F.3d 1075 (9th Cir. 2003) .....................................................................8

*\*McGlothin v. R.T.C.,*
    913 F. Supp. 15 (D.D.C. 1996) .................................................................10

*Meliezer v. R.T.C.,*
    952 F.2d 879 (5th Cir. 1992) .....................................................................12

*Nat'l Trust for Historic Preservation v. F.D.I.C.,*
    21 F.3d 469 (D.C. Cir. 1994) (Wald, J. concurring)..................................15

*National Union Fire Ins. Co. v. City Sav., F.S.B.,*
    28 F.3d 376 (3d Cir. 1994)....................................................................3, 15

*Office & Professional Employees Int'l Union Local 2 v. F.D.I.C.,*
    962 F.2d 63 (D.C. Cir. 1992) .......................................................................8

*Rosa v. R.T.C.,*
    938 F.2d 383 (3d Cir.), *cert. denied,* 502 U.S. 981 (1991)...................3, 15

*Slattery v. United States,*
    583 F.3d 800 (Fed. Cir. 2009)......................................................................8

*\*Tri-State Hotels, Inc. v. F.D.I.C.,*
    79 F.3d 707 (8th Cir. 1996) ..................................................................12, 13

*\*Village of Oakwood v. State Bank & Tr. Co.,*
    539 F.3d 373 (6th Cir. 2008) ...................................................................7, 8

*\*Village of Oakwood v. State Bank & Tr. Co.*
    519 F. Supp. 2d 730, 733 (N.D. Ohio 2007), *aff'd,* 539 F.3d 373 (6th Cir. 2008)..............6, 7

*Walker v. F.D.I.C.,*
    No. 08-6037, 2009 WL 5216980 (D.N.J. Dec 29, 2009).........................12

*Washington Bancorp. v. F.D.I.C. (In re Washington Bancorp.),*
    Civ. A. No. 95-1340, 1996 WL 148533 (D.D.C. Mar. 19, 1996)..........................................3, 8

*Wilson v F.D.I.C.,*
    827 F. Supp. 120, 123 (E.D.N.Y. 1993) ...............................................................................13

<u>Statutes and Rules</u>

12 U.S.C. § 1821(i)(2) ...............................................................................................................14

12 U.S.C. § 1821(d) ............................................................................................................11, 14

12 U.S.C. § 1821(d)(3)(C) ........................................................................................................11

12 U.S.C. § 1821(d)(5)(C) ........................................................................................................12

12 U.S.C. § 1821(d)(6)(A)..................................................................................................11, 15

12 U.S.C. § 1821(d)(13)(D)................................................................................................ *passim*

12 U.S.C. § 1821(d)(13)(D)(ii) ..................................................................................................3

Federal Rule of Civil Procedure 12(b)(1) ............................................................................1, 17

Federal Rule of Civil Procedure 12(c) .................................................................................1, 17

Intervenor-defendant the Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank (the "FDIC-Receiver"), respectfully submits this memorandum of law in further support of its motion to dismiss plaintiffs' original petition in this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c).

## PRELIMINARY STATEMENT

Application of the jurisdictional bar set forth in 12 U.S.C. § 1821(d)(13)(D) turns on the nature of the "claim" or "action" at issue, as the plain language of the statute makes clear, not on the identity of the defendant or on whether assets have been sold by the FDIC as receiver for a failed bank.  Plaintiffs ignore the statutory language and the allegations of their own petition in arguing that the jurisdictional bar does not apply to them.

As the FDIC-Receiver has noted in prior submissions, the effect of plaintiffs' arguments, if successful, would be to render the jurisdictional bar a virtual nullity by allowing disappointed claimants to seek recovery from assuming banks of amounts they were unable to recover through the receivership claims process.  This is not what Congress had in mind when it created the statutory exhaustion provisions of the Federal Deposit Insurance Act in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA").

In response, plaintiffs contend that their "lawsuit seeks only damages from JPMC for injuries that were caused by JPMC."  Pl. Mem. at 21.  But this assertion requires the Court to ignore plaintiffs' own petition, which shows that each of plaintiffs' alleged causes of action against JPMC depends on allegations that plaintiffs were harmed, as holders of securities issued by Washington Mutual Bank ("WMB") and its holding company Washington Mutual, Inc. ("WMI"), when the FDIC-Receiver sold WMB's assets to JPMC for a "fire sale" price.  By plaintiffs' own allegations, their claims "relat[e] to [an] act or omission of the" FDIC-Receiver

as the receiver for WMB, and to that extent they are barred expressly by section 1821(d)(13)(D), even though plaintiffs purport to assert them against JPMC instead of the FDIC-Receiver.

