UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

AMERICAN NATIONAL
INSURANCE COMPANY, *et al.*,

Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, as receiver for
Washington Mutual Bank, Henderson,
Nevada, *et al.*,

Defendants.

Case No. 1:09-cv-01743 (RMC)

---

**REPLY MEMORANDUM IN FURTHER SUPPORT
OF DEFENDANTS JPMORGAN CHASE & CO. AND
JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS**

Bruce W. Hickey (D.C. Bar No. 479036)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 956-7500
Facsimile:  (202) 293-6330

Bruce E. Clark (USDC Bar No. D00144)
Robert A. Sacks (admitted *pro hac vice*)
Stacey R. Friedman (admitted *pro hac vice*)
M. David Possick (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for Defendants JPMorgan Chase & Co.
and JPMorgan Chase Bank, N.A.*

**TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES ..................................................................... ii

PRELIMINARY STATEMENT .................................................................1

ARGUMENT ............................................................................................2

I.      THE ANICO WMI BONDHOLDERS AND ANICO WMI
        STOCKHOLDERS LACK STANDING TO PURSUE THEIR
        CLAIMS. .......................................................................................2

        A.      Because the ANICO WMI Bondholders and ANICO WMI
                Stockholders Lack Standing, Dismissal (Not Remand) is
                Required...........................................................................3

        B.      The ANICO WMI Bondholders' Claims Belong to WMI's
                Bankruptcy Estate and Must Be Pursued, If At All, By WMI...............5

        C.      Plaintiffs Without Standing Cannot Pursue Claims Simply
                Because Plaintiffs With Standing Are Doing So. .................7

II.     ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE THEY HAVE
        NOT EXHAUSTED THEIR ADMINISTRATIVE REMEDIES
        UNDER FIRREA .........................................................................8

        A.      FIRREA Applies to Plaintiffs' Claims. .................................8

        B.      Plaintiffs Have Failed to Exhaust Their Administrative
                Remedies...........................................................................13

III.    EACH OF PLAINTIFFS' CLAIMS FAILS AS A MATTER OF LAW. ........15

        A.      Plaintiffs' Breach of Confidentiality Agreement Claim Fails as
                a Matter of Law..................................................................15

                1.      Plaintiffs' Breach of Confidentiality Agreement Claim
                        Fails Because Plaintiffs are Not Third-Party
                        Beneficiaries. ..........................................................15

                2.      EESA bars Plaintiffs' breach of confidentiality
                        agreement claim........................................................17

        B.      Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law. ..........18

        C.      Plaintiffs' Tortious Interference Claim Fails as a Matter of Law........20

IV.     PLAINTIFFS' REQUEST FOR LEAVE TO AMEND SHOULD BE
        DENIED...............................................................................24

CONCLUSION ................................................................................................................. 25

Appendix A ............................................................................................................... A-1

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*Adair* v. *Lease Partners, Inc.*,
    587 F.3d 238 (5th Cir. 2009) ...............................................................3

*\* Air Atlanta Aero Eng'g Ltd.* v. *SP Aircraft Owner I, LLC*,
    637 F. Supp. 2d 185 (S.D.N.Y. 2009)...........................................15–16

*Albany Apts. Tenants' Ass'n* v. *Veneman*,
    No. 01-1976, 2003 U.S. Dist. LEXIS 3720 (D. Minn. Mar. 11, 2003) ...............7–8

*Aljaf Assocs. Ltd.* v. *FDIC*,
    879 F. Supp. 515 (E.D. Pa. 1995) .......................................................13

*In re Allen*,
    179 B.R. 818 (Bankr. E.D. Tex. 1995) .................................................4

*Ambase Corp.* v. *United States*,
    61 Fed. Cl. 794 (Fed. Cl. 2004) ....................................................... A-1

*Am. Chiropractic Ass'n* v. *Trigon Healthcare, Inc.*,
    151 F. Supp. 2d 723 (W.D. Va. 2001) ..................................................8

*Andrews* v. *Am. Nat'l Red Cross*,
    176 F. Supp. 2d 673 (W.D. Tex. 2001),
    *aff'd*, 44 F. App'x 651 (2002)............................................................23

*\* Ashcroft* v. *Iqbal*,
    129 S. Ct. 1937 (2009)................................................................20–21

*Auction Co. of Am.* v. *FDIC*,
    141 F.3d 1198 (D.C. Cir. 1998)....................................................10–11

*In re Bailey*,
    306 B.R. 391 (Bankr. D.D.C. 2004) .....................................................4

*Bank One, Tex., N.A.* v. *Elms*,
    764 F. Supp. 85 (N.D. Tex. 1991) ................................................... A-1

*\* Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007)..........................................................................20

*Braden* v. *Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ...............................................................................21

*Brady Dev. Co.* v. *RTC.*,
  14 F.3d 998 (10th Cir. 1994) ...............................................................................12

*Brown Leasing Co.* v. *FDIC*,
  833 F. Supp. 672 (N.D. Ill. 1993) ........................................................................14

*Capitol Leasing Co.* v. *FDIC*,
  999 F.2d 188 (7th Cir. 1993) ...............................................................................14

*Capitol Med. Ctr., LLC* v. *Amerigroup Md., Inc.*,
  No. 09-1084, 2010 U.S. Dist. LEXIS 135 (D.D.C. Jan. 4, 2010) .........................15

*City of N.Y.* v. *FDIC*,
  40 F. Supp. 2d 153 (S.D.N.Y. 1999) .....................................................................14

*Cole* v. *Metro. Life Ins. Co.*,
  708 N.Y.S.2d 789 (N.Y. App. Div. 2000) .............................................................16

*Coleman* v. *FDIC*,
  826 F. Supp. 31 (D. Mass. 1993) ..........................................................................14

*Dew* v. *Crown Derrick Erectors, Inc.*,
  208 S.W.3d 448 (Tex. 2006).................................................................................22

*diSibio* v. *Mission Nat'l Bank*,
  127 F. App'x 950 (9th Cir. 2005) .........................................................................10

*Doe* v. *Islamic Salvation Front*,
  257 F. Supp. 2d 115 (D.D.C. 2003) ........................................................................8

*Elemary* v. *Philipp Holzmann A.G.*,
  533 F. Supp. 2d 144 (D.D.C. 2008) ......................................................................16

*FDIC* v. *Shain, Schaffer & Rafanello*,
  944 F.2d 129 (3d Cir. 1991).................................................................................12

*Foley* v. *Sw. Tex. HMO, Inc.*,
  226 F. Supp. 2d 886 (E.D. Tex. 2002) ..................................................................19

* *Freeman* v. *FDIC*,
  56 F.3d 1394 (D.C. Cir. 1995) ....................................................... 10–11, 14, A-2

*Gen. Bldg. Contractors Ass'n, Inc.* v. *Pennsylvania*,
  458 U.S. 375 (1982)................................................................................................7

-iv-

*Hancock* v. *Chi. Title Ins. Co.*,
   635 F. Supp. 2d 539 (N.D. Tex. 2009) .................................................................19

*Heaton* v. *Monogram Credit Card Bank of Ga.*,
   297 F.3d 416 (5th Cir. 2002) ................................................................................3

*Henrichs* v. *Valley View Dev.*,
   474 F.3d 609 (9th Cir. 2007) ............................................................................ A-1

*Hickey* v. *NCNB Tex. Nat'l Bank*,
   763 F. Supp. 896 (N.D. Tex. 1991) .................................................................. A-1

*Hoxeng* v. *Topeka Broadcomm, Inc.*,
   911 F. Supp. 1323 (D. Kan. 1996) .................................................................... A-1

*Hudson United Bank* v. *Chase Manhattan Bank of Conn., N.A.*,
   43 F.3d 843 (3d Cir. 1994) ................................................................................ A-1

*Int'l Primate Protection League* v. *Adm'rs of Tulane Educ. Fund*,
   500 U.S. 72 (1991) ............................................................................................4–5

*Jones* v. *Town of Milo*,
   No. 09-080, 2009 U.S. Dist. LEXIS 49311 (D. Me. June 5, 2009) ......................21

