UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN NATIONAL<br>INSURANCE COMPANY, *et. al.*<br><br>    **Plaintiffs,**<br><br>**vs.**<br><br>**JPMORGAN CHASE & CO.**<br>**and JP MORGAN CHASE BANK,**<br>**NATIONAL ASSOCIATION,**<br><br>    **Defendants,**<br><br> **and**<br><br>**FDIC, AS RECEIVER FOR**<br>**WASHINGTON MUTUAL BANK,**<br>**HENDERSON, NEVADA**<br><br>    **Intervenor.** | § § § § § § § § § § § § § § § § § § § § § | **C.A. No. 1:09-CV-01743-RMC**<br><br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' CONSOLIDATED REPLY IN SUPPORT OF**
**PLAINTIFFS' MOTION TO DISMISS THE**
**FDIC AS A PARTY AND FOR REMAND**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ii

1.  Introduction  .................................................................................................1

2.  Law of the Case .............................................................................................2

3.  Well-Pleaded Complaint Rule .......................................................................8

4.  FIRREA  ......................................................................................................15

5.  Indemnification ...........................................................................................19

6.  Dismissal of FDIC will Require Remand ....................................................23

7.  Conclusion  .................................................................................................25

CERTIFICATE OF SERVICE ........................................................................................26

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Adair v. Lease Partners*, 587 F.3d 238 (5th Cir. 2009) ......................................... 23-24

*Albright v. FDIC*, 1994 U.S. App. LEXIS 6206 (1st Cir., April 1, 1994) ........................ 8-10

*Arends v. Eurobank & Tr. Co.*, 146 F.R.D. 42 (D.P.R. 1993) ...................................... 17

*Arizona v. California*, 460 U.S. 605 (1983) ...................................................... 4

*Auction Co. v. FDIC*, 141 F.3d 1198 (D.C. Cir. 1998) ........................... 5, 15, 17, 18, 22

*Bank One v. Elms*, 764 F.Supp. 85 (N.D. Tex. 1991) ........................................ 2, 16

*Bank One Texas National Association v. Morrison*, 26 F.3d 544 (5th Cir. 1994) .................... 24

*Bender v. Jordan*, 439 F. Supp. 2d 139 (D.D.C. 2006) ............................... 10-11, 13, 24

*Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003) ............................................. 14

*Bolden v. KB Home*, 618 F.Supp. 2d 1196 (C.D. Cal. 2008) ....................................... 14

*Christianson v Colt Indus. Operating Corp.*, 486 U.S. 800 (1988) ................................. 8

*Citigroup, Inc. v. Wachovia Corp.*, 613 F.Supp.2d 485 (S.D.N.Y. 2009) ....................... 12-14

*Coit Independence Joint Venture v. FSLIC.*, 489 U.S. 561 (1988) .................................. 14

*Cuomo v. Clearing House Ass'n, L.L.C.*, 129 S. Ct. 2710 (2009) ............................. 14-15

*Diaz v. McAllen State Bank*, 975 F.2d 1145 (5th Cir. 1992) ..................................... 8, 9

*D'Oench, Dume, & Co. v. Federal Deposit Ins. Corp*, 315 U.S. 447 (1942) ......................... 10

*Empire Healthcare Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006) ............................... 9

*FDIC v. McFarland*, 243 F.3d 876 (5th Cir. 2001) ............................................... 16

*FDIC v. Four Star Holding Co.*, 178 F.3d 97 (2d Cir. 1999) ...................................... 23

*Filebark v. United States DOT*, 555 F.3d 1009 (D.C. Cir. 2009) ................................... 4

*First Gibraltar Bank, FSB v. Bradley*, 98 F.3d 1338,
1996 WL 556852 (5th Cir. 1996) .............................................................. 22

*FSLIC v. Griffin*, 935 F.2d 691 (5th Cir. 1991) ...................................................................24

*Franchise Tax Bd. Of Cal. v. Constr. Laborers Vacation
Trust for Southern Cal.*, 463 U.S. 1 (1983) .........................................................................9

*Frank v. Bear Stearns & Co.*, 128 F.3d 919 (5th Cir. 1997) ...............................................13

*\*Freeman v. FDIC*, 56 F.3d 1394 (D.C. Cir. 1995) ..................................................4, 15, 17

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)........................12

*\*Henrichs v. Valley View Dev.*, 474 F.3d 609 (9th Cir. 2007) ......................................16

*Hickey v. NCNB Texas Nat. Bank*, 763 F. Supp. 896 (N.D. Tex. 1991)......................16

*Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001) ..........................................14

*Hoxeng v. Topeka Broadcomm*, 911 F. Supp. 1323 (D. Kan. 1996) ............................16

*Horn v. U.S. Dept of Army*, 284 F. Supp. 2d 1 (D.D.C. 2003) .....................................7

*\*Hudson United Bank v. Chase Manhattan
Bank of Connecticut, N.A.*, 43 F.3d 843 (3d Cir. 1994)....................................... 15-16, 18

*Independent Petroleum Assn of America (IPAA) v. Babbitt*,
235 F.3d 588 (D.C. Cir. 2001) ................................................................................... 6-8

*Jackson Transit Auth. v. Local Div. 1285, AFL-CIO-CLC*, 457 U.S. 15 (1982) .....................11

*Langevine v. District of Columbia*, 106 F.3d 1018 (D.C. Cir. 1997) ...........................4

*LaShawn A. v. Barry*, 87 F.3d 1389 (D.C. Cir. 1996)................................................ 5- 6

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 ......................................................................14

*\*Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986) .............................9, 13

*Messenger v. Anderson*, 225 U.S. 436 (1912) .............................................................4

*Mizuna, Ltd. v. Crossland Fed. Savings Bank*, 90 F.3d 650 (2d Cir. 1996) ..........................9

*Morales v. Tans World Airlines, Inc.*, 504 U.S. 374 (1992) .......................................17

*National R.R. Passenger Corp. v. Consolidated Rail Corp.*,
698 F. Supp. 951 (D.D.C. 1988).................................................................................21

*New Rock Asset Partners v. Preferred Entity Advancements, Inc.*,
101 F.3d 1492 (3d Cir. 1996)............................................................23, 25

*O'Melveny & Myers v. FDIC*, 512 U.S. 79 (1994) ................................14

*Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984) ............................21

*Pernie Bailey Drilling Co. v. FDIC,* 905 F.2d 78 (5th Cir.1990 ................21

*Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*,
725 F.2d 871 (2d Cir. 1984)............................................................21

*\*Rosa v. RTC*, 938 F.2d 383 (3d Cir. 1991) ......................................15

*Southern R. Co. v. National R. Passenger Corp.*, 1989 U.S. Dist.
LEXIS 8857 (D.D.C., Aug. 17, 1989) ............................................20-21

*Team Bank v. Barfield*, 145 F.R.D. 69 (N.D. Tex. 1992) ......................16

*Toro Co. v. White Consol. Indus.*, 383 F.3d 1326 (Fed. Cir. 2004)............5

*Trinsey v. K. Honavian at Upper Merion, Inc.*, 841 F.Supp. 694 (E.D. Pa. 1994 ......17

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) ............................6

*Village of Oakwood v. State Bank & Tr. Co.*, 519 F.Supp. 2d 730 (N.D. Ohio 2007) ..............18

*Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373 (6th Cir. 2008)............................18

