**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN NATIONAL INSURANCE COMPANY, *et al*, <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Washington Mutual Bank, Henderson, Nevada, *et al.*, <br><br> Defendants. | Case No. 1:09-cv-01743 (RMC) |

**SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF THE MOTION OF THE FDIC-RECEIVER**
**TO DISMISS THE PETITION**

David Clarke, Jr. (D.C. Bar. No. 396002)
Deana L. Cairo (D.C. Bar No. 469628)
DLA Piper LLP (US)
500 8th Street, N.W.
Washington, D.C.  20004
Tel.:  (202) 799-4000
Fax:  (202) 799-5000

- and -

John J. Clarke, Jr. (admitted *pro hac vice*)
john.clarke@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Tel.:  (212) 335-4500
Fax:  (212) 335-4501

Attorneys for Intervenor-Defendant
 Federal Deposit Insurance Corporation,
 as Receiver for Washington Mutual Bank

Dated:  March 23, 2010

## Table of Contents

Page

Table of Authorities .................................................................................................................. ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT:

   PLAINTIFFS' CLAIMS AS WMB BONDHOLDERS ALLEGE  HARM TO
   WMB AND ARE OWNED BY THE FDIC-RECEIVER................................................ 2

CONCLUSION......................................................................................................................... 9

# Table of Authorities

Page

Cases

*Adagio Inv. Holding Ltd. v. F.D.I.C.,*
  338 F. Supp. 2d 71 (D.D.C. 2004) ...................................................................................8

*\*Brandt v. Bassett (In re Southeast Banking Corp.),*
  827 F. Supp. 742 (S.D. Fla. 1993), *rev'd in part on other grounds*,
  69 F.3d 1539 (11th Cir. 1995) ............................................................................. *passim*

*\*Brazlin v. Western Sav. & Loan Ass'n,*
  Civ. No. 91-0078-PHX-SMM, 1994 WL 374286 (D. Ariz. 1994)................................ *passim*

*Chan v. Chang,*
  No. 55168-0-I, 2006 WL 1135018 (Wash. Ct. App. May 1, 2006)..........................................6

*\*Courtney v. Halleran,*
  485 F.3d 942 (7th Cir. 2007) ................................................................................. *passim*

*Downriver Community Fed. Credit Union v. Penn Square Bank,*
  879 F.2d 754 (10th Cir. 1989), *cert. denied*, 493 U.S. 1070 (1990)........................................3

*F.D.I.C. v. Lubin,*
  No. 1:09-cv--1156-RWS, 2009 WL 4641765 (N.D. Ga. Nov. 30, 2009).................................5

*Hamid v. Price Waterhouse,*
  51 F.3d 1411 (9th Cir. 1995) ...............................................................................................4

*In re Fed. Nat'l Mortgage Ass'n Sec., Derivative & ERISA Litig.,*
  629 F. Supp. 2d 1 (D.D.C. 2009)..........................................................................................5

*In re Longhorn Sec. Litig.,*
  573 F. Supp. 255 (W.D. Okla. 1983) ....................................................................................4

*\*Jackson Nat'l Life Ins Co. v. Ligator,*
  949 F. Supp. 200 (S.D.N.Y. 1996)....................................................................................4, 6

*Manson v. Stacescu,*
  11 F.3d 1127 (2d Cir. 1993)..................................................................................................4

*Newby v. Enron Corp. (In re Enron Corp.),*
  MDL No. 1446, 2007 WL 789141 (S.D. Tex. Mar. 12, 2007)............................................4, 8

*\*Pareto v. F.D.I.C.,*
  139 F.3d 696 (9th Cir. 1998) .................................................................................. *passim*

# Table of Authorities

Page

*Popkin v. Jacoby (In re Sunrise Sec. Litig.),*
   916 F.2d 874 (3d Cir. 1990)..............................................................................4, 5, 6

*R.T.C. v. Titan Fin. Corp.,*
   36 F.3d 891 (9th Cir. 1994) ...........................................................................8

*Sabey v. Howard Johnson & Co.,*
   101 Wash. App. 575, 5 P.3d 730 (Wash. Ct. App. 2000).......................................6

## Statutes and Rules

12 U.S.C. 4617(f)..........................................................................................5

12 U.S.C. § 1821(d)(2)(A)..............................................................................2, 4

12 U.S.C. § 1821(d)(3)...................................................................................3

12 U.S.C. § 1821(d)(5)...................................................................................3

12 U.S.C. § 1821(d)(13).................................................................................1, 3

12 U.S.C. § 1821(j).......................................................................................5

12 U.S.C. § 4617(f)......................................................................................5

Fed. R. Civ. P. 12(c).....................................................................................1

Fed. R. Civ. P. 12(b)(1).................................................................................1

Fed. R. Civ. P. 24(a)(2).................................................................................7

In accordance with the Order of this Court entered on March 17, 2010, intervenor-defendant Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank (the "FDIC-Receiver"), respectfully submits this supplemental memorandum of law in further support of its motion to dismiss plaintiffs' original petition in this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c).

