UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN NATIONAL INSURANCE COMPANY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for Washington Mutual Bank, Henderson, Nevada, *et al.*,<br><br>Defendants. | Case No. 1:09-cv-01743 (RMC) |

**SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEFENDANTS JPMORGAN CHASE & CO. AND JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS**

Bruce W. Hickey (D.C. Bar No. 479036)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 956-7500
Facsimile: (202) 293-6330

Bruce E. Clark (USDC Bar No. D00144)
Robert A. Sacks (admitted *pro hac vice*)
Stacey R. Friedman (admitted *pro hac vice*)
M. David Possick (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Counsel for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.*

**TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

BACKGROUND ......................................................................................................... 2

ARGUMENT ............................................................................................................... 3

I. THE FDIC AS RECEIVER OF WMB OWNS CLAIMS FOR ALLEGED GENERALIZED HARM TO WMB AND ITS CREDITORS............................ 3

CONCLUSION .......................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

### CASES

* *Adagio Inv. Holding Ltd.* v. *FDIC*,
338 F. Supp. 2d 71 (D.D.C. 2004) .......... 8–9

* *Brazlin* v. *Western Sav. & Loan Ass'n*,
No. Civ 91-0078,
1994 U.S. Dist. LEXIS 21549 (D. Ariz. Jan. 26, 1994) .......... 6

*Chicago Title & Trust Co.* v. *Timotijevic*,
No. 02 C 2165,
2004 U.S. Dist. LEXIS 5147 (N.D. Ill. Mar. 29, 2004) .......... 9

*Courtney* v. *Halleran*,
485 F.3d 942 (7th Cir. 2007) .......... 4–5

* *Courtney* v. *Halleran*,
No. 02-C-6926,
2004 U.S. Dist. LEXIS 18795 (N.D. Ill. Sept. 14, 2004) .......... 4

*Courtney* v. *Pritzker*,
No. 1-07-1656,
2010 Ill. App. LEXIS 142 (Ill. App. Feb. 22, 2010) .......... 5

*Downriver Cmty. Fed. Credit Union* v. *Penn Square Bank*,
879 F.2d 754 (10th Cir. 1989) .......... 5, 8

*FDIC* v. *Am. Bank Trust Shares, Inc.*,
558 F.2d 711 (4th Cir. 1977) .......... 6

*FDIC* v. *Am. Bank Trust Shares, Inc.*,
412 F. Supp. 302 (D.S.C. 1976) .......... 6–7

*FDIC* v. *Benson*,
867 F. Supp. 512 (S.D. Tex. 1994) .......... 3

*FDIC* v. *Ernst & Young LLP*,
374 F.3d 579 (7th Cir. 2004) .......... 8

*FDIC* v. *Flagship Auto Ctr., Inc.*,
No. 3:04 CV 7233,
2009 U.S. Dist. LEXIS 14546 (N.D. Ohio Feb. 25, 2009) .......... 3–4

* *Greenfield* v. *Shuck*,
867 F. Supp. 62 (D. Mass. 1994) ....................................................................7

*Hamid* v. *Price Waterhouse*,
51 F.3d 1411 (9th Cir. 1995) ........................................................................5

* *Lubin* v. *Cincinnati Ins. Co.*,
No. 1:09-CV-1156,
2009 U.S. Dist. LEXIS 112019 (N.D. Ga. Nov. 30, 2009) .....................................5

*Midlantic Nat'l Bank/North* v. *Fed. Reserve Bank of N.Y.*,
814 F. Supp. 1195 (S.D.N.Y. 1993)..............................................................9

*O'Melveny & Myers* v. *FDIC*,
512 U.S. 79 (1994)......................................................................................3

* *Pareto* v. *FDIC*,
139 F.3d 696 (9th Cir. 1998) ...............................................................5–6, 8

*RTC* v. *Titan Fin. Corp.*,
36 F.3d 891 (9th Cir. 1994) ..........................................................................9

*United States ex rel. RTC* v. *Schroeder*,
86 F.3d 114 (8th Cir. 1996) ..........................................................................3

**STATUTES**

12 U.S.C. § 1821(d)(2)(A)(i). ........................................................................ *passim*

12 U.S.C. § 1821(d)(11) .....................................................................................9

12 U.S.C. § 1821(d)(13)(D)(ii) ............................................................................2

JPMC respectfully submits this memorandum in response to the Court's March 9, 2010 request for supplemental briefing on whether the FDIC owns the ANICO WMB Bondholders' claims (including claims that relate to actions that predate the receivership) for indirect harm that they and every WMB bondholder allegedly suffered as a result of WMB's failure.[1]

**PRELIMINARY STATEMENT**

The ANICO WMB Bondholders are subordinated creditors of WMB who are seeking special compensation in this action for alleged harm to WMB. The Complaint does not allege that the ANICO WMB Bondholders suffered any harm different from other creditors of WMB or that JPMC took any action directed only at the ANICO WMB Bondholders. Rather, Plaintiffs are seeking damages because purported misconduct ultimately led the FDIC to sell the assets of WMB to JPMC at an alleged "fire sale" price and, as a result, allegedly improperly diluted the value of Plaintiffs' WMB bonds. The generalized harm about which the Plaintiffs complain was suffered by all investors in, and creditors of, the failed bank.

