**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN NATIONAL INSURANCE COMPANY, *et al*,<br><br>   Plaintiffs,<br><br>   v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Washington Mutual Bank, Henderson, Nevada, *et al.*,<br><br>   Defendants. | Case No. 1:09-cv-01743 (RMC) |

**FDIC-RECEIVER'S REPLY IN RESPONSE TO**
**PLAINTIFFS' SUPPLEMENTAL BRIEF**

                    David Clarke, Jr. (D.C. Bar. No. 396002)
                    Deana L. Cairo (D.C. Bar No. 469628)
                    DLA Piper LLP (US)
                    500 8th Street, N.W.
                    Washington, D.C.  20004
                    Tel.:  (202) 799-4000
                    Fax:  (202) 799-5000

                     - and -

                    John J. Clarke, Jr. (admitted *pro hac vice*)
                    john.clarke@dlapiper.com
                    DLA Piper LLP (US)
                    1251 Avenue of the Americas
                    New York, NY 10020
                    Tel.:  (212) 335-4500
                    Fax:  (212) 335-4501

Dated:  April 2, 2010          Attorneys for Intervenor-Defendant
                      Federal Deposit Insurance Corporation,
                      as Receiver for Washington Mutual Bank

In accordance with the Order of this Court entered on March 17, 2010, intervenor-defendant Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank (the "FDIC-Receiver"), respectfully submits this reply in response to plaintiffs' supplemental brief.

## ARGUMENT

Contrary to plaintiffs' rhetoric, there is nothing "radical" about the longstanding distinction between direct and derivative causes of action, nor is the FDIC-Receiver's ownership of causes of action for harm caused to a failed bank in any respect a novel proposition of law. When it was appointed the receiver for Washington Mutual Bank ("WMB"), the FDIC-Receiver succeeded to WMB's rights to those causes of action, as courts have recognized for years. 12 U.S.C. § 1821(d)(2)(A); *see* FDIC-Receiver Supp. Mem. at 2-6 (collecting cases). Plaintiffs' various attempts to evade the dispositive effect of these well-established principles are without merit.

1.  Plaintiffs cannot realistically dispute the long-recognized distinction between derivative and direct causes of action; indeed, their supplemental brief concedes it. *See, e.g.*, Pl. Supp. Br. at 11 (quoting *Schertz-Cibolo-Universal City Indep. School Dist. v. Wright (In re Educators Group Health Tr.)*, 25 F.3d 1281, 1284 (5th Cir. 1994) ("As part of this inquiry, we look at the nature of the injury for which relief is sought. If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate.")).[1] As one of the decisions cited by plaintiffs explained, creditors have no

---

[1] The decisions plaintiffs cite are entirely consistent with this basic proposition. For example, in *Caplin v. Marine Midland Grace Co. of N.Y.*, 406 U.S. 416 (1972), the Supreme Court concluded that a bankruptcy trustee did not have standing to assert, on behalf of debenture holders, "claims of misconduct by an indenture trustee" for those debentures. The Court expressly distinguished such claims from claims that were "available to the estate," that is,

standing to pursue "a claim by a creditor against a third party asserting a general injury to the claimant as a creditor, the successful prosecution of which would increase the assets available to all creditors." *In re Eagle Enters., Inc.*, 265 B.R. 671, (E.D. Pa. 2001).

Plaintiffs do not identify a single allegation in their petition – because there is none – that supports their assertion that they have alleged a direct injury here.  Indeed, plaintiffs admit that their theory of harm is that "JPMC stripped away assets [of WMB] so as to prevent Plaintiffs' bond obligations from being fulfilled."  Pl. Supp. Br. at 3; *see id.* at 12.  This is a classic derivative injury.  *See Brazlin v. Western Sav. & Loan Ass'n*, Civ. No. 91-0078-PHX-SMM, 1994 WL 374286, *3-6 (D. Ariz. 1994) (inability to collect amounts due on bonds was derivative injury alleging a claim that "belong[ed] to the RTC").  It is not alleging an individual harm to assert, as plaintiffs do, that each of their claims "involves interference with a bond contract *specific to a particular Plaintiff*."  Pl. Supp. Br. at 12 (emphasis in original).  This same argument was expressly rejected in dismissing similar claims asserted by these plaintiffs in *Enron.  See Newby v. Enron Corp. (In re Enron Corp.),* MDL No. 1446, 2007 WL 789141, *14

