UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN NATIONAL INSURANCE COMPANY, *et. al.* § § § **Plaintiffs,** § § vs. § § JPMORGAN CHASE & CO. § and JP MORGAN CHASE BANK, § NATIONAL ASSOCIATION, § § **Defendants,** § § **and** § § FDIC, AS RECEIVER FOR § WASHINGTON MUTUAL BANK, § HENDERSON, NEVADA § § **Intervenor.** § | C.A. No. 1:09-CV-01743-RMC |

## PLAINTIFFS' REPLY TO JPMC'S SUPPLEMENTAL MEMORANDUM

As alleged in Plaintiffs' Petition, by June of 2008, JPMorgan Chase & Co. and JP Morgan Chase Bank, N.A. (collectively "JPMC") was actively pursuing its plan to obtain WMB assets, free of liabilities to stakeholders. During this time, JPMC met with potential suitors of WMB and WMI to ensure that there would be no interference with its plan. A JPMC email describes one method JPMC used to obstruct WMI's efforts to find an investment partner:

> It is important to have an open dialogue with them, as Santander would not pursue any one of these opportunities if JP Morgan were to do the same (can't compete on price with JP Morgan for an acquisition in the USA).[1]

Other emails and internal JPMC documents demonstrate that JPMC had communicated with federal regulators regularly since at least March of 2008, in order to lay the groundwork for a

---

[1] See email dated June 5, 2008 from Tim Main, an executive in JPMC's Financial Institutions & Governments team, attached to Plaintiffs' Supplemental Brief [Docket #110] as Exhibit A.

seizure and sale of WMB assets to JPMC.  Internal JPMC documents show that JPMC planned to strip away the contract rights of bondholders.

Later, in the Summer of 2008, JPMC (i) falsely entered into negotiations with WMI under the guise of a good-faith bidder; (ii) gained access to WMI's and WMB's confidential and proprietary information through deceptive practices; and (iii) disclosed such confidential information (as well as false information) to the media and investors in an effort to drive down WMI's credit rating and stock price, cause depositors to withdraw deposits as a result of fear, hamper efforts of WMI and WMB to find a purchaser for itself, and cause a regulatory seizure. JPMC executives admitted in October of 2008, after JPMC had acquired WMB's assets, that JPMC set up a "war room" at its New York headquarters to analyze WMI's and WMB's financial data on a day-to-day basis during the Summer of 2008.  These factual allegations and others are sufficiently alleged in the Plaintiffs' Petition.[2]

Despite these serious and detailed allegations, the FDIC has shown no interest in investigating or pursuing any claim against JPMC.  *See Jackson National Life Ins. Co. v. Ligator*, 949 F.Supp. 200, 206 (S.D.N.Y. 1996) (in a non-receivership action, the court distinguished situations where "there was no realistic possibility" that the corporation would bring suit). Instead, it is obvious that the FDIC (and JPMC) will never pursue these events and instead have actively worked to inhibit discovery of the true facts by the truly injured parties – the Plaintiff-bondholders.  The FDIC is hopelessly conflicted in this matter.[3]  The present case shows precisely why the drafters of FIRREA *refused* to give the FDIC power to administer or pursue

---

[2] Obviously, many documents relating to JPMC's misconduct have become publically available since the filing of Plaintiffs' Petition in February of 2009.  These documents are entirely consistent with Plaintiffs' allegations, and reference to these documents demonstrates the plausibility of the allegations made in the Petition and the purposeful nature of JPMC's plan, which shows the direct nature of the injuries alleged by the Plaintiffs.

[3] With applicable statutes of limitations set to expire (Texas' is two years), the FDIC seems willing to "wait out the clock," and to put this chapter in its existence behind it.

third party claims held by creditors of an insolvent institution in receivership.[4]  Without private actions such as the present one, the truth behind JPMC's misconduct would never be known. Plaintiffs, who were the target of JPMC's plan, are the proper parties to pursue these claims.

Even if the WMB-receiver were not conflicted in this matter, it could claim no harm arising out of the interference with the Plaintiffs' bond contracts.  Texas law establishes the causes of actions for the Plaintiffs, and only the Plaintiffs can seek redress for that injury.  Any injury suffered by WMB, and any potential claim held by WMB, is separate and distinct from the Plaintiffs' injury.

Moreover, 12 U.S.C. § 1821(d)(2)(A)(i), which authorizes the FDIC to step into the shoes of a bank in receivership, has no application to a claim brought by a creditor.   Thus, even if Plaintiffs' claims could be described as "generalized" or "derivative," (which they are not), the FDIC's enabling statute pointedly precludes the FDIC from exercising control over actions against third parties by trying to step into the shoes of creditors.[5]  Neither JPMC nor the FDIC refutes *O'Melveny & Myers v. FDIC*.[6]

JPMC's quote of dicta from *FDIC v. Benson*, 867 F.Supp. 512, 518 (S.D. Tex 1994), mentioning "rights of the bank's creditors" in the context of 12 U.S.C. § 1821(d)(2)(A)(i), is not persuasive.  In *Benson*, the FDIC's standing was not at issue.  The issue before the court was the applicability of certain state law defenses against the FDIC relating to the FDIC's claims against directors and officers of a failed bank.  The court concluded in this regard, "the FDIC,  as the assignee of the Receiver and successor to [the failed bank], brings this suit for negligence and

