## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| **AMERICAN NATIONAL INSURANCE** ) | |
| **COMPANY,** *et al.***,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Civil Action No. 09-1743 (RMC)** |
| ) | |
| **JPMORGAN CHASE & CO.,** *et al.***,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

## MEMORANDUM OPINION

Plaintiffs are nine entities affiliated with the American National Insurance Company that hold bonds issued by Washington Mutual Bank and its former holding company Washington Mutual, Inc. They sued JPMorgan Chase Bank, N.A. and its holding company JPMorgan Chase & Co. (collectively "JPMorgan Chase") in Texas state court following Washington Mutual Bank's failure, regulatory seizure by the Office of Thrift Supervision ("OTS"), and sale by the Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank (the "FDIC-Receiver"), to JPMorgan Chase. The FDIC-Receiver intervened as a defendant and removed the case to the United States District Court for the Southern District of Texas. That court denied Plaintiffs' motion to remand the case to Texas state court and transferred it to this Court on the motions of JPMorgan Chase and the FDIC-Receiver. Pending before the Court are motions to dismiss for lack of jurisdiction by JPMorgan Chase and the FDIC-Receiver [Dkt. ## 87 & 89] and Plaintiffs' motion to dismiss the FDIC-Receiver as a party and to remand the case to Texas state court [Dkt. # 88]. The Court will grant the Defendants' motions to dismiss, and will deny Plaintiffs' motion.

## I. FACTS

The facts are taken from the Complaint and are assumed to be true.

In April 2008 JPMorgan Chase made its first attempt to acquire Washington Mutual Bank, making a public offer to purchase the bank for $8 per share, or approximately $7 billion, in JPMorgan Chase stock. Compl. ¶ 42. Washington Mutual Bank declined, and instead accepted a capital infusion by a private investor group of approximately $7 billion, at $8.75 per share. *Id.* Thereafter, JPMorgan Chase is alleged to have begun to exert pressure on the OTS, FDIC and other regulators to intensify oversight and reporting requirements for Washington Mutual Bank with the end goal of seizing the bank and transferring the valuable, cherry-picked assets to JPMorgan Chase without the bank's liabilities. *Id.* ¶ 43.

During the summer of 2008, JPMorgan Chase allegedly engineered a campaign involving adverse media "leaks," stock sales, and deposit withdrawals designed to distort the market and regulatory perception of Washington Mutual Bank's financial health. *Id.* ¶ 46. On or about September 4, 2008, JPMorgan Chase and the FDIC agreed to a plan whereby federal regulators would seize Washington Mutual Bank and certain valuable assets would be passed on to JPMorgan Chase, while certain liabilities would be excluded. *Id.* ¶ 47.

On or about September 12, 2008, JPMorgan Chase engaged in negotiations with Washington Mutual to buy Washington Mutual Bank. *Id.* ¶ 52. These negotiations are alleged to have been a sham and a pretext to gain access to Washington Mutual Bank's confidential financial information. *Id.* ¶ 53. JPMorgan Chase did not disclose that it was negotiating separately with the FDIC for the seizure of Washington Mutual Bank and the purchase of its assets. *Id.* In exchange for access to Washington Mutual Bank's confidential financial information, JPMorgan Chase

executed an agreement to keep confidential and not disclose any and all confidential information gathered by it as part of its due diligence in examining Washington Mutual Bank's financial circumstances. *Id.* ¶ 54.

Thereafter, JPMorgan Chase allegedly disclosed Washington Mutual Bank's confidential information as it saw fit to news media, government regulators, and investors in such a way that promoted its scheme. *Id.* ¶ 58. JPMorgan Chase also used its insider status to gather confidential information from Washington Mutual Bank, which it then analyzed in order to accurately estimate the value of Washington Mutual Bank's deposits, mortgage portfolio, and other assets in order to make a detailed and profitable prearranged bid to the FDIC for the purchase of those assets. *Id.*

Between September 15, 2008 and September 25, 2008, Washington Mutual Bank's customers withdrew $16.7 billion in deposits, creating a bank run. *Id.* ¶ 60.

On September 25, 2008, the OTS seized Washington Mutual Bank and placed it into receivership with the FDIC. *Id.* ¶ 64. That same day, the FDIC and JPMorgan Chase signed a "Whole Bank Purchase and Assumption" agreement whereby the FDIC, as receiver for Washington Mutual Bank, sold Washington Mutual Bank's assets, including its branches, deposit liabilities, loan portfolio, and covered bonds and secured debts to JPMorgan Chase for $1.9 billion. *Id.* ¶ 67. JPMorgan Chase received 2,237 bank branches, $123.3 billion in deposits, and $176 billion in home loans, minus approximately $30 billion in write-downs. *Id.* ¶ 68. JPMorgan Chase did not acquire obligations to unsecured debt holders or any litigation liability of Washington Mutual Bank or Washington Mutual, Inc. *Id.* ¶ 67. The fair market value of the Washington Mutual Bank assets JPMorgan Chase acquired exceeded the $1.9 billion purchase price it paid to the FDIC. *Id.* ¶ 68.

