UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN NATIONAL INSURANCE COMPANY, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for Washington Mutual Bank, Henderson, Nevada, *et al.*,<br><br>　　　　Defendants. | Case No. 1:09-cv-01743 (RMC) |

## CROSSCLAIM

JPMorgan Chase & Co. ("JPMC & Co.") and JPMorgan Chase Bank, N.A. ("JPMC Bank"; collectively with JPMC & Co., the "JPMC Defendants"), by and through their counsel, Sullivan & Cromwell LLP, for their crossclaim against the Federal Deposit Insurance Corporation (the "FDIC"), in its capacity as Receiver for Washington Mutual Bank ("WMB") (the "FDIC-Receiver"), allege upon knowledge as to themselves and their conduct and upon information and belief as to all other matters as follows:

## NATURE OF ACTION

1.　　This is a crossclaim for indemnification. In the initial complaint filed in the above-captioned action, styled *American National Ins. Co. et al.* v. *Federal Deposit Insurance Corporation et al.* (the "Original Complaint"), Plaintiffs asserted, *inter alia*, three claims against the JPMC Defendants alleging a covert scheme orchestrated jointly by the FDIC and the JPMC Defendants to deprive them of the value of their debt and equity investments in Washington Mutual. According to Plaintiffs' allegations, this scheme included a conspiracy to

effect the seizure of WMB by federal regulators, a sham bidding process by the FDIC for WMB's assets and the sale of these assets by the FDIC to JPMC Bank at a "fire sale" price pursuant to a collusive Purchase and Assumption Agreement (the "P&A Agreement"). ([D.I. 1.1-1.3], Original Compl. ¶¶ 20–22, 47–48, 62–64.)

2. In the amended complaint filed in the above-captioned action (the "Amended Complaint"), Plaintiffs assert, *inter alia*, three claims against the JPMC Defendants on the purported ground that the JPMC Defendants are responsible for the "reduc[ed] value of [Plaintiffs'] WMB bond holdings." ([D.I. 131], Am. Compl. ¶ 81.) In the first claim, Plaintiffs allege that the JPMC Defendants tortiously interfered with the bond agreements between WMB and Plaintiffs by allegedly "intentionally procured WMB's breach of the contract without justification, and in order to benefit themselves." (Am. Compl. ¶ 122.) Plaintiffs further alleged two claims in the Amended Complaint that were dismissed by the Court on September 28, 2012. ([D.I. 142], Sept. 2012 Opinion at 18-20.) One dismissed claim alleged that JPMC & Co. breached a confidentiality agreement with WMI, and the other dismissed claim was brought on the purported basis that the JPMC Defendants were unjustly enriched by using duress and false pretenses to obtain WMB's assets from the FDIC without fairly compensating Plaintiffs. (Am. Compl. ¶¶ 126-143.)

3. Under the terms of the P&A Agreement, dated September 25, 2008, among the FDIC-Receiver, the FDIC in its corporate capacity ("FDIC-Corporate"), and JPMC Bank concerning the sale of the banking operations of WMB, JPMC Bank assumed only certain defined liabilities, which did not include WMB's bond obligations upon which the claims asserted in the Original Complaint and the Amended Complaint are predicated. Rather, WMB's

debt obligations—including the WMB bonds that Plaintiffs allegedly held—were liabilities that remained with the FDIC-Receiver, as the FDIC-Receiver concedes.

    4.  Additionally, under the P&A Agreement, the JPMC Defendants are entitled to broad indemnification from the FDIC-Receiver. The FDIC-Receiver agreed to indemnify JPMC Bank (and its subsidiaries, affiliates, directors, officers, employees and agents, which include JPMC & Co.) against, *inter alia*, any

  (a)  "claims based on the rights of any creditor as such of the Failed Bank . . . with respect to any indebtedness or other obligation of the Failed Bank . . . arising prior to Bank Closing" (P&A Agreement § 12.1(a)(2) (attached hereto as Exhibit A));

  (b)  "claims based on any action or inaction prior to Bank Closing of the Failed Bank . . . or any Subsidiary or Affiliate of the Failed Bank," which includes "any action or inaction prior to Bank Closing of" Washington Mutual, Inc. ("WMI"), WMB's parent corporation prior to its seizure by the Office of Thrift Supervision on September 25, 2008 (*Id*. § 12.1(a)(4)); and

  (c)  "claims asserted by, or derivatively by any shareholder on behalf of, the Failed Bank's parent company based on the process of bidding, negotiation, execution and consummation of the transactions contemplated by this Agreement" (*Id*. § 12.1(a)(9)).

