## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**AMERICAN NATIONAL INSURANCE**   )
**COMPANY, AMERICAN NATIONAL**   )
**PROPERTY AND CASUALTY**   )
**COMPANY, FARM FAMILY LIFE**   )
**INSURANCE COMPANY, FARM**   )
**FAMILY CASUALTY INSURANCE**   )
**COMPANY, and NATIONAL**   )
**WESTERN LIFE INSURANCE**   )
**COMPANY,**   )
                                    )
        **Plaintiffs,**   )
                                    )
        **v.**   )        **Civil Action No.  1:09-cv-1743 (RMC)**
                                    )
**JPMORGAN CHASE & CO.**   )
**and JP MORGAN CHASE BANK**   )
**NATIONAL ASSOCIATION,**   )
                                    )
        **Defendants.**   )
_____   )

### MEMORANDUM OPINION

We return to a long-running dispute between Plaintiffs, former bondholders of

Washington Mutual Bank, and Defendant JPMorgan Chase, the company that acquired

Washington Mutual's assets from a federal receivership.  Defendants move to dismiss the

operative complaint for failure to state a claim upon which relief can be granted.  They are

correct: despite years spent in discovery, Plaintiffs can allege no conduct that is actionable under

New York law as tortious interference with an existing contract.  Defendants' motion will be

granted and the case dismissed.

## I. FACTS

The Court presumes general familiarity with the background of this case.[1]  The

well-pleaded facts alleged in Plaintiffs' operative complaint must be taken as true in this

procedural posture.  *Baird v. Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015).

The 2008 financial crisis has yielded a host of lawsuits, of which this case is one.

Plaintiffs were bondholders of Washington Mutual Bank (WaMu) who saw their bond values

deteriorate after the federal government seized WaMu through the Office of Thrift Supervision

(OTS), put WaMu into receivership with the Federal Deposit Insurance Corporation (FDIC), and

promptly sold all of WaMu's assets—but not all of its liabilities—to Defendant JPMorgan Chase

Bank National Association and its parent company, Defendant JPMorgan Chase & Co.

(collectively JPMC).[2]  Plaintiffs' bonds were among the liabilities *not* sold to JPMC, and thus

became essentially worthless.[3]

Plaintiffs first sued in Texas state court, naming only the JPMC defendants.  *See*

---

[1] The factual background of this case has been set forth in three reported decisions: *Am. Nat. Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1139-41 (D.C. Cir. 2011); *Am. Nat. Ins. Co. v. JPMorgan Chase & Co.*, 893 F. Supp. 2d 218, 221-24 (D.D.C. 2012); *Am. Nat. Ins. Co. v. JPMorgan Chase & Co.*, 705 F. Supp. 2d 17, 18-19 (D.D.C. 2010).  Only the necessary facts will be recapped here.

[2] Plaintiff American National Insurance Company (ANICO) is a Texas insurance company with its principal place of business in Galveston, Texas.  2d Am. Compl. ¶ 1.  Plaintiff American National Property and Casualty Company (ANPAC) is a Missouri insurance company with its principal place of business in Springfield, Missouri.  *Id.* ¶ 2.  Plaintiff Farm Family Life Insurance Company (FFLIC) is a New York insurance company with its principal place of business in Glenmont, New York.  *Id.* ¶ 3.  Plaintiff Farm Family Casualty Insurance Company (FFCIC) is a New York insurance company with its principal place of business in Glenmont, New York.  *Id.* ¶ 4.  Plaintiff National Western Life Insurance Company (NWL) is a Colorado insurance company with its principal place of business in Austin, Texas.  *Id.* ¶ 5.

[3] On September 29, 2008, FDIC provided an informational sheet which stated: "The FDIC as Receiver for Washington Mutual Bank does not anticipate that subordinated debt holders of the bank will receive any recovery on their claims."  2d Am. Compl. ¶ 87.