In an effort to escape the effect of their own allegations, plaintiffs raise a series of strawman arguments regarding due process, notice and waiver, all of which depend on gross overstatement of the FDIC-Receiver's arguments.  Contrary to plaintiffs' contentions, dismissal of their petition will not give the FDIC-Receiver license to confer immunity on third parties, or authorize the FDIC-Receiver to trample on the due process rights of others, or sweep every claim in a holding company bankruptcy case into the statutory receivership claims process.

Plaintiffs filed the claims they filed with the FDIC-Receiver.  They do not contend that those proofs of claims included the claims they are seeking to pursue here.  By failing to include those claims in the administrative claims process, plaintiffs waived their rights to pursue them.  The receivership claims they did elect to file have been allowed.  Plaintiffs have been provided all the relief they are entitled to receive under FIRREA, and their effort to evade the statute and pursue additional recoveries in an action against JPMC for the deficiency should be dismissed with prejudice.

**ARGUMENT**

I.   **THE FEDERAL DEPOSIT INSURANCE ACT PRECLUDES THE CLAIMS AS THEY ARE ALLEGED IN PLAINTIFFS' PETITION**

A.   **The "Claims" or "Actions" at Issue in the Petition Fall Within the Scope of FIRREA's Jurisdictional Bar**

As Chief Judge Lamberth recognized in another action implicating the jurisdictional bar, "under section 1821(d)(13)(D)(ii), this court has no jurisdiction over 'any claim relating to any act or omission of' the FDIC as receiver" for a failed bank or any claim seeking a determination of rights with respect to the assets of the failed bank. *Washington Bancorp. v. F.D.I.C. (In re Washington Bancorp.)*, Civ. A. No. 95-1340, 1996 WL 148533, at *5 (D.D.C. Mar. 19, 1996). "This is very broad language," the district court observed. "Clause (ii) of [1821(d)(13)(D)] is not limited to claims against assets of the failed depository, as in clause (i). Rather, clause (ii) applies to claims arising from the actions of the depository institution or the FDIC itself while acting as receiver." *Id.*

The very cases relied upon by the plaintiffs, *Rosa*, *National Union* and *Hudson*, show that application of the jurisdictional bar requires a court to evaluate the "claim" or "action" presented in a given case and determine whether such a "claim" or "action" falls within the literal terms of section 1821(d)(13)(D). *See Hudson United Bank v. Chase Manhattan*, 43 F.3d 843, 848-49 (3d Cir. 1994); *National Union Fire Ins. Co. v. City Sav.*, 28 F.3d 376, 388-89 (3d Cir. 1994); *Rosa v. R.T.C.*, 938 F.2d 383, 393-94 (3d Cir.), *cert. denied*, 502 U.S. 981 (1991). Plaintiffs' arguments bear no relation to this statutory analysis, instead positing an unsupportable rule that the jurisdictional bar depends not on the nature of the claim but instead on the identity of the current holder of the asset at issue or the defendant who plaintiffs chose to name in a complaint.

By its terms, the jurisdictional bar deprives courts of subject matter jurisdiction over three types of claim or action: (1) "any claim or action for payment from . . . the assets of any

3

depository institution for which the Corporation has been appointed receiver"; (2) "any action

seeking a determination of rights with respect to[] the assets of any depository institution for

which the Corporation has been appointed receiver . . ."; and (3) "any claim relating to any act or

omission of such institution or the Corporation as receiver."  12 U.S.C. § 1821(d)(13)(D); *see*

*Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 (11th Cir. 1999).  Plaintiffs'

claims against JPMC fall squarely within the second and third categories:  they obviously

"relat[e] to . . . act[s] or omission[s] of the" FDIC as receiver for WMB and, to the extent

predicated on the loss in value of their WMB bonds, seek "a determination of rights with respect

to assets of" WMB.  The Court need look no further than the allegations of plaintiffs' own

petition to reach this conclusion.

  *First,* plaintiffs' allegations show that their claims against JPMC for the loss in value of

their WMB and WMI securities directly "relat[e] to . . . act[s] or omission[s]" of the FDIC-

Receiver, namely, the sale by the FDIC-Receiver to JPMC of assets that the plaintiffs contend

was for too low a price.  *See* Pl. Mem. at 13-21.  Plaintiffs' petition alleges, among other things,

that:

- Because of the closure of WMB, the FDIC-Receiver's sale of WMB's assets at a "fire sale" price and WMI's bankruptcy filing, their WMI stock is "worthless," the WMI bonds they hold are "substantially impaired" and they do not expect to receive "'any recovery on their claims'" against the FDIC-Receiver with respect to their WMB bonds.  *See* Pet., ¶¶ 70, 71.

- On or about September 4, 2008 "JPMC and the FDIC agreed to a plan whereby federal regulators would seize WMB and certain valuable assets would be passed to JPMC, and certain liabilities excluded."  Pet., ¶ 47.