*Jupiter Enters., Inc.* v. *Harrison*,
   No. 05-00-1914, 2002 Tex. App. LEXIS 1617 (Tex. App. Mar. 1, 2002) ............18

*Kansas* v. *United States*,
   797 F. Supp. 1042 (D.D.C. 1992) ........................................................................7

*LaChance* v. *Hollenbeck*,
   695 S.W.2d 618 (Tex. App. 1985) ......................................................................19

*Me. Ass'n of Interdependent Neighborhoods* v.
   *Comm'r, Me. Dep't of Human Servs.*,
   876 F.2d 1051 (1st Cir. 1989) ..............................................................................5

*McGlothlin* v. *RTC*,
   913 F. Supp. 15 (D.D.C. 1996), *aff'd*, 111 F.3d 963 (1997)................................13

*In re Mele*,
   127 B.R. 82 (D.D.C. 1991) ...................................................................................4

*Miller* v. *Pac. Shore Funding*,
   287 B.R. 47 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (2004) ...................................4

*Oceanic Exploration Co.* v. *ConocoPhillips*,
     No. 07-815, 2008 U.S. Dist. LEXIS 31509 (S.D. Tex. Apr. 16, 2008) ........... 23–24

*Oxford* v. *Williams Cos.*,
     137 F. Supp. 2d 756 (E.D. Tex. 2001) ................................................................. 19

*Palmer* v. *GMAC Commer. Mortg.*,
     628 F. Supp. 2d 186 (D.D.C. 2009) ..................................................................... 16

\* *Phan Son Van* v. *Peña*,
     990 S.W.2d 751 (Tex. 1999) ........................................................................... 22–24

*Piccoli A/S* v. *Calvin Klein Jeanswear Co.*,
     19 F. Supp. 2d 157 (S.D.N.Y. 1998) .................................................................... 16

*Pichardo* v. *Big Diamond, Inc.*,
     215 S.W.3d 497 (Tex. App. 2007) ........................................................................ 23

*Piekarski* v. *Home Owners Sav. Bank*,
     743 F. Supp. 38 (D.D.C. 1990) .............................................................................. 4

*Ponce* v. *Billington*,
     652 F. Supp. 2d 71 (D.D.C. 2009) ....................................................................... 25

*PT. Bank Mizuho Indon.* v. *PT. Indah Kiat Pulp & Paper Co.*,
     808 N.Y.S.2d 72 (N.Y. App. Div 2006) ............................................................... 16

*Roark & Hardee LP* v. *City of Austin*,
     522 F.3d 533 (5th Cir. 2008) ................................................................................. 7

*Rosa* v. *RTC*,
     938 F.2d 383 (3d Cir. 1991) ............................................................................... A-1

*RTC* v. *Northpark Joint Venture*,
     958 F.2d 1313 (5th Cir. 1992) ............................................................................. 16

*Runaj* v. *Wells Fargo Bank*,
     __ F. Supp. 2d. __, 2009 U.S. Dist. LEXIS 91134 (S.D. Cal. 2009) ...................... 4

*Sazerac Co.* v. *Falk*,
     861 F. Supp. 253 (S.D.N.Y. 1994) ...................................................................... 16

*In re Schimmelpenninck*,
     183 F.3d 347 (5th Cir. 1999) ................................................................................. 5

\* *In re Seven Seas Petrol., Inc.*,
     522 F.3d 575 (5th Cir. 2008) .............................................................................. 6–7

\* *In re Se. Banking Corp.*,
    93 F.3d 750 (11th Cir. 1996) ...............................................................................24

*In re Sunshine Precious Metals, Inc.*,
    157 B.R. 159 (Bankr. D. Id. 1993)........................................................................4

*Taylor* v. *Sw. Bell Tel. Co.*,
    483 S.W.2d 330 (Tex. Civ. App. 1972) ...............................................................23

*Team Bank* v. *Barfield*,
    145 F.R.D. 69 (N.D. Tex. 1992) ........................................................................ A-1

\* *Vill. of Oakwood* v. *State Bank & Trust Co.*,
    519 F. Supp. 2d 730 (N.D. Ohio 2007), *aff'd*, 539 F.3d 373 (6th Cir. 2008) ........12

\* *Wachovia Corp.* v. *Citigroup, Inc.*,
    634 F. Supp. 2d 445 (S.D.N.Y. 2009).................................................................18

*Walker* v. *FDIC*,
    No. 08-6037, 2009 U.S. Dist. LEXIS 121076 (D.N.J. Dec. 29, 2009).................14

*Watt* v. *Energy Action Educ. Found.*,
    454 U.S. 151 (1981).............................................................................................7

*In re Wilson*,
    355 B.R. 600 (Bankr. S.D. Tex. 2006) ...............................................................18

*Wood* v. *Gateway, Inc.*,
    No. 03-007, 2003 U.S. Dist. LEXIS 22576 (N.D. Tex. Dec. 12, 2003) ...............19

*Zawrotny* v. *FDIC*,
    895 F. Supp. 16 (D. Mass. 1995) ........................................................................15

### STATUTES & RULES

\* 12 U.S.C. § 1821(d) ........................................................................... *passim*

\* 12 U.S.C. § 1823(c) ...................................................................................17

28 U.S.C. § 2680(a) .....................................................................................24

\* Emergency Economic Stabilization Act of 2008,
    Pub. L. No. 110-343, 122 Stat. 3765 (2008) ("EESA")............................2, 17–18

\* Financial Institutions Reform, Recovery and Enforcement Act of 1989,
    Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA") ............................... *passim*

The JPMC Defendants respectfully submit this Reply Memorandum in further support of their Motion to Dismiss Plaintiffs' Complaint for lack of standing, for failure to exhaust administrative remedies and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b).[1]

## PRELIMINARY STATEMENT

Plaintiffs' opposition arguments amount to efforts to ignore, distort and supplement the allegations before the Court which, when examined, do not alter the conclusion that the entire Complaint should be dismissed for the following reasons:

*First*, the ANICO WMI Stockholders do not have standing to pursue their classically derivative claims and the ANICO WMI Bondholders do not have standing because their claims, as alleged, are based on indirect harm to their investments, derivative of harm purportedly suffered by WMI.  Plaintiffs cannot establish standing by simply ignoring these allegations.  And there is no exception to the general standing rules that apply to Plaintiffs' claims.  In the absence of standing, dismissal of Plaintiffs' claims, rather than remand, is required.

*Second*, Plaintiffs' claims directly implicate and are predicated on allegations of conduct by JPMC and the FDIC as receiver for WMB, including the sale of WMB's assets by the FDIC pursuant to the terms of the P&A Agreement.  Despite Plaintiffs' attempt to excise and alter the allegations in the Complaint,

---

[1] Capitalized terms not defined herein have the same meaning as set forth in the JPMC Defendants' Memorandum of Points and Authorities in Support of their Motion to Dismiss.  (Docket No. 90 ("JPMC's Motion to Dismiss").)

FIRREA applies to Plaintiffs' claims, and their failure to exhaust their administrative remedies requires dismissal of the Complaint.

*Third*, each of Plaintiffs' three causes of action should be dismissed for independent reasons:

(A) Plaintiffs' claim that the JPMC Defendants breached a confidentiality agreement between JPMC & Co. and WMI must be dismissed because Plaintiffs are not third-party beneficiaries of the confidentiality agreement and, in any event, their claim is largely barred by EESA.  Plaintiffs' request for discovery to fish for alternative grounds for recovery should be denied.

(B) Plaintiffs' unjust enrichment claim fails as a matter of law because Plaintiffs cannot satisfy the elements of the cause of action under Texas law.

(C) Plaintiffs' tortious interference claim must be dismissed because the global financial crisis is an "obvious alternative explanation" for Plaintiffs' investment losses that cannot be ignored.  That and other superseding causes, including the federal government's decision to close WMB, break any causal connection between JPMC's alleged misconduct and Plaintiffs' alleged harm, precluding Plaintiffs' ability to recover for any harm that flows from these events.