*Washington Mutual, Inc. et al v. FDIC*, Case No. 1:09-CV-00533 (RMC),
(U.S. Dist. Ct. D.C., March 20, 2009) ............................................5

*\*W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co)*, 2009 U.S. App.
LEXIS 28761 (3d Cir. Del. Dec. 31, 2009) ....................................22-23

*Wyeth v. Levine*, 129 S. Ct. 1187 (2009) ............................................14

## STATUTES                                                        PAGE(S)

*\*12 U.S.C. § 1819............................................................8-10, 23-24

*\*12 U.S.C. § 1821(d) ........................................................3, 15-17

12 U.S.C. § 1821(j)............................................................17

12 U.S.C. § 1823 ..................................................................................................19

28 U.S.C. § 1331 ....................................................................................................6

28 U.S.C. § 1334 ..................................................................................................22

28 U.S.C. § 1367 ....................................................................................................6

28 U.S.C. § 1447 ....................................................................................................5

49 U.S.C.S. App. § 1305 ......................................................................................17

Emergency Economic Stabilization Act of 2008 ("EESA")
Pub. L. No.  110-343, 122 Stat. 3765 (2008) ................................................ 12-14

Financial Institutions Reform Recovery
and Enforcement Act of 1989
("FIRREA") ................................................................................................ *in passim*

## RULES                                                          PAGE(S)

FED R. CIV. P. 24 ...................................................................................................2

## SECONDARY SOURCES                                   PAGE(S)

18 Charles Alan Wright et al., Federal Practice and Procedure § 4478 (1981) ...........................4

18B Charles Alan Wright et al., Federal Practice and Procedure § 4478 (2d ed. 2002) .............4

Plaintiffs file this Reply to the FDIC's and JPMC's Responses to Plaintiffs' Motion to Dismiss the FDIC-Receiver as a Party and for Remand.[1]

1.   Introduction

In their Motion, Plaintiffs explain and cite authority that demonstrates that the FDIC is not a proper party to this lawsuit and should be dismissed. Plaintiffs also show that after the FDIC is dismissed, this action should be remanded to state court in Galveston, Texas. The discussion in Plaintiffs' Motion is adequate, without more, for granting Plaintiffs' Motion. Several matters raised in the Responses filed by the FDIC or JPMC (the FDIC and JPMC collectively, "Respondents"), however, warrant comment.

*First,* Respondents contend that the "law of the case" doctrine precludes reconsideration of the order denying Plaintiffs' motion for remand. Respondents' argument is misplaced, however, because this action has not been remanded from a superior court such that the law of the case doctrine would mechanically apply. Here, the Court is asked to reconsider an initial issue of paramount significance: subject matter jurisdiction. Interestingly, promotion of judicial economy is often the rationale for applying the "law of the case" doctrine; in the instant case,

---

[1] The instant Reply ("Plaintiffs' Reply"), for the sake of economy, refers to the defendants, JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A., collectively, as "JPMC," and the intervenor, Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank, Henderson, Nevada, as "the FDIC." In addition, the Plaintiffs' Reply refers to the following pleadings: Plaintiffs' motion to dismiss FDIC as a party and for remand [Dkt. # 88], as "Plaintiffs' Motion"; JPMC's response to Plaintiffs' Motion [Dkt. # 93], as "JPMC's Response"; the FDIC's response to Plaintiff's Motion [Dkt. # 94], as "FDIC's Response"; the FDIC's motion to dismiss [Dkt. #87 and 87-1] (page number citations to Dkt# 87-1), as "FDIC's Motion to Dismiss"; JPMC's motion to dismiss [Dkt. # 98, 90] (page number citations to Dkt# 90), as "JPMC's Motion to Dismiss"; the Plaintiffs' responses to the FDIC's and JPMC's motions, [Dkt. #s 95 and 96, respectively], as Plaintiffs' Response to FDIC's Motion and Plaintiffs' Response to JPMC's Motion, respectively. In addition, because the FDIC and JPMC incorporate their motions to dismiss into their responses to Plaintiffs' Motion without limitation, Plaintiffs incorporate herein Plaintiffs' Response to the FDIC's Motion and Plaintiffs' Response to JPMC's Motion.

however, judicial economy weighs in favor of re-examining subject matter jurisdiction at this juncture.

*Second,* Respondents present a novel method for ignoring the well-pleaded complaint rule: Respondents ignore the plain language of Plaintiffs' Petition by pretending that the pleading alleges a conspiracy between JPMC and the FDIC. The Court, however, must accept the Petition's allegations as they are written.

*Third,* Respondents once again manufacture new arguments for expansion of the FDIC's jurisdictional grant. None of the arguments are persuasive; they are presented merely to promote Respondents' strategic goal of manipulating federal jurisdiction.

*Fourth,* Respondents contend, but fail to show, that the FDIC is a proper party based upon an indemnification provision of the Purchase and Assumption Agreement ("P&A Agreement"). The law is clear, however, that the FDIC cannot be held liable for JPMC's intentional torts. The indemnification argument is merely a desperate attempt by the FDIC and JPMC to devise some plausible theory for asserting federal subject matter jurisdiction.

In sum: the FDIC fails to establish sufficient grounds under Federal Rule of Civil Procedure 24 to justify its intervention, and must be dismissed. *See, e.g., Bank One, Texas, N.A. v. Elms*, 764 F. Supp. 85, 89-90 (N.D. Tex. 1991) (dismissing FDIC's intervention and remanding action to state court). The dismissal of the FDIC necessarily results in a finding that the FDIC never had grounds to intervene; therefore, federal question subject matter jurisdiction never existed. Without subject matter jurisdiction, the case must be remanded.

2. Law of the Case

The FDIC and JPMC suggest that rulings of the United States District Court for the Southern District of Texas (the "Texas Court") created "law of the case" regarding interpretation

2

of FIRREA. However, the content and context of the rulings of the Texas Court indicate that all issues relating to FIRREA remain open for the District of Columbia Court's *de novo* evaluation. The Texas Court, in denying the Plaintiffs' Motion for Remand, issued a one-page order that contained no explanation of its ruling.[2] Further, the Memorandum and Order Transferring Case ("Order Transferring Venue")[3] indicated that the Texas Court intended to transfer the action to allow the District of Columbia Court to decide whether the FIRREA applied to the case.[4] The FDIC and JPMC previously argued to the Texas Court that the FIRREA jurisdictional bar should be litigated in the District of Columbia Court, "where it might be assigned as a related case to Judge Collyer[.]"[5] In addition, the general FIRREA statutory scheme recognizes that the District of Columbia is one of two districts where receivership actions may be litigated.[6]

Thus, because the Texas Court transferred this action to this Circuit for the purpose of litigating whether FIRREA applies to the instant case, the FIRREA issue remains open—whether the issue is raised in Plaintiffs' Motion for Remand or the FDIC's and JPMC's motions to

---

[2] Dkt. #46.

[3] Dkt. # 48.

[4] See Order Transferring Venue, p. 4-5 (The Texas Court referred to "WMI's suit against the FDIC-Receiver that is currently pending in the District Court of the District of Columbia, Case No. 1: 09:cv00533-RMC (DDC, Mar. 20, 2009)," and explained, "[i]n that case, as with this case, the FDIC, as receiver for failed institutions, has a right to defend suits against it at specific locations, i.e., the district of the depository institution's principal place of business or in the District of Columbia.").