## <u>INTRODUCTION</u>

Plaintiffs have dismissed with prejudice their claims against defendants JPMorgan Chase Bank, N.A. ("JPMC Bank") and JPMorgan Chase & Co. ("JPMC") arising from harm that plaintiffs allegedly suffered as holders of securities issued by Washington Mutual, Inc. ("WMI"), which was the former holding company for Washington Mutual Bank ("WMB").  Plaintiffs' only remaining claims against the JPMC defendants are predicated on the alleged loss in value in plaintiffs' holdings of WMB bonds.

In its prior submissions, the FDIC-Receiver has established that all of plaintiffs' remaining claims against the JPMC defendants are subject to the jurisdictional bar set forth in 12 U.S.C. § 1821(d)(13)(D).  *See* Doc. Nos. 87, 94, 97.  Each of plaintiffs' remaining causes of action depends on plaintiffs' theory that they lost value in their WMB bondholdings when JPMC and JPMC Bank allegedly used a "perceived liquidity crisis in the banking industry . . . as a backdrop and lever to negotiate the seizure and sale" of WMB, "stripped of liabilities, from federal regulators."  Pet., ¶ 20.  For the reasons already discussed, these claims "relat[e] to [an] act or omission of" the FDIC-Receiver as receiver for WMB and also seek a determination of rights with respect to assets of WMB.  In both ways, the claims directly contravene section 1821(d)(13)(D), requiring dismissal.

Even if the jurisdictional bar did not apply to some part of the claims that plaintiffs have not abandoned, however, all of those claims must be dismissed because they assert harm to

WMB or its creditors generally, rather than any direct injury to plaintiffs, and therefore are owned by the FDIC-Receiver.  By operation of law, upon its appointment as the receiver for WMB, the FDIC-Receiver succeeded to "all rights, titles, powers, and privileges of the insured depository institution . . ." 12 U.S.C. § 1821(d)(2)(A).  This statutory power has been recognized to include the right to assert any and all claims against third parties for harm suffered by a failed bank.  *See, e.g., Brandt v. Bassett (In re Southeast Banking Corp.)*, 827 F. Supp. 742, 746 (S.D. Fla. 1993), *rev'd in part on other grounds*, 69 F.3d 1539 (11th Cir. 1995).  Plaintiffs' claims against the JPMC defendants here – which allege generalized harm that was not particular to them but instead allegedly was suffered by WMB itself and its creditors only generally – are derivative claims that are owned by the FDIC-Receiver.

Consequently, separate and apart from the jurisdictional bar, all of plaintiffs' remaining claims also must be dismissed because plaintiffs lack standing to assert them.  Dismissal does not deprive plaintiffs of a remedy.  To the contrary, plaintiffs acknowledge that they filed claims against the receivership as to which they have been or will be issued receivership certificates.  Having filed their receivership claims, plaintiffs, "like all others who have some interest in recovering funds from the closed bank, *must simply rely upon the FDIC to do its job*."  *Pareto v. F.D.I.C.*, 139 F.3d 696, 701 (9th Cir. 1998) (emphasis added).

## ARGUMENT

### PLAINTIFFS' CLAIMS AS WMB BONDHOLDERS ALLEGE HARM TO WMB AND ARE OWNED BY THE FDIC-RECEIVER

In enacting FIRREA, Congress established a statutory regime that "helps assure the expeditious and orderly protection of all who are interested in [a failed] bank by placing the pursuit of its rights, protection of its assets, and payment of its liabilities firmly in the hands of a

single, congressionally designated agency," the FDIC-Receiver.  *Pareto v. F.D.I.C.*, 139 F.3d 696, 700 (9th Cir. 1998).