Any such claim for generalized harm to WMB (if any such claim exists) is an asset of the receivership that belongs to the FDIC, in its capacity as WMB's receiver. The recovery from any such claim would be for the benefit of the receivership to be distributed pursuant to the priority scheme set forth in FIRREA. More specifically, the FDIC would pay creditors, in the form of receivership certificates, for the lost value of their bonds, with subordinated bondholders such as Plaintiffs near the bottom of the distribution scheme. As a matter of law, these receivership certificates (the same certificates being made available to the

---

[1] Capitalized terms not defined herein have the same meaning as set forth in the JPMC Defendants' Memorandum of Points and Authorities in Support of their Motion to Dismiss. (Docket No. 90 ("JPMC's Motion to Dismiss").)

ANICO WMB Bondholders) "fully compensate" bondholders for the lost value of their bonds. This process ensures that any recovery for any generalized claim is not be paid out to individual creditors who are simply seeking to avoid the priority scheme and restrictions of FIRREA.

As a result, the ANICO WMB Bondholders do not have standing to pursue separate and independent recovery for claims that (if they had any merit) would be owned by the FDIC to be pursued on behalf of all of the claimants to the receivership. Such claims cannot be pursued by Plaintiffs in a clear effort to evade FIRREA's exclusive processes.

## BACKGROUND

The sole Plaintiffs remaining in this case are the ANICO WMB Bondholders, who hold subordinated debt of WMB.[2] In motions brought on December 7, 2009, the FDIC and JPMC set forth arguments that each independently compel the conclusion that Plaintiffs' claims should be dismissed and, collectively, leave no doubt that the ANICO WMB Bondholders' claims fail as a matter of law.[3] To begin, the FDIC's and JPMC's motions establish that FIRREA applies to the ANICO WMB Bondholders' claims because, in part, Congress drafted FIRREA to reach "*any claim relating* to any act or omission" of the FDIC as receiver for a failed bank. 12 U.S.C. § 1821(d)(13)(D)(ii) (emphasis added). Here, each of Plaintiffs' three causes of action is predicated on actions by the FDIC as WMB's receiver, in particular the FDIC's decision to sell "the crown jewels of Washington Mutual to JPMC at a fire sale price." (Compl. ¶ 21.) Plaintiffs are jurisdictionally barred from asserting these claims in any court because they

---

[2] Plaintiffs have dismissed with prejudice claims on behalf of the ANICO WMI Bondholders and Stockholders. (Mar. 9, 2010 Tr. at 4–6.)

[3] On December 7, 2009, Plaintiffs filed a motion to dismiss the FDIC as a party and for remand or, in the alternative, dismissal without prejudice for lack of subject matter jurisdiction. On January 7, 2010, the FDIC and JPMC filed opposition briefs setting forth the reasons why Plaintiffs' motion should be denied.

failed to exhaust their administrative remedies under FIRREA. In addition, the FDIC's and JPMC's motions establish that each of the ANICO Bank Bondholders' claims fails to plead a viable Texas state law cause of action.

On March 9, 2010, the Court requested this supplemental briefing to address the FDIC's further argument that the ANICO WMB Bondholders lack standing to proceed with their claims seeking to recover for generalized harm purportedly suffered by all WMB creditors.