---

claims for harm to the bankrupt corporation.  *Id.* at 428-30; *see also Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 584-86 (5th Cir. 2008) (recognizing that bankruptcy trustee has "exclusive standing" to assert claims belonging to bankruptcy estate but finding that bondholders' claims of fraud asserted direct injury rather than harm to the debtor); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995) (discussing distinction between derivative claims and direct claims and recognizing that creditors' claims of misrepresentation may allege direct injury); *Regan v. Vinick & Young (In re Rare Coin Galleries of Am., Inc.)*, 862 F.2d 896, 900 (1st Cir. 1988) ("Appellants contend that the claims filed by the trustee belong solely to the creditors, but an examination of the complaint shows that this is not so.  In each of the four counts . . . the trustee alleges damage to the *debtor*.") (emphasis in original).  In *Hawaiian Investors v. Thorndal (In re Petroleum Corp. of Am.)*, 417 F.2d 929 (8th Cir. 1969), also cited by plaintiffs, the court considered the scope of a bankruptcy trustee's strong-arm powers under the Bankruptcy Act of 1898 and concluded that those powers did not extend to the particular claims at issue.  That analysis is entirely distinct from, and irrelevant to, the scope of the FDIC-Receiver's powers under its own governing statute, which are at issue here.

2

(S.D. Tex. Mar. 12, 2007) ("Diminution in value of their *particular bonds* is no different from the diminution in value of all Enron securities") (emphasis added).

2. There is no statutory exception from this rule for creditors' claims. Indeed, plaintiffs' statutory argument misapprehends the distinction between direct and derivative claims. Under 12 U.S.C. § 1821(d)(2)(A), the FDIC-Receiver succeeded by operation of law to all of *WMB's* causes of action, whether asserted directly by WMB or derivatively by any of WMB's constituents. *See Courtney*, 485 F.3d at 950. It is therefore entirely irrelevant that section 1821(d)(2)(A) does not list "creditors" among those to whose rights the FDIC succeeds by operation of law.[2]

FIRREA grants the FDIC-Receiver exclusive power to sue for harm suffered by a failed bank in order to "assure the expeditious and orderly protection of all who are interested." *Pareto v. F.D.I.C.*, 139 F.3d 696, 700 (9th Cir. 1998). "[P]ermitting [plaintiffs] to bring individual actions for [derivative] injuries [ ] would invariably impair the rights of other general creditors and claimants with superior interests." *Popkin v. Jacoby (In re Sunrise Sec. Litig.)*, 916 F.2d 874, 887 (3d Cir. 1990). This would "lead to a multiplicity of suits . . . and impair the efforts of FDIC to recover the institution's assets . . . for equitable distribution among *all* depositors and creditors in accordance with the federal priority scheme." *Id.* (emphasis in original); *see also Downriver Cmty. Fed. Credit Union v. Penn Square Bank*, 879 F.2d 754, 764 (10th Cir. 1989); *Brandt v. Bassett (In re Southeast Banking Corp.)*, 827 F. Supp. 742, 746 (S.D. Fla. 1993), *rev'd in part on other grounds*, 69 F.3d 1539 (11th Cir. 1995).

---

[2] The Supreme Court had no occasion to consider the issue presented here in its decision in *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79 (1994), where in the course of rejecting an argument for creation of a federal common law of imputation, the Court recognized that under section 1821(d)(2)(A) "the FDIC as receiver 'steps into the shoes' of the failed S &L obtaining the rights '*of* the insured depository institution' that existed prior to receivership." *Id.* at 86 (emphasis in original) (citation omitted).