---

[4] *See* Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 1989 FIRREA Leg. Hist. 50; 135 Cong. Rec. H 4,974 – 5,005, *H4985 (Aug. 3, 1989) (Statement of Rep. Glickman) (attached as Exhibit A to Plaintiffs' Reply to FDIC's Supplemental Brief, which is filed by Plaintiffs contemporaneously with this brief).
[5] 12 U.S.C. 1821(d)(2)(A)(i) (the FDIC succeeds to the "rights, titles, powers, and privileges of the insured depository institution. . . ."). *See FDIC v. Jenkins*, 888 F.2d 1537, 1541 (11th Cir. 1989) (refusing to fill the gaps in federal legislation with "judicial expansion of the express powers and rights granted to the FDIC . . . by Congress.").
[6] *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86-87 (1994), announced that there was no "federal common-law" to supplement the statutory authority granted to the FDIC.

breach of fiduciary duty, not only as a derivative shareholder or depositor, but also on behalf of the institution UNB as its subrogee against its former officers and directors." *Id*. at 518. Notably, there is no discussion of creditors' standing, nor any suggestion of a conflict.

*Lubin v. Cincinnati Ins. Co*., No. 1:09-cv-1156, 2009 U.S. Dist. LEXIS 112019 (N.D. Ga. Nov. 30, 2009) is also distinguishable because it involved the rights of a shareholder. In *Lubin*, the FDIC challenged the standing of a bankruptcy trustee of a holding company to bring claims for damages against directors and officers of a failed bank in receivership. The court focused on the fact that the trustee/holding company was a stockholder in the failed bank, which was specifically named in 12 US.C. § 1821(d)(2)(A)(i) (FDIC shall succeed to "all rights, titles, powers, and privileges of the insured depository institution, and of any *stockholder* . . . of such institution with respect to the institution and the assets of the institution.) (emphasis in *Lubin*). *Lubin*, at *11. The court therefore reasoned "all shareholder derivative claims against officers of the Bank belong to the FDIC." *Id*. The court ruled only that the trustee's *stockholder* claims— breaches of fiduciary duty and negligence arising out of flawed lending practices—were derivative claims, and therefore the claims were owned by the FDIC. *Id*. at *14-15.

In *FDIC v. Am. Bank Trust Shares, Inc*., 412 F. Supp. 302 (D.S.C. 1976), the FDIC brought an action against directors, officers, and employees of a bank based on mismanagement. The court, basing its ruling on South Carolina law, held that such claims belonged only to the bank. *Id*. at 306. However, the court also held – in a point that bears directly on the instant case – that "[t]he subordinated capital noteholders also have a direct cause of action based upon alleged fraud and deceit involved in their purchase of the capital notes themselves." *Id*. at 307. JPMC neglected to mention this part of the case, and cannot explain how the direct injury suffered by the *Am. Bank Trust Shares* noteholders is any different from the Plaintiffs' injuries in

the instant case.  In both instances, the injuries were suffered due to purposeful misconduct, and the claims were independent of any claim owned by the bank.

However, *Greenfield v. Shuck*, 867 F. Supp. 62 (D. Mass. 1994), ironically cited by JPMC, provides one explanation:

> When, as here, subordinated noteholders are allegedly fraudulently induced to purchase subordinated notes, their action against the officers and directors arises not from the contract represented by the security but from the tortious violation of statutory and common law norms. They ask recovery not against the assets of the corporation but against the tortfeasor themselves. The relative priorities established in the notes themselves are immaterial to such causes of action. Equity and common sense dictate this result.

*Id*. at 73.  Thus, in *Greenfield*, a note holder alleged that the bank's directors misrepresented the bank's condition in an effort to secure badly needed capital.  *Id*. at 67.  The court reasoned that the claim was not one in which the right is one the corporation could have enforced in court, such as a claim based on mere mismanagement, and was a direct claim that could be asserted individually by the note holder.  *Id*.  The court refused to allow the RTC to stay the proceedings.

Similarly, the Plaintiffs respectfully request the Court to allow this case to move forward by "promptly addressing the merits of the underlying claims against [JPMC]."  *Greenfield*. at 73, n. 18.  Plaintiffs have asserted direct claims against JPMC, and these are claims that in any event are not ones that the FDIC can or will reasonably pursue on the plaintiffs' behalf.

5

Respectfully submitted,

By: __/s/ Gregory S. Smith_____
Gregory S. Smith (D.C. Bar #472802)
Law Offices of Gregory S. Smith
913 East Capitol Street, S.E.
Washington, D.C.  20003
Telephone:  (202) 460-3381
Facsimile:   (877) 809-9113
Email:  gregsmithlaw@verizon.net

Andrew J. Mytelka
Texas State Bar No. 14767700
Joseph R.  Russo, Jr.
Texas State Bar No. 24002879
Steve Windsor
Texas State Bar No. 21760650
James M. Roquemore
Texas State Bar No. 24058082
GREER, HERZ & ADAMS. LLP
One Moody Plaza, 18th Floor
Galveston, Texas  77550
(409) 797-3200
(409) 766-6424 (FAX)

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I certify that on April 5, 2010, a copy of this document was filed with the Court's ECF filing system, which will provide electronic notification of its filing to all counsel who have noticed their appearance in this action.

__/s/ Gregory S. Smith_____
Gregory S. Smith