On September 26, 2008, Washington Mutual Bank's former holding company, Washington Mutual, Inc., filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Delaware. *Id.* ¶ 70. Washington Mutual, Inc. now lacks sufficient income-producing assets to meet its contractual debt obligations to Plaintiffs. *Id.* Plaintiffs' Washington Mutual Bank bonds are now subject to liquidation as part of the FDIC receivership. *Id.* ¶ 71. The FDIC, as receiver for Washington Mutual Bank, issued a statement that it does not anticipate that subordinated debt holders of the bank will receive any recovery on their claims. *Id.*

## II.  LEGAL STANDARD

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because subject matter jurisdiction is an Article III as well as a statutory requirement, "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quotation marks and citation omitted). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "It is axiomatic that subject matter jurisdiction may not be waived, and that courts may raise the issue *sua sponte*." *Athens Cmty. Hosp., Inc. v. Schweiker*, 686 F.2d 989, 992 (D.C. Cir. 1982).

Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim.

*Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003).  Moreover, the court is not limited

to the allegations contained in the complaint.  *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir.

1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Instead, to determine whether it has

jurisdiction over the claim, the court may consider materials outside the pleadings.  *Herbert v. Nat'l*

*Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## III.  ANALYSIS

Plaintiffs argue that their lawsuit seeks damages only from JPMorgan Chase for

injuries that were caused only by JPMorgan Chase.  But Plaintiffs' claims against JPMorgan Chase

depend on harm caused by the FDIC-Receiver when it "sold the crown jewels" of Washington

Mutual Bank to JPMorgan Chase for a "fire sale price."  Compl. ¶ 21.  Plaintiffs seek damages for

JPMorgan Chase's "actions in causing the seizure and sale" of Washington Mutual Bank by the

FDIC-Receiver.  *Id.* ¶ 90.  The gravamen of Plaintiffs' Complaint is that the sale by the FDIC-

Receiver "interfere[d] with" their "rights under the bond contracts" by "strip[ping] away the source

of revenue from which" Washington Mutual Bank and Washington Mutual, Inc. "were to meet their

obligations under the bond contracts."  *Id.* ¶¶ 90 & 92.  In other words, the FDIC-Receiver's sale

of Washington Mutual Bank's assets is a necessary link in the chain of causation resulting in

Plaintiffs' injuries.

Each of Plaintiffs' three causes of action against JPMorgan Chase depends on the

effect of that sale on the bond obligations owed Plaintiffs.  For example, in Count I Plaintiffs allege

that JPMorgan Chase tortiously interfered with their bond contracts when it used its "insider status

and financial strength" to "obtain the sale" of Washington Mutual Bank's assets from the FDIC-

Receiver "at a below market price under terms that would sever" their "contractual rights under the

Bonds." *Id.* ¶ 92. Likewise, in Count II Plaintiffs allege that they were harmed by JPMorgan Chase's breach of its confidentiality agreement because the breach enabled the FDIC-Receiver's sale of Washington Mutual Bank's assets to JPMorgan Chase and prevented Washington Mutual "from obtaining a purchaser for itself or improving its financial health enough so that it could weather the market turmoil." *Id.* ¶ 99. Similarly, in Count III Plaintiffs allege that JPMorgan Chase was unjustly enriched because it "received a benefit from its transaction with the FDIC whereby it obtained the valuable assets of" Washington Mutual Bank "at a price less than" the assets' "fair market value." *Id.* ¶ 101.

Because Plaintiffs' injuries depend on the FDIC-Receiver's sale of Washington Mutual Bank's assets to JPMorgan Chase, Plaintiffs cannot sue only JPMorgan Chase. "The Supreme Court has emphasized that 'Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Fulani v. Brady*, 935 F.2d 1324, 1329 (D.C. Cir. 1991) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). "The Court also has made clear that an injury will not be 'fairly traceable' to the defendant's challenged conduct nor 'redressable' where the injury depends not only on that conduct, but on independent intervening or additional causal factors." *Id.* at 1329. The FDIC-Receiver is a necessary party because Plaintiffs' injuries depend on the independent intervening sale by the FDIC-Receiver.

That being the case, Plaintiffs were required to pursue their claims against the FDIC-Receiver administratively through the exclusive receivership claims process that Congress provided in the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73,

103 Stat. 83 (1989).  The Act's exclusive claims process applies to "any claim relating to any act or omission" of the FDIC as receiver for a failed bank.  12 U.S.C. § 1821(d)(13)(D)(ii).  Plaintiffs' claims against JPMorgan Chase directly "relate" to an "act" of the FDIC-Receiver:  the agency's "fire sale" of Washington Mutual Bank's assets.  Having failed to invoke and exhaust this administrative process, Plaintiffs' claims are barred by the Act.  *See Freeman v. FDIC*, 56 F.3d 1394, 1400 (D.C. Cir. 1995) ("Section 1821(d)(13)(D) thus acts as a jurisdictional bar to claims or actions by parties who have not exhausted their § 1821(d) administrative remedies.").  Plaintiffs cannot circumvent the Act's jurisdictional bar by aiming their claims at the assuming bank of the failed bank's assets.  *See Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373, 386 (6th Cir. 2008) (applying the Act's jurisdictional bar to claims against assuming bank because the claims were "directly related to acts or omissions of the FDIC as the receiver of" the failed bank).  That is precisely what Plaintiffs have attempted here in suing only JPMorgan Chase.  Their claims will be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## IV.  CONCLUSION

For the foregoing reasons, the FDIC-Receiver's motion to dismiss [Dkt. # 87] and JPMorgan Chase's motion to dismiss [Dkt. # 89] will be granted, and Plaintiffs' motion to dismiss FDIC-Receiver as a party and to remand the case to Texas state court [Dkt. # 88] will be denied.  A memorializing Order accompanies this Memorandum Opinion.

Date: April 13, 2010                                        /s/
                                        ROSEMARY M. COLLYER
                                        United States District Judge