In addition, FDIC-Corporate agreed to guarantee performance of the FDIC-Receiver's indemnification obligation. (*Id*. § 12.7.)

    5.  The FDIC's indemnification obligations under the P&A Agreement cover any costs, losses, liabilities and expenses (including attorneys' fees) incurred by either of the JPMC Defendants in this action to date as well as any costs, losses, liabilities and expenses (including attorneys' fees) incurred by either of the JPMC Defendants in defending this action in the future and any judgments, fines, or amounts paid in settlement borne by either of the JPMC Defendants.

    6.  Pursuant to Rule 13(g) of the Federal Rules of Civil Procedure, the JPMC Defendants, as cross-claimants, bring this action against the FDIC-Receiver to protect and secure

their indemnification rights under the P&A Agreement.  In addition to all costs and expenses incurred by the JPMC Defendants to date, to the extent that the JPMC Defendants are found liable for the remaining claim alleged in the Amended Complaint, or otherwise continue to incur costs and expenses in defending the remaining claim alleged in the Amended Complaint, the FDIC-Receiver is contractually required to indemnify the JPMC Defendants for any costs, losses, liabilities, expenses (including attorneys' fees), judgments, fines, or amounts paid in settlement that either of the JPMC Defendants has or will incur in this action.

## PARTIES

7. Cross-claimant JPMC & Co. is a financial holding company incorporated in Delaware with its principal place of business at 270 Park Avenue, New York, New York.

8. Cross-claimant JPMC Bank is a national banking association organized under the laws of the United States of America with its main office located in Columbus, Ohio. JPMC Bank is a wholly-owned subsidiary of JPMC & Co.

9. Cross-defendant FDIC-Receiver is a corporation organized and existing under the laws of the United States of America with its principal place of business in the District of Columbia.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 12 U.S.C. § 1819(b)(2)(A) and 28 U.S.C. § 1331.  The JPMC Defendants reserve the right to argue that this Court does not have jurisdiction over this action pursuant to 12 U.S.C. § l821(d)(13)(D).

11. Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (b)(2), and (e) and 12 U.S.C. § l821(d)(6).  This crossclaim against the FDIC-Receiver is proper under Federal Rule of Civil Procedure 13(g).

**STATEMENT OF FACTS**

**I.    The Failure of WMB and the Terms of the P&A Agreement**

12. On September 25, 2008, the Office of Thrift Supervision closed WMB and appointed the FDIC as Receiver for WMB.

13. Also on September 25, 2008, JPMC Bank, the FDIC-Receiver and FDIC-Corporate entered into the P&A Agreement, pursuant to which JPMC Bank acquired the assets and assumed certain specified liabilities of WMB.

14. JPMC Bank did not take over or acquire WMB, an entity that remains in existence, with its own liabilities, under the FDIC-Receiver's control. Nor did JPMC Bank assume WMB's debt obligations—such as the WMB bonds that Plaintiffs allegedly held—which remained with the FDIC-Receiver. (P&A Agreement Schedule 2.1(2)-(3).)

15. In the P&A Agreement, the FDIC-Receiver and FDIC-Corporate provided the JPMC Defendants broad indemnification against claims based upon, among other things, WMB's pre-existing liabilities, the pre-receivership conduct of WMI or WMB, and the FDIC's bidding process for WMB's assets—all of which are placed at issue in the Original Complaint and the Amended Complaint. Among other things, the FDIC-Receiver agreed to indemnify the JPMC Defendants for "any and all costs, losses, liabilities, expenses (including attorneys' fees) . . . , judgments, fines and amounts paid in settlement actually and reasonably incurred in connection with claims against [the JPMC Defendants] . . . based on liabilities of the Failed Bank that are not assumed by the Assuming Bank pursuant to this Agreement . . . ." (*Id*. § 12.1.) This indemnification explicitly covers "claims based on the rights of any creditor as such of the Failed Bank, or any creditor as such of any director, officer, employee or agent of the Failed Bank or any Affiliate of the Failed Bank, with respect to any indebtedness or other obligation of the Failed Bank or any Affiliate of the Failed Bank arising prior to Bank Closing." (*Id*. §