*generally Am. Nat. Ins. Co. v. JPMorgan Chase & Co.*, 705 F. Supp. 2d 17, 18 (D.D.C. 2010) (*ANICO I*).  Plaintiffs posited a conspiracy among JPMC, federal regulators, and some WaMu employees to drive down WaMu's value and expose it to federal takeover.  *Id.* at 18-19.  The alleged conspiracy arose after JPMC's efforts to acquire WaMu were rebuffed.  *Id.*  The goal of the alleged conspiracy was to engineer WaMu's downfall, drive it into FDIC receivership, and thereby allow the sale of its valuable assets to JPMC at a "fire sale price" without liabilities.  *Id.* at 20.  The conspirators allegedly leaked confidential information about WaMu, defamed it in the media and before ratings agencies, encouraged federal regulators to seize WaMu, and discouraged others from bidding for WaMu out of receivership.  *Id.* at 18-19.

FDIC intervened as a defendant in the Texas court, removed the case to federal court, and obtained a transfer to this Court, which dismissed Plaintiffs' case on April 13, 2010. *See generally id.*  Reasoning that Plaintiffs' claims were not fairly traceable to JPMC but rather to FDIC, this Court held that Plaintiffs' sole recourse was the administrative claim process prescribed by the Financial Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. § 1821(d) (FIRREA).  *Id.* at 21 ("Having failed to invoke and exhaust this administrative process, Plaintiffs' claims are barred by the Act.") (citing *Freeman v. FDIC*, 56 F.3d 1394, 1400 (D.C. Cir. 1995); *Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373, 386 (6th Cir. 2008)).

The D.C. Circuit reversed.  *See Am. Nat. Ins. Co. v. F.D.I.C.*, 642 F.3d 1137 (D.C. Cir. 2011) (*ANICO II*).  Holding that Plaintiffs' suit vis-à-vis JPMC was not a "claim" under FIRREA, 12 U.S.C. § 1821(d)(13)(D)(ii), the Circuit found that the suit was not barred by that provision.  *Id.* at 1142.  Nor was it barred by § 1821(d)(13)(D)(i), which "reaches more broadly than (ii)" but does not reach claims that are purely against the assuming entity such as JPMC.  *Id.*

The case was remanded to this Court for further proceedings.  Plaintiffs soon amended their complaint, Dkt. 131 (1st Am. Compl.), to focus singularly on JPMC.  The gist of the tortious interference alleged in the First Amended Complaint was that JPMC caused "the value of Plaintiffs' [WaMu] bonds [to be] reduced during the summer of 2008 up to September 25, 2008," the day before WaMu's seizure by OTS.  *Id.* ¶ 124.  Plaintiffs also alleged that JPMC caused OTS to seize WaMu and sell its assets "under circumstances in which the Plaintiffs' bond contracts would not be honored."  *Id.*

This Court dismissed two of Plaintiffs' three counts.  *See generally Am. Nat. Ins. Co. v. JPMorgan Chase & Co.*, 893 F. Supp. 2d 218, 233 (D.D.C. 2012) (*ANICO III*).  Count II (alleging breach of a confidentiality agreement between WaMu and JPMC) and Count III (alleging unjust enrichment on JPMC's part) were both deemed "derivative" under the law of Washington State, where WaMu was headquartered.  *Id.* at 230-32.  As such, they needed to be brought by WaMu itself or, after it was put into receivership, by FDIC.  *Id.* at 232 (citing 12 U.S.C. § 1821(d)(2)(A); Fed. R. Civ. P. 17(a)).