- "WMB, through the FDIC as receiver for WMB, has failed and refused to meet its obligations under the bond contracts."  Pet., ¶ 91.

- "Defendants [JPMC] used their insider status and financial strength to work to bring about a regulatory seizure of WMB and obtain the sale of WMB assets from federal regulators to JPMC at a below market price under terms that would

sever the Plaintiffs' contractual rights under the Bonds." Pet., ¶ 92 (quoted in Pl. Mem. at 11).

- Plaintiffs' tortious interference with contract claim against JPMC is based in part on plaintiffs' bond contracts with WMB, to which the FDIC-Receiver is a party as successor in interest to WMB. Pet., ¶¶ 88-93. Plaintiffs allege that JPMC caused the FDIC-Receiver to breach its obligations under those contracts, and in that way the claim also relates to an act or omission of the FDIC-Receiver. Pet., ¶ 92.

- Plaintiffs were allegedly harmed by JPMC's breach of its confidentiality agreement (Count II) because the regulatory closure of WMB and the ensuing sale of its assets by the FDIC-Receiver "prevent[ed] WMI from obtaining a purchaser for itself or improving is financial health enough so that it could weather the market turmoil." Pet., ¶¶ 98-99

- JPMC Bank and JPMC were unjustly enriched (Count III) because they allegedly failed to pay full value for the assets they purchased from the FDIC-Receiver pursuant to the P&A Agreement. Pet., ¶ 102-03.

Plaintiffs' own petition belies their contention that they "make no allegations of improper conduct against the FDIC." Pl. Mem.. at 19. To the contrary, the petition shows that the losses for which they seek recovery here allegedly arise from the act of the FDIC-Receiver in entering into the P&A Agreement with JPMC on terms that plaintiffs believe to have somehow caused them harm.

*Second*, insofar as the plaintiffs further allege, among other things, that:

- Pursuant to the P&A, JPMC Bank and JPMC "obtain[ed]" the WMB assets at below market prices out of the FDIC receivership, unencumbered of Plaintiffs' contractual rights to payment," Pet., ¶ 103, and

- Plaintiffs "received overwhelmingly less than the value of what Defendants extracted from the Plaintiffs," Pet., ¶ 102,

the plaintiffs' petition also clearly "seeks a determination of rights with respect to" the assets of WMB in violation of section 1821(d)(13)(D), and is, in that way also barred.[1]

---

[1] The "well-pleaded complaint" doctrine does not direct a court to ignore a plaintiffs' own allegations, nor does that doctrine require a court to blind itself to the legal infirmities of the causes of action in which such allegations are asserted. Here, all of plaintiffs' claims against

Contrary to plaintiffs' arguments, application of the plain language of the jurisdictional bar to claims against a party such as JPMC under these circumstances does not represent an extension of the law.  Indeed, such a construction is necessary when, as here, the claim or action at issue reflects an attempted end-run around the exclusive claims process established by FIRREA.  This was the reasoning in *Village of Oakwood*, where uninsured depositors of a failed bank sued the assuming bank under a purchase and assumption agreement alleging that the assuming bank had aided and abetted alleged breaches of fiduciary duty by the FDIC as receiver.  Similar to plaintiffs' allegations in the petition here, the *Village of Oakwood* plaintiffs alleged that they were worse off as a result of the assuming bank's dealings with the FDIC "than if those dealings had never occurred."  *Village of Oakwood v. State Bank & Tr. Co.*, 519 F. Supp. 2d 730, 733 (N.D. Ohio. 2007), *aff'd*, 539 F.3d 373 (6th Cir. 2008).[2]

Just as in this case, the *Village of Oakwood* plaintiffs moved to remand the action to state court.  The district court denied that motion, finding that federal question jurisdiction arose by virtue of the FDIC's participation in the action.  *See id.* at 734.  Just as in this case, the *Village of Oakwood* plaintiffs argued that their claims against the assuming bank were not capable of

---

JPMC Bank and JPMC depend on allegations relating to acts or omissions of the FDIC-Receiver, without which their theory of harm is not available.  Even in the jurisdictional realm where it is discussed, the well-pleaded complaint doctrine is subject to its counterpart, the "artful pleading" doctrine, under which a plaintiff may not avoid removal "by omitting to plead necessary federal questions" that are essential to recovery.  *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22 (1983).  This is precisely what plaintiffs attempted to do here in their effort to recover the deficiency in their receivership claims from JPMC under the guise of state law claims.  Such attempts to end-run a federal statutory scheme have been rejected by the courts.  *See Brown v. Gen. Services Admin.*, 425 U.S. 820, 833 (1976) ("It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading."); *Marcus v. AT&T Corp.*, 138 F.3d 46, 55-56 (2d Cir. 1998) (artful pleading doctrine precluded state court action for breach of warranty which implicated federal regulatory scheme created by the Federal Communications Act).