<u>**ARGUMENT**</u>

## I.   THE ANICO WMI BONDHOLDERS AND ANICO WMI STOCKHOLDERS LACK STANDING TO PURSUE THEIR CLAIMS.

JPMC's Motion to Dismiss (pages 10–16) demonstrates that the ANICO WMI Stockholders and Bondholders seek to pursue claims that do not belong to them and, therefore, that those claims should be dismissed.  In response, Plaintiffs

assert that:  (a) the case should be remanded rather than dismissed; (b) the ANICO WMI Bondholders' claims are direct and do not belong to WMI's bankruptcy estate and therefore they have standing; and (c) JPMC conceded standing to some Plaintiffs and therefore all Plaintiffs can pursue their claims.  Plaintiffs are wrong.[2]

A.    **Because the ANICO WMI Bondholders and ANICO WMI Stockholders Lack Standing, Dismissal (Not Remand) is Required.**

Facing dismissal of the claims of the ANICO WMI Stockholders and Bondholders, Plaintiffs offer two reasons why this Court should remand the case to state court rather than dismiss these Plaintiffs from the action.

*First*, Plaintiffs suggest that, because this Court lacks subject matter jurisdiction, the case should be remanded to Texas state court to assess standing unless remand is "futile."  (Pls.' Opp'n at 12; *see also id*. at 5–7.)  This argument provides no support to Plaintiffs.  As set forth in JPMC's Opposition to Plaintiffs' Motion to Dismiss the FDIC (Docket No. 93 ("JPMC's Opposition") at 6–25), this Court has unquestionable subject matter jurisdiction.  In particular, because the FDIC is a proper intervenor, this Court has subject matter jurisdiction "over suits [such as this one] whose causes of action may otherwise largely depend on state law and which may not otherwise be subject to federal-question jurisdiction."  *Adair* v. *Lease Partners, Inc.*, 587 F.3d 238, 242 (5th Cir. 2009).  Once subject matter jurisdiction is established, this case cannot be remanded to state court.  *See Heaton* v. *Monogram*

---

[2]     Plaintiffs do not offer any rebuttal to JPMC's argument that the ANICO WMI Stockholders' claims are classically derivative and could be asserted, if at all, only by WMI under Washington law.  (JPMC's Mot. to Dismiss at 13–16.)  The ANICO WMI Stockholders therefore should be dismissed with prejudice and without remand.

*Credit Card Bank of Ga.*, 297 F.3d 416, 421 n.4 (5th Cir. 2002); *Piekarski* v. *Home Owners Sav. Bank*, 743 F. Supp. 38, 42 (D.D.C. 1990).

*Second*, Plaintiffs assert that "if the Court finds that the Plaintiffs lack standing, then the Court should . . . remand Plaintiffs' lawsuit" (Pls.' Opp'n at 14), in order for "a Texas court [to] determine whether the claims are sufficient under Texas' standing requirements" (*id.* at 2). Plaintiffs' lack of standing requires dismissal, not remand. The ANICO WMI Stockholders and Bondholders lack standing, not because of their inability to satisfy federal standing requirements, but because they are trying to assert claims that they do not own.[3] Under these circumstances, remand is unavailable and dismissal is required. *See, e.g.*, *In re Allen*, 179 B.R. 818 (Bankr. E.D. Tex. 1995); *Miller* v. *Pac. Shore Funding*, 287 B.R. 47, 50–52 (D. Md. 2002), *aff'd*, 92 F. App'x 933, 937 (2004); *In re Sunshine Precious Metals, Inc.*, 157 B.R. 159, 164–65 (Bankr. D. Id. 1993).[4]

---

[3] A finding that the ANICO WMI Bondholders' claims belong to WMI's bankruptcy estate would create a separate independent basis for subject matter jurisdiction in bankruptcy court and preclude remand in favor of dismissal or transfer. *See, e.g.*, *In re Seven Seas Petrol., Inc.*, 522 F.3d 575, 582 n.4, 589 (5th Cir. 2008). Section 541 governs "[w]hether a particular *state-law claim* belongs to the bankruptcy estate" and thus governs whether Plaintiffs have standing to prosecute their claims in any forum, despite the fact that Plaintiffs filed this action in state court. *See id.* at 584 (emphasis added). The only way to avoid dismissal of these claims is for WMI to "be substituted as the real party-in-interest . . . ." *In re Bailey*, 306 B.R. 391, 393 (Bankr. D.D.C. 2004); *see also Runaj* v. *Wells Fargo Bank*, __ F. Supp. 2d. __, 2009 U.S. Dist. LEXIS 91134, at *20–22 (S.D. Cal. 2009) (same); *In re Mele*, 127 B.R. 82, 87 (D.D.C. 1991).

[4] Plaintiffs cite two cases to support the notion that the Court should remand to honor the possibility that a Texas state court would allow them to pursue claims they do not own. But those cases are irrelevant here. In *International Primate Protection League* v. *Administrators of Tulane Education Fund*, removal had been improper and

### B.   The ANICO WMI Bondholders' Claims Belong to WMI's Bankruptcy Estate and Must Be Pursued, If At All, By WMI.

A well-established body of case law demonstrates that the ANICO WMI Bondholders are creditors of a debtor in Chapter 11 bankruptcy without standing to pursue indirect claims.  (*See* JPMC's Mot. to Dismiss at 10–12.)  Claims such as Plaintiffs' alleging indirect harm to their investments because WMI was allegedly directly harmed (*see*, *e.g.*, Compl. ¶¶ 70–71, 92, 99, 101–02) are exclusively controlled by WMI's bankruptcy estate.

Plaintiffs counter that "[i]t is well established that a trustee has no standing to bring tort claims that belong exclusively to creditors of the bankruptcy estate."  (Pls.' Opp'n at 15.)  Of course a creditor can pursue an "exclusive" *direct* claim.  However, "even if a claim 'belongs to' the creditor, the trustee is the proper party to assert the claim, for the benefit of all creditors, provided the claim *advances a generalized grievance*."  *See In re Schimmelpenninck*, 183 F.3d 347, 359 (5th Cir. 1999) (emphasis added).  As discussed in JPMC's Motion to Dismiss (pages 10–12), the ANICO WMI Bondholder claims are claims based on a generalized grievance that any WMI bondholder could pursue.  The claims therefore are indirect, belong to WMI's estate and should be dismissed for lack of standing.

---

Cont'd

therefore federal "subject matter jurisdiction [wa]s lacking" in the first place.  500 U.S. 72, 89 (1991).  In *Maine Ass'n of Interdependent Neighborhoods* v. *Commissioner, Maine Department of Human Services*, the court held that the plaintiffs lacked constitutional standing to proceed in federal court because of their failure to plead an injury-in-fact.  876 F.2d 1051, 1055 (1st Cir. 1989).

Plaintiffs seek to avoid this result by claiming some "unique" direct injury caused by JPMC.  (Pls.' Opp'n at 2, 14–18 (failing to refer to the Complaint).)  But Plaintiffs' argument is refuted by their Complaint.  The Complaint is devoid of any allegation that JPMC was even aware that Plaintiffs held WMI bonds before this lawsuit, let alone took any deliberate actions aimed at and intended to injure the ANICO Plaintiffs in some unique way different from harm supposedly suffered by other holders of WMI bonds.  On the contrary, as shown in JPMC's Motion to Dismiss (page 11), Plaintiffs' three causes of action each explicitly relies on the alleged harm *directed at WMI* in order to claim that the ANICO WMI Bondholders were thus indirectly harmed.  In fact, the Complaint specifically alleges that the ANICO WMI Bondholders' investments purportedly are now worthless because "WMI as it now exists lacks income-producing assets to meet its contractually mandated obligations to the Plaintiffs who own WMI bonds."  (Compl. ¶ 70.)  Because Plaintiffs are affected solely by WMI's inability to repay its "obligations towards the Plaintiffs" (Pls.' Opp'n at 17), well-established case law requires dismissal of the ANICO WMI Bondholders' claims for lack of standing.