[5] See FDIC's Motion of Intervenor-Defendant FDIC-Receiver to Transfer or Dismiss for Improper Venue [Dkt # 5], p. 10 ("Judicial efficiency will be better served by transferring this action to the District of Columbia, where it might be assigned as a related case to Judge Collyer[.]"); JPMC's Reply in Support of JPMorgan Chase Defendants' Motion to Transfer or Dismiss for Improper Venue [Dkt.#29] p. 3, n.3 ("the DDC will consider whether to dismiss based upon Plaintiffs' failure to exhaust the administrative claims process under FIRREA.").

[6] See 12 U.S.C. § 1821(d)(6). Plaintiffs are not saying that the instant action is a "receivership action," only that FIRREA recognizes the District of Columbia Circuit as having a special competency in interpreting and applying FIRREA.

dismiss. The law of the case doctrine "merely expresses the practice of court generally to refuse to reopen what has been decided, not a limit to their power." *Messenger v. Anderson*, 225 U.S. 436, 444 (1912); *see also* 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478 (2d ed. 2002).

In any event, the Texas Court's rulings were merely interlocutory rulings, and as such this Court has the power to revisit them without limitations of the law of the case doctrine.[7] *See Langevine v. District of Columbia*, 106 F.3d 1018, 1022-23 (D.C. Cir. 1997) ("Interlocutory orders are not subject to the law of the case doctrine and may always be reconsidered prior to final judgment.") (citing 18 Charles Alan Wright et al., Federal Practice and Procedure § 4478 (1981)). This is true even when a case is reassigned to a new judge. *Id.* The standard of review is "abuse of discretion." *Id. See also Filebark v. United States DOT*, 555 F.3d 1009, 1013 (D.C. Cir. 2009) (law of the case doctrine does not apply to interlocutory orders.).

The law of the case doctrine does not bind this Court to any apparent interpretation of FIRREA by the Texas Court for at least three additional reasons: (1) the Texas Court clearly erred by misinterpreting both the law and the facts when it denied the Plaintiffs' motion for remand; (2) subject matter jurisdiction, which is implicated by the application of FIRREA, may be reviewed by a federal court *de novo* at any time; and (3) new facts and legal arguments were presented to the Court as part of the parties' recent motions regarding application of FIRREA's jurisdictional bar that were not available to the Texas Court.

---

[7] Even if the law of the case doctrine applied, a reversal of the Texas Court's decision to deny remand is required because the Court's decision was "clearly erroneous and would work a manifest injustice." *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983). *See* generally, Plaintiffs' Motion [Dkt. # 88], Plaintiffs' Response to FDIC's Motion [Dkt. # 95], and Plaintiffs' Response to JPMC's Motion [Dkt. #96].

*First*, the Texas Court misunderstood the facts when it summarily concluded that the instant case was "not unlike WMI's suit against the FDIC-Receiver that is currently pending in the District Court of the District of Columbia."[8]  Then, the Texas Court erroneously concluded that the case was "related to" the Washington Mutual Bank receivership and subject to FIRREA.[9]  District of Columbia Circuit case law provides that the FIRREA jurisdictional bar must be analyzed in the context of the FIRREA administrative process, not read in isolation. *Auction Co. v. FDIC*, 141 F.3d 1198, 1200 (D.C. Cir. 1998).  Further, FIRREA does not extend to claims "related to" a receivership, unless such claims are also "claims and actions against, [or] actions seeking a determination of rights with respect to, the assets of failed financial institutions for which the FDIC serves as receiver[.]"  *Freeman v. FDIC*, 56 F.3d 1394, 1399-1400 (D.C. Cir. 1995).  The Texas Court did not follow this District of Columbia authority.

*Second*, the proper interpretation of FIRREA affects the Court's subject matter jurisdiction.  The law of the case doctrine does not preclude a court from examining the basis of its federal question subject matter jurisdiction, where federal question jurisdiction is asserted.[10] Remand is mandatory if subject matter jurisdiction is absent.  28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject-matter jurisdiction, the case shall be remanded.").

The primary case relied upon by the FDIC and JPMC— *LaShawn A. v. Barry*, 87 F.3d 1389 (D.C. Cir. 1996) (en banc)—is inapplicable in that it involves a *pendent* jurisdiction

---

[8] *Washington Mutual, Inc. et al v. FDIC*, Case No. 1:09-CV-00533 (RMC), (U.S. Dist. Ct. D.C., March 20, 2009).

[9] *See* Order Transferring Venue, pp. 4-5.

[10] Contrast JPMC's Response, p. 8 (arguing that even if "subject matter jurisdiction may be considered at any stage of the proceeding," that assertion is "beside the point.").

decision, not a federal question.   The exercise of pendent, or supplemental, jurisdiction is a discretionary decision by the court, unlike the exercise of federal question subject matter jurisdiction.   *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).   *Gibbs*, in setting the parameters of pendent jurisdiction, explained, "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.   Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them."   On the other hand, the exercise of federal question subject matter jurisdiction is a question of law that involves whether a court even has the power to hear a case. *Compare* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.") *with* 28 U.S.C. 1367(c) (the district court has discretion to decline or to exercise supplemental jurisdiction over a state law claim in appropriate circumstances).   The FDIC and JPMC ignore this important distinction, and blithely cite pendent jurisdiction cases in an attempt to mistakenly extend law of the case principles to subject matter jurisdiction questions.

   *LaShawn A.* recognized the distinction, however, and used it to support its decision that a prior court's decision regarding pendent jurisdiction was the law of the case. *Id.* at 1391, 1393. The court pointed out that "pendent jurisdiction is a doctrine of discretion," very different from subject matter jurisdiction, since "the view of 'pendent jurisdiction as something akin to subject matter jurisdiction that may be raised *sua sponte* at any stage and that is capable of aborting prior federal court proceedings *is a misreading of the law*." *Id.* at 1396 (emphasis added).

   In *Independent Petroleum Assn of America (IPAA) v. Babbitt*, 235 F.3d 588 (D.C. Cir. 2001), also cited by JPMC, the issue was the "mandate rule" – the notion that a district court

must follow instructions from an appeals court after remand. *Id.* at 596-97. The court described the mandate rule as a "more powerful version" of the law-of-the-case doctrine. *Id.* at 597. Despite this standard, however, the court ultimately held that it was acceptable for both the district court and the second appellate panel to rule on a disputed issue that IPAA claimed had been decided earlier by the first appellate panel: "Now that we are able to consider IPAA's claim standing alone, we are able to make a precise determination concerning its content and its justiciability. . . . Like the District Court, we do no harm to the law of this Circuit nor the law of the case by considering this issue today, with the question placed squarely before us uncluttered by other claims or cases." *Id.*

In *Horn v. U.S. Dept of Army*, 284 F. Supp. 2d 1 (D.D.C. 2003), also cited by JPMC, the court simply stated its view that, under the unique facts of that case, "there is no reason not to adhere to the law of the case doctrine." *Id.* at 9.[11] The court never stated that its decision was required by law; in fact, the court explained that, while the law of the case principle "must be followed by the district court when an *appellate* court has ruled on a matter of law in the case, it is discretionary for a court that is considering whether to revisit its own prior decisions in the same case." *Id.* at 17, n. 9.