FIRREA allocates one principal responsibility to a failed bank's creditors – to file a timely claim against the receivership.  *See* 12 U.S.C. §§ 1821(d)(3), (5), (13).  It assigns the remaining responsibilities to the FDIC-Receiver, including the responsibility to determine what causes of action to pursue on behalf of the failed bank and, indirectly, on behalf of *all claimants* against the failed bank receivership.  *Pareto*, 139 F.3d at 700-01; *Downriver Community Fed. Credit Union v. Penn Square Bank*, 879 F.2d 754, 764 (10th Cir. 1989), *cert. denied*, 493 U.S. 1070 (1990) ("Any remedy for fraudulent representations that affects, or potentially affects, all creditors belongs to the receiver, who asserts such claims for the benefit of all creditors."); *see*, *e.g.*., *Brazlin v. Western Sav. & Loan Ass'n*, Civ. No. 91-0078-PHX-SMM, 1994 WL 374286, *3-6 (D. Ariz. 1994) (RTC, not plaintiff bondholders, had standing to assert derivative claims being pursued by bondholders of failed bank, who would receive recovery through distributions on their receivership certificates).[1]

A claim alleging "wrong to an incorporated group as a whole that depletes or destroys corporate assets" is a derivative claim that is owned by the corporation.  *Brandt v. Bassett (In re Southeast Banking Corp.)*, 827 F. Supp. 742, 745 (S.D. Fla. 1993), *rev'd in part on other grounds*, 69 F.3d 1539 (11th Cir. 1995).  Although more frequently arising in actions brought by stockholders, the same principles apply when claims of generalized corporate harm are asserted by the corporation's creditors.  *See*, *e.g.*, *Courtney v. Halleran*, 485 F.3d 942, 950 (7th Cir. 2007)

---

[1] Plaintiffs have dismissed with prejudice any claim asserted in their petition based on plaintiffs' holdings of WMI stock and bonds.  *See* Transcript of March 9, 2010 Hearing at 4-6. Given this partial dismissal, it is unclear whether plaintiffs are continuing to assert claims based on JPMC's alleged breach of a confidentiality agreement it entered into with WMI.  *See* Pet., ¶¶ 94-99.  There is no dispute that the confidentiality agreement was entered into between JPMC and WMI.  *See* Doc. No. 92.

(RICO claims asserted against accounting firm and other defendants by failed bank depositors were derivative claims owned by the FDIC); *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1419 (9th Cir. 1995) (dismissing RICO claims asserted by depositors of BCCI); *Brazlin*, 1994 WL 374286, at *3-4 (dismissing derivative claims asserted by bondholders of failed bank) (collecting cases); *In re Longhorn Sec. Litig.*, 573 F. Supp. 255, 272 (W.D. Okla. 1983) ("wrongs committed by a bank's officers or directors that injure all depositors and creditors alike create a liability which is an asset of the bank itself and for which only the bank or its receiver may recover") (decided before FIRREA).[2]

In the case of failed banks, the FDIC as receiver succeeds to the rights to such claims by operation of law. Indeed, 12 U.S.C. § 1821(d)(2)(A)(i) "specifically provides that such derivative claims belong *exclusively* to the FDIC." *Southeast Banking Corp.*, 827 F. Supp. at 746 (emphasis added);[3] *see Courtney*, 485 F.3d at 950; *see also Popkin v. Jacoby (In re Sunrise*

---

[2] Dismissal of derivative claims asserted by creditors is common in bankruptcy. *See, e.g., Manson v. Stacescu*, 11 F.3d 1127, 1130 (2d Cir. 1993) (creditors of a bankrupt corporation have no standing under RICO in the absence of a direct injury because "[t]he creditor generally sustains injury only because he has a claim against the corporation. The creditor's injury is derivative of that of the corporation and is not caused proximately by the RICO violations."); *Newby v. Enron Corp. (In re Enron Corp.)*, MDL No. 1446, 2007 WL 789141 (S.D. Tex. Mar. 12, 2007) (granting partial motion to dismiss by JPMC of claims asserted by American National Life Insurance Company and related plaintiffs for harm allegedly suffered as holders of Enron securities); *Jackson Nat'l Life Ins Co. v. Ligator*, 949 F. Supp. 200 (S.D.N.Y. 1996) (dismissing creditor claims as derivative).