## ARGUMENT

### I. THE FDIC AS RECEIVER OF WMB OWNS CLAIMS FOR ALLEGED GENERALIZED HARM TO WMB AND ITS CREDITORS.

The FDIC as "receiver, and by operation of law, succeeds to all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(i). Pursuant to these powers, "the FDIC as receiver 'steps into the shoes' of the failed [bank]" and, in that capacity, "marshals assets of failed institutions for the benefit of its creditors [pursuant to] 12 U.S.C. § 1821(d)." *United States ex rel. RTC* v. *Schroeder*, 86 F.3d 114, 117 (8th Cir. 1996) (quoting *O'Melveny & Myers* v. *FDIC*, 512 U.S. 79, 86 (1994). One of the assets of the failed bank is any claim for generalized harm to WMB. The FDIC has the power to pursue such claims for the benefit of the receivership because when it "took over [WMB] pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), . . . it not only stepped into [WMB's] shoes, but it also acquired the rights of the bank's creditors, depositors, and shareholders." *FDIC* v. *Benson*, 867 F. Supp. 512, 518 (S.D. Tex. 1994); *see also FDIC* v. *Flagship Auto Ctr., Inc.*, No. 3:04 CV 7233, 2009 U.S. Dist. LEXIS 14546, at *9–10 (N.D. Ohio Feb. 25, 2009) (the FDIC's role under 12 U.S.C. § 1821(d)(2)(A) includes "perform[ing] all of the functions of the named bank and marshal[ling] the assets of the failed

bank [to] distribut[e] them to the bank's depositors and other creditors"). Courts have therefore held that suits that seek to recover for the harm allegedly suffered directly by the failed bank (and indirectly by the particular plaintiffs in question) can only be brought by the FDIC in its capacity as receiver of the failed bank.

Several courts have held that claims by depositors for generalized harm to the bank belong to the FDIC. In *Courtney* v. *Halleran*, for example, a failed bank's depositors sued the bank's holding company, its officers and directors and its auditor for misrepresenting the financial health of the bank prior to receivership. No. 02-C-6926, 2004 U.S. Dist. LEXIS 18795, at *4 (N.D. Ill. Sept. 14, 2004). The court noted that "when the FDIC is appointed receiver of an insolvent bank, it essentially 'steps into the shoes' of that bank and assumes control of the bank's rights and assets, including certain causes of action the bank might have against other parties" and, in that case, that also "belonged to the bank's depositors." *Id*. at *11–12 (citing 12 U.S.C. § 1821(d)(2)(A)(i)). The court therefore granted the motion to dismiss because the "injuries alleged . . . are indistinguishable from those suffered by [the bank's] other depositors: plaintiffs lost their deposits because defendants looted [the bank's] assets, drove [the bank] into insolvency and, all the while, misled investors into believing that [the bank] was financially stable," therefore the claims "must be brought by the FDIC on depositors' behalf." *Id*. at *14–15, *aff'd in relevant part*, 485 F.3d 942, 950 (7th Cir. 2007) ("where the harm has been suffered by all depositors equally and plaintiffs have not suffered any distinct individual injury, the claim belongs to the institution (or its successor, the FDIC)").[4]

[4] *See also Hamid* v. *Price Waterhouse*, 51 F.3d 1411, 1420–21 (9th Cir. 1995) (depositors lacked standing to bring claims against individuals and firms accused of causing banks to fail and fall into the FDIC's receivership because to "permit[] depositors to bring individual actions for such injuries would invariably impair the rights of other general creditors and claimants with

Shareholder derivative suits can likewise be brought only by the FDIC as receiver for the failed bank. In *Lubin* v. *Cincinnati Insurance Co.*, for example, the court held that in "order for the Trustee [of a failed bank's holding company] to have a viable claim against the Defendants for pre-receivership misconduct, the claim must be based on actions of the Defendants that caused direct harm to the [holding company] that is unique from harm caused to the Bank." No. 1:09-CV-1156, 2009 U.S. Dist. LEXIS 112019, at *11–12 (N.D. Ga. Nov. 30, 2009). Because the *Lubin* complaint did not contain the "factual details to support the claims that 'direct and unique harm' was caused by Defendants," the court dismissed the action finding that the "Trustee does not have standing to bring the derivative claims alleged in the Damages Complaint." *Id*. at *15–19; *see also Pareto* v. *FDIC*, 139 F.3d 696, 700–01 (9th Cir. 1998) (dismissing shareholder derivative suit against the FDIC and the former directors of the bank because "Congress has transferred everything it could to the FDIC, and that includes a stockholder's right, power, or privilege to demand corporate action or to sue directors or others when action is not forthcoming").