3

3.  There is no other basis to override the FDIC-Receiver's exclusive ownership of the claims alleged by plaintiffs in the petition here.[3] The fact that the FDIC-Receiver "has not brought claims similar to those brought by Plaintiffs, much less Plaintiffs' specific causes of action, against JPMC," as plaintiffs argue in their brief, *see* Pl. Supp. Br. at 13, has no bearing on the standing analysis. Indeed, applying such a standard would effectively eliminate the distinction between derivative and direct actions, since it would result in dismissal of a creditor's derivative action *only* when the FDIC-Receiver exercised its statutory powers in precisely the manner demanded by a given plaintiff. *See Pareto*, 139 F.3d at 700-01.[4]

Similarly, the FDIC-Receiver is not "disqualified" from owning the derivative claims being asserted by plaintiffs by any purported conflict of interest. Plaintiffs' reliance on decisions examining the adequacy of parties to serve as class representatives is entirely misplaced. *See* Pl. Supp. Br. at 8-9. The FDIC-Receiver is not seeking to act in a representative capacity on behalf of absent class members. The FDIC-Receiver is exercising its statutory duties and rights, which include the right to decide whether to pursue causes of action for alleged harm caused to

---

[3] For reasons explained in the FDIC-Receiver's prior submissions, all of the claims that plaintiffs have not yet dismissed voluntarily are subject to the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D). Plaintiffs' failure to allege direct injury is a secondary, and equally fatal, legal infirmity.

[4] *See also Kellmer v. Raines (In re Federal National Mortgage Ass'n Sec., Deriv. and ERISA Litig.)*, 629 F. Supp. 2d 1, (D.D.C. 2009) (applying parallel provision of Housing and Economic Recovery Act of 2008 ("HERA")) ("HERA's broad grant of authority to the FHFA indicates that Congress intended to shift as much as possible to the FHFA, including Fannie Mae's shareholders' power and standing to pursue derivative claims, regardless of whether the FHFA decides to pursue the claims itself"); *In re Federal Home Loan Mortgage Corp. Deriv. Litig.*, 643 F. Supp. 2d 790, 796-97 (E.D. Va. 2009) (in construing HERA, concluding that FIRREA eliminated possibility of demand refusal derivative actions by stockholders of failed banks); *Esther Sadowsky Testamentary Tr. v. Syron*, 639 F. Supp. 2d 350, 351-52 (S.D.N.Y. 2009) ("nothing in the language or history of HERA indicates that its grant of shareholder rights and powers to the FHFA is contingent upon maintenance of suits such as this one. The statute clearly envisions a degree of discretion, and the FHFA's intentions in this regard do not affect its standing, or the Trust's lack thereof.").

the failed bank by third parties. Moreover, plaintiffs do not believe their own argument for such a conflict. Although they suggest that the indemnification provisions agreed to by the FDIC-Receiver in its purchase and assumption agreement with JPMC are the reason for the alleged conflict, plaintiffs also state in their brief that "the possibility of the FDIC actually indemnifying JPMC appears minimal." Pl. Supp. Br. at 9. In any event, the chance that the FDIC-Receiver might engage in an analysis of risks and potential benefits before electing to assert any given claim on behalf of the receivership does not disqualify it from exercising the power expressly granted to it by statute – or permit these plaintiffs to substitute their judgment for the judgment of the FDIC-Receiver in that regard.

## **CONCLUSION**

For the foregoing reasons and those previously stated, to the extent the Court determines that the jurisdictional bar does not apply, the FDIC-Receiver respectfully submits that the remaining claims in the petition should be dismissed for lack of standing.

Dated:  Washington, D.C.  
              April 2, 2010

Respectfully submitted,

Of Counsel:

John J. Clarke, Jr. (admitted *pro hac vice*)  
Sonal Patel  
Jermaine McPherson  
DLA Piper LLP (US)  
1251 Avenue of the Americas  
New York, NY 10020  
Tel.:  (212) 335-4500  
Fax:  (212) 335-4501

  /s/ David Clarke, Jr.  
David Clarke, Jr. (D.C. Bar. No. 396002)  
david.clarke@dlapiper.com  
Deana L. Cairo (D.C. Bar No. 469628)  
deana.cairo@dlapiper.com  
DLA Piper LLP (US)  
500 8th Street, N.W.  
Washington, D.C.  20004  
Tel.:  (202) 799-4000  
Fax:  (202) 799-5000

Attorneys for  
  Intervenor-Defendant FDIC-Receiver

## CERTIFICATE OF SERVICE

The undersigned attorney for the FDIC-Receiver certifies that on this 2nd day of April, 2010, he caused a copy of the foregoing document to be filed via ECF which will cause electronic notice of its filing to be served on all parties who have appeared in this action.

      /s/    David Clarke, Jr.
           David Clarke, Jr.