12.1(1)(a)(2).)  Additionally included are "claims based on any action or inaction prior to Bank Closing of the Failed Bank, its directors, officers, employees or agents as such, or any Subsidiary or Affiliate of the Failed Bank, or directors, officers, employees or agents as such of such Subsidiary or Affiliate."  (*Id*. § 12.1(a)(4).)  This broad indemnification further extends to "claims asserted by, or derivatively by any shareholder on behalf of, the Failed Bank's parent company based on the process of bidding, negotiation, execution and consummation of the transactions contemplated by this Agreement, provided that (x) the amount of the indemnification paid or payable pursuant to this clause [] shall not exceed $500,000,000, and (y) the indemnification provided by this clause [] shall cover only those claims specifically enumerated in the FDIC's approval of the transactions contemplated by this Agreement." (*Id*. § 12.1(a)(9).)

16. Under the P&A Agreement, FDIC-Corporate "guarantees performance of the [FDIC-]Receiver's obligation to indemnify the Assuming Bank [*i.e.*, JPMC Bank] as set forth in this Article XII."  (*Id*. § 12.7.)

17. The only relevant exception to the FDIC's indemnification obligation is for claims with respect to liabilities that JPMC Bank "expressly assumed" under the P&A agreement.  (*Id*. § 12.1(b)(2).)  Because JPMC Bank did not "expressly assume[]" liability for any of the claims asserted in the Original Complaint or the Amended Complaint, this exception does not apply here.

18. The P&A Agreement thus requires the FDIC-Receiver (and FDIC-Corporate if necessary) to indemnify the JPMC Defendants for "any and all costs, losses, liabilities, expenses (including attorneys' fees) . . . , judgments, fines and amounts paid in

settlement actually and reasonably incurred in connection with" this action. (*Id.* § 12.1.)

19. The Original Complaint in this action was filed in the District Court of Texas, Galveston County, on February 16, 2009. The FDIC-Receiver intervened as a defendant and removed the action to the United States District Court for the Southern District of Texas. After that court denied Plaintiffs' motion for remand, the FDIC-Receiver moved to transfer this action to the United States District Court for the District of Columbia, a motion that was granted on September 9, 2009. The FDIC-Receiver filed a motion to withdraw as an intervenor-defendant on December 10, 2012. ([D.I. 150.])

20. By letters dated March 10, 2009 and December 5, 2012 (attached hereto as Exhibits B and C, respectively), counsel for the JPMC Defendants notified the FDIC, in accordance with Section 12.2 of the P&A Agreement, that the JPMC Defendants are entitled to indemnification with respect to this action. The JPMC Defendants have complied with all applicable conditions precedent in the P&A Agreement. (*See* P&A Agreement § 12.2.) To date, the FDIC has not consented in writing to indemnify the JPMC Defendants with respect to this action.

## II.   Liabilities and Costs Relating to the Original Complaint and the Amended Complaint in this Action

21. In the Original Complaint, Plaintiffs asserted, *inter alia*, three claims against the JPMC Defendants alleging a covert scheme orchestrated by the FDIC and the JPMC Defendants to deprive them of the value of their debt and equity investments in Washington Mutual. This scheme allegedly included a conspiracy to effect the seizure of WMB by federal regulators, a sham bidding process by the FDIC for WMB's assets and the sale of these assets by

the FDIC to JPMC Bank at a "fire sale" price pursuant to the collusive P&A Agreement. (Original Compl. ¶¶ 20–22, 47–48, 62–64.)

23. Specifically, according to the Original Complaint, "[o]n or about September 4, 2008 . . . JPMC and the FDIC agreed to a plan whereby federal regulators would seize WMB and certain valuable assets would be passed to JPMC, and certain liabilities excluded." (*Id.* ¶ 47.) Thereafter, on September 23, 2008, the "FDIC purportedly sought bids from select bidders, including JPMC, for the sale of WMB," even though "an agreement had already been reached at this time between the FDIC and JPMC for the seizure of WMB and the sale of WMB to JPMC," which included "the requirements for a 'conforming bid' [that] had been reached after extensive negotiations between the FDIC and JPMC." (*Id.* ¶ 62.) As a consequence of this purported conspiracy between the JPMC Defendants and the FDIC, Plaintiffs asserted three causes of action against the JPMC Defendants: (1) tortious interference with Plaintiffs' bond contracts (*id.* ¶¶ 88–93); (2) breach of a confidentiality agreement between JPMC and WMI (*id.* ¶¶ 94–99); and (3) unjust enrichment based on the P&A Agreement (*id.* ¶¶ 100–03).