Discovery ensued for almost two and a half years, until Plaintiffs amended their complaint once again.  *See* 2d Am. Compl. [Dkt. 197].  One count remains: tortious interference with an existing contract.  *Id.* ¶¶ 108-16.  The gravamen of this sole count is that JPMC knew about Plaintiffs' WaMu bonds and nevertheless interfered with them.  Plaintiffs allege that JPMC "procured [WaMu's] breach of the[se] contract[s] without justification."  *Id.* ¶ 112.  JPMC allegedly took various steps to make WaMu's performance on Plaintiffs' bonds "more burdensome, more difficult[,] more expensive," and thus "impossible."  *Id.* ¶ 113.  JPMC is alleged to have accomplished this by "gaining access to [WaMu]'s confidential financial information under false pretenses, breaching an agreement to maintain the confidentiality of such

4

information, breaching a stand-still agreement, driving down the credit ratings of [WaMu], and

misusing the information" in the months before the seizure by OTS.  *Id.*  JPMC is also alleged to

have "obstructed efforts to sell [WaMu]'s assets under circumstances in which the Plaintiffs'

bond contracts would be honored" and "used [JPMC's] insider status and financial strength to

work to bring about a regulatory seizure of [WaMu] and obtain the sale of [WaMu's] assets from

federal regulators."  *Id.*

        Plaintiffs claim damages "consisting of loss of their rights and benefits inherent in

their [WaMu] bond contracts."  *Id.* ¶ 115.  Critically, their claim is "based on JPMC's *pre-*

*receivership* misconduct which caused diminution of their WMB bond values *pre-receivership*."

*Id.* ¶ 116 (emphasis added).[4]

## II.  LEGAL STANDARD

        A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6) challenges the adequacy of a complaint on its face.  Fed. R. Civ. P. 12(b)(6).

A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the

grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal

citations omitted).  Although a complaint does not need detailed factual allegations, a plaintiff's

---

[4] This claim of pre-receivership injury and damages was effectively dictated by the D.C. Circuit: despite some allegations to the contrary, Plaintiffs cannot allege conduct by WaMu or FDIC or else Plaintiffs would meet FIRREA's jurisdictional bar:

> Where a claim is *functionally,* albeit not *formally,* against a depository institution for which the FDIC is receiver, it is a ''claim'' within the meaning of FIRREA's administrative claims process. . . .  Here, in contrast, appellants allege that JPMC, not the FDIC-as-receiver or Washington Mutual, itself committed the tortious acts for which they claim relief. . . .  [W]e read the complaint to allege that JPMC alone committed the wrongdoing for which appellants sue and find no agreement between JPMC and the FDIC.

*ANICIO II*, 642 F.3d at 1144 (emphasis in original).

obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Id*. at 570. A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Id*. at 555. A court need not accept as true legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

JPMC moves in the alternative for summary judgment. Discovery is complete and a fully developed record is available to the Court, cited by both sides. That evidence need not be considered, however, as Plaintiffs' complaint fails for purely legal reasons. The Court will decide the pending motion under Rule 12(b)(6).

### III.  ANALYSIS

The Court concludes first that New York law applies. Under that law, the Court concludes further that Plaintiffs have failed to state a viable claim for tortious interference with an existing contract.

#### A.  Choice of Laws

The Court previously held that New York law applied to the question of whether Plaintiffs stated a tortious-interference claim "because that is the law that expressly governed the bond contracts pursuant to its offering circular, two of the Bondholders have their principal places of business in New York, JPMC is in New York and its alleged conduct centered there." *ANICO III* at 233 n.7. The Court left open the possibility that the parties might argue, after

discovery, that the law of Texas (where two of seven Plaintiffs reside) applies.  *Id.*  The question

is critical because tortious interference under New York law requires an actual breach of

contract, whereas tortious interference under Texas law does not.  The parties agree that the

District of Columbia's choice-of-law principles apply here.  *Compare* Mem. in Support of Mot.

Summ. J. [Dkt. 200-1] (Mem.) at 18-19 (citing *Oveissi* v. *Islamic Republic of Iran*, 573 F.3d 835,

842 (D.C. Cir. 2009)) *with* Opp'n [Dkt. 209] at 17 (citing *Oveissi*, 573 F.3d at 842).