[2] As with plaintiffs here, the uninsured depositors separately had filed claims with the FDIC as receiver for the failed bank and had been awarded receivership certificates with respect to those claims.  *Id.* at 733.

resolution through FIRREA's receivership claims process.  The district court rejected this

argument, concluding that the claims related to acts or omissions of the FDIC as receiver.  *Id.* at

736-38.  Just as in this case, the *Village of Oakwood* plaintiffs asserted that such an application

of the jurisdictional bar would violate their due process rights.  The district court disagreed,

concluding that the plaintiffs were on notice of the receivership, had an opportunity to file

receivership claims with respect to the acts or omissions of the FDIC that formed the basis of

their claims and failed to avail themselves of that opportunity.  *Id.* at 737-38.

"The alternative," the district court concluded, "to permit claimants to avoid the

provisions of (d)(6) and (d)(13) by bringing claims against the assuming bank – would encourage

the very litigation that FIRREA aimed to avoid."  *Id.* at 738.  On appeal, the Sixth Circuit agreed,

quoting this language in affirming the district court's summary judgment decision.  *Village of*

*Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373, 386 (6th Cir. 2008).  Plaintiffs' attempt to

distinguish *Village of Oakwood* on the basis that "all of the misconduct that caused the Plaintiffs'

injuries was performed by JPMC," Pl. Mem. at 19, is belied by plaintiffs' own allegations, as

already discussed above.

In affirming, the Sixth Circuit also had occasion to reject another argument advanced by

plaintiffs here, that application of the jurisdictional bar somehow is precluded under the Court of

Federal Claims decision in *Ambase Corp. v. United States*, 61 Fed. Cl. 794 (2004).  As the Sixth

Circuit explained:

> *Ambase* . . . involved a putative shareholder derivative suit that was
> brought directly against the United States, a suit that the FDIC joined as an
> intervenor-plaintiff.  In rejecting the FDIC's argument that
> § 1821(d)(13)(D) barred review of 'its management of a receivership,' the
> *Ambase* court explained that 'the claim was not *against* the receivership,
> but rather against the United States for breach of a goodwill contract.'  61
> Fed. Cl. at 799 (emphasis in original).  The Uninsured Depositors' Claims
> here, however, are not against the United States but instead *arise directly*

> *out of the acts and omissions of the FDIC as receiver for Oakwood.* This
> distinction renders *Ambase* inapposite to the present case.

*Village of Oakwood*, 539 F.3d at 386-87 (emphasis added). The same distinction applies to

plaintiffs' claims against JPMC here.[3]

Plaintiffs' attempt to rely on a brief in opposition to certiorari that was filed by the FDIC

in *Henrichs v. Valley Development*, 474 F.3d 609 (9th Cir. 2007), is similarly misplaced. The

only connection between the receivership there and the private dispute at issue was that the

assets held by the private party who attempted to use the jurisdictional bar in litigation against

another private party previously had been acquired from the FDIC. No threat was presented to

the exclusivity of the receivership claims process; indeed, the receivership had been resolved

years earlier. The FDIC's position in *Henrichs* that the *private party's* ability to invoke the

jurisdictional bar did not travel with the assets is entirely consistent with applying section

1821(d)(13)(D) based on an analysis of the "claim" or "action" in question, as the plain language

requires, rather than based on who holds the assets, where the assets are or who the defendant is.

---

[3] The Federal Circuit decision in *Slattery v. United States*, 583 F.3d 800 (Fed. Cir. 2009), also arose in the context of an action against the United States. Former stockholders of a failed bank asserted a claim against the FDIC as receiver to an alleged surplus in a failed bank receivership. The Federal Circuit disagreed with the overwhelming majority of Circuits, including the D.C. Circuit, in concluding that the jurisdictional bar did not apply to claims for acts or omissions of the FDIC as receiver, citing dicta from a single Tenth Circuit decision with which numerous other Circuits have disagreed. *Id.* at 828 (discussing *Homeland Stores, Inc. v. Resolution Tr. Corp.*, 17 F.3d 1269 (10th Cir. 1994)); *see McCarthy v. F.D.I.C.*, 348 F.3d 1075, 1080-81 (9th Cir. 2003) ("Most circuit courts to consider this issue have determined that post-appointment claims against the FDIC are subject to FIRREA exhaustion.") (collecting cases) (citing, *inter alia*, *Office & Professional Employees Int'l Union Local 2 v. F.D.I.C.*, 962 F.2d 63, 66 n.7 (D.C. Cir. 1992)); *see Freeman v. F.D.I.C.*, 56 F.3d 1394, 1399 (D.C. Cir. 1995) (parties "aggrieved" by acts of the FDIC as receiver "will have opportunity to seek money damages or other relief through the administrative claims process"); *Washington Bancorp*, 1996 WL 148533, at *5 (claims arising from actions of FDIC as receiver were subject to jurisdictional bar). The United States has petitioned for rehearing and rehearing *en banc* of the Slattery decision, citing the court's erroneous application of the jurisdictional bar, among other issues. To the extent the analysis in *Slattery* was necessary to the court's decision in that case, the analysis conflicts with controlling authority in this Circuit and is not good law.