The case on which Plaintiffs principally rely, *In re Seven Seas Petroleum, Inc.*, highlights why Plaintiffs' claims should be dismissed.  522 F.3d 575 (5th Cir. 2008).  The *Seven Seas* plaintiffs alleged misconduct by a third-party tortfeasor directed at the bondholders.  The court held that "the claims allege more than an injury that is merely derivative of an injury to [the debtor]."  *Id*. at 585–86.  In that case, the third party directly "induce[d] the bondholders to purchase or refrain from selling the unsecured notes" creating a "direct injury to the bondholders . . .

independent of any injury to [the debtor]."  *Id*.  The present case, however, is premised on JPMC's alleged plan to bring down WMI that, only as a result, prevented WMI from paying its bond contracts and, as a further result, derivatively harmed creditors.  (*See* Compl. ¶¶ 21, 92, 99; *see also* Pls.' Opp'n at 15–17.)  There are no factual allegations of misconduct by JPMC directed at the ANICO WMI Bondholders.  As a result, consistent with the *Seven Seas* decision, the ANICO WMI Bondholders lack standing to pursue their claims.

C.   **Plaintiffs Without Standing Cannot Pursue Claims Simply Because Plaintiffs With Standing Are Doing So.**

Plaintiffs assert that if the ANICO WMB Bondholders have standing, this "eliminates any objection to . . . standing" because the "presence of one plaintiff with standing is sufficient to satisfy the standing requirement for all plaintiffs."  (Pls.' Opp'n at 3, 18–19.)  Plaintiffs are wrong.  The four cases Plaintiffs rely on stand for the uncontroversial and irrelevant proposition that if a group of plaintiffs sue for *injunctive or declaratory relief* (not money damages), a court would have jurisdiction to reach the merits of the claims without deciding whether each plaintiff had standing. *See Gen. Bldg. Contractors Ass'n, Inc.* v. *Pennsylvania*, 458 U.S. 375 (1982) (injunctive relief); *Watt* v. *Energy Action Educ. Found.*, 454 U.S. 151 (1981) (injunctive and declaratory relief); *Roark & Hardee LP* v. *City of Austin*, 522 F.3d 533 (5th Cir. 2008) (same); *Kansas* v. *United States*, 797 F. Supp. 1042 (D.D.C. 1992) (invalidation of statute); *see also Albany Apts. Tenants' Ass'n* v. *Veneman*, No. 01-1976, 2003 U.S. Dist. LEXIS 3720, at *13 (D. Minn. Mar. 11, 2003) ("Each of the cases cited by [plaintiffs] involved multiple plaintiffs asserting the same claims and

seeking the same declaratory or injunctive relief.").  Here, because Plaintiffs "ask for money damages . . . this [standing] shortcut is not available," and each must "demonstrate that they have standing with respect to these claims for relief."  *Albany Apts.*, 2003 U.S. Dist. LEXIS 3720, at *15; *see also Doe* v. *Islamic Salvation Front*, 257 F. Supp. 2d 115, 119–20 (D.D.C. 2003); *Am. Chiropractic Ass'n* v. *Trigon Healthcare, Inc.*, 151 F. Supp. 2d 723, 729 (W.D. Va. 2001).

## II.    ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE THEY HAVE NOT EXHAUSTED THEIR ADMINISTRATIVE REMEDIES UNDER FIRREA.

Plaintiffs complain mightily that applying the plain language of FIRREA here would stretch the statute unlawfully and unconstitutionally.  But this case falls squarely within FIRREA—which applies to claims against third parties if those claims are "claim[] relating to any act or omission . . . of the [FDIC] as receiver" under Section 1821(d)(13)(d)(ii) of Title 12—and does not present any difficult question as to how far FIRREA might reach had Plaintiffs brought a different Complaint.  (*See* JPMC's Mot. to Dismiss at 7–8, 16–24.)

### A.    FIRREA Applies to Plaintiffs' Claims.

Plaintiffs make four primary arguments about the applicability of FIRREA.  Each is wrong and addressed briefly below given that each is a rehash of arguments Plaintiffs previously made:

*First*, Plaintiffs maintain that FIRREA does not apply to their claims by disavowing that their Complaint is replete with allegations concerning the FDIC's conduct.  (*See*, *e.g*., Pls.' Opp'n at 1–3, 7–8, 22–23; *see also* Pls.' Opp'n to FDIC's Mot. to Dismiss at 12.)  Among the allegations in Plaintiffs' Complaint that "relat[e]

to any act or omission . . . of the [FDIC] as Receiver" and thus fall squarely within

Section 1821(d)(13)(D) of FIRREA are the following:

- "[O]n or about September 4, 2008 . . . JPMC and the FDIC agreed to a plan whereby federal regulators would seize WMB and certain valuable assets would be passed to JPMC, and certain liabilities excluded." (Compl. ¶ 47.)

- The FDIC's bidding process for WMB's assets was conducted in a manner in which "the requirements for a 'conforming bid' had been reached after extensive negotiations between the FDIC and JPMC." (*Id*. ¶ 62 (internal quotation in Complaint).)

- On September 23, 2008, the "FDIC purportedly sought bids from select bidders, including JPMC, for the sale of WMB," yet "an agreement had already been reached at this time between the FDIC and JPMC for the seizure of WMB and the sale of WMB to JPMC." (*Id*. ¶ 62.)

- "On September 25, 2008, after weeks of pressure by [JPMC] upon [the FDIC] and other federal regulators, the FDIC and the [OTS] agreed to [JPMC's] terms. On that day, the OTS seized [WMB], passed the bank to the FDIC as receiver, and the FDIC sold the crown jewels of Washington Mutual to JPMC at a fire sale price." (*Id*. ¶ 21.)

Plaintiffs cannot excise these allegations from the Complaint in an effort to try to

plead around FIRREA.  FIRREA applies to Plaintiffs' claims.

*Second*, Plaintiffs contend that, because they have not pleaded a proper

conspiracy claim against the FDIC, their claims are not governed by FIRREA.  (Pls.'

Opp'n at 3, 7–8, 22–23.)  But no court has construed FIRREA to apply only where a

plaintiff alleges a conspiracy claim against the FDIC under the relevant state law—

and JPMC made no such argument.  Rather, Plaintiffs assert claims against JPMC

based on allegations concerning the FDIC's conduct as receiver in order to make out

claims against JPMC, which places this action within the scope of FIRREA.

*Third*, although Plaintiffs acknowledge the series of decisions holding

that FIRREA applies even when a plaintiff asserts claims against a third party (and

not against the FDIC), they urge this Court to reach a different result, insisting that

their "claims against JPMC rest firmly on detailed allegations of JPMC's wrongdoing

that directly harmed the Plaintiffs, and which occurred before any receivership came

into existence." (Pls.' Opp'n at 23.)[5] Their continued insistence that "the claims of

the Plaintiffs are not based on the actions of the . . . FDIC" (Pls.' Opp'n at 20 n.15),

misses the point made by the Sixth Circuit in *Village of Oakwood* and by other

decisions. FIRREA applies to the claims identified in the statute, regardless of whom

Plaintiffs sue. (JPMC's Mot. to Dismiss at 19, 23–24; JPMC's Opp'n at 11–12;

FDIC Mot. to Dismiss (Docket No. 87-1) at 11–12.)