*Third*, the FDIC and JPMC filed motions to dismiss (on the same day as Plaintiffs' Motion) putting the issue of the proper construction and application of FIRREA directly before this Court. The parties, in their motions and responses, made new legal arguments, attached new

_____

[11] The case had already been in federal district court for years, and the newly-assigned federal judge noted how, if it reconsidered the earlier jurisdictional finding, the plaintiff would essentially have to start over in another forum.

exhibits and put new facts before the Court.[12]   As a result, the issue of the proper construction

and limitation of FIRREA is only now "placed squarely before [the Court]" and, as in *IPAA*,

there is no need to adhere to any "law of the case." *IPAA*, 235 F.3d at 597.   As such, there is no

risk of undue delay here that supports adherence to a law of the case, as in other cases.[13]

### 3. Well-pleaded complaint rule

JPMC once again ignores the Petition and argues that that the Plaintiffs allege a plot or

conspiracy by the "OTS, the FDIC, JPMC and other federal regulators" for the "premature

seizure of WMB."[14]   However, Petition does not allege a plot or conspiracy.[15]   JPMC,

recognizing that its attempt to rewrite the Petition is prohibited by the well-pleaded complaint

rule, attacks the well-pleaded complaint rule though the submission of irrelevant case law.[16]

The cases cited by JPMC are distinguishable from the instant case in that JPMC's cases

were premised on the uncontested status of the FDIC as a party.   Both *Albright v. FDIC*, 1994

U.S. App. LEXIS 6206 (1st Cir. April 1, 1994) and *Diaz v. McAllen State Bank*, 975 F.2d 1145,

1149 (5th Cir. 1992) involved whether a case should be remanded on the basis of the "state law"

exception to the FDIC removal statute.   12 U.S.C. § 1819(b)(2)(D) (providing an exception to

the rule granting federal jurisdiction to all civil suits in which the FDIC is a party for certain state

---

[12] *See* FDIC Motion, Exhibit A (Declaration of John J. Clarke, Jr. and exhibit attached thereto (correspondence from FDIC claims department)); JPMC's Declaration of Bruce W. Hickey and attachment;  Plaintiffs Declaration of James M. Roquemore and attachments (correspondence from FDIC relating to Plaintiffs' proofs of claims; correspondence to Plaintiffs from FDIC informing Plaintiffs not to file proofs of claims for claims other than those "against the Failed Institution"; and notice of disallowance of claim in unrelated Washington Mutual Bank receivership proceeding).

[13] *Cf Christianson v Colt Indus. Operating Corp.*, 486 U.S. 800, 816, n.5 (1988) ("perpetual litigation of any issue – jurisdictional or nonjurisdictional – delays, and therefore threatens to deny, justice.").

[14] JPMC's Response, p. 3-4.

[15] See Plaintiffs' Response to FDIC's Motion [Dkt. # 95], pp. 9-13.

[16] Id. at p. 15-16.

8

court actions).  In neither of those cases was the FDIC's party status at issue, as it is here.  *See Albright* (FDIC became party after becoming receiver for financial institution defendant); *Diaz* (same). *See also Mizuna, Ltd. v. Crossland Fed. Savings Bank*, 90 F.3d 650, 655 (2d Cir. 1996) (12 U.S.C. § 1819(b)(2)(A) "provides for removal solely by virtue of the fact that the FDIC *is a party*."). *Id.* at 655.

Unlike *Albright* or *Diaz*, the Plaintiffs do not seek remand on the basis of 12 U.S.C. § 1819(b)(2)(D).  Plaintiffs instead seek remand on the grounds that the FDIC is not properly a party, which is a necessary predicate for removal under § 1819(b)(2)(B).  *Albright* and *Diaz* are thus irrelevant to remand questions that are based on a challenge to the FDIC's intervention.  The question of whether the claims asserted in the Petition are subject to FIRREA must be determined under the strictures of the well-pleaded complaint rule. *See Franchise Tax Bd. Of Cal. v. Constr. Laborers Vacation Trust for Southern Ca*l., 463 U.S. 1, 27-28 (1983) (a well-pleaded complaint determines whether a case arises under federal law); *Empire Healthcare Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006) (if federal law is not a necessary element of the claim for relief, the case may be properly dismissed); and *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 813 (1986) ("long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.").

JPMC even misquotes its primary case, *Albright*, in order to press its meritless position. JPMC claims that *Albright* stands for the proposition that "FIRREA 'embodied a deliberate congressional abrogation of the well-pleaded complaint rule[.]'" JPMC Response, p. 15 (quoting

9

*Albright*, at \*8-9).[17]  However, *Albright* was referring only to FIRREA § 1819(b)(2)(D)(iii) when it discussed this proposition.   Questions about the proper interpretation of FIRREA § 1819(b)(2)(D) had arisen in a specific context – when the FDIC becomes a party to a state court lawsuit and removes a case based on 12 U.S.C. § 1819(b)(2)(B).  In that situation, *Albright* and the cases upon which it relied found that § 1819(b)(2)(D)'s state law exception does not apply if the FDIC asserts a federal law defense based on *D'Oench, Duhme, & Co. v. Federal Deposit Ins. Corp*, 315 U.S. 447 (1942) – after focusing on Congress' omission of the word "under" in an earlier revision to 12 U.S.C. § 1819(b)(2)(D).  Neither *Albright* nor these earlier cases issued any wide-sweeping pronouncement that FIRREA had generically abrogated the well-pleaded complaint rule, as claimed by JPMC.  Instead, their rule was limited to the effect of 12 U.S.C. 1819(b)(2)(D), which applies only *after* the FDIC is a party and seeks remand even though the FDIC is a party.  In the instant case, Plaintiffs do not seek remand on grounds of §1819(b)(2)(D), and *Albright*'s unpublished dicta, even if accepted as persuasive as to § 1819(b)(2)(D), is simply irrelevant.

JPMC, perhaps recognizing that the well-pleaded complaint rule cannot be avoided, argues in a footnote that the Plaintiffs' state-law claims "implicate significant federal issues," from which it claims that federal question jurisdiction can exist.[18]  At the end of this footnote, JPMC cites to this Court's decision in *Bender v. Jordan*, 525 F. Supp. 2d 198, 204 (D.D.C. 2007)(Collyer, J.), for the proposition that federal question jurisdiction can somehow arise whenever state law claims implicate federal issues.

---

[17] *Albright* was an unpublished case, a fact omitted by JPMC.

[18] JPMC Response, p. 16, n. 6.

This Court issued no such rule in *Bender*. While this Court did find federal jurisdiction in *Bender*, based on a breach of contract claim contained in a cross-claim seeking indemnification, it was not a typical contract claim. Rather, this Court analogized the *Bender* situation to the Supreme Court's decision in *Jackson Transit Auth. v. Local Div. 1285, AFL-CIO-CLC*, 457 U.S. 15 (1982), a case that had sought to "vindicate contractual rights *set forth by federal statute*." *Bender*, at 205 (emphasis added). As this Court explained the situation in *Bender*, "[t]he terms under which the Bank advanced fees and expenses to the Defendants were *set by the Regulation* and the terms under which the Defendants may be required to repay the Bank are *set by the Regulation*." *Id.* (emphasis added). In other words, the contract's terms in *Bender* so mirrored the OTS regulation that "the claims of the Bank – no matter how styled in the cross-claim – must be determined by reference to federal law." *Id. See also id.* at 204 (emphasizing "the central role of the OTS Regulation to this scheme," since "[w]ithout a bylaw that covers the situation, the Bank could *only* advance fees and costs to its officers pursuant to the Regulation and its particular procedures.")(emphasis in original).