[3] 12 U.S.C. § 1821(d)(2)(A) provides

(2)     General powers

(A)     Successor to institution

The Corporation shall, as conservator or receiver, and by operation of law, succeed to—

(i)     all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution; and

*Sec. Litig.*), 916 F.2d 874, 888 (3d Cir. 1990) (dismissing RICO action by uninsured depositors and recognizing that allowing action to proceed "could disrupt the efforts of FDIC to recover the institution's assets . . . for equitable distribution among *all* depositors and creditors . . .").[4]

In such cases, any harm suffered by the derivative plaintiff "is secondary and predicated upon injury to the Bank." *F.D.I.C. v. Lubin*, Civ. A. No. 1:09-cv-1156-RWS, 2009 WL 4641765, at *4 (N.D. Ga. Nov. 30, 2009) (dismissing complaint asserted by trustee for bankrupt holding company because it asserted derivative claims that were owned by the FDIC as receiver for the failed bank). As the Third Circuit reasoned in affirming the dismissal of such an action, "[t]he loss in value of depositors' certificates reflects the impaired condition of the financial institution. The injury – loss of principal or interest – is sustained by all depositors and is incidental to and dependent on injury to the institution." *In re Sunrise Sec. Litig.*, 916 F.2d at 886-87; *see also Pareto*, 139 F.3d at 699 (where failed bank "suffers a direct injury to the whole of its assets, any corresponding injury to the value of an individual stockholder's shares . . . is merely incidental to, or an indirect result of, the direct injury to the corporation's assets.").

"Whether a claim is individual or derivative is determined from the body of the complaint rather than from the label employed by the parties." *In re Sunrise Sec. Litig.*, 916 F.2d at 882; *Southeast Banking Corp.*, 827 F. Supp. at 745-47. "If the gravamen of the complaint is injury

---

           (ii)      title to the books, records, and assets of any previous conservator or other legal custodian of such institution.

[4] In addition, permitting receivership claimants to pursue on their own behalf claims for harm suffered by a failed bank would violate 12 U.S.C. § 1821(j), which prohibits any order that would "restrain or affect" the FDIC in its role as conservator or receiver of a depository institution. *See* 12 U.S.C. § 1821(j). In *In re Fed. Nat'l Mortgage Ass'n Sec., Derivative & ERISA Litig.*, 629 F. Supp. 2d 1 (D.D.C. 2009), Judge Leon construed an identical provision in the governing statute for the Federal Housing Finance Agency to require the substitution of FHFA as plaintiff in a putative stockholder derivative action brought against directors and officers of Fannie Mae, for which FHFA had been appointed conservator. *See id.* at 4 n.4 (citing 12 U.S.C. § 4617(f)).

primarily to the corporation or to the shareholders generally, then the claim belongs to the corporation and the shareholder's right to bring the action derives from the corporation." *Southeast Banking Corp.*, 827 F. Supp. at 745.

When a "creditor of a corporation sustains injury only because of the [corporation's] inability to pay an obligation, the creditor's injury is derivative of the corporation's [and] the creditor therefore lacks standing to sue." *Jackson Nat'l Life Ins Co. v. Ligator*, 949 F. Supp. 200, 204-05 (S.D.N.Y. 1996); *see Courtney*, 485 F.3d at 950 (claims of failed bank creditors are derivative when alleged injuries "are entirely dependent on the bank's fate"); *In re Sunrise Sec. Litig*, 916 F.2d at 887 (loss in value of deposits "reflects the impaired condition of the financial institution" that is "sustained by all depositors and is incidental to and dependent on injury to the institution"); *Brazlin*, 1994 WL 374286, at *2 (plaintiffs' inability to collect amounts due on bonds was derivative injury alleging a claim that "belong[ed] to the RTC").[5]

In this case, the *only* injury that plaintiffs allege they suffered as the result of the conduct at issue was the loss of recovery with respect to their WMB bonds. *See, e.g.*, Pet., ¶ 91 (Count I) ("As a proximate result of Defendants' actions, WMI voluntarily filed a petition in bankruptcy court, and has failed and refused meet its obligations under the bond contracts. Likewise, WMB, through the FDIC as receiver, has failed and refused to meet its obligations under the bond contracts."); *id.*, ¶ 99 (Count II) (as a result of JPMC's alleged breach of confidentiality agreement "the value of Plaintiffs' common stock was rendered worthless, and the contractual

---

[5] The law of the State of Washington (WMB's state of incorporation) is identical. *See Chan v. Chang*, No. 55168-0-I, 2006 WL 1135018, *3 (Wash. Ct. App. May 1, 2006) (stockholder does not have standing where it cannot "show[] that [it] suffered any damage separate or distinct from that suffered as a shareholder [or] explain how [its] damages are independent of [its] status as a shareholder."); *Sabey v. Howard Johnson & Co.*, 101 Wash. App. 575, 584-85, 5 P.3d 730, 735 (Wash. Ct. App. 2000) (claims alleging "separate and distinct harm" are an exception to the prohibition against direct actions).