Courts have likewise applied these same principles in holding that creditors of a failed bank (including holders of subordinated debt, like the ANICO WMB Bondholders) cannot maintain lawsuits seeking to recover for the generalized harm suffered by the failed bank and its

---

Cont'd
superior interest" and would "circumvent [FIRREA's] priority scheme"); *Downriver Cmty. Fed. Credit Union* v. *Penn Square Bank*, 879 F.2d 754, 764–765 (10th Cir. 1989) (uninsured depositors who "allege[d] that they relied upon misleading information that was available to all depositors" could not pursue their claims because "any remedy for fraudulent representations that affects, or potentially affects, all creditors belongs to the receiver, who asserts such claims for the benefit of all creditors"); *Courtney* v. *Pritzker*, No. 1-07-1656, 2010 Ill. App. LEXIS 142, at *9 (Ill. App. Feb. 22, 2010) (because depositors in a failed bank "fail[ed] to allege an injury (lost deposits) which was separate and distinct from that suffered by other depositors or an injury involving a depositor which existed independently of the bank" these claims "belong to the FDIC in its corporate capacity as receiver for the failed bank").

creditors. Courts have found that while creditors maintain the right to pursue claims on their own behalf for unique, individualized harm in accordance with Section 1821(d)(2)(A), creditors cannot pursue claims for alleged harm that was equally suffered by the failed bank and all of its creditors. By way of example, in *Brazlin* v. *Western Savings & Loan Association*, holders of subordinated debt brought a variety of state law causes of action against the directors of the failed bank, a third party auditor, and agents for misrepresenting the true health of the bank. No. Civ 91-0078, 1994 U.S. Dist. LEXIS 21549 (D. Ariz. Jan. 26, 1994). The complaint described "a scheme that injured [the failed bank] and its shareholders and noteholders" and, through various "unsound and unsafe practices, operated an insolvent institution for their own use and benefit, and wasted and dissipated [the failed bank's] assets." *Id*. at *20–21. The court granted the defendants' motion to dismiss, holding that "the injury to the noteholders as creditors was not separate and distinct from the injury to Western or to Western's other creditors and shareholders, and because the plaintiffs "allege only an injury to the failed bank that similarly affected all creditors," those claims "belong to the RTC as Western's successor in interest." *Id*. at *21–24; *see also FDIC* v. *Am. Bank Trust Shares, Inc.*, 412 F. Supp. 302, 306–08 (D.S.C. 1976) (holders of subordinated debt had no standing to assert claims relating to mismanagement of bank by officers and directors of bank and its holding company prior to receivership because "[t]o the extent such causes of action are for harm done to [the failed bank], FDIC . . . is the owner of, and sole party entitled to assert, such causes of action" in light of the fact that the FDIC "stands in the shoes of the general creditors" of a failed bank), *aff'd in relevant part and vacated on other grounds*, 558 F.2d 711, 714–15 (4th Cir. 1977) ("no error in the district court's determination that FDIC acquired apparent title to all causes of action against officers, directors

and employees of Bank and [holding company] for harm visited upon Bank . . . . FDIC acquired title by reason of its appointment as receiver").

The court in *Greenfield* v. *Shuck* employed the same analysis. The *Greenfield* plaintiffs, holders of subordinated debt in a failed bank, sued the directors and officers of the failed bank for mismanagement that led to the receivership and allegedly caused the notes to lose their value. 867 F. Supp. 62 (D. Mass. 1994). The court acknowledged that "it is well settled that when the RTC takes over a failed banking institution as receiver, it becomes the owner of any derivative claims . . . ." *Id*. at 65. The court only permitted the Greenfield debtholders' claims to proceed after finding that the "injuries suffered by these plaintiffs are sufficiently distinct from any injury to the corporation as a whole" due to the fact that the "plaintiffs have alleged that numerous personal assurances were given to induce them to withdraw funds from deposit accounts to purchase the Subordinated Capital Notes." *Id*. at 67.

Here the ANICO WMB Bondholders' claims are not founded on an alleged injury that is distinct from any injury to the failed bank as a whole. To the contrary, the alleged harm that the ANICO WMB Bondholders suffered is identical to the harm suffered by all other holders of WMB bonds, whose investments are also purportedly worthless due to WMB's failure. Indeed, as explained in JPMC's Motion to Dismiss (pp. 10–12), each of Plaintiffs' three causes of action is predicated on allegations of generalized harm to WMB and, indirectly, to all of WMB's respective creditors. Such claims seeking recovery for generalized harm purportedly suffered by all bondholders of WMB cannot be pursued individually by the ANICO WMB Bondholders. Rather, these claims are an asset of WMB's receivership estate, and can be brought exclusively by the FDIC (or its designee) on behalf of all creditors of WMB.