23. On April 13, 2010, this Court granted the defendants' motions to dismiss for lack of subject matter jurisdiction. The Court held, among other things, that "the FDIC-Receiver's sale of Washington Mutual Bank's assets is a necessary link in the chain of causation resulting in Plaintiffs' injuries" and, as a result, "[e]ach of Plaintiffs' three causes of action against JPMorgan Chase depends on the effect of that sale on the bond obligations owed Plaintiffs." ([D.I. 117], Apr. 2010 Opinion at 5.) Accordingly, "Plaintiffs were required to pursue their claims against the FDIC-Receiver administratively through the exclusive receivership claims process that Congress provided in the Financial Institutions Reform,

-8-

Recovery and Enforcement Act of 1989, Pub. L. No. 101-73 [("FIRREA")]," and therefore, "[h]aving failed to invoke and exhaust this administrative process, Plaintiffs' claims are barred by" FIRREA.  (*Id*. at 6-7.)

24. On June 24, 2011 the U.S. Court of Appeals for the D.C. Circuit reversed this Court's dismissal of this action for lack of subject matter jurisdiction, in which it held, among other things, "that § 1821(d)(13)(D) [of FIRREA] does not withdraw jurisdiction from the judiciary to entertain appellants' lawsuit."  (D.C. Circuit Opinion at 13.)  The Court of Appeals noted that the Original Complaint "alleges that the FDIC engaged in conduct without which JPMC's tortious acts would not have caused injury to appellants," but "construe[d] the complaint liberally, in the light most favorable to appellants" to avoid the jurisdictional bar that would indisputably arise if the Original Complaint were construed to "allege[] an agreement between JPMC and the FDIC to commit the torts alleged."  (*Id.*)  This saving construction by the Court of Appeals thus narrowed the set of factual theories on which plaintiffs could proceed and resulted in an amended complaint that diminished the focus on the conduct of the FDIC.

25. In the Amended Complaint, Plaintiffs tried to distance themselves from the allegations of the Original Complaint in order to avoid FIRREA's jurisdictional bar, pursuant to which Plaintiffs were required—but failed—to submit their claims in the FDIC-Receiver's claims process.  Plaintiffs allege in Count I that the JPMC Defendants engaged in the tortious interference of contract.  (Am Compl. ¶¶ 118-125.)  In particular, Plaintiffs claim that the JPMC Defendants "intentionally procured WMB's breach of the contract without justification, and in order to benefit themselves, and willfully and intentionally interfered with Plaintiffs' WMB bond contracts."  (*Id*. ¶ 122.)  Count II, which alleged breaches of a confidentiality agreement between JPMC & Co. and WMI, was dismissed by the Court's September 28, 2012 Opinion and Order on

the grounds that Plaintiffs were neither parties to the confidentiality agreement nor its intended beneficiaries. (*Id*. ¶¶ 126-137; Sept. 2012 Opinion at 19-20.) The Court also dismissed Count III, in which Plaintiffs alleged that the JPMC Defendants used duress and false pretenses to obtain WMB's assets without fairly compensating Plaintiffs (*id*. ¶¶ 138-143), on the grounds that this cause of action constituted a wholly derivative claim because "[t]he alleged 'coercion, duress and undue advantage' ran from JPMC to [WMB], not to the Bondholders" (Sept. 2012 Opinion at 18-19, (quoting Am. Compl. ¶ 142)).