District of Columbia courts blend a "governmental interests analysis" with a

"most significant relationship" test in order to decide choice-of-law issues.  *Oveissi*, 573 F.3d at

842 (quoting *Hercules & Co., Ltd. v. Shama Rest. Corp.*, 566 A.2d 31, 40-41 & n. 18 (D.C.

1989)); *see also Jaffe v. Pallotta TeamWorks*, 374 F.3d 1223, 1227 (D.C. Cir. 2004); *Stephen A.*

*Goldberg Co. v. Remsen Partners, Ltd.*, 170 F.3d 191, 193-94 (D.C. Cir. 1999).  Under the

"governmental interests analysis," the Court "must evaluate the governmental policies

underlying the applicable laws and determine which jurisdiction's policy would be most

advanced by having its law applied to the facts of the case under review."  *Oveissi*, 573 F.3d at

842 (citing *Hercules*, 566 A.2d at 41).  Under the "most significant relationship" test, this Court

considers the following factors: (1) the place where the injury occurred; (2) the place where the

conduct causing the injury occurred; (3) the domicile, residence, nationality, place of

incorporation and place of business of the parties; and (4) the place where the relationship, if

any, between the parties is centered.  *Oveissi*, 573 F.3d at 842 (citing *Restatement (Second) of*

*Conflict of Laws* § 145(2) (1971) (*Restatement*)).

## 1. Governmental interests analysis

Competing State policies necessitate a conflict of laws analysis: New York law

has always required an actual breach of contract as an element of a claim of tortious interference

with contract, because in New York "the determinative factor is the nature of the relationship

that suffered the interference, with *greater protection accorded enforceable contract rights*."

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y.2d 614, 622, 664 N.E.2d 492 (1996)

(emphasis added).   Texas law perceives a greater separation between the underlying contract

and the tort of interference; it allows recovery for interference with contract even if the

interference did not provoke an actual breach.  *See, e.g.*, *AKB Hendrick, L.P. v. Musgrave Enter.,*

*Inc.*, 380 S.W.3d 221, 236 (Tex. App.—Dallas 2012, no pet.).  These two principles are

inescapably different.  The Court concludes that Texas has a strong interest in resolving claims

brought by Texas resident corporations (ANICO & NWL), but that New York has the stronger

interest in resolving claims among its resident corporations (the two Farm Family plaintiffs vs.

JPMorgan Chase & Co.) and between its resident corporations and foreign corporations

(Plaintiffs ANICO, NWL & ANPAC vs. JPMorgan Chase & Co.).

        Plaintiffs argue in opposition that "New York has no interest in protecting JPMC

from Texas law, and does not provide immunity or otherwise relieve JPMC of liability from

Plaintiffs' allegations."  Opp'n at 18.  To the contrary, New York law immunizes the conduct

alleged—at least in civil actions for tortious interference—by foreclosing liability absent an

actual breach of contract.  And it is not "Texas law" against which New York protects its

residents, but liability for actions that New York does not consider tortious.  That is a significant

governmental interest that applies to parties on both sides of this dispute.

### 2.  Significant relationship test

        New York also has the most significant relationship to the dispute here.  The

Court examines the four *Restatement* factors in turn.

        Plaintiffs argue that it is "logical to determine" that the place of their injuries was

in Texas because payments on the bonds were directed to a Texas broker, who had purchased some of Plaintiffs' bonds on their behalf.  Opp'n at 20-21.  The Court does not follow the logic. The broker is not a party here and its status is not determinative.  The fact that a non-party bank in Texas held money for some Plaintiffs does not add to the balance.  It is true that "the state where the injury occurred [is] often the state where the plaintiff resides."  *Restatement* § 145 cmt. c.[5]  But these Plaintiffs are seeking money damages, in which cases the "principal location of defendant's conduct is the contact that will usually be given the greatest weight."  *Id.* cmt. f.