Similarly, nothing about the D.C. Circuit's decision in *Freeman v. F.D.I.C.*, 56 F.3d 1394 (D.C. Cir. 1995) contradicts the FDIC-Receiver's discussion of the jurisdictional bar here.  In *Freeman*, the court applied the jurisdictional bar to a declaratory judgment action in which the plaintiffs sought to prevent the FDIC, as receiver, from foreclosing on a loan secured by their home.  The core issue in *Freeman* was whether the jurisdictional bar extended to claims by debtors as well as creditors of a failed depository institution.  The court of appeals held that the jurisdictional bar is not limited to creditors' claims "but extends to all claims and actions against, and actions seeking a determination of rights with respect to, the assets of failed financial institutions for which the FDIC serves as receiver."  56 F.3d at 1402.  The *Freeman* court's discussion of FIRREA's scope is perfectly consistent with the FDIC-Receiver's position here.

Plaintiffs' reliance on *Auction Co. of America v. F.D.I.C.*, 141 F.3d 1198 (D.C. Cir. 1998), is also mistaken.  The contract with the FDIC that was at issue there "related to the assets of an unspecified number of unnamed depositories," not any specific failed bank, and claims for breach of that contract therefore fell outside the scope of section 1821(d)(13)(D).  The court concluded that:

> If the FDIC enters into a transaction whose economic realities are impossible to square with the notion that the FDIC is acting as receiver for a particular depository, liability for its acts will run to the FDIC directly, unmediated by exhaustion requirements governing claims against depositories.

141 F.3d at 1201-02.  Here, in contrast, all of plaintiffs' claims relate to acts or omissions of the FDIC as receiver for a specific failed institution, namely, WMB.

Finally, *Hoxeng v. Topeka Broadcomm, Inc.*, 911 F. Supp. 1323 (D. Kan 1996), does not provide any support for plaintiffs' arguments.  In *Hoxeng*, no act or omission of the FDIC as receiver was at issue.  Instead, the plaintiff asserted a breach of contract claim against a third-party agent for the FDIC as receiver.  Neither the agent nor the FDIC as receiver was a party to

the contract that was allegedly breached.  Under those circumstances, the jurisdictional bar did

not apply.  911 F. Supp. at 1337.  Here, in contrast, plaintiffs' claims against JPMC squarely turn

on alleged acts or omissions of the FDIC-Receiver in selling WMB assets at allegedly too low a

price, resulting in alleged harm to plaintiffs.  Pet., ¶¶ 67-68.

> **B.**     **Plaintiffs Failed to Exhaust Their Administrative Remedies**

As the D.C. Circuit has recognized, "FIRREA makes participation in the administrative

claims review process mandatory for all parties asserting claims against failed institutions,' and

'where a claimant has . . . failed to initiate an administrative claim within the filing period, the

claimant necessarily forfeits any right to pursue a claim against the failed institution's assets in

any court.'"  *Freeman*, 56 F.3d at 1400 (citation omitted).

Courts applying this exhaustion rule have recognized that a claimant waives a potential

claim against the FDIC as receiver by failing to include that claim in its receivership proof of

claim, even where an otherwise timely claim has been filed.  The effect is to deny the court

jurisdiction over those claims in subsequent litigation.  *See McGlothin v. R.T.C.*, 913 F. Supp. 15,

18-19 (D.D.C. 1996) (barring fraud action where claimant failed to include fraud claim in proof

of claim asserting negligence and breach of contract); *Aliaf v. F.D.I.C.*, 879 F. Supp. 515, 518

(E.D. Pa. 1995) ("Giving notice of a breach of contract claim does not give notice of a fraud

claim"); *Brown Leasing Co.* v. *F.D.I.C.*, 833 F. Supp. 672, 675-76 (N.D. Ill. 1993) (dismissing

conversion and breach of contract claims not specified in proof of claim), *aff'd,* 42 F.3d 1112

(7th Cir. 1994); *Coleman* v. *F.D.I.C.*, 826 F. Supp. 31, 32 (D. Mass. 1993) (dismissing claims

because court "has no jurisdiction over claims and theories of recovery" not presented in the

administrative claim process); *Lanigan v. R.T.C.*, No. 91 C 7216, 1993 WL 189884, at *3 (N.D.