　　　　　*Fourth*, Plaintiffs wrongly assert that the "binding District of

Columbia authority" of "*Freeman* and *Auction Co.* make clear that FIRREA does not

provide the FDIC jurisdiction over all claims 'related to' the acts of a failed bank or

the FDIC as receiver for such bank." (Pls.' Opp'n at 20–21.) *Freeman* and *Auction

Co.* do not resolve this issue and do not resolve the questions presented in this case

because, among other reasons, neither decision considered whether claims asserted

against a purchaser of assets from the FDIC that relate to the acts of the FDIC were

---

[5]　　　　Plaintiffs try to diffuse the impact of *diSibio* v. *Mission National Bank*, 127 F.
App'x 950 (9th Cir. 2005) by incorrectly asserting that "JPMC failed to cite to a
subsequent (unpublished) revision of the opinion." (Pls.' Opp'n at 20 n.15.) JPMC's
Motion to Dismiss correctly cited the revised version of the court's decision (page 23)
and JPMC's Opposition (page 11) quoted the relevant portion of the revised version
of the court's decision, which emphasized—even more strongly than in its original
opinion—that "[t]he district court properly dismissed [plaintiffs'] claims against [the
purchasing bank] that were based on [the failed bank's] actions . . . because they had
to be raised before the [receiver] before the [plaintiffs] could proceed to federal
[district] court." It seems that Plaintiffs may be confused because, although the
Westlaw citation includes the corrected language, Plaintiffs may have relied on the
Lexis citation, which did not replace the corrected language in the original opinion.

subject to the exhaustion requirement.  *Auction Co.* held that FIRREA applies to claims relating to the FDIC's actions "as receiver *for such institution*" in receivership, but not where "the FDIC did not act as receiver for any particular depository." *Auction Co. of Am.* v. *FDIC*, 141 F.3d 1198, 1200–01 (D.C. Cir. 1998) (emphasis in original).  As discussed in JPMC's Motion to Dismiss (page 17 n.7) and JPMC's Opposition Brief (page 13 n.4), *Auction Co.* did not "attempt to define fully the concept of 'claims' as it appears in subsections (d)(13)(D) and (d)(6) of 12 U.S.C. § 1821." *Auction Co.*, 141 F.3d at 1200.  The court, however, did recognize that the majority approach reads the two provisions "harmonious[ly]" as covering the same claims by "read[ing] (d)(6)(A) broadly." *Id*. at 1201.  *Freeman* v. *FDIC* held that FIRREA's jurisdictional bar "is not limited to claims by creditors, but extends to all claims and actions . . . including debtors' claims."  56 F.3d 1394, 1402 (D.C. Cir. 1995) (internal quotation omitted).  Although the *Freeman* court was only examining the prong of FIRREA's jurisdictional bar that prohibits claims seeking a determination of rights with respect to an asset of a failed bank, the court adhered to the plain language of the statute by finding that FIRREA bars whole categories of claims, regardless of who brings the claims. *Id*. at 1400–02.  In any event, to the extent these decisions are applicable here, they support adherence to the holdings of the Sixth, Ninth and Eleventh Circuits and a ruling that Plaintiffs' claims are covered by FIRREA.  (JPMC's Opp'n at 11–12.)

   In sum, Plaintiffs' Complaint raises precisely the type of claims captured by FIRREA.  Congress enacted FIRREA, not solely to pay valid claims of the receivership, but rather to create "broad revisions in federal banking law to

enhance certain powers of the FDIC and to eliminate impediments to the efficient resolution of failed financial institutions." *FDIC* v. *Shain, Schaffer & Rafanello*, 944 F.2d 129, 131 (3d Cir. 1991).  The statute effects this efficient and exclusive resolution process by, in part, requiring that certain claims (including those alleged here that relate to the acts of the FDIC as WMB's Receiver) be brought within the specified time frame, be brought first to the attention of the receiver, and then pursued thereafter in one of two designated forums after the receiver does not act on or disallows the claim.  The statute provides a "'detailed series of rules under which all claims *involving* an insolvent institution are received and handled,'" including claims against third party purchasers of assets that do not name the FDIC as a defendant or directly seek the receivership's assets.  *Vill. of Oakwood* v. *State Bank & Trust Co.*, 519 F. Supp. 2d 730, 735 (N.D. Ohio 2007) (quoting *Brady Dev. Co.* v. *RTC.*, 14 F.3d 998, 1003 (10th Cir. 1994)), *aff'd*, 539 F.3d 373, 386 (6th Cir. 2008) (emphasis added).  Accordingly, a ruling that Plaintiffs have pleaded themselves into the scope of FIRREA does not mean, as Plaintiffs repeatedly suggest, that every state law claim against a third party purchaser of assets from the receivership is immune from suit. (*See*, *e.g*., Pls.' Opp'n to FDIC's Mot. to Dismiss at 1–2; Pls.' Mot. to Dismiss at 14.) Rather, it is because the Complaint is hopelessly littered with allegations that make the acts of the receiver central to Plaintiffs' claims that Congress required such claims to be funneled through the FIRREA process.  Plaintiffs cannot excise these allegations in an effort to avoid the resolution procedures established by Congress.[6]

---

[6]     Although certain of the cases cited by Plaintiffs delineate certain limits of

**B.      Plaintiffs Have Failed to Exhaust Their Administrative Remedies.**

Although not pleaded in the Complaint, Plaintiffs now assert that they complied with FIRREA's claims procedures or are relieved of compliance because of the FDIC's actions.  (Pls.' Opp'n to FDIC's Mot. to Dismiss at 23–28.)  Neither arguments rescue Plaintiffs' claims.

*First*, Plaintiffs concede that they failed to submit any proof of claim on behalf of the ANICO WMI Bondholders or Stockholders.  Therefore, those claims must be dismissed to the extent that they relate to any act or omission of the FDIC as receiver or seek the assets of the receivership.  (JPMC's Mot. to Dismiss at 16–21.)

*Second*, to the extent that a proof of claim was in fact submitted on behalf of the ANICO WMB Bondholders—although Plaintiffs have not provided a copy—it appears that these Plaintiffs nonetheless failed to exhaust their administrative remedies with respect to the allegations in the Complaint.  Nothing is before the Court to suggest that Plaintiffs preserved any claim for acts or omissions relating to the FDIC's sale of WMB's assets to JPMC.  *See McGlothlin* v. *RTC*, 913 F. Supp. 15, 18 (D.D.C. 1996) (rejecting new claims where "plaintiffs have not submitted any claims to the RTC based on negligence or breach of contract, nor have they submitted claims for the amount of damages they seek in this Court"), *aff'd*, 111 F.3d 963 (D.C. Cir. 1997); *Aljaf Assocs. Ltd.* v. *FDIC*, 879 F. Supp. 515, 518 (E.D. Pa. 1995) ("claim of fraud is separate and distinct from a claim of breach of contract"

---

Cont'd
FIRREA, they range from completely irrelevant to generally supportive of the application of FIRREA in this case.  (*See* Appendix A.)

and therefore "plaintiff failed to comply with the procedures mandated by § 1821(d)"); *Brown Leasing Co.* v. *FDIC*, 833 F. Supp. 672, 675 (N.D. Ill. 1993) (dismissing claims in "amended complaint for failure to exhaust administrative procedures" because the court could not "trace either of these amended claims to any remnants of [the first] complaint, attached as proof of its claim"); *Coleman* v. *FDIC*, 826 F. Supp. 31, 32 (D. Mass. 1993) ("no jurisdiction over [new] claims [where] . . . the Plaintiffs assert entirely new causes of action based on entirely new facts").

   *Third*, there is no basis for the argument (*see* Pls.' Opp'n to FDIC's Mot. to Dismiss at 24–28) that the FDIC waived the FIRREA requirements in its standard letter to bondholders and Plaintiffs cannot blame supposedly confusing notices from the FDIC for their own inaction or inattention. "[T]he FDIC's obligation to give notice to claimants [is not] a prerequisite to a claimant's compliance with FIRREA's mandatory claims process," and therefore the "failure to file a timely claim and therefore, exhaust the administrative claims review process is fatal to Plaintiffs' claims . . . , regardless of the reason for the FDIC's disallowance of the claim." *Walker* v. *FDIC*, No. 08-6037, 2009 U.S. Dist. LEXIS 121076, at *7, 29–30 (D.N.J. Dec. 29, 2009). In fact, "[e]ven if [Plaintiffs] never received the required [FIRREA] notice . . . they were still obliged to exhaust their administrative remedies as a condition of obtaining access to the district court" and "by failing to do so, deprived the court of jurisdiction." *Freeman*, 56 F.3d at 1402; *see also Capitol Leasing Co.* v. *FDIC*, 999 F.2d 188, 193 (7th Cir. 1993); *City of N.Y.* v. *FDIC*, 40 F. Supp. 2d 153, 162 (S.D.N.Y. 1999); *Zawrotny* v. *FDIC*, 895 F. Supp. 16, 21 (D. Mass. 1995).