In short, *Bender* was not a rejection of the well-pleaded complaint rule. Indeed, this Court openly emphasized, among other things, that federal question "[j]urisdiction may not be sustained on a theory the plaintiff has not advanced." *Id.* at 203 (citation omitted). While *Bender's* facts did fall within a narrow, recognized exception for cases where "plaintiff's right to relief *necessarily* depends on resolution of a substantial question of federal law," *id.* at 203 (emphasis added), that is not the situation here. In the instant case, none of the terms of the contract that JPMC breached mirror any federal statutes or regulations at all, and under no circumstances do the state law claims themselves, filed against JPMC only, necessarily depend on the resolution of a substantial question of federal law. If these Texas claims had remained in

11

Galveston state court, for example, and the case had proceeded to trial against JPMC, it is quite likely that no federal laws would have been *mentioned* in the Plaintiffs' case-in-chief.

In reality, the "significant federal issues" exception to the well-pleaded complaint rule is most often applied in the case of federal preemption. *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). FIRREA does not preempt traditional state law claims such as the ones asserted by the Plaintiffs, and as a result, federal question jurisdiction does not exist here.[19]

JPMC does cite to this *Grable* decision, but it omits a significant part of the preemption test described in that case. In addition, JPMC avoids mentioning the word "preemption," perhaps because it knows that FIRREA does not preempt traditional state law claims such as Plaintiffs' claims. The full test for "substantial federal question" preemption set forth in *Grable* is that where a plaintiff asserts no federal cause of action on the face of the complaint, the state law action may be removed to federal court if "an element of the plaintiff's state law claim turns on a substantial federal question and exercising jurisdiction would not disrupt the balance intended by Congress between state and federal courts." *Grable*, at 312, 319. *See also Citigroup, Inc. v. Wachovia Corp.*, 613 F.Supp.2d 485, 490 (S.D.N.Y. 2009) (applying *Grable*).

In *Citigroup*, the plaintiff asserted state law claims for breach of contract and tortious interference with contract, but referenced the Emergency Economic Stabilization Act ("EESA") in its prayer for relief.[20] The defendant asserted that the plaintiff's claims turned on interpretation of the EESA as part of the plaintiff's claims or a defense, and thus a substantial

---

[19] See Plaintiffs' Motion, p. 14.

[20] The plaintiff claimed that the reference was a mistake.

federal question existed. However, the court disagreed, and did not read beyond the complaint, as written, applying the well-pleaded complaint rule that "a plaintiff may avoid federal jurisdiction by relying solely on state law . . . [and] as long as [the plaintiff] did not intend to plead a federal cause of action under the EESA, it is irrelevant that the facts in the Complaint would support one." *Id.*, at 493. Regarding the "significant federal issue" preemption test, the court found that nothing in the complaint required the establishment of "the meaning of any federal statute to succeed on its claims for breach of contract and tortious interference with contract." *Id.* at 495. In addition, the defendant "could not identify any element of either of plaintiff's claims that would require analysis or interpretation of a federal statute." *Id.* The fact that the defendant may have had a defense arising from the federal statute did not make the plaintiff's state law claim removable to federal court. *Id.* at 496.

In the instant case, like *Citigroup*, there is no federal statute or rule that requires interpretation for any element of Plaintiffs' claims.[21] Plaintiffs' claims are state law claims arising out of injuries caused by JPMC's intentional misconduct. The claims require no interpretation of the P&A Agreement or any federal law. No action of the FDIC is called into question, despite JPMC's or the FDIC's attempts to mischaracterize the Petition. Moreover, unlike the claims in *Bender v. Jordan*, 525 F.Supp.2d 198 (D.D.C. 2007), the Plaintiffs' claims do not turn on rights established by OTS or FDIC regulations. These are not "substantial federal questions."[22] *See Frank v. Bear Stearns & Co.*, 128 F.3d 919, 924-25 (5th Cir. 1997) (third party

---

[21] See Plaintiffs' Motion for Remand [Dkt.# 10], p. 18-21.

[22] JPMC's new claim of an EESA defense which, according to JPMC, the FDIC has responsibility to assert (*see* JPMC Response, p. 23) is wholly without merit. *See* Plaintiff's Response to JPMC's Motion [Dkt. # 96], pp. 33-35. Moreover, because this EESA issue is merely a defense, it cannot create federal jurisdiction in the face of a well-pleaded complaint that contains no federal issue. *See Citigroup*; *Merrell Dow Pharmaceuticals*.

beneficiary claimant to contract between defendants and the Federal Home Loan Mortgage Corporation and the Federal National Mortgage Association alleged no federal question in the complaint, despite a federal statute that granted federal jurisdiction to any case in which the quasi-governmental agencies were parties); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 918 (5th Cir. 2001) (mention of violations of Federal Trade Commission rules and regulations in a Texas Deceptive Trade Practices Act claim did not create federal issue).

Moreover, the Respondents' interpretation of FIRREA disrupts the balance intended by Congress between state and federal courts. State law claims such as the Plaintiffs' involve "private rights" that are not preempted by FIRREA. *See Coit Independence Joint Venture v. FSLIC.*, 489 U.S. 561, 587 (1988) (the enabling legislation of FSLIC and the Bank Board, predecessors to FDIC, does not preempt state law), and 489 U.S. at 589 (Blackmun, J. concurring) (there is no "sound policy justification" for using the doctrine of exhaustion of administrative remedies as a basis for preempting state law); *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 85 (1994) (matters "left unaddressed" in FIRREA are presumably left subject to the disposition provided by state law); *Bolden v. KB Home*, 618 F.Supp. 2d 1196, 1203 (C.D. Cal. 2008) ("There is no language in the FIRREA that expressly preempts state law") (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485). *See also Wyeth v. Levine*, 129 S. Ct. 1187, 1194-95 (2009) ("in all pre-emption cases . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.") (internal punctuation omitted); *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("a state claim may be removed to federal court in only two circumstances—when Congress expressly so provides . . . or when a federal statute wholly displaces the state-law cause of action through complete pre-emption"). *Cf Cuomo v. Clearing House Ass'n, L.L.C.*, 129

14

S. Ct. 2710 (2009) (rejecting federal agency's interpretation of National Banking Act, holding that a "reasonable interpretation" of the Act did not preempt state law enforcement against national banks).

   4. FIRREA

       The FDIC and JPMC argue that FIRREA applies to any claim that is "related to any act or omission" of the FDIC-receiver or any claim or action "seeking a determination of rights with respect to, the assets of any failed bank for which the FDIC has been appointed receiver."[23] However, under District of Columbia law, FIRREA applies only to "claims and actions against, and actions seeking a determination of rights with respect to, the assets of failed financial institutions for which the FDIC serves as receiver[.]"   *Freeman v. FDIC*, 56 F.3d 1394, 1399-1400 (D.C. Cir. 1995).   Further, contrary to the FDIC's and JPMC's argument, the FIRREA jurisdictional bar, 12 U.S.C. § 1821(d)(13)(D), is no broader than the claims administration process created by § 1821(d)(3)-(6).   *Auction Co. v. FDIC*, 141 F.3d 1198, 1200 (D.C. Cir. 1998) (12 U.S.C. § 1821(d)(6)(A) and (d)(13)(D) apply to the same "claims").[24]

       District of Columbia law comports with the general rule that FIRREA does not apply to suits that are brought, "not against the FDIC, but against an assignee of an asset formerly held by the FDIC." [25]   *See Rosa v. RTC*, 938 F.2d 383, 394 (3d Cir. 1991) (lawsuit against purchaser of assets from FDIC-receiver not subject to FIRREA's jurisdictional bar); *Hudson United Bank v.*

---

[23] *See* FDIC's Response, p. 8 (punctuation omitted), citing 12 U.S.C. § 1821(d)(13)(D).