rights underlying the Bonds are of no value."); *id.*, ¶ 103 (Count III) (JPMC allegedly unjustly enriched by obtaining "the WMB assets at below market prices out of the FDIC receivership unencumbered of Plaintiffs' contractual rights to payment").  Under FIRREA, the FDIC-Receiver, not the failed bank's creditors or stockholders, is vested with the authority to determine whether or not such claims should be pursued.  *Pareto*, 139 F.3d at 700.[6]

While it is possible for a stockholder or creditor of a failed bank or bankrupt corporation to hold "direct" claims, in order to allege such a "direct injury" a creditor must show that it suffered some "injury independent of the firm's fate."  *Courtney*, 485 F.3d at 950 (citation omitted).  This requires allegations of "injury to the noteholders as creditors" that is "separate and distinct from the injury to [the failed bank] or to [the failed bank's] other creditors and shareholders."  *Brazlin*, 1994 WL 374286, at *6.

In this case, however, there is no allegation in plaintiffs' petition of any such direct injury.  To the contrary, even assuming for the sake of argument that plaintiffs could establish their allegations, the only harm they allegedly suffered was the loss in value of their WMB bonds.  *See supra* at 6-7; *see also* Pet., ¶ 71 ("The WMB bonds (also held by Plaintiffs) are subject to liquidation as part of the FDIC receivership.  Upon information and belief, these Bonds are worthless.").  As Judge Harmon concluded in dismissing claims against JPMC by these same plaintiffs in the *Enron* case, such an injury is shared by all bondholders equally and alleges derivative harm, not direct injury.  *Enron*, 2007 WL 789141 at *13 ("Diminution in value

---

[6] The FDIC-Receiver's ownership of plaintiffs' claims as WMB bondholders is another basis supporting its intervention in this action.  Plainly, as the owner of the remaining claims that are at issue the FDIC-Receiver has "an interest relating to the property or transaction that is the subject of the action . . ."  Fed. R. Civ. P. 24(a)(2); *see, e.g., Southeast Banking Corp.*, 827 F. Supp. at 744 (FDIC granted leave to intervene in action by trustee for bankrupt bank holding company against former directors and officers).

of their *particular bonds* is no different from the diminution in value of all Enron securities")
(emphasis added).

As has been discussed in the FDIC-Receiver's prior submissions on these motions,
FIRREA provides plaintiffs a remedy for such harm.  They are permitted to file a claim against
the WMB receivership for the loss in value of their WMB bonds.  Under the statute, plaintiffs'
receipt of receivership certificates with respect to such interests constitutes payment in full.  *See,
e.g., Adagio Inv. Holding Ltd. v. F.D.I.C.*, 338 F. Supp. 2d 71, 74 n.4 (D.D.C. 2004) (citing
*R.T.C. v. Titan Fin. Corp.*, 36 F.3d 891, 892-93 (9th Cir. 1994) (*per curiam*)).  As holders of
receivership certificates, plaintiffs will receive distributions in accordance with the statute of
whatever assets are recovered by the FDIC-Receiver in its efforts as receiver.

## CONCLUSION

For the foregoing reasons, to the extent the Court determines that the jurisdictional bar does not apply, the FDIC-Receiver respectfully submits that the remaining claims in the petition should be dismissed for lack of standing.

Dated:  Washington, D.C.
       March 23, 2010

Respectfully submitted,

  /s/ David Clarke, Jr.
David Clarke, Jr. (D.C. Bar. No. 396002)
david.clarke@dlapiper.com
Deana L. Cairo (D.C. Bar No. 469628)
deana.cairo@dlapiper.com
DLA Piper LLP (US)
500 8th Street, N.W.
Washington, D.C.  20004
Tel.:  (202) 799-4000
Fax:  (202) 799-5000

- and -

John J. Clarke, Jr. (admitted *pro hac vice*)
john.clarke@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Tel.:  (212) 335-4500
Fax:  (212) 335-4501

Attorneys for Intervenor-Defendant
  Federal Deposit Insurance Corporation,
  as Receiver for Washington Mutual Bank

**CERTIFICATE OF SERVICE**

The undersigned attorney for the FDIC-Receiver certifies that on this 23rd day of March,

2010, he caused a copy of the foregoing document to be filed via ECF which will cause

electronic notice of its filing to be served on all parties who have appeared in this action.


　/s/　　David Clarke, Jr.　　　　　　　　　　
　　　　　　David Clarke, Jr.