This conclusion—that Plaintiffs' claims for generalized harm belong to the FDIC—is unquestionably consistent with FIRREA's exclusive insolvency regime.[5] Pursuant to FIRREA, the "FDIC-Receiver acquires the assets and legal interests of the failed bank and proceeds much as a trustee in bankruptcy." *FDIC* v. *Ernst & Young LLP*, 374 F.3d 579, 581 (7th Cir. 2004). The FDIC's exclusive right to assert claims for harm directed at the failed bank ensures that any claim "that affects, or potentially affects, all creditors belongs to the receiver, who asserts such claims for the benefit of *all* creditors" because "all creditors must share in a ratable distribution of the insolvent bank's assets." *Downriver Cmty.*, 879 F.2d at 762–765 (emphasis added); *see also Pareto*, 139 F.3d at 700 (the FDIC's role under FIRREA includes "the expeditious and orderly protection of all who are interested in the bank by placing the pursuit of its rights, protection of its assets, and payment of its liabilities firmly in the hands of a single, congressionally designated agency"). Through this exclusive insolvency regime, the ANICO WMB Bondholders and all creditors will receive "full compensation" for the lost value of their bonds through receivership certificates. Indeed, "[i]t is well established that payment through delivery of a receivership certificate, even one that never has any cash value, is all that is required to fully compensate creditors." *Adagio Inv. Holding Ltd.* v. *FDIC*, 338 F. Supp. 2d 71, 76 (D.D.C. 2004) (citing *RTC* v. *Titan Fin. Corp.*, 36 F.3d 891, 892–93 (9th Cir. 1994) (per curiam)).[6]

---

[5] The FDIC as owner of these claims may seek to pursue or resolve them, or cede the right to pursue the claims to others.

[6] S*ee also Chicago Title & Trust Co.* v. *Timotijevic*, No. 02 C 2165, 2004 U.S. Dist. LEXIS 5147, at *8–9 (N.D. Ill. Mar. 29, 2004) (receivership certificate precluded state law claim by check payee against check payor seeking the remainder of the value of the cashier's check not paid by failed bank because "federal law does not guarantee dollar-for-dollar recovery from an insolvent banking institution. Instead, Chicago Title must face the harsh reality and consequences of the Bank's insolvency, and accept the terms provided by the FDIC for the

The ANICO WMB Bondholders' attempt to circumvent FIRREA's priority scheme could not be any more obvious. Plaintiffs admittedly brought this action to recoup the lost value of their subordinated bonds, alleging that they suffered damages based on the FDIC's statement that "'the FDIC as Receiver for Washington Mutual Bank does not anticipate that subordinated debt holders of the bank will receive any recovery on their claims.'" (Compl. ¶ 71 (quoting WMB Bank Acquisition Information on FDIC's website, available at http://www.fdic.gov/bank/individual/failed/wamu.html).) The paragraph relied on by Plaintiffs makes clear that they stand in line behind other creditors who would be paid first as a result of recovery on any claim belonging to WMB: "[U]nder federal law, 12 U.S.C. § 1821(d)(11), claims by subordinated debt holders are paid only after all claims by general creditors of the institution." *Id.* Accordingly, to the extent that creditors of WMB have any basis for recovery against JPMC (they do not), such claims must be pursued by the FDIC or by the FDIC's designee to facilitate compliance with the statutorily mandated priority scheme under which all general creditors of WMB must be paid in full before any subordinated debt holders—such as the ANICO WMB Bondholders—are permitted to receive any recovery. By acknowledging the FDIC's ownership of claims that would provide recovery to all creditors of the failed bank, the Court ensures that no creditor can evade FIRREA's exclusive claims process in an effort to seek additional, special compensation that Congress intended to be distributed as an asset of the receivership and through the receiver.

---

Cont'd
satisfaction of its claim") (internal quotations and citations omitted); *Midlantic Nat'l Bank/North* v. *Fed. Reserve Bank of N.Y.*, 814 F. Supp. 1195, 1197 (S.D.N.Y. 1993) ("Midlantic is not entitled to any relief beyond what the FDIC has given it—a Receiver's Certificate for the full amount of the money judgment.").

## CONCLUSION

For the foregoing reasons, the Court should find that the ANICO WMB Bondholders are not permitted to pursue their claims for generalized harm to themselves and WMB. Setting aside the lack of *bona fides* of these claims, any such generalized harm claims belong to the FDIC as WMB's receiver. For this reason, and the reasons set forth in JPMC's Motion to Dismiss and Reply Memorandum, the JPMC Defendants respectfully request that this Court grant the JPMC Defendants' Motion to Dismiss in its entirety.

Dated: March 23, 2010
New York, New York

Respectfully submitted,

/s/ Bruce E. Clark

Bruce W. Hickey (D.C. Bar No. 479036)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 956-7500
Facsimile: (202) 293-6330

Bruce E. Clark (USDC Bar No. D00144)
Robert A. Sacks (admitted *pro hac vice*)
Stacey R. Friedman (admitted *pro hac vice*)
M. David Possick (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Counsel for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.*