26. The JPMC Defendants deny the allegations of the Original Complaint and the Amended Complaint.

27. In the P&A Agreement, the FDIC-Receiver and FDIC-Corporate agreed to indemnify JPMC Bank (and its subsidiaries, affiliates, directors, officers, employees and agents) against claims based upon WMB's pre-existing liabilities, the pre-receivership conduct of WMI or WMB, and the FDIC's bidding process for WMB's assets, including liabilities, costs and expenses incurred in defending the claims. Among other things, the FDIC-Receiver agreed to indemnify JPMC Bank and its subsidiaries and affiliates for "any and all costs, losses, liabilities, expenses (including attorneys' fees) . . . , judgments, fines and amounts paid in settlement actually and reasonably incurred in connection with claims against [the JPMC Defendants] . . . based on liabilities of the Failed Bank that are not assumed by the Assuming Bank pursuant to this Agreement." (P&A Agreement § 12.1.) The indemnification explicitly covers (a) "claims based on the rights of any creditor as such of the Failed Bank . . . with respect to any indebtedness or other obligation of the Failed Bank . . . arising prior to Bank Closing" (*id*. § 12.1(a)(2)); (b) "claims based on any action or inaction prior to Bank Closing of the Failed Bank . . . or any Subsidiary or Affiliate of the Failed Bank" (*id*. § 12.1(a)(4)); and (c) "claims asserted

by, or derivatively by any shareholder on behalf of, the Failed Bank's parent company based on the process of bidding, negotiation, execution and consummation of the transactions contemplated by this Agreement" (*id*. § 12.1(a)(9)).  These indemnification obligations thus cover any liabilities and costs relating to the Original Complaint and the Amended Complaint.

28. As a result of this action, the JPMC Defendants have suffered significant economic harm.  The JPMC Defendants have been forced to litigate this action for close to four years and incurred substantial costs and expenses, including attorneys' fees, to date, and will incur additional substantial costs and expenses litigating this action in the future.

29. Even if the remaining claim is dismissed, the JPMC Defendants are entitled to indemnification from the FDIC-Receiver (or FDIC-Corporate, if necessary) for any "costs" and "expenses (including attorneys' fees)" (*id*. § 12.1) incurred in defending the claims in the Original Complaint and the Amended Complaint to date as well as any liabilities or costs incurred by the JPMC Defendants in defending this action in the future.  Such "costs" and "expenses" (*id*.) have accrued for close to four years, and continue to accrue in connection with the JPMC Defendants' defense of the Amended Complaint.

## CLAIM FOR RELIEF

### Indemnification

30. The JPMC Defendants reallege and incorporate by reference each and every allegation set forth above, as though fully set forth herein.

31. As set forth above, the FDIC-Receiver has agreed to indemnify JPMC Bank and its subsidiaries and affiliates for the claims asserted in the Original Complaint and the Amended Complaint.  (*Id*. § 12.1(a)(2), (4), (9).)

32. The FDIC-Receiver is liable to the JPMC Defendants for any costs, losses, liabilities, expenses (including attorneys' fees), judgments, fines and amounts paid in settlement the JPMC Defendants actually and reasonably incur in connection with this action.

33. In accordance with Section 12.2 of the P&A Agreement, counsel for the JPMC Defendants notified the FDIC by letters dated March 10, 2009 and December 5, 2012 that the JPMC Defendants are entitled to indemnification for any liability, costs or expenses they had or will incur with respect to relating to the Original Complaint and the Amended Complaint, including the costs and expenses of defending the remaining claim.

34. The FDIC has failed to acknowledge in writing or fulfill its indemnification obligations to the JPMC Defendants.

35. As a result of this action, the JPMC Defendants have suffered significant economic harm. The JPMC Defendants have been forced litigate this action for close to four years and incurred substantial costs and expenses, including attorneys' fees, to date, and will incur additional substantial costs and expenses litigating this action in the future.

WHEREFORE, the JPMC Defendants respectfully requests that this Court grant judgment:

(a) ordering the FDIC-Receiver to indemnify the JPMC Defendants for any and all costs, losses, liabilities, expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred in connection with this action, and

(b)   awarding such additional relief to the JPMC Defendants as the Court may deem just and proper.

Dated: January 7, 2013
       Washington, D.C.

Respectfully submitted,

   /s/ Brent J. McIntosh

| | |
|---|---|
| Robert A. Sacks (admitted *pro hac vice*) | Brent J. McIntosh (D.C. Bar No. 991470) |
| M. David Possick (admitted *pro hac vice*) | Susan N. Goldis (admitted *pro hac vice*) |
| SULLIVAN & CROMWELL LLP | SULLIVAN & CROMWELL LLP |
| 125 Broad Street | 1701 Pennsylvania Avenue, N.W. |
| New York, New York  10004 | Washington, D.C.  20006 |
| Telephone:  (212) 558-4000 | Telephone:  (202) 956-7500 |
| Facsimile:  (212) 558-3588 | Facsimile:  (202) 293-6330 |

*Counsel for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.*