Plaintiffs cannot seriously dispute that the alleged conduct occurred in New York. They concede that the Project West "war room," from which JPMC orchestrated the entire effort to obtain WaMu, was set in New York.  *See* 2d Am. Compl. ¶ 21; Opp'n at 21.  JPMC's alleged meetings with credit agencies were also in New York.  2d Am. Compl. ¶¶ 69-70.  Any meeting between JPMC and federal regulators would have occurred in New York or Washington, D.C.; Plaintiffs allege no such meeting in Texas.  Any meeting between JPMC and WaMu would have occurred in New York, Chicago or Seattle (WaMu's "primary executive and business office," *id.* ¶ 16); Plaintiffs allege no such meeting in Texas.  Thus, most of JPMC's allegedly tortious conduct occurred in New York and none is alleged in Texas.  As between New York and Texas, this factor supports application of New York law.

The residences and domiciles of the parties further bolster this conclusion.  There are five Plaintiffs and two Defendants, all corporations.  Two of the Plaintiffs are incorporated and based in New York.  While incorporated elsewhere, Defendant JPMorgan Chase & Co. (the

---

[5] As corporate entities, Plaintiffs reside in either their state of incorporation or the state that is the "nerve center" controlling the corporate business, usually where its officers are located.  *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192-93 (2010); *Restatement* § 145.  The Court concludes that two Plaintiffs were injured in New York, one in Missouri, and two in Texas.  Since the locus of injury varies by Plaintiff, it is not as important as Plaintiffs contend.

defendant most frequently targeted by the Second Amended Complaint) is headquartered in New York City.  Two Plaintiffs have their principal places of business in Texas; the remaining Plaintiff is located and incorporated in Missouri, and the second Defendant is headquartered in Illinois.[6]  Once again, the balance of the State interests favors New York.

Plaintiff ANICO argues that it was the parent corporation of ANPAC, FFLIC and FFCIC at the relevant time period so that ANICO's presence in Texas with NWL, an independent business, should govern.  Because of the importance of choice-of-laws to the outcome here, the Court has considered this argument carefully.  Ultimately, however, it is not persuasive.  ANICO "errs by confusing the . . . [three] separate legal entities" when it "conflates" its subsidiaries with the parent for choice of law purposes.  *City of Harper Woods Emps. Ret. Sys. v. Olver*, 577 F. Supp. 2d 124, 130 (D.D.C. 2008).  The Restatement looks to the "domicile, residence, nationality, place of incorporation and place of business of the parties" when resolving conflicts of laws.  *Restatement* §145.  Corporate parenthood is not among the relevant factors.

The locus of the "relationship, if any, between the parties" is inapplicable.  *Restatement* § 145(2).  That is only "another contact to be considered" in a case where "there is a relationship between the plaintiff and the defendant and when the injury was caused by an act done in the course of the relationship."  *Id.* § 145 cmt. e.  There is no alleged relationship between JPMC and the Plaintiff bondholders, and no injury alleged to have been suffered during the course of such a relationship.  This factor simply does not apply.

Finally, the bond contracts themselves specified that New York law is to be applied.  *See ANICO III*, 893 F. Supp. 2d at 233 n.7.  While this contract language does not

---

[6]  Although JPMorgan Chase Bank is a National Association, its "nerve center"—where its executives work—is in Chicago.  *See Hertz Corp.*, 130 S. Ct. at 1192-93.

govern Plaintiffs' tort claims, it does serve to illustrate the parties' expectations and the significance of a New York venue.

*     *     *

In summary, the Court finds that New York has the most significant relationship to the dispute because most of the conduct at issue occurred in New York; the place of each Plaintiff's injuries is neither localized in Texas nor sufficiently weighty to countermand the first factor; there are more parties residing or domiciled in New York than in Texas; and the opposing parties had no prior relationship out of which the injury arose.  The Court also concludes that New York, which immunizes competitive behavior that stops short of causing a breach of contract, and where three of the litigating corporations have principal places of business, has the greater interest in having its law apply.