Ill. June 2, 1993) (dismissing claim for lack of subject matter jurisdiction "[s]ince plaintiff did

nothing in his proof of claim to alert the RTC to the retaliatory discharge claim [], plaintiff did

not fairly present that claim to the RTC and has therefore not exhausted his administrative

remedies as to that portion of the claim").

In this case, plaintiffs do not allege that they pursued the claims asserted in their petition

through the receivership claims process.  To the contrary, plaintiffs assert that they "did file

timely proofs of claims on WMB's bond obligations with the FDIC," Pl. Mem. at 23, but they do

not assert that the claims they are now seeking to litigate were included in those proofs of claim.

As a result, plaintiffs did not exhaust the receivership claims process with respect to such claims

and those claims have been waived.[4]

Nor are plaintiffs excused based on their argument that the FDIC-Receiver "failed to give

statutorily required notice and affirmatively elected to waive any FIRREA claims administration

process for plaintiffs' claims against JPMC."  Pl. Mem. at 24.  As the D.C. Circuit observed in

*Freeman*, section 1821(d) does not "provide for a waiver or exception" to the exhaustion

requirement *even* where the FDIC failed to mail the notice to creditors that is required under 12

U.S.C. § 1821(d)(3)(C) (which is not the case here).  *Freeman*, 56 F.3d at 1402 (collecting

cases).

> "The *only* statutorily specified exemption from the strict requirements of
> the administrative claims process is provided 'if the claimant did not
> receive *notice of the appointment of the receiver* in time to file . . . [a]
> claim, 12 U.S.C. § 1821(d)(5)(C), and even in that case the only

---

[4] The FDIC-Receiver argued in its opening memorandum that "[p]laintiffs never filed a receivership claim with the FDIC-Receiver *for the claims at issue* and consequently failed to exhaust their administrative remedies."  FDIC-Receiver Mem. at 2 (emphasis added) (quoted in Pl. Mem. at 23 n.28).  Even while attacking the FDIC-Receiver for "misstat[ing] the facts," Pl. Mem. at 23, plaintiffs do not deny that this assertion is true.  Nor do plaintiffs dispute that they have never brought an action pursuant to 12 U.S.C. § 1821(d)(6)(A) with respect to their receivership claims.  These are the points that the FDIC-Receiver intended to make, rather than the broader assertion that plaintiffs had filed no proof of claim whatsoever.  *See* FDIC-Receiver Mem. at 10 (plaintiffs' claims barred "by plaintiffs' admitted failure to pursue their claims through that procedure").

> consequence is that the FDIC 'may' consider a late-filed claim, provided
> the claim is filed 'in time to permit payment."

*Freeman*, 56 F.3d at 1402 (emphasis added in *Freeman*) (quoting *Meliezer v. R.T.C.*, 952 F.2d

879, 882 (5th Cir. 1992) (finding no statutory basis for dispensing with the jurisdictional bar

even in light of FDIC's failure to mail bar date notice)); *see also Bueford v. R.T.C.*, 991 F.2d

481, 485 (8th Cir. 1993) (RTC was not estopped from raising failure to exhaust remedies even

where it had participated in litigation on the underlying claim); *Walker v. F.D.I.C.*, No. 08-6037,

2009 WL 5216980 (D.N.J. Dec 29, 2009) (declining to infer nonstatutory exception to

exhaustion requirement for proof of claim filed after bar date).   In this case, however, plaintiffs

do not dispute that they had notice of the appointment of the FDIC-Receiver.   To the contrary,

they assert strenuously that they timely filed receivership claims, even while not contending that

those claims included the claims at issue here.

Plaintiffs' "waiver" argument is equally unavailing.   They point to a December 10, 2008

"Notice to Creditor – Proof of Claim" which purportedly informs potential claimants that "the

records of the Failed Institution (or information that has come to the attention of the Receiver)

indicate that you may have a claim against the Failed Institution.   **If, in fact, you do not have a

claim against the Failed Institution, please disregard this notice.**"   Pl. Mem. at 25 (emphasis

in original).   According to plaintiffs, the notice was misleading because it only informed them to

file claims "against the Failed Institution."

Courts applying the jurisdictional bar have refused to engage in such wordplay, however.

In *Tri-State Hotels, Inc. v. F.D.I.C.*, 79 F.3d 707 (8th Cir. 1996), for example, the FDIC stated

that it would not mail notice to Tri-State because it did not consider Tri-State to be a creditor or

claimant, but it never stated that it believed that the jurisdictional bar did not apply.   The court

found that Tri-State's misinterpretation of the FDIC's statement did not affirmatively mislead,

and that "FDIC's failure to provide proper notice 'does not relieve the claimant of the obligation to exhaust administrative remedies, because the statute does not provide for waiver or exception under those circumstances.'" *Id.* at 715 (quoting *Freeman*, 56 F.3d at 1402).