### III.    EACH OF PLAINTIFFS' CLAIMS FAILS AS A MATTER OF LAW.

####    A.    Plaintiffs' Breach of Confidentiality Agreement Claim Fails as a Matter of Law.

#####        1.    Plaintiffs' Breach of Confidentiality Agreement Claim Fails Because Plaintiffs are Not Third-Party Beneficiaries.

Plaintiffs claim that the JPMC Defendants breached a confidentiality agreement between JPMC & Co. and WMI.  But Plaintiffs cannot establish that they are third-party beneficiaries of the Confidentiality Agreement because under New York law "the language of the contract must '*clearly* evidence an intent to permit enforcement by the third party.'"  *Air Atlanta Aero Eng'g Ltd.* v. *SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 190 (S.D.N.Y. 2009) (emphasis in original and citations omitted).  (*See* JPMC's Mot. to Dismiss at 26–28.)

Although they now have a copy of the operative confidentiality agreement, Plaintiffs ignore the plain language of that agreement and assert that "JPMC fails to provide any basis to conclude that the terms of the confidentiality agreement that existed at times relevant to Plaintiffs' Petition did not create enforceable contract rights for the Plaintiffs."[7]  (Pls.' Opp'n at 34.)  The

---

[7]    Upon learning that the Confidentiality Agreement's terms eliminate this claim, Plaintiffs admit they brought this claim without "hav[ing] seen this document" and therefore seek discovery for "additional documentation relevant to determining the viability of Plaintiffs' claims."  (Pls.' Opp'n at 33–34.)  Plaintiffs' decision to bring a breach of contract claim based on a contract they never saw may raise various concerns, but that decision does not create a right to seek discovery.  A breach of contract claim that is not legally viable must be dismissed.  *See, e.g.*, *Capitol Med. Ctr., LLC* v. *Amerigroup Md., Inc.*, No. 09-1084, 2010 U.S. Dist. LEXIS 135, at *8 (D.D.C. Jan. 4, 2010) (granting motion to dismiss because plaintiffs "cannot overcome the plain language of the contract").  Discovery is not awarded to plaintiffs to fish for a claim where, on the face of the complaint, they have failed to plead a

Confidentiality Agreement could not be any more explicit in disclaiming any third-party beneficiary rights for Plaintiffs:  "This agreement is for the benefit of the Company [WMI] and the Company's Representatives and their respective successors and assigns . . . ."  (JPMC's Mot. to Dismiss at 28 (quoting Hickey Decl. Ex. A § 15).)  Accordingly, as a matter of New York law, Plaintiffs cannot carry their burden of establishing "that the contract was intended for [Plaintiffs'] benefit and . . . that the benefit to [Plaintiffs] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [Plaintiffs] if the benefit is lost."  *Air Atlanta*, 637 F. Supp. 2d at 190 (citation omitted). Plaintiffs' failure to meet this standard requires dismissal of the claim.  *See, e.g.*, *Piccoli A/S* v. *Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 163–64 (S.D.N.Y. 1998) (granting motion to dismiss); *Sazerac Co.* v. *Falk*, 861 F. Supp. 253, 258–59 (S.D.N.Y. 1994) (same); *PT. Bank Mizuho Indon.* v. *PT. Indah Kiat Pulp & Paper Co.*, 808 N.Y.S.2d 72, 73 (N.Y. App. Div 2006) (affirming motion to dismiss); *Cole* v. *Metro. Life Ins. Co.*, 708 N.Y.S.2d 789, 790 (N.Y. App. Div. 2000) (same).[8]

---

Cont'd

viable claim.  *See, e.g.*, *Palmer* v. *GMAC Commer. Mortg.*, 628 F. Supp. 2d 186, 192 (D.D.C. 2009) ("plaintiff cannot survive a motion to dismiss based only on an aspiration that facts supporting a cause of action could surface in discovery").

[8]     Plaintiffs also state that "JPMC fails to provide a choice of law analysis before simply applying New York law."  (Pls.' Opp'n at 34.)  On the contrary, JPMC's Motion to Dismiss (page 28) quoted the Confidentiality Agreement, which states that "[t]he Agreement is . . . and will be governed by and construed in accordance with the laws of the State of New York."  Under D.C. Circuit and Texas law, choice of law clauses govern breach of contract claims.  *See, e.g.*, *Elemary* v. *Philipp Holzmann A.G.*, 533 F. Supp. 2d 144, 153–54 n.3 (D.D.C. 2008); *RTC* v. *Northpark Joint Venture*, 958 F.2d 1313, 1318 (5th Cir. 1992).

2.      EESA bars Plaintiffs' breach of confidentiality agreement claim.

To the extent JPMC allegedly disclosed information in connection with its offer to acquire WMB's assets from the FDIC, Plaintiffs' claim for breach of a confidentiality agreement is also barred by EESA's amendment to the FDI Act. (JPMC's Mot. to Dismiss at 29–30.)  Plaintiffs offer two arguments in response.

*First*, Plaintiffs contend that EESA applies only to "*provisions* of various agreements, not with entire agreements as JPMC's argument implies" and therefore EESA does not bar their claims because JPMC "fails to cite which *provisions* of the confidentiality agreement purportedly implicated in this lawsuit are purportedly barred by EESA."  (Pls.' Opp'n at 34–35 (emphasis in original).)  This argument makes no sense.  EESA provides that "[n]o provision contained in *any* existing or future standstill, confidentiality, or other agreement" can create "*any* liability."  12 U.S.C. § 1823(c)(11) (emphasis added).  There is no need for JPMC to predict which provision(s) of the Confidentiality Agreement Plaintiffs may want to invoke because "no provision" can give rise to liability.

*Second*, Plaintiffs half-heartedly argue that "the *conduct* prohibited under the EESA should be conduct occurring after the EESA's effective date."  (Pls.' Opp'n at 35 (emphasis in original); *see also id*. at 8–9.)  Plaintiffs are mistaken. EESA applies regardless of date of the contract or the timing of the underlying conduct.  The Southern District of New York aptly explained that a "no retroactivity" argument fails when rejecting the same argument made by other plaintiffs:

> [Plaintiffs] cannot escape the conclusion that Congress intended for
> the provision to apply retroactively because the provision expressly

> applies to "existing" contracts.  In addition, section 126(c) impairs the *enforceability* of the Exclusivity Agreement.  Even if it is true that [Plaintiffs'] cause of action accrued prior to the EESA's enactment, there is no dispute that [Plaintiffs] brought its *enforcement* action on October 4 after the enactment of the statute.  Section 126(c) therefore properly applies to bar enforcement of the Exclusivity Agreement.

*Wachovia Corp.* v. *Citigroup, Inc.*, 634 F. Supp. 2d 445, 459 (S.D.N.Y. 2009)

(emphasis in original).

### B.       Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law.

JPMC's Motion to Dismiss demonstrates (pages 31–33) that Plaintiffs' unjust enrichment claim fails because:  (a) a claim that JPMC secured a "windfall" through its contract with the FDIC would not amount to unjust enrichment; (b) Plaintiffs did not furnish valuable goods or services to JPMC; and (c) Plaintiffs did not notify JPMC that they expected to be paid by JPMC.  Rather than respond to these substantive arguments, Plaintiffs instead contend that they do not have to satisfy these elements to plead an unjust enrichment claim.  (Pls.' Opp'n at 36 (arguing that JPMC cited the standard for "*quantum meruit* [which] is but a species of unjust enrichment").)  Plaintiffs' request for a new definition of unjust enrichment is unfounded and the claim should be dismissed in any event.

*First*, JPMC identified the elements of unjust enrichment that have routinely been adopted as an accurate statement of Texas law.  *See*, *e.g*., *Foley* v. *Sw. Tex. HMO, Inc.*, 226 F. Supp. 2d 886, 901-02 (E.D. Tex. 2002); *In re Wilson*, 355 B.R. 600, 605 (Bankr. S.D. Tex. 2006); *Jupiter Enters., Inc.* v. *Harrison*, No. 05-00-1914, 2002 Tex. App. LEXIS 1617, *3 (Tex. App. Mar. 1, 2002).  Plaintiffs' failure to meet these elements is fatal to this claim.