[24] See Plaintiffs' Motion [Dkt. # 88], pp. 10-15; Plaintiffs' Response to FDIC's Motion [Dkt. # 95], pp. 13-28; Plaintiff's Response to JPMC's Motion [Dkt. # 96], pp. 19-23.

[25] Brief for the Federal Deposit Insurance Corporation in Opposition to Petition for Writ of Certiorari, *Henrichs v. Valley View Dev.*, No. 07-76, U.S. Supreme Court, attached to Plaintiffs' Motion [Doc. 10] as Exhibit A; *see Henrichs v. Valley View Dev.*, 474 F.3d 609 (9th Cir.), cert. denied, 128 S.Ct. 647 (2007).

*Chase Manhattan Bank of Connecticut, N.A.*, 43 F.3d 843, 847, n. 10 (3d Cir. 1994) (Section 1821(d)(13)(D) applies only to claims against "failed institutions" in receivership or the receivership);[26] *FDIC v. McFarland*, 243 F.3d 876, 887 (5th Cir. 2001) ("It would be absurd . . . to interpret section 1821(d)(13)(D) as assignable to the current holder. . . . When the FDIC relinquishes ownership, the procedures governing its role as a receiver no longer apply"); *Henrichs v. Valley View Dev.*, 474 F.3d 609, 614 (9th Cir. 2007), *cert. denied*, 128 S.Ct. 647 (2007) (the §1821(d)(13)(D) "requirement to exhaust administrative remedies applies only in an action against the FDIC as receiver . . . the statute does not reach assignees of assets once owned by the FDIC"); *Bank One v. Elms*, 764 F. Supp. 85 (N.D. Tex. 1991) (FIRREA does not apply to suit against acquirer of assets from FDIC-receiver); *Hickey v. NCNB Texas Nat. Bank*, 763 F. Supp. 896 (N.D. Tex. 1991) (same; and *Team Bank v. Barfield*, 145 F.R.D. 69, 72 (N.D. Tex. 1992) (same); *Hoxeng v. Topeka Broadcomm*, 911 F. Supp. 1323 (D. Kan. 1996) (lawsuit against the FDIC's agent, but not the FDIC, for tortiously interfering with contract to purchase property from the FDIC was not subject to FIRREA). The cases cited by JPMC and the FDIC are factually and legally distinguishable, and provide no authority to apply FIRREA to Plaintiffs'

---

[26] *Hudson* held that "the venue provision in 12 U.S.C. § 1821(d)(6)(A) applies to claims against the receiver." *Id.* at 849. JPMC assumes (without reference to the opinion) that the court transferred the "entire case—*including the claims against the third party purchaser*," and that therefore the court's decision "certainly implies" that the Third Circuit "understands" FIRREA applies to claims against third parties. JPMC Response, p. 14, n.5 (emphasis in original). However, in making such a strained argument, JPMC wholly ignores the part of the court's opinion directly relevant to this point: "1821(d)(13)(D) . . . applied only to claims against failed institutions [and] claims against the receiver of such institutions." *Id.* at 847, n. 10. In addition, the *Hudson* court stated, "[t]he purpose [of FIRREA] was not to immunize certain claims from review." *Id.* at 849. Thus, whether or not the district court transferred the entire case is irrelevant to the Third Circuit's "understanding" of the scope of FIRREA with respect to claims against third parties.

16

claims, which are based solely on the intentional misconduct of JPMC, and not any theory of liability against the FDIC or Washington Mutual Bank.[27]

In its motion to dismiss, JPMC cites an isolated provision of the FIRREA jurisdictional bar to argue that "Congress also did not limit FIRREA to claims brought against the FDIC as receiver, but rather expanded the statute to capture even claims that 'relat[e] to' the acts of the FDIC as receiver, including claims brought against third parties such as JPMC."[28]  As noted above, this statement is contrary to the law.[29]  An additional problem with this overly expansive interpretation is that state law claims against third parties would be preempted, a result not expressly provided for or intended by Congress.

Ironically, a case cited by JPMC illustrates this point.  JPMC cites *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) for the proposition that the phrase "related to" should be read broadly.  *Morales*, however, dealt with the preemptive effect of the Airline Deregulation Act of 1978 which prohibited states from enforcing any law "relating to rates, routes, or services" of any air carrier.  49 U.S.C.S. App. § 1305(a)(1)).  The court noted that the

---

[27] See, e.g., Plaintiffs' Response to JPMC's Motion, pp. 21-24.  *Arends v. Eurobank & Tr. Co.*, 146 F.R.D. 42 (D.P.R. 1993) provides not support for the Respondents.  In *Arends*, the court specifically found that "the FDIC could be liable either directly fo the plaintiffs as the receiver of a going business, or indirectly to the parties for negligently managing the P&A Agreement or for failing to exercise proper fiduciary responsibilities[.]"  *Id.* at 48.  Here, the Plaintiffs assert no claim that could result in liability on the part of the FDIC.

JPMC also offers a new, inapt, case, *Trinsey v. K. Honavian at Upper Merion, Inc.*, 841 F.Supp. 694, 695 (E.D. Pa. 1994).  In *Trinsey*, the plaintiff sought "to force the RTC to rescind the sale of [receivership property] and to convey the deed to him."  The court rightfully considered this action to be one "seeking a determination of rights with respect to an asset previously owned by an institution for which the RTC was appointed receiver, and then disposed of through an act of the RTC," and held that 12 U.S.C. § 1821(j) and 12 U.S.C. § 1821(d)(13)(D) barred consideration of the plaintiff's claims.  Here, unlike in *Trinsey*, the Plaintiffs do not seek rescission of the P&A Agreement, nor do they seek any determination of rights to assets transferred by the FDIC-receivership.

[28] JPMC Motion to Dismiss, p. 23 (citing 12 U.S.C. § 1821(d)(13)(D)(ii)) (brackets in original).

[29] See, e.g., Freeman, supra; Auction Co., supra.

statute's express purpose was to preempt state law.   Therefore, the court held that the phrase "relating to" should be read broadly to give effect to its "broad preemptive purpose." *Id.*

FIRREA has no similar "broad preemptive purpose."[30]   In FIRREA, the phrase "related to," found in the jurisdictional bar, is not intended to be any broader than the scope of the claims administration process. *See Auction Co.*, 141 F.3d at 1201 (interpreting the term "claim" to have the same meaning throughout FIRREA); *Hudson*, at 850 ("the administrative claims procedures and the jurisdictional bar have concurrent scope").[31]   JPMC's interpretation of the meaning of "related to" is therefore incorrect.

Furthermore, contrary to JPMC's and/or the FDIC's interpretation, the Petition is not "premised" upon any "improper sale" by the FDIC.[32]   Nor does the Petition allege a "conspiracy . . . consummated post-receivership, through the P&A Agreement."[33]   And, although Plaintiffs allege that JPMC obtained Washington Mutual Bank's assets at a fire-sale price as a result of JPMC's tortious and illegal conduct, Plaintiffs' damages were proximately caused by JPMC's

---

[30] See Plaintiffs' Motion to Dismiss, p. 14.