### B.  Failure to State a Claim

Once the choice-of-law issue is decided, the balance of the analysis is straightforward.  New York law requires four elements to recover damages for tortious interference: (1) the existence of a valid contract between the plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional procurement of the third-party's breach of the contract without justification; (4) and actual breach of the contract.  *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 120 (1956); *see also B&M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 485 (S.D.N.Y. 2010) (citing *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006)).  JPMC makes no argument as to the first two elements, but moves for dismissal for failure to plead the third or fourth adequately.  Mem. at 21-27.

### 1.  Actual breach of contract

The fourth element—an actual breach of contract—presents the highest hurdle

11

that Plaintiffs must overcome.  "Ever since tortious interference with contractual relations made

its first cautious appearance in the New York Reports . . . breach of contract has repeatedly been

listed among the elements of a claim for tortious interference with contractual relations." *NBT*

*Bancorp Inc.*, 87 N.Y.2d at 620-21.   If "there was no breach of contract" resulting in damages to

Plaintiffs, their "tortious interference with contractual relations claim must fail."  *D'Andrea* v.

*Rafla-Demetrious*, 146 F.3d 63, 66 (2d Cir. 1998) (per curiam).

>    Plaintiffs do not allege an actual breach of their bond contracts.  While they allege

that JPMC "intentionally procured WMB's breach of the contract without justification," 2d Am.

Compl. ¶ 112, that allegation depends on post-receivership events.  Thus, it is inconsistent with

Plaintiiffs' circumscription of their claims to "JPMC's *pre-receivership* misconduct which

caused diminution of [Plaintiffs' WaMu] bond values *pre-receivership*."  2d Am. Compl. ¶ 116

(emphasis added).  The D.C. Circuit has already confined Plaintiffs' case to JPMC's alleged

conduct prior to WaMu's receivership.  *See ANICO II*, 642 F.3d at 1144 ("[W]e read the

complaint to allege that JPMC alone committed the wrongdoing for which appellants sue . . . .").

Because Plaintiffs necessarily confine the alleged conduct and their damages to pre-receivership

events, and because those events did not include an actual breach of their WaMu bond contracts,

Plaintiffs' tortious-interference claim cannot succeed.

>    Plaintiffs barely address this hurdle in their opposition memorandum.  Their entire

argument is that JPMC has conceded the point.  Opp'n at 24-25.  Not so.  JPMC has made no

such concession; it stakes the bulk of its motion to dismiss on Plaintiffs' failure to allege a

breach or resulting damages.  *See* Mem. at 21-27.

>    Failing to answer the charge that they did not allege a breach of contract,

Plaintiffs retreat to the proposition that they "suffered clear diminution of their bonds' values

before WaMu was placed into receivership, damages proximately caused by JPMC's tortious

conduct." Opp'n at 26.  While this proposition is consistent with the Second Amended

Complaint, it is inconsistent with New York law.  State and federal courts interpreting New York

law have repeatedly emphasized that recoverable damages must *result from* a breach of contract.

*E.g.*, *CAC Group Inc.* v. *Maxim Group LLC*, 523 Fed. App'x 802, 806 (2d Cir. 2013); *Oddo*

*Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 594 (N.Y. 2012).  For that reason, "in order

to survive a motion to dismiss under Rule 12(b)(6), sufficient facts must be plead in the

complaint to support the conclusion that the contract was actually breached, *not only that*

*damages have resulted due to a defendant's interference.*"  *Dorsett-Felicelli, Inc. v. Cnty. of*

*Clinton*, No. 1:04-CV-01141, 2011 WL 1097859, at *3 (N.D.N.Y. Mar. 22, 2011) (citing *NBT*

*Bancorp Inc.*, 87 N.Y.2d at 620-21 (emphasis added)).  Damages without a breach of contract are

insufficient under New York law.  Plaintiffs' argument cannot succeed.[7]