The two cases cited by plaintiffs, *In re Purcell* and *Wilson v. F.D.I.C.*, bear no similarity to this one. In *Purcell*, the court took issue with the fact that the FDIC had not apparently sent the debtor a notice of any kind. This was a fact relied upon by the bankruptcy court in reaching its conclusion that the jurisdictional bar did not extend to claims of debtors of a failed bank, as opposed to its creditors, 141 B.R. 480, 484 (Bankr. D.Vt. 1992), an interpretation of the statute that later was expressly rejected by the D.C. Circuit in *Freeman* along with other courts. *See Freeman*, 56 F.3d at 1402. In *Wilson*, a *pro se* plaintiff who was 92 years old had not filed a receivership claim because an FDIC attorney had sent a letter 30 days before the claims bar date asserting that the court lacked jurisdiction over his lawsuit. The court assumed that Wilson understood that letter to mean his claim had been considered and rejected. Considering the circumstances, the court reasoned that:

> Substantial litigants with cautious counsel who consider the legislation at least ambiguous will file administrative, bureaucratic claims. But the unwary *pro se* litigant may not realize the significance of the failure to make the administrative filing or may conclude that the claim has been formalized in the lawsuit and thus the administrative filing is inapplicable to it.

*Wilson*, 827 F. Supp. 120, 123 (E.D.N.Y. 1993). The same cannot be said of the notice here, or the plaintiffs here, who are sophisticated business entities represented by counsel.

Finally, plaintiffs' reliance on a May 26, 2009 letter from the FDIC is entirely misplaced. In that letter, the FDIC stated, with respect to plaintiffs' holdings of WMB bonds, that "[t]he FDIC recognizes these debt instruments as legitimate liabilities of the receivership, **and any such bonds will not require the need to prove that a claim has been filed of record.**" Pl.

Mem. at 27 (emphasis in original).  This letter was sent more than three months after plaintiffs

filed their state court petition against JPMC, and nearly six months after the December 30, 2008

bar date for the WMB receivership, and plaintiffs cannot legitimately contend that it misled them

in any way in determining which claims to assert in their proof of claim.

  C.  **Receipt of Receivership Certificates Represents**
     **Payment in Full for Plaintiffs' WMB Bonds**

  Plaintiffs do not contest that the FDIC will issue receivership certificates for their

holdings of WMB bonds, whether or not they filed proofs of claims for those interests.  Pl. Mem.

at 27, 28.  As a matter of law, this represents payment in full for those interests.  *See* FDIC-

Receiver Mem. at 14-15 (citing 12 U.S.C. § 1821(i)(2)) (collecting cases).  Plaintiffs make no

attempt to distinguish this controlling authority.  Instead, they merely advance the *ipse dixit*

assertion that "issuance of receivership certificates is irrelevant to Plaintiffs' lawsuit," which is

"wholly outside the scope of FIRREA . . ."  Pl. Mem. at 28.  For the reasons already discussed,

this assertion is mistaken.

  D.  **Application of the Jurisdictional Bar In Accordance With Its**
     **Literal Terms Will Not Deprive Plaintiffs of Due Process**

  Plaintiffs will not suffer any deprivation of due process as the result of application of the

jurisdictional bar in the manner advocated by the FDIC-Receiver.  Plaintiffs acknowledge that

they were aware of the receivership claims procedure.  Indeed, they filed claims pursuant to that

procedure.  Further, under 12 U.S.C. § 1821(d), plaintiffs were provided a process to seek a

determination of their claims, had they availed themselves of it, and if those claims had been

included in their proofs of claim and later disallowed, they would have had a statutory right to

bring an action in federal court for a judicial determination of those claims.  12 U.S.C.

§ 1821(d)(6)(A).

The Due Process clause requires no more.  *See Nat'l Union*, 28 F.3d at 389-90; *see also Freeman*, 56 F.3d at 1403; *Rosa*, 938 F.2d at 397; *accord Nat'l Trust for Historic Preservation v. F.D.I.C.*, 21 F.3d 469, 472 (D.C. Cir. 1994) (application of 12 U.S.C. § 1821(j), which prohibits injunctions that restrain or affect the exercise of the FDIC's powers as conservator or receiver, does not violate due process where claims for  FDIC's unlawful actions outside scope of its authority can be brought through administrative procedures of section 1821(d)) (Wald, J. concurring).

Nor will application of the jurisdictional bar here grant immunity from suit to JPMC or sweep in every claim asserted in the WMI chapter 11 case or other holding company bankruptcies.  Plaintiffs' alleged harm rests entirely on the alleged lost value of their holdings of WMB bonds and their common stock and bonds issued by WMI.  With respect to the WMB bonds, those claims have been satisfied in full through receivership certificates and are subject to the jurisdictional bar both because the claims asserted in the petition against JPMC "seek[] a determination of rights with respect to, the assets of" WMB and "relat[e] to any act or omission of" the FDIC-Receiver as WMB's receiver.

As for plaintiffs' claims against JPMC seeking recovery for the lost value of their WMI securities, however, such claims are only subject to the jurisdictional bar to the extent that they "relat[e] to any act or omission of the" FDIC-Receiver.  *See* FDIC-Receiver Mem. at 2.  As the FDIC-Receiver argued in its opening memorandum, plaintiffs' own allegations demonstrate that such alleged acts or omissions of the FDIC-Receiver are "a necessary link in a chain of causation leading to plaintiffs' alleged harm" as to each of their three claims against JPMC.  *Id.* at 10. Application of the jurisdictional bar in such circumstances does not deprive plaintiffs of any

remedy or impinge on the bankruptcy court's jurisdiction over claims against the bankrupt

holding company.

## II.      PLAINTIFFS' FAILURE TO ALLEGE ACTIONABLE CAUSATION ALSO REQUIRES DISMISSAL

Plaintiffs admit that WMB was closed by order of the Office of Thrift Supervision (the

"OTS"), but they argue that under Texas law this intervening event does not defeat their claims

against JPMC.  Even the authority cited in support of this argument is to the contrary, however.

According to plaintiffs, in Texas "'[p]roximate cause' means that cause which in a natural and

continuous sequence, *unbroken by any new and independent cause*, produces an event, and

without which such event would not have occurred.'"  Pl. Mem. at 29 (quoting *Texas Pattern

Jury Charges, General Negligence and Intention[al] Personal Torts*, 3.1, State Bar of Texas

(Austin 2008)).  "New and independent cause" is in turn defined as the act of a "separate and

independent agency . . . that destroys the causal connection . . . and thereby becomes the

immediate cause of such occurrence."  *Id.*

Nothing about the Texas pattern jury instruction relied upon by plaintiffs contradicts the

conclusion reached by the Eleventh Circuit in a strikingly similar lawsuit against an assuming

bank that the discretionary actions of a federal bank regulator in closing a bank precluded the

plaintiffs' cause of action for lack of causation.  *See Brandt v. First Union Corp. (In re Southeast

Banking Corp.)*, 93 F.3d 750 (11th Cir. 1996) (*per curiam*).

In *Brandt*, the intervening event was an order of the Office of the Comptroller of the

Currency closing the failed bank, which the plaintiff there alleged was "precipitated by First

Union's disclosures of confidential information to the federal regulators."  *Id.* at 751.  Here, the

intervening event was the OTS order closing WMB, which plaintiffs allege was precipitated by

JPMC's use of its "insider status" and its breach of its own alleged confidentiality agreement.  In

both cases, the plaintiffs were "attempting to do what [they] otherwise could not do, sue for

[their] damages as a result of the government's alleged improper closure" of a failed bank.  *Id.* at

751 Just as in *Brandt*, plaintiffs' claims against the assuming bank here must be dismissed for

this independent reason.

## **<u>CONCLUSION</u>**

For the reasons set forth above, and those set forth in the FDIC-Receiver's opening brief,

the FDIC-Receiver respectfully requests that the plaintiffs' petition be dismissed in its entirety

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c).

Dated:  Washington, D.C.                          Respectfully submitted,
        January 21, 2010


                                                   /s/ David Clarke, Jr.
                                                  David Clarke, Jr. (D.C. Bar. No. 396002)
                                                  david.clarke@dlapiper.com
                                                  Deana L. Cairo (D.C. Bar No. 469628)
                                                  deana.cairo@dlapiper.com
                                                  DLA Piper LLP (US)
                                                  500 8th Street, N.W.
                                                  Washington, D.C.  20004
                                                  Tel.:  (202) 799-4000
                                                  Fax:  (202) 799-5000

                                                          - and -

                                                  John J. Clarke, Jr. (admitted *pro hac vice*)
                                                  john.clarke@dlapiper.com
                                                  Sonal Patel
                                                  DLA Piper LLP (US)
                                                  1251 Avenue of the Americas
                                                  New York, NY 10020
                                                  Tel.:  (212) 335-4500
                                                  Fax:  (212) 335-4501

                                                  Attorneys for the
                                                    Federal Deposit Insurance Corporation,
                                                    as Receiver for Washington Mutual Bank

**CERTIFICATE OF SERVICE**

The undersigned attorney for the FDIC-Receiver certifies that on this 21st day of January

2010, he caused a copy of the foregoing document to be filed via ECF which will cause

electronic notice of its filing to be served on all parties who have appeared in this action.


  /s/    David Clarke, Jr.                
              David Clarke, Jr.