*Second*, several courts have rejected Plaintiffs' notion that they can plead an amorphous unjust enrichment claim even when they have not pled the elements of *quantum meruit* or another cause of action.  Under Texas law, "[u]njust enrichment is a theory of liability that a plaintiff can pursue through several equitable causes of action, . . . but not as a separate and distinct claim."  *Hancock* v. *Chi. Title Ins. Co.*, 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009) (discussing the Fifth Circuit's agreement with this reading of Texas law); *see also LaChance* v. *Hollenbeck*, 695 S.W.2d 618, 620 (Tex. App. 1985) (finding "fail[ure] to prove the elements of quantum meruit" and rejecting argument that plaintiffs' claim was based "on the equitable theory of unjust enrichment [because that] does not provide an independent basis for a cause of action").  Accordingly, Plaintiffs' attempt to rest solely on unjust enrichment without identifying a viable cause of action (such as *quantum meruit*, the most common form of unjust enrichment under Texas law) fails as a matter of law.  *See Oxford* v. *Williams Cos.*, 137 F. Supp. 2d 756, 762 (E.D. Tex. 2001) (dismissing unjust enrichment claim because "there is no 'cause of action' based on a 'claim' of unjust enrichment"); *Wood* v. *Gateway, Inc.*, No. 03-007, 2003 U.S. Dist. LEXIS 22576, at *36–39 (N.D. Tex. Dec. 12, 2003) (same).

*Third*, in any event, Plaintiffs fail to argue—much less identify allegations in the Complaint—that satisfy their own formulation of the elements of unjust enrichment:  (1) defendant obtained a benefit; (2) from another; (3) through fraud, duress or unfair advantage.  (*See* Pls.' Opp'n at 36.)  Plaintiffs' theory is that JPMC received a too-good deal because under the P&A Agreement with the FDIC JPMC "obtained the valuable assets of WMB at a price less than its fair market

value." (Compl. ¶ 101.)  In an effort to avoid FIRREA, Plaintiffs repeatedly disavow that there was any fraud, duress or unfair advantage associated with this FDIC receiver-initiated transaction.  This dooms Plaintiffs' unjust enrichment claim.

### C.    Plaintiffs' Tortious Interference Claim Fails as a Matter of Law.

JPMC's Motion to Dismiss demonstrates (pages 33–38) that Plaintiffs' tortious interference claim fails for two independent reasons.  *First*, because the Complaint itself identifies the "obvious alternative explanation" for Plaintiffs' financial misfortune—the global financial crisis—dismissal of Plaintiffs' tortious interference claim is appropriate.  *See Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 567 (2007).  *Second*, the OTS's closure of WMB, the FDIC's receivership, and the FDIC's subsequent sale of WMB's assets to JPMC constitute *superseding* causes that preclude JPMC's liability even if all of Plaintiffs' alleged events actually occurred. Dismissal is appropriate on both grounds despite Plaintiffs' arguments to the contrary.

*First*, Plaintiffs wrongly assert that they satisfy the Supreme Court's pleading requirements because "JPMC proposes to apply a standard of review much harsher than the standard articulated in *Twombly* . . . ."  (Pls.' Opp'n at 25.)  On the contrary, under *Twombly* and *Iqbal*, the existence of "more likely" or "obvious alternative explanations" for the alleged harm is sufficient to demonstrate a lack of "plausibility" necessitating dismissal of the Complaint.  *See Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1951–52 (2009) (rejecting plaintiffs' allegations because, in light of "more likely explanations, they do not plausibly establish" the alleged wrongdoing).  Here, the "obvious alternative explanations" for the fact that Plaintiffs' bonds and stock are now allegedly worthless is the financial crisis that caused more than 120 other banks

to also fail.  Plaintiffs' retort, that "numerous other banks, including many with fewer natural strengths than WMB (but which were also not pillaged by JPMC) weathered this storm" (Pls.' Opp'n at 28), does not fix the problem.  No one can plausibly deny that the financial crisis had a devastating impact on Washington Mutual and other institutions that were significantly exposed to the mortgage market, including Freddie Mac and Fannie Mae, which have been placed in conservatorship.  Moreover, such briefing arguments unsupported by allegations in the Complaint cannot resuscitate this claim.  Where, as here, "there is a concrete, 'obvious alternative explanation' for the defendant's conduct . . . a plaintiff may be required to plead additional facts tending to rule out the alternative.  Such a requirement is neither a special rule nor a new one.  It is simply a corollary of the basic plausibility requirement."  *Braden* v. *Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009) (citation to *Iqbal* omitted); *see Jones* v. *Town of Milo*, No. 09-080, 2009 U.S. Dist. LEXIS 49311, at *16 (D. Me. June 5, 2009) ("A court may not indulge an inference exposing the defendant to liability, however, when the factual allegations support a more likely inferential finding that is incompatible with liability.").  Plaintiffs' failure to plead such additional facts requires dismissal of the Complaint.

       *Second*, Plaintiffs' generic (and lengthy) discussion of proximate cause (Pls.' Opp'n at 29–34) misses the point.  Plaintiffs now concede that the OTS's decision to close WMB and the overall financial crisis were proximate causes of Plaintiffs' alleged harm, but nevertheless maintain that the Complaint should survive JPMC's Motion to Dismiss because "the 'global financial crisis,' the [OTS] or the FDIC was [not] the *sole* cause of Plaintiffs' injury."  (Pls.' Opp'n at 25–26 (emphasis

added).)  But a "new and independent cause . . . that intervenes between the original wrong and the final injury such that the injury is attributed to the new cause rather than the first and more remote cause . . . supersedes the defendant's [conduct] by destroying the causal connection between that [conduct] and the plaintiff's injury thereby relieving that defendant of liability."  *Dew* v. *Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 450 (Tex. 2006).  Under Texas law, a *superseding* cause breaks the causal connection between JPMC's alleged misconduct and Plaintiffs' ultimate investment losses.  *See Phan Son Van* v. *Peña*, 990 S.W.2d 751, 753 (Tex. 1999).

More specifically, Texas courts consider the following factors "in determining whether an intervening force rises to the level of a superseding cause":

> (a) the fact that the intervening force brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;
>
> (b) the fact that the intervening force's operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of the force's operation;
>
> (c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;
>
> (d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;
>
> (e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;
>
> (f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*Id.* at 754 (citations omitted); *see Pichardo* v. *Big Diamond, Inc.*, 215 S.W.3d 497, 501–03 (Tex. App. 2007) (finding superseding cause based on these factors); *Taylor* v. *Sw. Bell Tel. Co.*, 483 S.W.2d 330, 333–34 (Tex. Civ. App. 1972) (same).

Under this standard, the following superseding events preclude Plaintiffs' tortious interference claim:

- The government's closure of WMB was a superseding event. Because the federal government's decision could never be accomplished by a non-governmental actor, the federal government's action is an "intervening force [that] is due to a third person's act." *Phan Son Van*, 990 S.W.2d at 754; *see also Andrews* v. *Am. Nat'l Red Cross*, 176 F. Supp. 2d 673, 689 (W.D. Tex. 2001) (dismissing suit because "independent [governmental] action . . . broke the chain of causation between Defendants' predicate acts and Plaintiff's alleged injury"), *aff'd*, 44 F. App'x 651 (2002).

- The effect of WMB's closure on Plaintiffs' investments is a superseding event. Indeed, Plaintiffs concede that, absent WMB's closure and the FDIC's sale of its assets sold to JPMC, Plaintiffs' investments would still be intact and they would have no harm to complain of. (*See* Compl. ¶¶ 21, 70–71, 90–92.)

- The global financial crisis was a superseding event. Plaintiffs essentially blame JPMC for the crisis itself and assert that the "financial storm was . . . foreseeable" to JPMC. (Pls.' Opp'n at 27.) The assertion is absurd on its face, and Plaintiffs have no credible basis to assert that the financial crisis was a "normal result of" JPMC's alleged tortious conduct such that a finding of proximate cause would be appropriate here.[9] *See Phan Son Van*, 990 S.W.2d at 754; *see also Oceanic Exploration Co.* v. *ConocoPhillips*, No. 07-815, 2008

---

[9]       The proposition that "the very fact that JPMC was ready and able to consummate a purchase of WMB assets *within hours* of the FDIC's appointment as WMB receiver . . . belies any notion that these circumstances and activities were not 'foreseeable' to JPMC" (Pls.' Opp'n at 27–28) (emphasis and quotation in original) misconceives the purposes of the transaction. The FDIC took appropriate steps to ensure that WMB did not remain closed for days on end—that branches remained open, that ATMs remained working, and that tens of thousands of employees remained employed. This does not reflect the "foreseeability" of the financial crisis by JPMC, but reflects the FDIC's efforts to react swiftly to ensure—as they have done in resolving hundreds of other bank failures—that WMB's failure would not harm the economy, WMB's depositors or the FDIC's insurance fund.

U.S. Dist. LEXIS 31509, at *16–23 (S.D. Tex. Apr. 16, 2008) (failure to establish proximate cause because "damage must be traceable directly to the [acts], with a minimum of intervening events or alternative plausible causes").

For all of these reasons, the Eleventh Circuit's opinion in *In re Southeast Banking Corp.*, 93 F.3d 750 (11th Cir. 1996), is directly on point.  Like here, the *Southeast Banking* plaintiffs accused an acquiring bank of precipitating the failure of the failed bank.  *Id.* at 751–52 (11th Cir. 1996).  The court recognized that the plaintiffs were, in reality, attempting to recover for the acts of the failed bank's regulators, which was "not an act for which [the acquiring bank] can be held liable." *Id.*  Plaintiffs' assertion that *Southeast Banking* can be ignored because it turned on the Federal Tort Claims Act ("FTCA") (Pls.' Opp'n at 29–30) is wrong.  The *Southeast Banking* court did not reference the FTCA, which was not at issue against the acquiring bank because the discretionary function exception of the FTCA's waiver of sovereign immunity is not available to non-governmental actors, such as the acquiring bank.  *See* 28 U.S.C. § 2680(a).  *Southeast Banking* supports dismissal of Plaintiffs' claim.  Plaintiffs cannot recover from JPMC for losses that resulted from the financial crisis and the independent decisions of regulators because such superseding causes eliminate any possibility of recovery.

## IV.   PLAINTIFFS' REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED.

Plaintiffs indicate that in the event of dismissal they "will seek leave of court to amend their pleading as appropriate."  (Pls.' Opp'n at 4 n.1 (citing Fed. R. Civ. P. 15(a)(2)).)  Under Rule 15(a):

A court may deny a motion to amend if it finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

-24-

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment."  A motion to amend a complaint is futile "if the proposed claim would not survive a motion to dismiss."

*Ponce* v. *Billington*, 652 F. Supp. 2d 71, 72 (D.D.C. 2009) (Collyer, J.) (citations omitted).  Because Plaintiffs elected to proceed with motion practice with full knowledge of the Complaint's deficiencies as set forth in JPMC's and the FDIC's papers, they should not be permitted to amend now.  Moreover, because they have not presented a proper motion for leave to amend accompanied by "the proposed pleading as amended," no basis exists to assume that pleading would not be futile.  LCvR 15.1.

## <u>CONCLUSION</u>

For the foregoing reasons and the reasons set forth in JPMC's Memorandum of Points and Authorities, the JPMC Defendants respectfully request that this Court grant the JPMC Defendants' Motion to Dismiss for lack of standing, for failure to comply with FIRREA's claims process and for failure to state a claim.

Dated:   January 21, 2010
       New York, New York      Respectfully submitted,

               /s/ Bruce E. Clark

Bruce W. Hickey (D.C. Bar No. 479036)   Bruce E. Clark (USDC Bar No. D00144)
SULLIVAN & CROMWELL LLP      Robert A. Sacks (admitted *pro hac vice*)
1701 Pennsylvania Avenue, N.W.     Stacey R. Friedman (admitted *pro hac vice*)
Washington, D.C.  20006       M. David Possick (admitted *pro hac vice*)
Telephone:  (202) 956-7500      SULLIVAN & CROMWELL LLP
Facsimile:  (202) 293-6330       125 Broad Street
              New York, New York  10004
              Telephone:  (212) 558-4000
              Facsimile:  (212) 558-3588

              *Counsel for Defendants JPMorgan Chase & Co.*
              *and JPMorgan Chase Bank, N.A.*

**Appendix A**

- *Henrichs* v. *Valley View Development* involved a dispute over ownership of assets that had been acquired by several parties out of receivership several years prior to the lawsuit.  The lawsuit had nothing to do with that sale of assets by the FDIC, in no way related to acts of the FDIC as receiver and did not implicate any other aspect of a failed bank receivership.  Rather, the case involved an attempt by one of the parties to nonetheless use FIRREA's jurisdictional bar offensively to shield itself from a state court decision in favor of one of the other parties.  474 F.3d 609 (9th Cir. 2007).

- The three Northern District of Texas decisions—featured in Plaintiffs' Motion to Dismiss and addressed in JPMC's Opposition Brief (pages 18 n.8 and 21 n.9)—cannot support the contention that "FIRREA does not apply to suit against acquirer of assets from FDIC-receiver" (Pls.' Opp'n at 20–21) because Judge McBryde did not even consider the applicability of FIRREA.  *Bank One, Tex., N.A.* v. *Elms*, 764 F. Supp. 85 (N.D. Tex. 1991); *Hickey* v. *NCNB Tex. Nat'l Bank*, 763 F. Supp. 896 (N.D. Tex. 1991); *Team Bank* v. *Barfield*, 145 F.R.D. 69 (N.D. Tex. 1992).

- *Hoxeng* v. *Topeka Broadcomm, Inc.* is not helpful to Plaintiffs because the Hoxeng "Plaintiff . . . *made no claim relating to an act or omission of the FDIC as receiver.  He is not a creditor of the failed bank.  Nor is he making a claim against the assets of the bank.*" 911 F. Supp. 1323, 1338 (D. Kan. 1996) (emphasis added).

- As explained in JPMC's Opposition Brief (page 14 n.5), although *Hudson United Bank* v. *Chase Manhattan Bank of Connecticut, N.A.* did not rule on whether FIRREA applies to claims against a third party purchaser that arise from that entity's purchase of assets from a receiver, *Hudson* supports JPMC's position.  *Hudson* affirmed the district court's transfer of the entire case—*including the claims against the third party purchaser*—under FIRREA's venue provision and held that FIRREA's "administrative claims procedures and the jurisdictional bar have concurrent scope."  43 F.3d 843, 849–52 (3d Cir. 1994).

- *Rosa* v. *RTC* held in favor of the RTC that the plaintiffs' claims were subject to the jurisdictional bar "because any recovery against those entities will be satisfied, if at all, from the assets of [the failed bank]" and therefore the court did not need to "address RTC's argument that those claims are also barred under clause (ii)" of subsection (d)(13)(D), which deals with claims that relate to the acts and omissions of the receiver.  938 F.2d 383, 393–94 (3d Cir. 1991).

- *Ambase Corp.* v. *United States* also provides no support to Plaintiffs because the court recognized that the plaintiffs' allegations in that case "arguably implicate[] § 1821(d)(13)(D)(ii), which prohibits judicial review of any 'claim relating to any act or omission of [the FDIC] as receiver'" without "first exhaust[ing] administrative remedies," but the court permitted plaintiffs to proceed in the Court of Claims specifically because "Plaintiffs did first pursue a remedy in a District Court, and the suit was eventually transferred to [Court of Claims] because of this Court's exclusive jurisdiction over" claims against the United States.  61 Fed. Cl. 794, 798–99 (Fed. Cl. 2004) (emphasis added).

- Plaintiffs' passing references to the Due Process Clause (Pls.' Opp'n at 19–20) ring hollow because, as explained in JPMC's Opposition Brief (page 14–15), this argument has no basis because FIRREA's jurisdictional bar simply requires all claimants to comply with FIRREA's administrative claims process prior to seeking *de novo* judicial review.  *See, e.g.*, *Freeman* v. *FDIC*, 56 F.3d 1394, 1403 (D.C. Cir. 1995).