[31] Even *Village of Oakwood v. State Bank & Tr. Co .*, 539 F.3d 373 (6th Cir. 2008), which is not District of Columbia law, restricts application of the jurisdictional bar to claims that are "directly related to" the FDIC-receivership. *Id.* at 386 ("all of their claims against State Bank are directly related to acts or omissions of the FDIC as the receiver of Oakwood."). In *Village of Oakwood*, unlike the instant case, the plaintiffs alleged that the assuming bank "aid[ed] and abet[ted] the FDIC's alleged breach of fiduciary duty to the uninsured depositors." In other words, the FDIC was alleged to be the principal tortfeasor in *Village of Oakwood*. JPMC admits, as it must, this factual distinction, which is the likely reason for its repeated claims it has discovered a conspiracy hidden somewhere the Plaintiffs' Petition. JPMC Motion at 12, (citing *Village of Oakwood v. State Bank & Tr. Co.*, 519 F.Supp. 2d 730, 732-33, 738 (N.D. Ohio 2007)). However, despite JPMC's conspiracy theory, the Plaintiffs simply allege no misconduct on the part of the FDIC, conspiracy or otherwise. As such, the Plaintiffs' claims are not "related to" acts or omissions of the FDIC, even under a standard propounded by *Village of Oakwood*.

[32] JPMC's Response, p. 10. *See* Plaintiffs' Motion, pp. 5-8; Plaintiffs' Response to the FDIC's Motion, pp. 9-13.

[33] *Id.*

misconduct, not by improper acts or omissions of the FDIC.[34]  As such, Plaintiffs' claims cannot

be said to be "related to" acts or omissions of the FDIC, within the meaning of FIRREA and

United States Supreme Court preemption doctrine.

5. Indemnification

The FDIC and JPMC claim that the "FDIC's status as a potential indemnitor" justifies

intervention.[35]  However, this argument fails because (1) the FDIC lacks authority, statutory or

otherwise, to offer indemnity to asset purchasers for their intentional torts and illegal conduct;

(2) the language of the Washington Mutual Bank P&A Agreement precludes coverage for the

conduct of JPMC alleged in the Petition; and (3) public policy prevents indemnification for

intentional torts.  As such, the FDIC's hypothetical indemnity obligation is too speculative to

create an interest sufficient to support intervention.

*First*, Congress did not give the FDIC authority to indemnify third parties, by way of a

Purchase & Assumption Agreement or otherwise, for liability arising out of the third party's

misconduct.  The FDIC only has authority to indemnify counterparties in a P&A Agreement for

claims that arise:

> by reason of such insured institution's . . . ***assuming the liabilities and
> purchasing the assets of such insured depository institution*** or by reason of such
> company acquiring control of such insured depository institution.

12 U.S.C. § 1823(c)(2)(A)(iii) (emphasis added).  Here, the Plaintiffs' claims arise out of

JPMC's own tortious misconduct and illegal activity, not successor liability.  Plaintiffs do not

---

[34] *Id.*

[35] JPMC's Response, p. 19.

allege that JPMC "assum[ed] the liabilities" of Washington Mutual Bank.[36]  Thus, any purported indemnification of JPMC for the misconduct alleged in the Petition would exceed the authority granted the FDIC by Congress.

*Second*, the P&A Agreement itself explicitly precludes indemnification for the intentional misconduct of JPMC as alleged in the Petition.[37]  The P&A Agreement § 12.1(b) provides that "except for paragraphs (7), (8) and (9) of Section 12.1(a), no indemnification will be provided under this Agreement for any: . . . (11) except as expressly provided in this Article XII, claims based on *any action or inaction of any Indemnitee*[.]"  (Emphasis added).  Section 12.1(a)(7) provides for indemnification for "claims arising from any action or inaction of any Indemnitee," but *expressly excludes* indemnification for "any action or inaction taken in a manner constituting bad faith, gross negligence or willful misconduct[.]" (Emphasis added).  Section 12.1(8) refers to depositor claims.  Section 12.1(9) is limited to claims asserted by "the Failed Bank's parent company" and claims asserted "derivatively by any shareholder on behalf of, the Failed Bank's parent company[.]"[38]  The Plaintiffs allege intentional misconduct by JPMC that constitutes bad faith and willful misconduct, among other things.  The plain language of the P&A Agreement thus precludes indemnification for the claims asserted by the Plaintiffs.

*Third*, a strong public policy exists in this Circuit against permitting indemnification of intentional misconduct.  *See, e.g., Southern R.R. Co. v. National R.R. Passenger Corp.*, 1989

---

[36] JPMC acquired Washington Mutual Bank's assets; JPMC did not acquire control of the bank.

[37] P&A Agreement, Art. XII, pp. 25-30, attached to Doc. 17 as Exhibit 1.

[38] JPMC omits this important language of Section 12.1(a)(9).  *See* JPMC Response, p. 19 (arguing that the P&A Agreement Section 12.1(a)(9) requires the FDIC to indemnify JPMC for "claims asserted . . . based on the process of bidding, negotiation, execution and consummation of the transactions contemplated by this Agreement..." (ellipses in original).

U.S. Dist. LEXIS 8857, *15-16 (D.D.C., Aug. 17, 1989) (contract provisions which appear to indemnify against willful, wanton, reckless, or intentional misconduct are contrary to public policy) (quoting *National R.R. Passenger Corp. v. Consolidated Rail Corp.*, 698 F. Supp. 951, 971 (D.D.C. 1988)). The FDIC's statutory restriction on its authority to offer indemnification to asset purchasers and the language of the WMB P&A Agreement reflect this public policy.

As such, any claim of interest arising from the P&A Agreement indemnification clause is too speculative and indirect to support intervention. *See e.g. Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871, 875 (2d Cir. 1984) (insurer's potential liability for damages against its insured in a products liability case was a contingent liability that failed to amount to an "interest relating to the property or transaction which is the subject of the action" so as to warrant intervention).

The cases cited by JPMC do not provide otherwise. In *Pernie Bailey Drilling Co. v. FDIC*, the Fifth Circuit stated, "this court need not address whether such an indemnification agreement would always justify FDIC intervention and concludes only that, under the facts of this case, the indemnification agreement supports the conclusion that the FDIC was entitled to participate in this litigation." 905 F.2d 78, 80 (5th Cir.1990). In *Pernie Bailey Drilling Co.*, the plaintiff asserted lender liability claims against a bank that was later put into an FDIC receivership. The FDIC then assigned the notes. The Court concluded that the FDIC remained a party to the lawsuit based "in part from its obligation to indemnify," the potential of a "claim of rescission," and the potential for "claims for damages against the closed bank." *Id.* at 80. Here, in contrast, no claims have been made that could create liability against WMB or the FDIC, and no claim has been made that seeks a rescission that will implicate rights or obligations under the P&A Agreement.

In *First Gibraltar Bank, FSB v. Bradley*, 98 F.3d 1338, 1996 WL 556852 (5th Cir. 1996) (unpublished), counterclaims were made against a bank for which the FDIC could have been liable. The state court sought to adjudicate whether the FDIC effectively assigned notes and guarantees to an acquiring bank, unencumbered by certain obligations. *Id.* at *3. The federal court found that the FDIC had assumed the liabilities at issue in the lawsuit, had guaranteed a rate on loans that were subject of claims, had assumed certain risks of loss, and had agreed to indemnify the purchaser of a note. *Id.* at *4. Those facts justified the FDIC's intervention. However, none of these factors exist in the instant case. The mere existence of an indemnity clause in a P&A Agreement does not make this case like *First Gibraltar Bank*.

A recent Third Circuit bankruptcy case, *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co)*, 2009 U.S. App. LEXIS 28761 (3d Cir. filed Dec. 31, 2009), is more analogous, and helpful.[39] *W.R. Grace* involved the Chapter 11 bankruptcy of W.R. Grace & Co. ("Grace"), a producer of specialty chemicals and materials, arising out of costs associated with asbestos litigation. Claimants sued the State of Montana ("Montana"), but not Grace, in a state court action for asbestos related injuries, "alleging that Montana is liable to them because it was negligent in failing to warn them of the risks of asbestos from [Grace's] mine." *Id.* at *5. Montana asked the Grace bankruptcy court for relief from the stay so that it could implead Grace as a third-party defendant; Grace asked the bankruptcy court to expand a preliminary injunction enjoining certain asbestos-related litigation.

The court considered whether it had "related to" jurisdiction over the claimants' state law complaint against Montana pursuant to 28 U.S.C. § 1334(b). The court noted that "related-to"

---

[39] *Cf Auction Co.*, 141 F.3d at 1201 ("bankruptcy law is a useful aid in understanding FIRREA").

jurisdiction included "suits between third parties that conceivably may have an effect on the bankruptcy estate." *W.R. Grace* & Co., at *5. However, the court held that it had no "related-to" jurisdiction, despite Montana's potential indemnity claim, because "an inchoate claim of common law indemnity is not, in and of itself, enough to establish the bankruptcy court's subject matter jurisdiction." Id. at *16 (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 995 (3d Cir. 1984).

The reasoning of the *W.R. Grace* applies with equal force, here:

> [The FDIC] will not be bound by any judgment against [JPMC]. Rather, an entirely separate action would be necessary for any liability incurred by [JPMC] to have an impact on [the FDIC-Receiver].

As such, JPMC's and/or the FDIC's speculative and inchoate indemnification claim cannot support intervention in this case.

### 6.  Dismissal of the FDIC will Require Remand

JPMC claims that there is a "majority rule" under which "Section 1819(b)(2) of FIRREA continues to provide original federal subject matter jurisdiction over a case after the FDIC is dismissed." *Adair v. Lease Partners*, 587 F.3d 238, 242-45 (5th Cir. 2009). Actually, there is a split between the three circuits that have addressed the issue, with the Fifth[40] and Second[41] Circuits holding that subject matter jurisdiction continues after the FDIC's dismissal, and the Third Circuit[42] holding otherwise.[43] In any event, *Adair* is inapplicable here, because the "time-of-filing rule" requires remand in this case following the dismissal of the FDIC.

---

[40] *Adair v. Lease Partners*

[41] *FDIC v. Four Star Holding Co.*, 178 F.3d 97, 100-01 (2d Cir. 1999).

[42] *New Rock Asset Partners v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1494-95 (3d Cir. 1996).

[43] Plaintiffs would argue that the reasoning in *New Rock Asset Partners* or the concurrence by Judge Jolly in *Adair* is persuasive, and that the court has discretion to remand the case after dismissal of the FDIC, even if it possessed federal subject matter jurisdiction upon removal.

In *Adair*, the FDIC became a party when it became receiver for a successor bank to one of the defendants. The FDIC removed the case pursuant to 12 U.S.C. § 1819(b)(2) and was later dismissed. The court held that it had original subject-matter jurisdiction over a claim pursuant to the FDIC's right to remove under 12 U.S.C. § 1819(b)(2), and the court retained jurisdiction even after the FDIC was dismissed as a party. The court relied on the "time-of-filing rationale," which provides that "the power to remove is evaluated at the time of removal." *Id.* at 243 (quoting *FSLIC v. Griffin*, 935 F.2d 691, 696 (5th Cir. 1991). Unlike the instant case, the court's jurisdiction at the time of removal was not at issue because, as the court noted, "[n]one of the parties disputes that the district court had jurisdiction over the case at the time of remand" (*id.* at 240). In addition the court noted, "[i]t is undisputed that the FDIC properly removed this case pursuant to 12 U.S.C. § 1819(b)(2)." *Id.* at 241. The court then applied federal policy to justify its holding that federal jurisdiction existed.

Here, however, the Plaintiffs dispute that the Court ever possessed original subject matter jurisdiction, because the FDIC's intervention and removal were improper. The "time-of-filing" rule, espoused by *Adair*, requires federal jurisdiction to be established at the time of removal. If the FDIC's intervention was improper, then no federal jurisdiction exists under 12 U.S.C. § 1819(b)(2), and the case must be remanded. To hold otherwise, would permit manipulation of federal jurisdiction. *See Bank One Texas National Association v. Morrison*, 26 F.3d 544, 547 (5th Cir. 1994) ("[F]ederal jurisdiction should not be manipulated by the FDIC's simple intervention in a given case."). The FDIC could, at its whim, intervene at the state court level, knowing that even if it was later dismissed, it achieved jurisdiction for its P&A counterparty. As this Court noted in *Bender v. Jordan*, 525 F.Supp.2d at 203 (Collyer, J.), "no action of the parties can confer subject-matter jurisdiction upon a federal court." This is the type of strategic

24

manipulation of jurisdiction that the time-of-filing rule is intended to prevent. *See New Rock Asset Partners v. Preferred Entity Advancements, Inc.*, 101 F.3d at 1504 ("Along with the obvious goal of judicial efficiency, we perceive the risk of strategic behavior as the primary rationale behind the time of filing rule.").

7. <u>Conclusion</u>

Accordingly, for the foregoing reasons, and as explained in the filings previously submitted, this Court should dismiss the FDIC as a party in this case with prejudice, and remand this action directly to the 122nd Judicial District Court of Galveston County, Texas.

Respectfully submitted,
By: /s/ Gregory S. Smith
Gregory S. Smith (D.C. Bar #472802)
LAW OFFICES OF GREGORY S. SMITH
913 East Capitol Street, S.E.
Washington, D.C.  20003
Telephone:  (202) 460-3381
Facsimile:   (877) 809-9113
Email: gregsmithlaw@verizon.net

Andrew J. Mytelka
Texas State Bar No. 14767700
Joseph R.  Russo, Jr.
Texas State Bar No. 24002879
Steve Windsor
Texas State Bar No. 21760650
James M. Roquemore
Texas State Bar No. 24058082
GREER, HERZ & ADAMS. LLP
One Moody Plaza, 18th Floor
Galveston, Texas  77550
(409) 797-3200
(409) 766-6424 (FAX)
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that on January 21, 2010, a copy of the this document was filed with the Court's ECF filing system, which will provide electronic notification of its filing to all counsel who have appeared in this action, including the following counsel of record:

Bruce W. Hickey, Esq.
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C.  20006

Bruce E. Clark, Esq.
Robert A. Sacks, Esq.
Stacey R. Friedman, Esq.
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004

Robert A. Sacks, Esq.
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California  90067

David Clarke, Esq.
Deana L. Cairo, Esq.
DLA PIPER LLP (US)
500 8th Street, N.W.
Washington, D.C.  20004

John J. Clarke, Jr., Esq.
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020


    /s/ Gregory S. Smith_____
    Gregory S. Smith


26