Indeed, the Court of Appeals of New York has rejected precisely the argument

that Plaintiffs advance here:

> [Plaintiff] urges that, as a matter of precedent and policy, a
> defendant's deliberate interference with plaintiff's contractual rights
> that causes damage should be punishable as tortious interference
> whether or not the contract was actually breached.
>
> New York law is to the contrary. Ever since tortious interference
> with contractual relations made its first cautious appearance in the
> New York Reports—decades after the seminal case *Lumley v Gye*
> (2 El & Bl 216, 118 Eng Rep 749 [1853])—our Court has repeatedly
> linked availability of the remedy with a breach of contract (*see,*
> *Posner Co. v Jackson*, 223 NY 325; *Lamb v Cheney & Son*, 227 NY
> 418). Indeed, breach of contract has repeatedly been listed among
> the elements of a claim for tortious interference with contractual
> relations (*see, e.g., Gregoris Motors v Nissan Motor Corp.*, 80

---

[7] This analysis does not "improperly appl[y] a contractual measure of damages to a tort claim,"
as Plaintiffs argue.  Opp'n at 26.  Rather, it is how New York courts measure damages for
tortious interference.  That law applies and forecloses Plaintiffs' claim.

> AD2d 631, 632, *affd* 54 NY2d 634; *Inselman & Co. v FNB Fin. Co.*,
> 41 NY2d 1078, 1080; *Israel v Wood Dolson Co.*, 1 NY2d 116, 120;
> *see also*, *Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 94 [intentional
> inducement to breach or render performance impossible]).

*NBT Bancorp Inc.*, 87 N.Y.2d at 620-21.  Because Plaintiffs have not alleged an actual breach—

and indeed, have carefully circumscribed their Second Amended Complaint so as *not* to allege a

pre-receivership breach—their claim for tortious interference cannot succeed.

### 2. Tortious conduct

JPMC also argues that the Second Amended Complaint should be dismissed for

failure to allege plausible tortious conduct.  JPMC assails Plaintiffs' allegations about disclosures

to ratings agencies (Mem. at 30-36) and to the media (*id.* at 36-38).  As to the ratings agencies,

JPMC argues that no misrepresentation is alleged; that no impermissible intent on JPMC's part is

alleged; that JPMC's conduct is not plausibly alleged to be a but-for cause of any breach by

WaMu; and that there are "more likely explanations" and "obvious alternative[s]" within the

meaning of *Iqbal* and *Twombly*.  As to the media, JPMC calls it rank speculation to allege that it

was the source of either article cited.  Mem. at 36-37 (citing 2d Am. Compl. ¶ 53).

These questions are unnecessary to address due to the Court's finding that

Plaintiffs have failed to allege facts to show a breach of contract, which is an indispensable

ingredient of tortious interference under New York law.  The arguments above would be more

properly resolved at summary judgment, which JPMC urges in the alternative.  The Court need

not, and will not, convert the pending motion to dismiss into one for summary judgment.  Should

the need arise, the Court will reconsider JPMC's arguments in the context of a summary

judgment motion.  For now, JPMC's motion will be denied without prejudice in this respect.

## IV.  CONCLUSION

Plaintiffs' Second Amended Complaint, taken as true and given all justifiable inferences, fails to state a claim under New York law for tortious interference with an existing contract.  Pursuant to the D.C. Circuit's direction, Plaintiffs tailored the operative complaint to avoid FIRREA's bar by expressly confining the alleged conduct—and their measure of damages—to events that predated FDIC's receivership.  The consequence is that they cannot allege an actionable claim for tortious interference under New York law.

A second consequence of finding themselves between a rock (FIRREA) and a hard place (New York tort law) is that Plaintiffs cannot amend their complaint to make out a cause of action based on a breach of contract.  In other words, "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 131 (D.C. Cir. 2012) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)).  Dismissal with prejudice is therefore warranted.

A memorializing Order accompanies this Opinion.


Date: March 4, 2016

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge
